## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **TELCORDIA TECHNOLOGIES INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 04-875** |
| | ) | |
| **LUCENT TECHNOLOGIES INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## LUCENT TECHNOLOGIES INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS IN RESPONSE TO PLAINTIFF TELCORDIA TECHNOLOGIES, INC.'s FIRST AMENDED COMPLAINT AND DEMAND FOR A JURY TRIAL

Defendant, Lucent Technologies Inc. ("Lucent"), respectfully submits its Answer, Affirmative Defenses, and Counterclaims in response to the First Amended Complaint and Demand For Jury Trial of Plaintiff Telcordia Technologies Inc. ("Telcordia"), and requests a trial by jury on all issues so triable, as follows:

### I.    ANSWER TO TELCORDIA'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

### THE PLAINTIFF

1.    Plaintiff TELCORDIA is a corporation organized and existing under the laws of Delaware, having a place of business at One Telcordia Drive, Piscataway, New Jersey 08854.

**ANSWER:**    Lucent admits that Telcordia is the Plaintiff in the above-captioned civil action.  Otherwise, Lucent is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1, and on that basis denies such allegations.

2.     TELCORDIA is a provider of communications software, engineering, and consulting services throughout the United States, including in the District of Delaware.

**ANSWER:**     Lucent is without knowledge and information sufficient to form an understanding as to what is meant by "a provider of communications software, engineering, and consulting services," and on that basis denies such allegations.

## THE DEFENDANT

3.     Upon information and belief, defendant LUCENT is a corporation organized and existing under the laws of Delaware, having a place of business at 600 Mountain Avenue, Murray Hill, New Jersey 07974.

**ANSWER:**     Lucent admits that it is a corporation organized and existing under the laws of the state of Delaware.  Lucent admits having a place of business at 600 Mountain Avenue, Murray Hill, New Jersey 07974.

4.     Upon information and belief, LUCENT is a manufacturer of communication network products that LUCENT ships, distributes, sells, and/or offers for sale throughout the United States, including in the District of Delaware.

**ANSWER:**     Lucent is without knowledge and information sufficient to form an understanding as to what is meant by "communication network products," and on that basis denies such allegations.

## JURISDICTION AND VENUE

5.     The claims asserted in this Complaint arise under the Patent Laws of the United States, 35 U.S.C. §§ 1-376.

**ANSWER:**     Lucent admits that the complaint purports to allege an action for patent infringement under 35 U.S.C. §§ 1, *et seq.*  Lucent denies that the complaint properly states such a claim and specifically denies any wrongdoing or infringement.

6.     Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338.

057224.1004

**ANSWER:**    Lucent admits that the complaint purports to base federal jurisdiction under 28 U.S.C. §§ 1331 and 1338.  Otherwise, this allegation contains conclusions of law to which no answer is required.

7.    This Court has personal jurisdiction over LUCENT.

**ANSWER:**    Lucent admits that this Court has personal jurisdiction over Lucent, but denies that any wrongdoing or infringing acts have occurred in Delaware or elsewhere.

8.    Venue is proper under 28 U.S.C. §§ 1391 and 1400.

**ANSWER:**    Lucent admits that venue is proper in this Court.

## INFRINGEMENT

9.    TELCORDIA    realleges    and    incorporates    by    reference    each    of paragraphs 1-8 above.

**ANSWER:**    Lucent repleads and incorporates by reference each of its answers to paragraphs 1-8 above.

10.    The '306 patent, entitled "Method and Apparatus for Multiplexing Circuit and Packet Traffic," was lawfully issued by the United States Patent and Trademark Office on January 9, 1990 to the inventors, Hung-Hsiang J. Chao, Sang H. Lee, and Liang T. Wu.  The '306 patent issued from U.S. Patent Application Serial No. 07/118,977, filed November 10, 1987.  A copy of the '306 patent is attached as Exhibit A.

**ANSWER:**    Lucent admits that what appears to be a copy of U.S. Patent No. 4,893,306 is attached as Exhibit A to the complaint.  Lucent admits that, on its face, Exhibit A is entitled "Method and Apparatus for Multiplexing Circuit and Packet Traffic."  Lucent admits that, on its face, Exhibit A states that U.S. Patent No. 4,893,306 was issued by the United States Patent and Trademark Office ("USPTO") on January 9, 1990.  Lucent admits that, on its face, Exhibit A states that U.S. Patent No. 4,893,306 issued from U.S Patent Application Serial No. 07/118,977, filed November 10, 1987.  Lucent admits that, on its face, Exhibit A identifies Hung-Hsiang J. Chao, Sang H. Lee, and Liang T. Wu as inventors.  Otherwise, Lucent denies each and every allegation

-3-

contained in Paragraph 10, and specifically denies that U.S. Patent No. 4,893,306 was lawfully issued by the USPTO to Hung-Hsiang J. Chao, Sang H. Lee, and Liang T. Wu.

11.     On its issuance, the '306 patent was assigned to Bell Communications Research, Inc. ("Bellcore"), which became TELCORDIA in 1999.  TELCORDIA and Bellcore have at all times since the '306 patent's issuance held the entire right, title, and interest in the patent.

**ANSWER:**   To the extent that this allegation contains conclusions of law, no answer is required.  Otherwise, Lucent is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11, and on that basis denies such allegations.

12.     Upon information and belief, LUCENT has infringed one or more claims of the '306 patent by making, using, offering for sale, selling, and/or importing into the United States communication network products embodying the patented invention.

**ANSWER:**   Lucent denies each and every allegation contained in Paragraph 12, and specifically denies any wrongdoing or infringement.

13.     Upon information and belief, LUCENT has infringed one or more claims of the '306 patent by inducing others to infringe the patent and/or contributing to the patent's infringement by others.

**ANSWER:**   Lucent denies each and every allegation contained in Paragraph 13, and specifically denies any wrongdoing or infringement.

14.     As a consequence of LUCENT's infringement of the '306 patent, TELCORDIA has been damaged in an amount not yet determined.

**ANSWER:**   Lucent denies each and every allegation contained in Paragraph 14, specifically denies any wrongdoing or infringement, and further denies that Telcordia is entitled to recover any damages whatsoever.

15.     Upon information and belief, LUCENT's infringement of the '306 patent will continue in the future, and TELCORDIA will continue to suffer damages as a consequence, unless LUCENT's infringing acts are enjoined by this Court.

**ANSWER:**   Lucent denies each and every allegation contained in Paragraph 15, and specifically denies any wrongdoing or infringement.

16.   Upon information and belief, LUCENT's infringement of the '306 patent has been, and continues to be, willful.

**ANSWER:**   Lucent denies each and every allegation contained in Paragraph 16, specifically denies any wrongdoing or infringement, and further denies any willful infringement.

17.   TELCORDIA realleges and incorporates by reference each of paragraphs 1-16 above.

**ANSWER:**   Lucent repleads and incorporates by reference each of its answers to paragraphs 1-16 above.

18.   The '633 patent, entitled "Synchronous Residual Time Stamp for Timing Recovery in a Broadband Network," was lawfully issued by the PTO on March 28, 2000 to the inventors, Paul E. Fleischer and Chi-Leung Lau.   The '633 patent issued from U.S. Patent Application Serial No. 08/555,196, filed November 8, 1995.  A copy of the '633 patent is attached as Exhibit B.

**ANSWER:**   Lucent admits that what appears to be a copy of U.S. Patent No. Re 38,633 is attached as Exhibit B to the complaint.  Lucent admits that, on its face, Exhibit B is entitled "Synchronous Residual Time Stamp for Timing Recovery in a Broadband Network." Lucent admits that, on its face, Exhibit B states that U.S. Patent No. Re 38,633 was issued by the USPTO on March 28, 2000.  Lucent admits that, on its face, Exhibit B states that U.S. Patent No. Re 38,633 issued from U.S. Patent Application Serial No. 08/555,196, filed November 8, 1995.  Lucent admits that, on its face, Exhibit B identifies Paul E. Fleischer and Chi-Leung Lau as inventors. Otherwise, Lucent denies each and every allegation contained in Paragraph 18, and specifically denies that U.S. Patent No. Re 38,633 was lawfully issued by the USPTO to Paul E. Fleischer and Chi-Leung Lau.

19.    On its issuance, the '633 patent was assigned to Bellcore, which became TELCORDIA in 1999.  TELCORDIA and Bellcore have at all times since the '633 patent's issuance held the entire right, title, and interest in the patent.

**ANSWER:**    To the extent that this allegation contains conclusions of law, no answer is required.  Otherwise, Lucent is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19, and on that basis denies such allegations.

20.    Upon information and belief, LUCENT has infringed one or more claims of the '633 patent by making, using, offering for sale, selling, and/or importing into the United States communication network products embodying the patented invention.

**ANSWER:**    Lucent denies each and every allegation contained in Paragraph 20, and specifically denies any wrongdoing or infringement.

21.    Upon information and belief, LUCENT has infringed one or more claims of the '633 patent by inducing others to infringe the patent and/or contributing to the patent's infringement by others.

**ANSWER:**    Lucent denies each and every allegation contained in Paragraph 21, and specifically denies any wrongdoing or infringement.

22.    As a consequence of LUCENT's infringement of the '633 patent, TELCORDIA has been damaged in an amount not yet determined.

**ANSWER:**    Lucent denies each and every allegation contained in Paragraph 22, specifically denies any wrongdoing or infringement, and further denies that Telcordia is entitled to recover any damages whatsoever.

23.    Upon information and belief, LUCENT's infringement of the '633 patent will continue in the future, and TELCORDIA will continue to suffer damages as a consequence, unless LUCENT's infringing acts are enjoined by this Court.

**ANSWER:**    Lucent denies each and every allegation contained in Paragraph 23, and specifically denies any wrongdoing or infringement.

WP3:1133545.1                                                                                        057224.1004

24.    Upon information and belief, LUCENT's infringement of the '633 patent has been, and continues to be, willful.

**ANSWER:**    Lucent denies each and every allegation contained in Paragraph 24, specifically denies any wrongdoing or infringement, and further denies any willful infringement.

25.    TELCORDIA realleges and incorporates by reference each of paragraphs 1-24 above.

**ANSWER:**    Lucent repleads and incorporates by reference each of its answers to paragraphs 1-24 above.

26.    The '763 patent, entitled "Survivable Ring Network" was lawfully issued by the PTO on May 30, 1989 to the inventor, Chi-Leung Lau. The '763 patent issued from U.S. Patent Application Serial No. 152,283, filed February 4, 1988. A copy of the '763 patent is attached as Exhibit C.

**ANSWER:**    Lucent admits that what appears to be a copy of U.S. Patent No. 4,835,763 is attached as Exhibit C to the complaint.  Lucent admits that, on its face, Exhibit C is entitled "Survivable Ring Network."  Lucent admits that, on its face, Exhibit C states that U.S. Patent No. 4,835,763 was issued by the USPTO on May 30, 1989.  Lucent admits that, on its face, Exhibit C states that U.S. Patent No. 4,835,763 issued from U.S. Patent Application Serial No. 152,283, filed February 4, 1988.  Lucent admits that, on its face, Exhibit C identifies Chi-Leung Lau as the inventor.  Otherwise, Lucent denies each and every allegation contained in Paragraph 26, and specifically denies that U.S. Patent No. 4,835,763 was lawfully issued by the USPTO to Chi-Leung Lau.

27.    On its issuance, the '763 patent was assigned to Bellcore, which became TELCORDIA in 1999.  TELCORDIA and Bellcore have at all times since the '763 patent's issuance held the entire right, title, and interest in the patent.

**ANSWER:**    To the extent that this allegation contains conclusions of law, no answer is required.  Otherwise, Lucent is without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 27, and on that basis denies such allegations.

28.     Upon information and belief, LUCENT has infringed one or more claims of the '763 patent by making, using, offering for sale, selling, and/or importing into the United States communication network products embodying the patented invention.

**ANSWER:**     Lucent denies each and every allegation contained in Paragraph 28, and specifically denies any wrongdoing or infringement.

29.     Upon information and belief, LUCENT has infringed one or more claims of the '763 patent by inducing others to infringe the patent and/or contributing to the patent's infringement by others.

**ANSWER:**     Lucent denies each and every allegation contained in Paragraph 29, and specifically denies any wrongdoing or infringement.

30.     As a consequence of LUCENT'S infringement of the '763 patent, TELCORDIA has been damaged in an amount not yet determined.

**ANSWER:**     Lucent denies each and every allegation contained in Paragraph 30, specifically denies any wrongdoing or infringement, and further denies that Telcordia is entitled to recover any damages whatsoever.

31.     Upon information and belief, LUCENT's infringement of the '763 patent will continue in the future, and TELCORDIA will continue to suffer damages as a consequence, unless LUCENT'S infringing acts are enjoined by this Court.

**ANSWER:**     Lucent denies each and every allegation contained in Paragraph 31, and specifically denies any wrongdoing or infringement.

## JURY DEMAND

32.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, TELCORDIA requests a trial by jury for all issues so triable.

**ANSWER:**     This paragraph contains conclusions of law to which no answer is necessary.

WHEREFORE, Lucent denies that any of its products infringe any valid claim of the patents identified in Telcordia's complaint, and further denies that Telcordia is entitled to any judgment against Lucent whatsoever.  Lucent asks that Telcordia's complaint be dismissed with prejudice, that judgment be entered for Lucent, and that Lucent be awarded attorneys' fees incurred in defending against Telcordia's complaint, together with such other and further relief as the Court deems appropriate.

## II.     AFFIRMATIVE DEFENSES

As and for its Affirmative Defenses, Lucent alleges as follows:

### First Affirmative Defense
(Failure to State a Claim)

33.     Telcordia's purported claims are barred because they fail to state a claim upon which relief can be granted.

### Second Affirmative Defense
(Non-Infringement)

34.     Lucent has not directly infringed, contributed to the infringement, or induced the infringement of any claim of any patent identified in Telcordia's complaint through any of its products.

### Third Affirmative Defense
(Patent Invalidity)

35.     Telcordia's purported claims for infringement are barred because the claims in the patents identified in Telcordia's complaint are invalid for failure to comply with the requirements of 35 U.S.C. §§ 1 *et seq*.

057224.1004

**Fourth Affirmative Defense**
(Inequitable Conduct)

36.    Telcordia's purported claims for infringement are barred because one or more claims in the '306 patent identified in Telcordia's complaint are unenforceable due to inequitable conduct.

37.    During the prosecution of the application for the '306 patent identified in Telcordia's complaint, one or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application had knowledge of articles published by J. O. Limb, including at least an article entitled "Description of Fasnet--A Unidirectional Local--Area Communications Network," published by J. O. Limb, et al. in September of 1982.

38.    The article entitled "Description of Fasnet--A Unidirectional Local--Area Communications Network" was prior art that was material to the patentability of one or more claims of the '306 patent identified in Telcordia's complaint.

39.    The article entitled "Description of Fasnet--A Unidirectional Local--Area Communications Network" was not disclosed to the USPTO during the filing and prosecution of the application for the '306 patent identified in Telcordia's complaint.  One or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application withheld the article entitled "Description of Fasnet--A Unidirectional Local--Area Communications Network" with an intent to deceive the USPTO.

40.    During prosecution of the application for the '306 patent identified in Telcordia's complaint, one or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application had knowledge of IEEE Standard 802.6 and QPSX products and systems that were known, in public use, and/or described in a printed publication prior to November 10, 1987.

-10-

41.    IEEE Standard 802.6 and QPSX products and systems were prior art that were material to the patentability of one or more claims of the '306 patent identified in Telcordia's complaint.

42.    IEEE Standard 802.6 and QPSX products and systems were not disclosed to the USPTO during the filing and prosecution of the application for the '306 patent identified in Telcordia's complaint.  One or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application withheld information regarding IEEE Standard 802.6 and QPSX products and systems with an intent to deceive the USPTO.

43.    During the prosecution of the application for the '306 patent identified in Telcordia's complaint, one or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application had knowledge of an article entitled "Dynamic TDM-A Packet Approach To Broadband Networking," published by L.T. Wu, S.H. Lee, and T.T. Lee in June 1987.

44.    The article entitled "Dynamic TDM-A Packet Approach To Broadband Networking" was prior art that was material to the patentability of one or more claims of the '306 patent identified in Telcordia's complaint.

45.    The article entitled "Dynamic TDM-A Packet Approach To Broadband Networking" was not disclosed to the USPTO during the filing and prosecution of the application for the '306 patent identified in Telcordia's complaint.  One or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application withheld the article entitled "Dynamic TDM-A Packet Approach To Broadband Networking" with an intent to deceive the USPTO.  During the prosecution of the application for the patent identified in Telcordia's complaint, one or more of the inventors, and/or the prosecuting attorneys, and/or

others associated with the filing and prosecution of the application had knowledge of an article entitled "A Protocol and Prototype For Broadband Subscriber Access to ISDNs," published by Mark Beckner, T.T. Lee, and Steven Minzer in March 1987.

46.    The article entitled "A Protocol and Prototype For Broadband Subscriber Access to ISDNs" was prior art that was material to the patentability of one or more claims of the '306 patent identified in Telcordia's complaint.

47.    The article entitled "A Protocol and Prototype For Broadband Subscriber Access to ISDNs" was not disclosed to the USPTO during the filing and prosecution of the application for the '306 patent identified in Telcordia's complaint.  One or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application withheld the article entitled "A Protocol and Prototype For Broadband Subscriber Access to ISDNs" with an intent to deceive the USPTO.

48.    During the prosecution of the application for the '306 patent identified in Telcordia's complaint, one or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application had knowledge of an article entitled "A Broadband ISDN Local Access System Using Emerging Technology Components," published by G. Hayward, L. Linnell, D. Mahoney and L. Smoot in March 1987.

49.    The article entitled "A Broadband ISDN Local Access System Using Emerging Technology Components" was prior art that was material to the patentability of one or more claims of the '306 patent identified in Telcordia's complaint.

50.    The article entitled "A Broadband ISDN Local Access System Using Emerging Technology Components" was not disclosed to the USPTO during the filing and prosecution of the application for the '306 patent identified in Telcordia's complaint.  One or more

-12-

of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application withheld the article entitled "A Broadband ISDN Local Access System Using Emerging Technology Components" with an intent to deceive the USPTO.

51.     During the prosecution of the application for the '306 patent identified in Telcordia's complaint, one or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application had knowledge of an article entitled "Starlite: A Wideband Digital Switch," published by A. Huang and S. Knauer in 1984.

52.     The article entitled "Starlite: A Wideband Digital Switch" was prior art that was material to the patentability of one or more claims of the '306 patent identified in Telcordia's complaint.

53.     The article entitled "Starlite: A Wideband Digital Switch" was not disclosed to the USPTO during the filing and prosecution of the application for the '306 patent identified in Telcordia's complaint.  One or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application withheld the article entitled "Starlite: A Wideband Digital Switch" with an intent to deceive the USPTO.

54.     During the prosecution of the application for the '306 patent identified in Telcordia's complaint, one or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application had knowledge of an article entitled "A CMOS VLSI Framer Chip for a Broadband ISDN Local Access System," published by H.J. Chao, T.J. Robe, and L.S. Smoot in May 1987.

55.     The article entitled "A CMOS VLSI Framer Chip for a Broadband ISDN Local Access System" was prior art that was material to the patentability of one or more claims of the '306 patent identified in Telcordia's complaint.

56. The article entitled "A CMOS VLSI Framer Chip for a Broadband ISDN Local Access System" was not disclosed to the USPTO during the filing and prosecution of the application for the '306 patent identified in Telcordia's complaint. One or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application withheld the article entitled "A CMOS VLSI Framer Chip for a Broadband ISDN Local Access System" with an intent to deceive the USPTO.

57. During the prosecution of the application for the '306 patent identified in Telcordia's complaint, one or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application had knowledge of an article entitled "Broadband User-Network Interfaces to ISDN," published by Steven Minzer in June 1987.

58. The article entitled "Broadband User-Network Interfaces to ISDN" was prior art that was material to the patentability of one or more claims of the '306 patent identified in Telcordia's complaint.

59. The article entitled "Broadband User-Network Interfaces to ISDN" was not disclosed to the USPTO during the filing and prosecution of the application for the '306 patent identified in Telcordia's complaint. One or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application withheld the article entitled "Broadband User-Network Interfaces to ISDN" with an intent to deceive the USPTO.

60. During the prosecution of the application for the '306 patent identified in Telcordia's complaint, one or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application had knowledge of an article entitled "Broadband ISDN Switching Capabilities From a Service Perspective," published by Dan R. Spears in October 1987.

61.     The article entitled "Broadband ISDN Switching Capabilities From a Service Perspective" was prior art that was material to the patentability of one or more claims of the '306 patent identified in Telcordia's complaint.

62.     The article entitled "Broadband ISDN Switching Capabilities From a Service Perspective" was not disclosed to the USPTO during the filing and prosecution of the application for the '306 patent identified in Telcordia's complaint.  One or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application withheld the article entitled "Broadband ISDN Switching Capabilities From a Service Perspective" with an intent to deceive the USPTO.

63.     During the prosecution of the application for the '306 patent identified in Telcordia's complaint, one or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application had knowledge of United States Patent No. 4,082,922 entitled "Statistical Multiplexing System For Computer Communications," issued to Wesley W. Chu on April 4, 1978.

64.     U.S. Patent No. 4,082,922 was prior art that was material to the patentability of one or more claims of the '306 patent identified in Telcordia's complaint.

65.     U.S. Patent No. 4,082,922 was not disclosed to the USPTO during the filing and prosecution of the application for the '306 patent identified in Telcordia's complaint.  One or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application withheld U.S. Patent No. 4,082,922 with an intent to deceive the USPTO.

66.     During the prosecution of the application for the '306 patent identified in Telcordia's complaint, one or more of the inventors, and/or the prosecuting attorneys, and/or others

associated with the filing and prosecution of the application had knowledge of United States Patent No. 4,093,823 entitled "Statistically Multiplexing System For Computer Communications," issued to Wesley W. Chu on June 6, 1978.

67.    U.S. Patent No. 4,093,823 was prior art that was material to the patentability of one or more claims of the '306 patent identified in Telcordia's complaint.

68.    U.S. Patent No. 4,093,823 was not disclosed to the USPTO during the filing and prosecution of the application for the '306 patent identified in Telcordia's complaint.  One or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application withheld U.S. Patent No. 4,093,823 with an intent to deceive the USPTO.

69.    During the prosecution of the application for the '306 patent identified in Telcordia's complaint, one or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application had knowledge of an article entitled "A Wide-Band Local Access System Using Emerging-Technology Components," published by Lloyd R. Linnell in July 1986.

70.    The article entitled "A Wide-Band Local Access System Using Emerging-Technology Components" was prior art that was material to the patentability of one or more claims of the '306 patent identified in Telcordia's complaint.

71.    The article entitled "A Wide-Band Local Access System Using Emerging-Technology Components" was not disclosed to the USPTO during the filing and prosecution of the application for the '306 patent identified in Telcordia's complaint.  One or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the

application withheld the article entitled "A Wide-Band Local Access System Using Emerging-Technology Components" with an intent to deceive the USPTO.

72.    The article entitled "Synchronous Wideband Network-An Interoffice Facility Hubbing Network" was not disclosed to the USPTO during the filing and prosecution of the application for the '306 patent identified in Telcordia's complaint.  One or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application withheld the article entitled "Synchronous Wideband Network-An Interoffice Facility Hubbing Network" with an intent to deceive the USPTO.

73.    The article entitled "Synchronous Wideband Network-An Interoffice Facility Hubbing Network" was prior art that was material to the patentability of one or more claims of the '306 patent identified in Telcordia's complaint.

74.    The article entitled "Synchronous Wideband Network-An Interoffice Facility Hubbing Network" was not disclosed to the USPTO during the filing and prosecution of the application for the '306 patent identified in Telcordia's complaint.  One or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application withheld the article entitled "Synchronous Wideband Network-An Interoffice Facility Hubbing Network" with an intent to deceive the USPTO.

75.    During the prosecution of the application for the '306 patent identified in Telcordia's complaint, one or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application had knowledge of United States Patent No. 4,569,041 entitled "Integrating Circuit/Packet Switching System," issued to Takao Takeuchi et al. on February 4, 1986.

76.    U.S. Patent No. 4,569,041 was prior art that was material to the patentability of one or more claims of the '306 patent identified in Telcordia's complaint.

77.    U.S. Patent No. 4,569,041 was not disclosed to the USPTO during the filing and prosecution of the application for the '306 patent identified in Telcordia's complaint. One or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application withheld U.S. Patent No. 4,569,041 with an intent to deceive the USPTO.

78.    During prosecution of the '306 patent before the USPTO, the examiner rejected Telcordia's patent application as anticipated by U.S. Patent No. 4,771,425 to Baran et al.

79.    To overcome this reference, the applicants, through their attorney, argued that "[i]n the claimed invention, all of the data to be transmitted is transmitted in the form of packets which are contained in the payload fields of frames. In contrast, in the Baran et al. reference, some data is transmitted in the form of frames divided into slots and some of the data is transmitted in the form of packets whose length is the same as the length of the frames." The applicants continued "[i]n addition, the transmission bit stream of the claimed invention is formed by first generating a bit stream comprised of frames with empty payload fields. Data from a plurality of sources which have access to the transmission stream are packetized. The packets are then inserted into the empty payload fields of the frames. The Baran et al. reference in no way discloses the formation of a transmission bit stream by generating a sequence of frames with empty payload fields and picking up packets from a plurality of sources to fill the payload fields."

80.    U.S. Patent No. 4,771,425 discloses "[a] packet communications network and apparatus for communicating information in voice and data packets transmits and receives voice and data in accordance with standardized frames of a standardized communications format such as a

standard DS-1 type trunk." U.S. Patent No. 4,771,425 at abstract. U.S. Patent No. 4,771,425 also discloses that "[a]ccording to the invention, an apparatus is provided for high capacity voice and data communication in the form of truly independent synchronous packet switched digital packets. A network is defined which formats data into a packet frame which is compatible with standardized TDM trunk formats and yet which is fast enough to permit packet switching of voice packets." U.S. Patent No. 4,771,425 at col. 2, ll. 34-40. U.S. Patent No. 4,771,425 also discloses that "[t]he transmitter circuit RAM 192 and the transmitter packet FIFO 194 are coupled to a transmit control unit 198 through which either transmitted TDM signals or transmitted packets are routed to a frame and signaling inserter 200. The frame and signaling inserter 200 inserts DS-1 framing signals into the TDM signals or into the packets in accordance with conventional trunk system technology." U.S. Patent No. 4,771,425 at col. 14, ll. 55-62.

81.     The applicants, through their attorney, misrepresented U.S. Patent No. 4,771,425.

82.     On information and belief, the applicants misrepresented U.S. Patent No. 4,771,425 with deceptive intent.

83.     Telcordia's purported claims for infringement are barred because one or more claims in the '633 patent identified in Telcordia's complaint are unenforceable due to inequitable conduct.

84.     The '633 patent issued as a reissue of U.S. Patent No. 5,260,978, issued by the USPTO to Paul E. Fleischer and Chi-Leung Lau on November 9, 1993.

85.     During prosecution of the application for the '633 patent, Paul E. Fleischer and Chi-Leung Lau submitted an Information Disclosure Statement ("IDS") submitting to the USPTO references "to provide information to assist the Examiner." The IDS stated that "inventors

-19-

Richard Lau and/or Paul Fleischer have been aware of at least document nos. 2-12, 14, 16, 17, 20, and 21 prior to and/or during the prosecution of the original '978 patent."

86.    "Document nos. 2-12, 14, 16, 17, 20, and 21" include:

- Memorandum dated 10/11/91 from R. Lau and B. Kittams of Bellcore to T. Houdoin of CNET re A Compromise of SFET and TS;

- Memorandum dated 10/14/91 from T. Houdoin of CNET to B. Kittams and R. Lau of Bellcore re Compromise SFET/TS;

- Undated memorandum from T. Houdoin of CNET to B. Kittams and R. Lau of Bellcore re Compromise SFET/TS;

- Y. Matsuura, S. Kozuka, K. Yuki, "Jitter Characteristics of Pulse Stuffing Synchronization," IEEE Int. Conf . on Communications, pp. 253-264, June 1968;

- D.L. Duttweiler, "Waiting Time Jitter," Bell System Technical Journal, Vol. 51, pp. 165-207, Jan. 1972;

- CCITT Recommendations G.707, G.708, G.709 (1988);

- CCITT Recommendations G. 823, G. 824 (1988);

- CCTTT SG XVIII Contribution D.294, "Timing for CBO Services," Geneva, June 1989;

- R.C. Lau, "Synchronous Frequency Encoding Technique for Circuit Emulation." SPIE Conf. on Visual Proc. and Image Com., Fiber Networking and Telecommunications, Vol. 1179, pp. 160-171, Sept. 1989;

- H. M. Ahmed, "Adaptive Terminal Synchronization in Packet Data Networks," Globecom 1989;

- CCTTT SG XVIII Contribution D.1020, "Timing Recovery for CBR Circuit Emulations, Dec. 1990;

- November 4, 1991 Submission to TlSl on Broadband Aspects of ISDN, TlS1.5/91-382, entitled "Synchronous Residue-TS: A Compromise for SFET/TS";

- CCITT SG XVIII T1S1/91-611 COM XVIII-No. entitled "Synchronous Residue-Time Stamp: A Combination of SFET/TS" (December 2-13, 1991);

- CCITT SG XVIII, TD 27, "Report of The Meeting of SWP XVIII/8-3 (Services, IVS and AAL types 1 and 2," Dec., 1991;

- Appendix 5 (to Annex 7) for COM XVIII-R 70-E entitled "Descriptions of the SFET Method, July 1991; and

- Appendix 6 (to Annex 7) for COM XVIII-R 70-E entitled "Descriptions of the TS method," July 1991.

87.     The references listed in paragraph 86 were material to the patentability of one or more claims of the '978 and '633 patents.

88.     The references listed in paragraph 86 were not disclosed to the USPTO during the filing and prosecution of the application for the '978 patent.  One or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution of the application withheld the references listed in paragraph 86 with an intent to deceive the USPTO.

### Fifth Affirmative Defense
(Laches)

89.     Telcordia's claim for any damages purportedly incurred prior to filing this action is barred by the equitable doctrine of laches.

### Sixth Affirmative Defense
(Equitable Estoppel)

90.     Telcordia's  purported claims for infringement are barred because of the equitable doctrine of equitable estoppel.

**Seventh Affirmative Defense**
(License)

91.    Bell Communications Research, Inc. ("Bellcore"), which became TELCORDIA in 1999, granted to American Telephone and Telegraph Company ("AT&T") a license that includes rights to use and to have made products covered by the patents identified in Telcordia's complaint.  To the extent that any of Telcordia's allegations of infringement are premised on the alleged use, sale, offer for sale, or importation of Lucent's products that were manufactured for or provided to AT&T, such allegations are barred pursuant to such license.

92.    Bellcore, which became TELCORDIA in 1999, granted to the Regional Bell Operating Companies ("RBOCs") a license that included rights to use and to have made products covered by the patents identified by Telcordia's complaint.  To the extent that any of Telcordia's allegations of infringement are premised on the alleged use, sale, offer for sale, or importation of Lucent's products that were manufactured for or provided to the RBOCs, such allegations are barred pursuant to such license.

**Eighth Affirmative Defense**
(Intervening Rights)

93.    Telcordia's claim for any damages purportedly incurred is barred by the doctrine of intervening rights.

**Ninth Affirmative Defense**
(Patent Misuse)

94.    Telcordia's claim for any damages purportedly incurred is barred by the doctrine of patent misuse.

WP3:1133545.1                                                              057224.1004

### III.    COUNTERCLAIMS

#### Jurisdiction and Venue

95.    This is an action for declaratory relief for which this Court has jurisdiction under 28 U.S.C. §§ 1331, 1338, and 2201.

96.    To the extent that this action remains in this Court, venue is appropriate because Telcordia has consented to the propriety of venue in this Court by filing its claim for patent infringement in this Court, in response to which these counterclaims are asserted.

97.    Lucent is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Murray Hill, New Jersey 07874.

98.    Telcordia alleges that it is a corporation organized and existing under the laws of Delaware, having a place of business at One Telcordia Drive, Piscataway, New Jersey 08854.

#### First Counterclaim
(Non-Infringement)

99.    Lucent repeats and realleges paragraphs 95-98 above as if fully set forth herein.

100.    By filing its complaint, Telcordia has purported to assert a claim for infringement.

101.    Lucent has denied Telcordia's claim of infringement and believes that the complaint has been filed without good cause.

102.    An actual controversy has arisen between Lucent and Telcordia concerning the infringement of the patents identified in Telcordia's complaint.

103.    Lucent is entitled to judgment from this Court finding that the patents identified in Telcordia's complaint are not infringed by any Lucent product.

104.    Telcordia also filed this action without a good faith basis, making this an exceptional case.    Consequently, Telcordia is liable for any and all attorneys' fees incurred by Lucent in connection with this action.

### Second Counterclaim
(Invalidity)

105.    Lucent repeats and realleges paragraphs 95-98 above as if fully set forth herein.

106.    Lucent has denied that the patents identified in Telcordia's complaint are valid and has asserted that such patents are invalid pursuant to 35 U.S.C. §§ 1 *et seq*.

107.    Lucent is entitled to judgment from this Court finding that the patents identified in Telcordia's complaint are invalid for failure to comply with the requirements of 35 U.S.C. §§ 1 *et seq*.

### Third Counterclaim
(Inequitable Conduct)

108.    Lucent repeats and realleges paragraphs 95-98 as if fully set forth herein.

109.    Lucent repeats and realleges paragraphs 36-88 as if fully set forth herein as and for its counterclaim that the '306 and '633 patents identified in Telcordia's complaint are unenforceable as result of inequitable conduct committed before the USPTO during the prosecution of the '306 and '633 patents by one or more of the inventors, and/or the prosecuting attorneys, and/or others associated with the filing and prosecution.

### Fourth Counterclaim
(License)

110.    Lucent repeats and realleges paragraphs 95-98 as if fully set forth herein.

111.    Bellcore granted to AT&T a license that includes rights to use and to have made products covered by the patents identified in Telcordia's complaint.    To the extent that any of

Telcordia's allegations of infringement are premised on the alleged use, sale, offer for sale, or importation of Lucent's products that were manufactured for or provided to AT&T, such allegations are barred pursuant to such license.

112.    Bellcore granted to the RBOCs a license that included rights to use and to have made products covered by the patents identified by Telcordia's complaint. To the extent that any of Telcordia's allegations of infringement are premised on the alleged use, sale, offer for sale, or importation of Lucent's products that were manufactured for or provided to the RBOCs, such allegations are barred pursuant to such license.

### IV.     DEMAND FOR JURY TRIAL

113.    Lucent hereby demands a trial by jury.

### V.     RELIEF

WHEREFORE, Lucent seeks the following relief:

114.    That the patents identified in Telcordia's complaint, and every claim thereof, be declared not infringed, invalid, and unenforceable;

115.    That Telcordia take nothing by its complaint and that Telcordia's complaint be dismissed with prejudice;

116.    That, pursuant to 35 U.S.C. § 285, Federal Rule of Civil Procedure 11, and/or other applicable laws, the Court find that Telcordia's conduct in commencing and pursuing this action renders this an exceptional case and that Lucent be awarded its attorneys' fees incurred in connection with this action; and

117.    That Lucent be granted such other and additional relief as this Court deems just and proper.

                                        YOUNG CONAWAY STARGATT &
                                          TAYLOR, LLP


                                        _____
                                        John W. Shaw (No. 3362)
                                        Glenn C. Mandalas (No. 4432)
                                        The Brandywine Building
                                        1000 West Street, 17th Floor
Of Counsel:                             Wilmington, Delaware  19899-0391
                                        (302) 571-6600
Steven C. Cherny                        jshaw@ycst.com
Latham & Watkins LLP
885 Third Avenue, Suite 1000            Attorneys for Lucent Technologies Inc.
New York, NY 10022
(212) 906-1200

David Nelson
Israel Sasha Mayergoyz
Neilish Patel
Latham & Watkins LLP
Sears Tower, Suite 5800
Chicago, IL 60606
(312) 876-7700


Dated:  August 3, 2005

057224.1004

## CERTIFICATE OF SERVICE

I, Glenn C. Mandalas, Esquire, hereby certify that on August 3, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Steven J. Balick Esquire
> Ashby & Geddes
> 222 Delaware Avenue
> P.O. Box 1150
> Wilmington, DE  19899

I further certify that on August 3, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

**BY  HAND DELIVERY**

> Steven J. Balick Esquire
> ASHBY & GEDDES
> 222 Delaware Avenue
> P.O. Box 1150
> Wilmington, DE  19899

**BY FEDERAL EXPRESS**

> Donald R. Dunner, Esquire
> FINNEGAN, HENDERSON, FARABOW,
>     GARRETT & DUNNER LLP
> 901 New York Ave., N.W.
> Washington, DC 20001

York M. Faulkner, Esquire
FINNEGAN HENDERSON FARABOW,
   GARRETT & DUNNER LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
John W. Shaw (No. 3362)
Glenn C. Mandalas (No. 4432)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
gmandalas@ycst.com

*Attorneys for Lucent Technologies, Inc.*