# EXHIBIT 1

# UNITED STATES
# INTERNATIONAL TRADE COMMISSION

In the Matter of:                    )
                                     )
CERTAIN EQUIPMENT                    )
FOR TELECOMMUNICATIONS               )   Investigation No.:
OR DATA COMMUNICATIONS               )   337-TA-574
NETWORKS, INCLUDING                  )
ROUTERS, SWITCHES AND                )
HUBS, AND COMPONENTS                 )
THEREOF                              )

Pages:  1 through 51

Place:  Washington, D.C.

Date:   August 16, 2006

## HERITAGE REPORTING CORPORATION
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C. 20005
(202) 628-4888

1

THE UNITED STATES INTERNATIONAL TRADE COMMISSION

In the Matter of:                    )
                                     )
CERTAIN EQUIPMENT                    )
FOR TELECOMMUNICATIONS               )    Investigation No.:
OR DATA COMMUNICATIONS               )    337-TA-574
NETWORKS, INCLUDING                  )
ROUTERS, SWITCHES AND                )
HUBS, AND COMPONENTS                 )
THEREOF                              )

                              Wednesday,
                              August 16, 2006

                              Hearing Room A, Room 100
                              500 E Street, S.W.
                              Washington, D.C.

        The preliminary conference commenced, pursuant to

notice, at 2:00 p.m., before the International Trade

Commission, the Honorable Sidney Harris presiding.

APPEARANCES:

    On behalf of the International Trade Commission:

        Staff:

        STEVEN R. PEDERSEN, Esquire
        T. SPENCE CHUBB, Esquire

Heritage Reporting Corporation
(202) 628-4888

2

APPEARANCES:    (Cont'd)

On behalf of:

Telcordia Technologies Inc.:

SMITH R. BRITTINGHAM IV, Esquire
STEVEN M. ANZALONE, Esquire
JOHN WILLIAMSON, Esquire
Finnegan, Henderson, Farabow, Garrett
& Dunner, LLP
901 New York Avenue, N.W.
Washington, D.C.  20001
(202) 408-4000

Cisco Systems, Inc.:

DAVID A. HICKERSON, Esquire
JOANNE M. GUERRERA, Esquire
Weil, Gotshal & Manges LLP
1300 Eye Street, N.W.
Washington, D.C.  20005
(202) 682-7000

Cisco Systems, Inc.:

EDWARD R. REINES, Esquire
SONAL N. METHA, Esquire
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, California  94065
(650) 802-3000

Alcatel USA, Inc.:

STUART J. SINDER, Esquire
Kenyon & Kenyon LLP
One Broadway
New York, New York  10004
(212) 425-7200

Alcatel USA, Inc.:

T. THOMAS C. GELLENTHIEN, Esquire
JOHN R. BERRES, Esquire
919 18th Street, N.W., Suite 420
Washington, D.C.  20006
(202) 457-1924

3

APPEARANCES:  (Cont'd)

On behalf of:

Alcatel USA, Inc.:

MARCIA H. SUNDEEN, Esquire
Kenyon & Kenyon LLP
1500 K Street, N.W., Suite 700
Washington, D.C.  20005
(202) 220-4200

Lucent Technologies:

STEVEN C. CHERNY, Esquire
Latham & Watkins LLP
New York Office
885 Third Avenue
New York, New York  10022
(212) 906-1200

Lucent Technologies:

MAXIMILLIAN A. GRANT, Esquire
Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004
(202) 637-2200

Lucent Technologies:

ELAINE A. DRAGER, Esquire
600 Mountain Avenue
Murray Hill, New Jersey  07974
(908) 582-2508

PMC Sierra:

JAMES C. OTTESON, Esquire
NATHAN L. WALKER, Esquire
Wilson, Sonsini, Goodrich & Rosati
650 Page Mill Road
Palo Alto, California  94030
(650) 493-9300

4

```
 1              P R O C E E D I N G S

 2                                      (2:00 p.m.)

 3         JUDGE HARRIS:  This is the preliminary

 4  conference in the matter of Certain Equipment for

 5  Telecommunications or Data Communications Networks

 6  Including Routers, Switches and Hubs, and Components

 7  Thereof, United States International Trade Commission

 8  Investigation No. 337-TA-574.

 9              See some familiar faces here.  The

10  preliminary conference is used to bring up any matters

11  which any counsel feels might either block the

12  orderly, smooth processing of the case or something

13  that might contribute to making it go faster and

14  smoother and also to set the schedule for the rest of

15  the case.  Why don't we have the notices of

16  appearance.

17              For the Complainant?

18              MR. BRITTINGHAM:  Your Honor, this is Smith

19  Brittingham with Finnegan, Henderson, Farabow, Garrett

20  & Dunner for Complainant, Telcordia Technologies.  I'm

21  here with Steve Anzalone and John Williamson, also

22  from my firm.

23              JUDGE HARRIS:  All right.  For Respondents?

24              MS. SUNDEEN:  Your Honor, I'm Marcia Sundeen

25  with Kenyon and Kenyon.  I'm here on behalf of Alcatel
```

1  SA and Alcatel USA.

2          JUDGE HARRIS:  All right.

3          MR. SINDER:  Your Honor, Stuart Sinder, also

4  with Kenyon and Kenyon on behalf of Alcatel USA and

5  Alcatel SA, and with us today from Alcatel are Mr.

6  John Berres and Mr. T. Tom Gellenthien.

7          JUDGE HARRIS:  All right.

8          MR. CHERNY:  Your Honor, Steve Cherny from

9  Latham & Watkins representing Lucent Technologies.

10  With me here are Max Grant, who is another lawyer from

11  Latham & Watkins, as well as Elaine Drager, who is a

12  lawyer for Lucent Technologies.

13          MR. REINES:  Good afternoon, Your Honor.  My

14  name is Edward Reines from the law firm of Weil,

15  Gotshal on behalf of Cisco Systems, and with me for

16  Cisco is Sonal Metha, and David Hickerson and Joanne

17  Guerrera.

18          JUDGE HARRIS:  All right.  For the staff?

19          MR. BRITTINGHAM:  One more, Your Honor.

20          JUDGE HARRIS:  All right.  I didn't mean to

21  leave you out.

22          MR. OTTESON:  No problem.  James Otteson,

23  Wilson, Sonsini, Goodrich and Rosati for Respondent --

24          JUDGE HARRIS:  Mr. Otteson.  I can't see too

25  well going back that far.

 1          MR. OTTESON:  -- PMC Sierra, and I'm joined

 2 by my colleague, Nathan Walker.

 3          JUDGE HARRIS:  For the staff?

 4          MR. PEDERSEN:  Good afternoon, Your Honor.

 5 Steve Pedersen on behalf of the staff.  With me today

 6 is Mr. Spence Chubb.

 7          JUDGE HARRIS:  Well, one thing I noticed in

 8 reading through the discovery statements is that

 9 there's a trial in this matter scheduled for I believe

10 it was April 14 in the District of Delaware and since

11 the parties have all proposed a trial date of about

12 March 17 I think it was I'm going to propose a trial

13 date of March 28 because of the availability of

14 courtrooms, but why are we really here?

15          Mr. Brittingham or Mr. Anzalone?  I assume

16 you've got most of your discovery or you're going to

17 finish it up between now and then, and you've got a

18 trial scheduled for just weeks after our trial would

19 be scheduled.

20          MR. BRITTINGHAM:  Your Honor, first let me

21 just clear up the date of the trial in the District

22 Court right now is April 16.

23          JUDGE HARRIS:  April 16.  Okay.

24          MR. BRITTINGHAM:  We had originally proposed

25 with the other parties March 7, so there would have

1  been some fairly distinct separation there.  One other

2  aspect, and I'll let Mr. Anzalone explain a little

3  more if necessary, we do have one party, Alcatel, who

4  has obtained a stay of the proceedings against them in

5  the District Court and as a result --

6           JUDGE HARRIS:  Could you move your

7  microphone a little closer?  Is it on?

8           MR. BRITTINGHAM:  Alcatel, the party Ms.

9  Sundeen is representing, is a party in the District

10  Court case, but has obtained a stay of the proceedings

11  against them in the District Court once this case was

12  filed.

13           JUDGE HARRIS:  That was because of lack of

14  personal jurisdiction?

15           MR. BRITTINGHAM:  No.  There are two Alcatel

16  entities that were originally named in the District

17  Court proceeding.  One of them was Alcatel SA, the

18  French company, and the other was Alcatel USA, an

19  American corporation subsidiary, and Alcatel USA is

20  still a party to the District Court.  It was only the

21  French parent that was dismissed for lack of personal

22  jurisdiction.

23           That happened some time ago.  More recently

24  however when this case was instituted Alcatel USA

25  moved to stay pursuant to 28 U.S.C. 1659 as is their

8

1  right for a stay of the District Court proceedings, so

2  the trial that we're talking about that would go

3  forward on April 16 would only be against Cisco and

4  Lucent at this point.  So one of the parties at a

5  minimum is not involved in that trial.

6          JUDGE HARRIS:  Now, what was the --

7          MR. BRITTINGHAM:  Also, PMC Sierra is not

8  involved in the District Court case at all at this

9  point other than having produced some documents as a

10  third-party recipient of a subpoena.

11          JUDGE HARRIS:  All right.  Mr. Anzalone, did

12  you want to comment, also?

13          MR. ANZALONE:  Yes.  Just a little bit

14  further, Your Honor.  Good afternoon.  Without going

15  into work product or privilege issues which I'm sure

16  you wouldn't want me to do in terms of aspects of this

17  case there were a range of settlement discussions,

18  negotiations and mediations in this case with the

19  Defendants that extended through the end of February

20  and those were not successful.

21          With respect to why we're here obviously for

22  an exclusion order.  The Court may be familiar that in

23  District Court cases there was cert granted by the

24  Supreme Court in Merck v. ebay.

25          In November of last year the Supreme Court

Heritage Reporting Corporation
(202) 628-4888

9

1 came down with a decision I think the day after this

2 suit was filed indicating that the Federal Circuit

3 decisions indicating injunctions in District Court

4 would be granted as a matter of due course was no

5 longer valid, so that explains some of the reasoning

6 without, again, why any Complainant would file in the

7 ITC without getting into work product issues or

8 attorney/client privilege.

9           JUDGE HARRIS:  So is that why we're getting

10 so many cases here?

11          MR. ANZALONE:  That and the typical reasons,

12 Your Honor, people file suit in the ITC.  That's

13 correct.

14          JUDGE HARRIS:  All right.  What's on your

15 agenda to bring up, Mr. Brittingham?

16          MR. BRITTINGHAM:  Your Honor, we're

17 essentially really just the procedural schedule.

18 There are a few pending motions that I believe the

19 motion that Alcatel SA filed, there's been briefing on

20 it.  As far as we're concerned I figure it's ripe for

21 a decision.

22          JUDGE HARRIS:  Now, that's the French

23 company?

24          MR. BRITTINGHAM:  That's the French company.

25 We also have a pending motion to compel discovery from

Heritage Reporting Corporation
(202) 628-4888

1 that entity as well.  I don't believe the response

2 date is up yet or at least I know we haven't received

3 a response, so I'm not sure that's ripe, but again, I

4 think those issues essentially go hand in hand anyway.

5  We believe they ought to be in the case, we believe

6 they're a proper party and we believe they ought to

7 respond to discovery, but that's in our papers.

8          Discovery has begun.  As you're probably

9 aware there was a lot of discovery in the District

10 Court proceeding.  There are some additional --

11          JUDGE HARRIS:  That proceeding is live

12 against Cisco and Lucent?

13          MR. BRITTINGHAM:  That is correct, although

14 discovery was essentially completed or at least the

15 period for discovery was completed.  We're in the

16 midst of just finishing up expert depositions right

17 now in the District Court, so fact discovery, I

18 believe the Judge has closed that, but we got a lot of

19 it from all the parties who were involved at that time

20 even before the stay.

21          The parties are engaging right now in

22 discovery efforts and there have been efforts to

23 either object or complain about the other side's

24 objections.  Those we have not yet resolved, but I'm

25 not sure they're ripe for discussion yet.

1            JUDGE HARRIS:  Now, is there an agreement

2  that the discovery in the District Court case would

3  all be used here as well?

4            MR. BRITTINGHAM:  I'm not sure I'd call it

5  an agreement because nobody has put paper to pen and

6  actually written something, but it's my understanding

7  that all the parties are basically of the view that

8  the discovery that has been exchanged in the District

9  Court can be used in this proceeding.  Certainly that

10 appears to be the way each party is treating that

11 prior production, and I think obviously that makes

12 sense and is most efficient.

13           There are a few minor issues of

14 confidentiality concerns that were outstanding in the

15 District Court case that have not yet been resolved.

16 I bring it up only because maybe we'll resolve them.

17 Telcordia has documents that various companies submit

18 to them under some testing programs that are submitted

19 in confidence and those have been the subject of some

20 discovery requests.

21           We have produced documents that Cisco for

22 example provided us in discovery to Cisco.  We did not

23 produce those documents to Alcatel or Lucent.  We've

24 produced the documents that Lucent gave to Telcordia

25 back to Lucent, but we haven't given those to Cisco or

1  Alcatel.

2          Now, that was feasible in the District Court

3  case because those were technically three separate

4  cases.  This is one investigation one would ordinarily

5  produce all documents to all parties.  What we would

6  like to know is whether Alcatel wants the documents

7  that relate only to the Cisco products and whether

8  Cisco would waive any confidentiality provision that

9  would have applied to their original submission of

10 those documents to us.

11         So that's a minor issue.  I'm not even sure

12 whether the Respondents care.

13         JUDGE HARRIS:  Well, have you taken that up

14 with opposing counsel?

15         MR. BRITTINGHAM:  I did raise that in an

16 email some time ago.  I haven't gotten any response.

17 We haven't gotten quite that far.  As far as I know

18 right now I'm not sure that they care enough to work

19 it out.  I mean, that it's important to them to get

20 those other documents that they haven't had thus far.

21 So other than that I don't think there's any

22 impediment --

23         JUDGE HARRIS:  Well, does any Respondents'

24 counsel have any interest in the issue that Mr.

25 Brittingham is just discussing?

13

1          MR. REINES:  Thank you, Your Honor.  The

2   Respondents have a good working relationship among

3   each other and I'm sure we can work that out.  I

4   really doubt that's going to be of any significance.

5   We can exchange each other's information as

6   appropriate, and I just don't see that to be an issue

7   that needs to consume the Court's time.

8          MR. BRITTINGHAM:  Your Honor, our sense was

9   that this was not a problem for them because we had at

10  least some belief that maybe they were exchanging

11  their own documents among themselves anyway, but I

12  raised it only because that was one thing that

13  Telcordia was maintaining as a reason not to produce

14  certain documents to certain parties.

15          The flip side of the coin is whether

16  documents in this proceeding could be used in the

17  District Court proceeding.  As to Alcatel I think

18  that's kind of an automatic because once the stay is

19  lifted the record in this case is available to the

20  District Court.  Cisco and Lucent I believe have

21  objected to any use of documents produced in the ITC

22  in the District Court.

23          I'm not sure we need to resolve that right

24  now.  It would seem to be easiest to just ensure that

25  neither protective order prohibits use in the other

14

1 proceeding assuming the Judge in the other proceeding

2 believes that information is appropriate and

3 admissible.

4         JUDGE HARRIS:  Well, it sounds to me like

5 that would be the District Court Judge's problem.

6         MR. BRITTINGHAM:  Well, our position would

7 be yes.  The District Court Judge is obviously the

8 ruler of what comes in and what doesn't come in in the

9 District Court just as you are in charge of what comes

10 in here, what doesn't, but if there's no cross-use

11 agreement then it's not the Judge that's making that

12 determination it's merely the presence of an ITC

13 protective order that prohibits use of documents in

14 another proceeding.

15         JUDGE HARRIS:  Well, if you want a cross-use

16 in a broad sense in which you're talking about it I

17 suggest you first try to negotiate it with opposing

18 counsel.  Now, while everybody is here --

19         MR. BRITTINGHAM:  I believe we did propose

20 that and their position as I understand it is that

21 documents produced in the District Court can be used

22 in the ITC, but not the other way around.

23         Now, our position just to make it clear is

24 that documents produced in the ITC may or may not be

25 admissible in the District Court depending on whether

1 the District Court Judge believes they ought to be

2 admitted, believes they are produced late or whatever,

3 but that should not be determined simply by the ITC

4 protective order.

5         Right now we can't even present those

6 documents to the District Court and say please let us

7 use these because we're prohibited by the terms of the

8 ITC protective order from doing that.

9         JUDGE HARRIS:  Well, are you?  I mean, if

10 you tell the District Court Judge that there are $X$

11 number of documents here on the general subject matter

12 of this produced by the Defendants I don't see how you

13 would be breaching the protective order in doing that.

14         MR. BRITTINGHAM:  No.  You're right.  If it

15 were only just informing the Judge of the existence of

16 documents I think that would be --

17         JUDGE HARRIS:  Then if he considers those

18 relevant to the District Court proceedings he would

19 make that determination or work out some way if he

20 thought it was important enough to see that they came

21 into evidence in that proceeding.  I mean, sometimes I

22 can try to knock heads together, but I don't see that

23 I should do it for another proceeding.

24         MR. BRITTINGHAM:  No, Your Honor, and we're

25 probably speaking hypothetically here anyway because

16

1  at this point we don't have any documents that we

2  think we'd want to use in one proceeding that we can't

3  and we can cross that bridge when we come to it.

4          JUDGE HARRIS:  All right.  Ms. Sundeen, is

5  there any matters that you wanted to bring up that --

6          MR. SINDER:  Your Honor, Stuart Sinder on

7  behalf of Alcatel.  On behalf of Alcatel I don't

8  believe that there are any unique matters that we need

9  to address.  I think there are --

10          JUDGE HARRIS:  Now, let's see.  I don't have

11  the distinction straight.  You're representing the

12  French company only?

13          MR. SINDER:  The French company and the U.S.

14  company.  Both.

15          JUDGE HARRIS:  And the U.S. company.  So

16  when you say on behalf of Alcatel are you --

17          MR. SINDER:  I'm referring to both Alcatel

18  entities that are Respondents in this proceeding.

19          JUDGE HARRIS:  Okay.

20          MR. SINDER:  We have in the answer to the

21  complaint on behalf of the French company and also in

22  our motion for a summary determination that the

23  investigation should be terminated with respect to the

24  French company indicated that by doing so we're

25  reserving all of our rights to object to personal

17

1  jurisdiction on behalf of the French company.

2          That would be true for our appearance here

3  today that --

4          JUDGE HARRIS:  Now, the French company

5  doesn't make any products or sell any products?

6          MR. SINDER:  That's correct.

7          JUDGE HARRIS:  What does it do?

8          MR. SINDER:  The French company is really,

9  it's just a holding company which has directly or

10  indirectly literally hundreds of operating

11  subsidiaries around the world.  It's not an operating

12  company at all.  Among those subsidiaries are Alcatel

13  USA, which is also a Respondent here, and that's the

14  company that is in effect the sales arm in the United

15  States, so they're the company that is selling all of

16  the accused products.

17          There are other Alcatel entities which well-

18  known to the Complainant manufacture the accused

19  products, but they didn't even bother to join them as

20  respondents, so it's clear that they don't really need

21  all of the companies that have a direct connection

22  with or involvement in manufacture, or importation, or

23  sale of the accused products.

24          They have the one company that they believe

25  they need in order to get effective relief if they

18

1  ultimately are found to be entitled to it and that's

2  Alcatel USA, which is also a Respondent.  Now, there

3  are some scheduling issues which result from the co-

4  pendency of the Court case, but since Alcatel took

5  their -- it's only Alcatel USA which is a party to the

6  District Court case.

7        Alcatel SA was dismissed in a decision by

8  Judge Sleet for lack of personal jurisdiction, but

9  Alcatel USA took a stay under their right to do so and

10  therefore the scheduling issues relating to that

11  proceeding only really relate to Cisco and Lucent, and

12  I'd let my colleagues address those issues.

13        JUDGE HARRIS:  Yes.  Now, your summary

14  determination motion, does that go to both Alcatel?

15        MR. SINDER:  No.  It only goes to the French

16  parent because that company has no involvement in any

17  way in the --

18        JUDGE HARRIS:  What is it based on, your

19  summary determination motion?

20        MR. SINDER:  It's based on the fact that

21  there is no disputed issue of fact with respect to the

22  lack of any involvement by the French company, Alcatel

23  SA, in the manufacture or sale for importation,

24  importation or sale after importation of the products.

25  It doesn't manufacture anything, it doesn't sell

19

1 anything, it just sort of owns stock in various

2 subsidiaries.

3          This issue was litigated in front of the

4 District Court Judge admittedly on we believe very

5 related, but somewhat different issue of personal

6 jurisdiction, but the underlying factual premises

7 overlap considerably.

8          After a full briefing and argument on that

9 the District Court rendered a decision which was

10 attached to our summary determination motion finding

11 that the French company didn't make anything, and

12 didn't sell anything, had no involvement with the

13 accused products, had lack of any operating activity

14 in the U.S. and based on that founded that the

15 Delaware Court lacked personal jurisdiction.

16          The underlying factual determinations that

17 were made there are the same factual determinations

18 which would make a proceeding against the French

19 company inappropriate here and should not really be

20 named as a Respondent because it has no involvement

21 with the accused products in any manner.

22          JUDGE HARRIS:  Now, Mr. Brittingham, you

23 filed a response to that summary determination motion.

24 What is the --

25          MR. BRITTINGHAM:  Yes.

1          JUDGE HARRIS:  -- basis of your response?

2          MR. BRITTINGHAM:  We have filed a response.

3    The basis is that Alcatel SA is the parent and over

4    arching sort of ruler of the Alcatel network of

5    companies and in our view is the very appropriate

6    respondent for a number of reasons not the least of

7    which is that they appear to be capable of directing

8    the activities of the subsidiaries that actually carry

9    out many of the functions.

10          Now, we disagree that there are no disputed

11   issues of fact.  I mean, frankly we would love to be

12   able to present you with more facts that we believe

13   would create a dispute, but Alcatel SA has flatly

14   refused to answer any discovery so far, and so as a

15   result we've relied solely on publicly available

16   information on Alcatel's website, some of their

17   securities filings, things of that nature that in our

18   view present a different picture than what has just

19   been presented to you and that is that the Alcatel

20   board, although it's a five employee company there's

21   an Alcatel board that is the overall management entity

22   for the Alcatel group, which is group of as has been

23   said over 100 companies, several of which are

24   probably, certainly one or two Alcatel USA and there's

25   also a subsidiary called Alcatel Canada that we know

1  of that are involved in these particular products.

2            There may be others.  Alcatel SA does also

3  finance research and development efforts for the

4  entire Alcatel group.  They handle intellectual

5  property issues for the entire group.  There's a large

6  headquarters building that has a lot of people in it.

7  I don't know which of the Alcatel companies they work

8  for.

9            JUDGE HARRIS:  Okay.

10            MR. BRITTINGHAM:  We understand there's an

11  Alcatel North America, which is not an actual

12  incorporated entity, it's just an internal Alcatel

13  business organization of some sort.  So it's a big,

14  huge company with 58,000 employees and we don't know

15  exactly how they do their business.

16            JUDGE HARRIS:  All right.

17            MR. BRITTINGHAM:  That's why we have the

18  parent as an actual respondent.

19            JUDGE HARRIS:  Mr. Pedersen, has the staff

20  filed a response on this?

21            MR. PEDERSEN:  Yes, Your Honor.  The staff

22  did file a response and we took the position of not

23  supporting the motion.

24            JUDGE HARRIS:  On the grounds that not

25  enough facts are available?

                Heritage Reporting Corporation
                      (202) 628-4888

22

1          MR. PEDERSEN:  On multiple grounds.  First
2 is that it appears to be that the Commission precedent
3 of other investigations, there's substantial precedent
4 that states that holding companies are indeed proper
5 respondents.  The staff noted in their responsive
6 papers that there could be certain discovery issues
7 that may present itself as the investigation proceeds
8 and as Your Honor is well aware that it's always
9 easier to take discovery before an entity if they are
10 indeed a named respondent in an investigation.

11          There are means to do so if they are not,
12 but they are generally more problematic.  The staff
13 also noted that certain senior executive board members
14 are of both entities do overlap so that at this time
15 it's hard to tell what type of control Alcatel SA has
16 over Alcatel USA.

17          We also noted that it's very early in
18 investigation and if discovery should prove that
19 Alcatel SA does not import or have any control over
20 Alcatel USA that they can refile their motion at a
21 later time.

22          JUDGE HARRIS:  All right.  I'm sorry.  I
23 don't remember your name.

24          MR. SINDER:  Stuart Sinder.

25          MR. CHERNY:  Are you pointing to him or me?

23

1          JUDGE HARRIS:  You.

2          MR. CHERNY:  Steve Cherny from Latham &

3 Watkins on behalf of Lucent Technologies.

4          JUDGE HARRIS:  Yes.  What would you like to

5 take up?

6          MR. CHERNY:  My schedule is very easy right

7 now.  I defer to Mr. Reines from Cisco.  The issue

8 that I believe he's going to be addressing is

9 scheduling issues relating to the District Court

10 litigation and this proceeding and those issues are in

11 common, so we thought it made sense to have one person

12 address in the first instance.

13          JUDGE HARRIS:  Okay.

14          MR. REINES:  Thank you, Your Honor.  Ed

15 Reines.  If I'm not speaking loudly enough please let

16 me know.

17          JUDGE HARRIS:  That was good.

18          MR. REINES:  Okay.  Very good.

19          JUDGE HARRIS:  When you said the word loudly

20 that came across.

21          MR. REINES:  All right.  Well, yes, feel

22 free to let me know.

23          JUDGE HARRIS:  All right.

24          MR. REINES:  From your initial comments

25 there's two issues that you raised and I'd like to

24

1  address them each.  One is why are we here, and the

2  second one is reactions to the schedule which we

3  received this afternoon from Your Honor.  On the why

4  we're here question that's a question that the

5  District Court asked and a question we've asked.

6           There's two patents in this case.  One is

7  the 633 and one is the 763.  With respect to at least

8  the 763 there's not really any logic to this

9  proceeding that we can see.  It doesn't involve PMC

10 Sierra, it doesn't involve Alcatel.  So the argument

11 which was the primary argument that we heard that we

12 needed to have this action to group and capture these

13 other parties, that doesn't apply to the 763 portion

14 of this investigation.

15          The second point is that there's been no

16 identification of relief that can't be obtained in the

17 District Court.  What's important on the 763 is that

18 patent actually expires because it's so old -- this is

19 a patent that's from 80s technology -- it expires a

20 year from February.  So it would be almost impossible

21 for the Commission to provide any meaningful relief on

22 it.

23          JUDGE HARRIS:  It expires in February 2007?

24          MR. REINES:  February 2008.

25          JUDGE HARRIS:  2008.  All right.

```
 1            MR. REINES:  Okay?  A year from this coming
 2  February.  So it really doesn't seem to make any
 3  logic.  From where we sit this filing followed on the
 4  heels of the claim construction hearing in the
 5  District Court which went very unfavorably to
 6  Telcordia by all accounts and that's why they dropped
 7  half of this investigation before even today.
 8            So I think it was the reaction to the
 9  District Court that really led to the filing here, but
10  it really doesn't make sense.  Now, that's important
11  on the second issue that you raised which is our
12  primary work here today, the schedule.  We agreed --
13  by we, the Respondents as a group -- because our
14  philosophy is a committed philosophy of a cooperative
15  relationship with the other side and amongst each
16  other to streamline this event.
17            JUDGE HARRIS:  Streamline what?
18            MR. REINES:  Streamline this ITC proceeding.
19  So we were given the parameter of a 15 month target
20  date, and so we worked within that framework to be
21  cooperative and to come to dates that were the best
22  given that limitation.  We noted in our discovery
23  statement that we proposed actually an 18 month target
24  date because of the unusual nature of this, okay?
25            Now, why is this unusual?  First of all this
```

1  is unusual because the trial injunction that would

2  issue in it is before any ITC exclusion order.  So

3  right away it's a different circumstance.

4        The other thing is that these patents have

5  been around for so long and we did two years of

6  District Court litigation, but the bottom line is that

7  -- let me first state the benefit of the 18 month

8  target date would be that rather than expecting

9  counsel for everybody to be in one Court, your Court,

10  trying a case and then within a week going to Delaware

11  and trying the same case, that doesn't make sense.

12        I don't think you're going to find very many

13  people that say it does make sense.  I understand the

14  boundary conditions, the limitations you have in terms

15  of the courtroom, and the target dates and all that.

16  We understand those fully, but this is a complicated

17  case.

18        You've got four different Respondents.

19  Cisco alone has 45 different products that are the

20  routers and switches and then 17 different modules.

21  Just Cisco.  That doesn't include the chips of PMC,

22  Alcatel's own products, Lucent's own products and we

23  have the added complexity of the cross-talk between

24  the advanced stage of the District Court litigation

25  which is resulting in the evolving complaint that

27

1 you've had to deal with of terminating portions of

2 this proceeding as the District Court's proceeded.

3          We have summary judgments, we're in the

4 summary judgment process in the District Court.  I

5 suspect that will be narrowing this investigation

6 materially.

7          JUDGE HARRIS:  Summary judgment on what?

8          MR. REINES:  We've requested of the District

9 Court leave to file summary judgments on both the 633

10 and 763 patents on multiple grounds.  Now, that

11 doesn't mean the District Court Judge is going to

12 grant everything obviously, but --

13          JUDGE HARRIS:  Multiple what?

14          MR. REINES:  Multiple grounds.  We have

15 invalidity, noninfringement, there's an inventorship

16 issue, there's other equitable things we've presented,

17 so it's a full plate.

18          We don't know what the District Court is

19 going to do and we're certainly not prognosticating

20 about that, but I think we can all understand that

21 between motions in front of the District Court, the

22 continuing evidentiary record there, the witness

23 testimony at trial in the District Court, that's going

24 to be flooding into this Court.

25          It seems to us that it would be a big

28

1 mistake for this Court to have a trial hearing in the

2 very end of March which is now planned and then to

3 have a decision period while we're getting verdicts,

4 we're getting motions, we're getting witness

5 testimony, positions, drop positions.  It will be a

6 mess for Your Honor as much as it will be a mess for

7 all of us.

8          JUDGE HARRIS:  Now, how firm is that

9 April 16 trial date?

10         MR. REINES:  Judge Sleet said that is built

11 in stone and you're not going to want to be the one

12 that comes in asking for any change of that at all.

13 So no one, certainly Respondents, have no expectation

14 at this point of seeking any change to that date at

15 all.  If there's one thing Judge Sleet made clear it's

16 that that trial date will hold.

17         So the 18 month target date will allow this

18 Court to have the benefit of the verdict --

19         JUDGE HARRIS:  That's a jury case --

20         MR. REINES:  It's a jury case.  You're

21 correct.  Then whatever related narrowing of issues.

22 We've already had a lot, but more is anticipated.  It

23 will just streamline this hearing in front of this

24 Court in this unquestionably complex matter.  So that

25 was our reaction to this specific proposal which

29

1 otherwise would be fine to us other than the unusual

2 circumstances here.

3          JUDGE HARRIS:  All right.  Mr. Otteson, did

4 you want to?

5          MR. OTTESON:  Well, Your Honor, PMC Sierra

6 whom I represent is not a party in the District Court

7 case, but I do note just looking at the schedule here

8 that having a March 28 through April 6 trial in this

9 Court means that the post-trial briefing for this

10 investigation is going to run right into the beginning

11 of that trial.

12          It seems to me to be a completely unworkable

13 situation.

14          JUDGE HARRIS:  One other thing.  A couple of

15 other things.  In the discovery statement -- and any

16 of the Respondents can address this -- you mentioned

17 something about no domestic industry and no

18 importation.  I don't know which of you wants to

19 handle that.

20          MR. REINES:  Your Honor, I can just address

21 briefly the domestic industry.  We know a fair amount

22 of Telcordia, but we obviously do not have that

23 specific domestic industry issue in the District

24 Court, so we don't have advanced discovery that we

25 might.

Heritage Reporting Corporation
(202) 628-4888

30

1           It appears to us that there's a very strong
2  case to be made, again, maybe that's more for one
3  patent than the other, but that their licensing
4  activity is so inconsistent and so nominal that it's
5  not a situation like Tessera or one of these other
6  companies that has a large licensing program that's
7  been successful over time.
8           For the 763 patent as an example during its
9  entire life, which is about to expire, but about 16
10 year life they have one license for under $200,000 --
11          MR. BRITTINGHAM:  Your Honor, I'm sorry.
12 I'm not sure that this is --
13          MR. REINES:  I'm sorry.  I apologize.
14          MR. BRITTINGHAM:  -- public information and
15 I understand there are client representatives in here
16 as well, so I would ask either that Mr. Reines stay on
17 the public record or that we go on the confidential.
18          MR. REINES:  I apologize.  I was attempting
19 to respond.  So there's a concern about the extent of
20 licensing activity.  That's really the main point.  On
21 the importation it's not clear what the allegations
22 are as to what's being imported because this is a
23 complex set of products.
24          You get many complex set of products, but
25 there's integrated circuits, there's modules, there's

Heritage Reporting Corporation
(202) 628-4888

31

1  cards, there's entire switches and routers, different

2  things are moving in different directions.  It's not

3  clear what is being alleged in that regard.

4        MR. OTTESON:  Your Honor, if I just might

5  add on the 763 patent the domestic industry for that

6  we feel that may be an issue that may be ripe for an

7  early summary determination motion.  We would want to

8  take some discovery, but I think that it is a serious

9  issue with respect to domestic industry on the 763.

10       JUDGE HARRIS:  All right.  There's also

11 mentioned -- well, let me ask Mr. Brittingham, what is

12 your domestic industry going to be based on?  Is it a

13 licensing --

14       MR. BRITTINGHAM:  Yes, Your Honor.  It's a

15 licensing domestic industry.  We have a list of

16 licensees that we have provided in the complaint, we

17 have licensing revenue, we have personnel whose job is

18 solely to license patents and frankly we think it is

19 an issue that is ripe for summary judgment on our

20 behalf, not on the Respondents.

21       JUDGE HARRIS:  Are you aware of the order I

22 issued on licensing as a basis for domestic industry?

23       MR. BRITTINGHAM:  In the Tessera case or was

24 there a more recent one?

25       JUDGE HARRIS:  No.  A very recent one.

Heritage Reporting Corporation
(202) 628-4888

32

```
 1          MR. BRITTINGHAM:  In Vioxx?

 2          JUDGE HARRIS:  I'm sorry?

 3          MR. BRITTINGHAM:  Was there an order in the

 4  Vioxx case?

 5          JUDGE HARRIS:  Not in the Vioxx.  Which one?

 6          MR. PEDERSEN:  Your Honor, the 553 case.

 7          JUDGE HARRIS:  Now, which product is that?

 8          MR. PEDERSEN:  Toshiba and Hynik I believe.

 9          JUDGE HARRIS:  Yes, yes.

10          MR. BRITTINGHAM:  Yes.

11          JUDGE HARRIS:  And the NAND case.

12          MR. PEDERSEN:  Right.

13          MR. BRITTINGHAM:  Yes.  I'm aware of that

14  and it's a completely different situation.

15          JUDGE HARRIS:  I mean, are Respondents'

16  counsel aware of it?

17          MR. CHERNY:  I have not seen that decision.

18   From what Mr. Brittingham says it sounds like it is--

19          JUDGE HARRIS:  Mr. Otteson, have you --

20          MR. OTTESON:  No.  I haven't read that yet,

21  Your Honor, but we'll get right on that.  Believe me.

22          MR. BRITTINGHAM:  Your Honor, I think the

23  reason I know about it is because I think our firm was

24  the alleged domestic industry in that case, but no.

25  This is a different situation.
```

33

1          I mean, frankly I think that the supposed
2   licensing industry in that case is very different than
3   what we have here where Telcordia is quite literally
4   an entity that has patents that have been developed by
5   its engineers and then has gone out and attempted to
6   license those patents to make money just as a
7   licensing industry want to do.  We don't think there's
8   really actually much controversy in that issue.
9          Also, on the importation issue I would say
10  that we don't think there's much controversy there
11  either.  We do not know precisely what has been
12  imported and when and where because that issue was not
13  really fully developed in the District Court, but I
14  think it's fair to say that there are a large number
15  of imported components in the final product.
16          The final products as you may be aware are
17  fairly large chassis with a number of boards inserted
18  into them.  Each board has anywhere from I don't know
19  20 to 100 integrated circuits on it.  I think final
20  assembly probably at least our understanding is it is
21  likely to occur in the United States, but a great deal
22  of the internal components are made in various other
23  locations.
24          So that information will be developed, but
25  we think it's fair to say that there are a lot of

Heritage Reporting Corporation
(202) 628-4888

34

1 imports going on.  I don't know whether you want me to
2 respond to --

3          JUDGE HARRIS:  Well, on licensing I just
4 wanted to say as I tried to make clear in that order
5 in a case that goes back a good ways, the Gremlins
6 case, I found licensing as a basis for domestic
7 industry before the statute was amended to provide it.
8  The Commission reversed me saying that it wasn't
9 provided for in the statute.

10          I was told by some of the people on the Hill
11 later that one of the reasons that they changed the
12 statute to include licensing was because of the
13 Gremlins decision.  When I issued this order in the
14 NAND case I went back to try to find that legislative
15 history, and I thought that somewhere in either some
16 speech on the floor or a statement there was a
17 statement to that affect in the legislative history,
18 but I was never able to find it.

19          Nevertheless I think that was what happened,
20 and I think that the Gremlins situation really is the
21 kind of situation that was contemplated for licensing
22 as a domestic industry, in other words where the
23 business was in selling licenses to the intellectual
24 property.  Anyway this is just for the benefit.  I
25 suggest that everybody look at that order.

35

 1                I've forgotten your name again.

 2                MR. REINES:  My name is Ed Reines on behalf

 3  of --

 4                JUDGE HARRIS:  Mr. Reines, so do you intend

 5  to file a motion to request an 18 month period rather

 6  than a 15 month?

 7                MR. REINES:  Yes, Your Honor.  We thought

 8  that would make good sense.  After discussing it here

 9  today I think that's what we'll do.

10                JUDGE HARRIS:  All right.  What is your

11  position, Mr. Brittingham, on the 18 month target

12  date?

13                MR. BRITTINGHAM:  Well, Your Honor, we're

14  obviously opposed to that.  The parade of horribles

15  that Mr. Reines described with two cases going

16  simultaneously and maybe trials close to each other,

17  it could have all been avoided if Mr. Reines' clients,

18  Cisco and Lucent, had requested the stay that they had

19  the absolute statutory right to.

20                Alcatel did and they won't be experiencing

21  any of the difficulties that Cisco and Lucent now have

22  basically doomed themselves to suffer.  The statutory

23  scheme is clear.  It's the District Court that gets

24  stayed, not the ITC.  The ITC goes forward and ought

25  to go forward and complete its investigation as the

36

1  statute states at the earliest practicable time.

2          It's our position that this 15 month
3  schedule that you've set up is given the burdens that
4  the ITC has, and the courtrooms and what have you the
5  practical time that this case can be completed.  Of
6  course there may be ways to complete the investigation
7  even earlier.  Not every case goes to trial.

8          There are possibilities that the District
9  Court case could go later.  Not every District Court
10 case goes to trial even when it is a firm date.  There
11 are issues in the District Court that will not be
12 resolved in the trial that's currently scheduled in
13 April.  Things such as inequitable conduct are going
14 to be heard later.

15          So that case is not just going to end on
16 May 25 and then we all know the result.  The stay was
17 available, they chose not to and we feel that their
18 decision -- why they did that we don't have any
19 insight, but to then turn around and say because we
20 didn't seek a stay it's going to be really complicated
21 for us, Your Honor, and therefore we are entitled to a
22 lengthy delay of a case that we have -- I mean,
23 there's no question that 337 relief is different than
24 District Court relief.

25          Exclusion orders cannot be issued by

1  District Courts.  I don't think that's really in

2  dispute.  There's no question that complainants often

3  file simultaneously District Court complaints and 337

4  complaints and it's hardly unusual for a 337 complaint

5  to be filed months, sometimes years, after a District

6  Court case has already been going on.

7          There's assorted reasons for that.

8  Sometimes things just aren't going fast enough,

9  sometimes new patents come out or new products come

10  out.  I mean, there could be any number of reasons and

11  Mr. Anzalone has already explained some of the ones

12  that led us to do it this way.

13          We feel that frankly the complicated nature

14  of this case is one in large part of Lucent and

15  Cisco's own doing.  That they could have made it

16  simpler on everybody by seeking the stay.

17          JUDGE HARRIS:  All right.

18          MR. ANZALONE:  Your Honor, let me just --

19          JUDGE HARRIS:  Mr. Anzalone?  Yes?

20          MR. ANZALONE:  Your Honor, let me just

21  respond since there was some discussion of motives and

22  why things happen in the District Court.  In this

23  proceeding I hope I don't sink to the level of

24  assigning motives to counsel, et cetera, et cetera,

25  but I can confirm for you that the Markman decision in

38

1  the District Court did not come out until June 22

2  which was fully a month after we filed the complaint

3  in this case.

4          Now, as most parties believed we believed at

5  that hearing that we would prevail.  We prevailed on

6  the principal claim construction issues on the 633

7  patent and the 763 patent which is why we're going

8  forward on those two patents.  We lost on the

9  principal claim construction issues on the 306 patent

10  which is why we dropped the 306 patent from this

11  investigation.

12          So as a result you have a pretty streamlined

13  case here.  We only have two claims we're asserting on

14  the 633 patent and we have four claims we're asserting

15  on the 763 patent.  With respect to the District

16  Court's schedule on September 16, 2006, there's going

17  to be a teleconference before the District Court where

18  the District Court will merely decide whether the

19  parties are allowed to file summary judgment motions.

20          We are not allowed to file summary judgment

21  motions until we have that teleconference, and at that

22  teleconference Telcordia is going to be seeking the

23  right to file summary judgment on the 633 validity and

24  infringement issues.  Two of the Respondents here are

25  going to seek counter-rights and they're also moving

39

1  on the 763.

2         I just wanted you to be aware of the

3  procedural schedule that all that's going to happen on

4  September 16 is the District Court is going to decide

5  whether in fact to even allow us to file summary

6  judgment motions and if the Court thinks that there

7  are disputed issues of material fact there won't even

8  be summary judgment briefing in those cases.

9         JUDGE HARRIS:  All right.  Mr. Pedersen, is

10  there any comments you wish to make on this?

11         MR. PEDERSEN:  Your Honor, at this time any

12  comments we have would be fairly preliminary in light

13  of the motion practice that is about to come down the

14  pipe, but the staff is somewhat sympathetic towards

15  Respondents that they would be faced with two trials

16  back to back and especially since the District Court

17  case will be a jury verdict that there will be some

18  resolution there at the end of that trial as opposed

19  to a bench trial what could take many months.

20         Other comments that we might have at this

21  time is a three month extension of the target date may

22  not be necessary.  A two month extension may cure the

23  problems that could occur with the scheduling of both

24  cases.

25         JUDGE HARRIS:  You say a two month extension

Heritage Reporting Corporation
(202) 628-4888

1 might cure it?

2          MR. PEDERSEN:  That's correct, Your Honor.

3          JUDGE HARRIS:  All right.  Well, first of

4 all, Mr. Reines, do you have any idea of when you're

5 going to be filing that motion?

6          MR. CHERNY:  This is Mr. Cherny from Latham

7 & Watkins.  We just discussed it and we think we can

8 get you a motion within two weeks on that point.

9          JUDGE HARRIS:  All right.  You've had an

10 opportunity to see the draft procedural schedule?

11          MR. CHERNY:  Yes.

12          JUDGE HARRIS:  Are there any questions or

13 comments with respect to that?

14          MR. CHERNY:  Other than what we've just

15 discussed I don't believe that we on this side have

16 any issues.

17          JUDGE HARRIS:  All right.

18          MR. BRITTINGHAM:  Your Honor, obviously as a

19 Complainant we would prefer an earlier trial, however

20 I understand that courtroom availability may be an

21 issue.  In light of that there may be some

22 justification for moving some of not the trial date,

23 but some of the earlier leading up dates so that

24 they're closer to the trial.

25          I note that the last item on the list of

1  requirements of filing the staff's prehearing brief on

2  February 23 and then it's more than a month before the

3  trial begins.  That's not that typical, although it's

4  not impossible to deal with.  It may be that the

5  parties would take that available space and use it for

6  some of the dates that lead up.

7          JUDGE HARRIS:  For some what?

8          MR. BRITTINGHAM:  For some of the dates that

9  lead up to the trial so that there's less of a gap and

10  more time to --

11          JUDGE HARRIS:  There's a little

12  miscommunication here.  Are these the original dates

13  that staff had?  Everything leading up to the trial?

14          MR. PEDERSEN:  That's correct, Your Honor.

15          JUDGE HARRIS:  Well, I intended to advance

16  those by three weeks.  Just a little slip up here.  So

17  when we issue this we'll advance all those preliminary

18  steps by three weeks or should it be two weeks?

19          MR. BRITTINGHAM:  No, Your Honor.  That

20  sounds fine and that was what I was figuring would be

21  appropriate.

22          MR. CHERNY:  All we would say is obviously

23  in the context of the motion we're going to bring

24  regarding the ultimate trial date we will certainly

25  keep in mind what you said in terms of the Court's

42

1 preference to keep a two to three week space in

2 between the dates that are set here.

3          JUDGE HARRIS:  Yes.  I mean, this only

4 applies given the 15 month target date.  If that has

5 changed after the briefing on the motion that you're

6 going to file then we'll have different dates.

7          MR. CHERNY:  Thank you, Your Honor.

8          JUDGE HARRIS:  All right.  Is there anything

9 as to any count, anything else any counsel wants to

10 bring up?

11          MR. SINDER:  Your Honor, Stuart Sinder on

12 behalf of Alcatel USA and Alcatel SA if I may.  I

13 think it might be worth informing Your Honor that

14 there's sort of a very unusual issue that's going to

15 come up in this case.  It may be one that will turn

16 out to be ripe for summary determination at a

17 relatively early stage.

18          JUDGE HARRIS:  Is that the standard setting?

19          MR. SINDER:  Yes.

20          JUDGE HARRIS:  As a matter of fact I noticed

21 that in the papers and I intended to bring it up, but

22 I forgot to.  Yes.  Can you identify which of the

23 patents are part of the standard setting?

24          MR. SINDER:  Yes.  It's the 633 patent which

25 is involved in that.  It's been declared by the

Heritage Reporting Corporation
(202) 628-4888

43

1 Complainant, Telcordia, to be standards essential
2 before the relevant standards organizations, meaning
3 that their position, which the Respondents don't
4 necessarily agree with, but their position is that if
5 you practice the standard you definitely must come
6 inside the scope of the patent.

7          There's a significant issue as to whether by
8 doing that Telcordia has in effect waived or bargained
9 away its right to have an exclusion order issued by
10 the ITC.  It's committed to those standards
11 organizations that it will license everybody on fair,
12 reasonable, nondiscriminatory terms.

13          In other words all the Respondents are
14 entitled to be licensed.  Now, there may be an issue
15 as to what the license term should be, how much the
16 amount should be, but that goes to the issue of
17 damages which is in the purview of the District Court
18 where Telcordia is already suing the Respondents who
19 are allegedly making or selling the accused product.

20          In this forum the only relief that this
21 forum can issue is an exclusion order and that's
22 exactly what Telcordia gave away when it said this is
23 standards essential and it would license everybody.
24 Now, as far as I know, and Your Honor may know
25 differently, we researched this a little, this may be

44

1  a question of first impressions before the Commission.

2          JUDGE HARRIS:  I was about to say that, that

3  I think it's a matter of first impression.

4          MR. SINDER:  It's a legal issue, and I don't

5  think there are any disputed facts that I am aware of

6  that would go to this issue and it's a question that

7  goes to the appropriate scope of relief that the

8  Commission can issue in such a situation where a

9  patent is alleged by the Complainant to be standards

10 essential.

11         JUDGE HARRIS:  So do you have the intention

12 of filing a summary determination motion?

13         MR. SINDER:  I believe we do.  We haven't

14 discussed what the appropriate timing for that would

15 be yet, Your Honor, but I think that is something that

16 would happen relatively early on.

17         JUDGE HARRIS:  Mr. Anzalone?

18         MR. ANZALONE:  Yes, Your Honor.  Just a

19 brief response on that.  First in terms of disputed

20 issues I don't believe any of the Respondents here

21 have agreed that the patent claims at issue cover the

22 standard because they're denying infringement, so we

23 have a disputed issue right there.

24         Second with respect to the licensing of this

25 patent the Respondents were offered the same license

45

1 deal that, well, many other companies were licensed,

2 but they refused to take it.

3          In a case in which in the Commission a

4 patentee offers a license and the respondents refuse

5 to take it we do not have a situation where the

6 standards issue should come up and in particular I'd

7 like to point out that Alcatel had a subsidiary,

8 Newbridge, which was actually licensed under this

9 patent, failed to pay royalties, failed to submit

10 royalty reports and then terminated the license.

11          So this is not a situation we believe which

12 lends itself for summary determination.  In fact to

13 the extent that a license agreement or what the terms

14 should be comes up at all it would be a remedy issue

15 which would be part of a recommended determination by

16 Your Honor, which would then be decided by the

17 Commission as a whole as opposed to anything relating

18 to a liability determination.

19          The status right now is none of the

20 Respondents here have a license under the patent even

21 though they were offered a license under reasonable

22 and nondiscriminatory terms.

23          JUDGE HARRIS:  All right.  That's your

24 position.  I certainly understand it.  Nevertheless I

25 think there could be a legal issue here which I don't

1 think the Commission has addressed before that if

2 infringement amounts to practicing the standard and

3 you've agreed to license that on a reasonable royalty

4 rate whether the Commission should or could issue a

5 cease and desist order.

6            MR. ANZALONE:  Your Honor, was that

7 addressed in your decision in recordable optical

8 disks?  I believe that was also a situation where the

9 patentee had a patent covering the standard, the

10 respondent refused to pay and then there was --

11            JUDGE HARRIS:  I know that I have taken

12 certain aspects of the standards of before in other

13 decisions, but I don't think I've ever handled it in

14 as full a way as is being suggested.  What did I

15 decide in that one?

16            MR. BRITTINGHAM:  Your Honor, Mr. Anzalone

17 is referring to the Phillips case and that was

18 obviously decided on other grounds --

19            JUDGE HARRIS:  Yes, yes.

20            MR. BRITTINGHAM:  -- so I'm not sure.  I

21 think my understanding or my review of prior cases is

22 consistent with yours which is that the issue has come

23 up from time to time, but has not been pushed all the

24 way to a Commission decision at either the remedy

25 stage or any other stage, but I may be wrong about

47

1 that as well.

2        JUDGE HARRIS:  Well, I think that there was

3 an issue in the Phillips case of practicing the

4 patent, but there was the so-called orange book, but I

5 don't think the relief suggested here was ever

6 requested in that case and I think it went the issue

7 was directed more to the anti-trust aspects, the

8 patent pooling aspects of that decision.

9        So I don't think I've ever addressed fully

10 what --

11        MR. BRITTINGHAM:  Yes.  Your Honor, I think

12 in that case it may be the defense, I thought that the

13 defense had been raised and your recommended

14 determination was that had there been a violation

15 there would have been a general exclusion order, but

16 obviously we can all read it and figure out exactly

17 what happened there.

18        JUDGE HARRIS:  Well, I don't remember that.

19        Mr. Pedersen, do you have any comment?

20        MR. PEDERSEN:  It's an interesting issue,

21 Your Honor, and I think it will take some research on

22 our behalf before I can provide Your Honor with any

23 comments.

24        JUDGE HARRIS:  All right.

25        MR. CHUBB:  Your Honor, just one thing.

Heritage Reporting Corporation
(202) 628-4888

1  We've had cases where equitable estoppel was alleged.

2   For example equitable estoppel by acquiescence and

3  the industry practicing the patent.  That would be the

4  EE PROMS case, 395, and the Judge found equitable

5  estoppel, but the Commission reversed.  That had to do

6  with a standard setting body, but it was a different

7  issue from this licensing on reasonable terms.

8          JUDGE HARRIS:  All right.

9          MR. SINDER:  Your Honor, if I may.  Stuart

10  Sinder again.  There is also an equitable estoppel

11  issue in this case due to delay in asserting these

12  patents which I believe is a separate issue from the

13  one we're raising of standards essentiality.

14          Complainant can't have it both ways and on

15  the one hand argue that its patent covers the standard

16  and on the other hand say it wants an exclusion order

17  which we believe it has either waived or bargained

18  away, however you want to characterize it.

19          JUDGE HARRIS:  Well, I think that this

20  motion should be addressed as soon as possible.  Do

21  you need any discovery to do that?

22          MR. SINDER:  I don't believe so, Your Honor.

23          MR. BRITTINGHAM:  Your Honor, it would seem

24  to us that at a minimum that would have to admit that

25  their products are practicing the standard before it

49

1  is even a relevant issue to determine.  We can't have

2  it both ways, neither can they.  They can't be

3  noninfringing, but also entitled to at worst a

4  reasonable and nondiscriminatory royalty that they

5  apparently --

6         JUDGE HARRIS:  Well, they might be able to

7  say hypothetically assuming it does that the law would

8  apply.  I don't think we'd have to require them to

9  admit infringement.

10        MR. SINDER:  Your Honor?

11        JUDGE HARRIS:  Yes?

12        MR. SINDER:  That's correct, Your Honor.

13  Either hypothetical the result is the same.  If we're

14  not infringing there can't be an exclusion order and

15  if we're within the scope of the patent which they say

16  covers the standard then that raises the legal issue

17  of whether the Commission can appropriately issue an

18  exclusion order under those circumstances.

19        So I disagree with Mr. Brittingham about the

20  admission.

21        JUDGE HARRIS:  All right.

22        MR. SINDER:  Your Honor, may I just in case

23  the Court isn't aware just circling back for a moment

24  on the pending motion by Alcatel SA to terminate the

25  investigation we did file a request for leave to file

50

1  a reply brief which we have submitted with that

2  request so it responds to some of the arguments that

3  have been presented here by the staff.

4          It responds to the staff's submission as

5  well as the responding brief on behalf of Complainant.

6   We think our position is spelled out fairly well in

7  those papers and unless Your Honor wants to hear

8  further on that we rely on that.

9          JUDGE HARRIS:  Yes.  I don't know.  I'm not

10  promising you a ruling by any particular date, but I

11  will examine the motion, and the responses and just

12  rule on it as soon as I can.

13          MR. SINDER:  Thank you.

14          JUDGE HARRIS:  Anything else?

15          (No response.)

16          JUDGE HARRIS:  All right.  There being

17  nothing from any counsel this conference is closed.

18  Thank you.

19          ALL:  Thank you, Your Honor.

20          (Whereupon, at 3:08 p.m., the preliminary

21  conference in the above-entitled matter was

22  concluded.)

23  //

24  //

25  //

51

## CERTIFICATION OF TRANSCRIPTION

**TITLE:**            Certain Equipment for
                     Telecommunications or Data

**INVESTIGATION NO.:** 337-TA-574

**HEARING DATE:**    August 16, 2006

**LOCATION:**        Washington, D.C.

**NATURE OF HEARING:** Preliminary Conference

I hereby certify that the foregoing/attached
    transcript is a true, correct and complete record
    of the above-referenced proceeding(s) of the U.S.
    International Trade Commission.

DATE: August 16, 2006

SIGNED:          LaShonne Robinson
                 Signature of the Contractor or the
                 Authorized Contractor's Representative
                 1220 L Street, N.W. – Suite 600
                 Washington, D.C.  20005

I hereby certify that I am not the Court Reporter and
    that I have proofread the above-referenced
    transcript of the proceeding(s) of the U.S.
    International Trade Commission, against the
    aforementioned Court Reporter's notes and
    recordings, for accuracy in transcription in the
    spelling, hyphenation, punctuation and speaker-
    identification, and did not make any changes of a
    substantive nature.  The foregoing/attached
    transcript is a true, correct and complete
    transcription of the proceeding(s).

SIGNED:          Carlos Gamez
                 Signature of Proofreader

I hereby certify that I reported the above-referenced
    proceeding(s) of the U.S. International Trade
    Commission and caused to be prepared from my
    tapes and notes of the proceedings a true,
    correct and complete verbatim recording of the
    proceeding(s).

SIGNED:          Tammy Brodsky
                 Signature of Court Reporter

                 Heritage Reporting Corporation
                       (202) 628-4888