IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-875-GMS |
| | ) | |
| LUCENT TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | **PUBLIC VERSION** |
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-876-GMS |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY
JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 4,835,763**

YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
John W. Shaw (I.D. #3362)
Monte T. Squire (I.D. #4764)
The Brandywine Building
1000 West Street
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com
msquire@ycst.com

MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
Jack B. Blumenfeld (I.D. #1014)
Leslie A. Polizoti (I.D. #4299)
1201 North Market Street
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
lpolizoti@mnat.com

OF COUNSEL:
Steven C. Cherny
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022
(212) 906-1200

David A. Nelson
Israel Sasha Mayergoyz
David C. McKone
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL 60606
(312) 876-7700

*Attorneys for Defendant Lucent Technologies Inc.*

OF COUNSEL:
Matthew D. Powers
Edward R. Reines
Jessica L. Davis
Sonal N. Mehta
Thomas B. King
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Ryan Owens
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

*Attorneys for Defendant Cisco Systems, Inc.*

Originally Filed: November 2, 2006
Redacted Version Filed: November 2, 2006

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION .................................................................................................... 1

II.     SUMMARY JUDGMENT OF NONINFRINGEMENT OF THE '763 PATENT
        SHOULD BE GRANTED .......................................................................................... 2

        A.      The Accused Products Insert Error Signals Before The Claimed
                Demultiplexer ................................................................................................ 2

        B.      Error Signals Are Inserted Before Demultiplexing Is Complete ..................... 5

        C.      The Accused Products Insert the Claimed Error Signals Before the Pointer
                Processor ....................................................................................................... 7

III.    CONCLUSION ...................................................................................................... 10

## I.     INTRODUCTION

In their opening brief, Defendants established three independent grounds for summary judgment of noninfringment of the '763 patent.  Each ground is based on the requirement of every claim-in-suit that the claimed error signals be inserted ***after*** the claimed demultiplexing has occurred.  Telcordia has agreed to all relevant facts about how the accused products work.  Having done so, Telcordia is left with unsupported arguments that directly contradict its prior positions in this case and its expert's testimony.

First, Telcordia's infringement theory fails as a matter of law because it relies on one component (cross-connect) as the claimed demultiplexer, but attempts to rely on a ***different*** component (pointer processor) to perform the claimed demultiplexing step.  As a matter of law, and common sense, this theory fails because the claimed demultiplexing must be performed by the claimed demultiplexer.  Telcordia does not deny this principle, but instead, attempts to shift its infringement theory by arguing that, in addition to the cross-connect, the pointer processor also is the ***claimed*** demultiplexer.  This attempted position-shift conflicts with Telcordia's discovery disclosures and the testimony of its expert.

Second, consistent with Telcordia's infringement theory that the cross-connect, not the pointer processor, is the claimed demultiplexer, Telcordia's expert conceded that demultiplexing is not "complete" until the communication reaches the cross-connect.  Because it is undisputed that error signals are inserted before the cross-connect, this is a second independent ground for summary judgment.  Telcordia responds by arguing that the pointer processor somehow completes the demultiplexing before the communication reaches the cross-connect, even though its expert testified to the contrary.  As demonstrated below, Telcordia's attempt to escape the import of its expert's admission fails and summary judgment should be granted on this second ground as well.

1

Third, even if the pointer processor were the claimed demultiplexer, Telcordia admits that the AIS-L error signals in Defendants' products are inserted **before** the communication even reaches the pointer processor. Consequently, it is undisputed that AIS-L error signals are introduced **before** any demultiplexing occurs. Telcordia responds by arguing that it is not relying on the AIS-L error signals inserted in response to defective high-level signals, but rather subsequent AIS-P error signals. The claims, however, explicitly require that the error signal be inserted "in response to said monitoring means detecting a lack of integrity" in the ring. The AIS-P signal upon which Telcordia attempts to rely cannot meet this requirement because it is not generated in response to a defective high-level signal; rather, it is merely a continuation of the AIS-L error signal inserted before the pointer processor. Summary judgment is thus warranted on this third ground.

## II.   SUMMARY JUDGMENT OF NONINFRINGEMENT OF THE '763 PATENT SHOULD BE GRANTED

As the following sections demonstrate, Telcordia's opposition concedes much and the arguments it raises lack merit. Each of the three independent grounds for granting summary judgment of noninfringement are addressed in turn.

### A.   The Accused Products Insert Error Signals Before The Claimed Demultiplexer

As Defendants explained in their opening brief, each of the asserted claims as construed by the Court, refers to an **object** called a "demultiplexer" in the preamble and the **act** of "demultiplexing" in the second element of the claim. *See, e.g.*, Exhibit 1 ['763 patent] at 6:37-57;[1] D.I. 179 [Claim Construction Order] at 2.[2]   Telcordia does **not** deny that the claimed

---

[1]    Exhibits 1-12 were filed with Defendants' Opening Brief, and Exhibits 13 and 14 are filed herewith.

[2]    The D.I. numbers cited herein are in C.A. No. 04-876-GMS.

2

*act* of demultiplexing must be performed by the claimed demultiplexer *object*.  Nor does Telcordia deny that its expert identified the cross-connect in Defendants' products as the component corresponding to the demultiplexer *object* required by the preamble.

Telcordia's only argument is that the pointer processor also performs the **act** of demultiplexing.  As Defendants explained, however, regardless of whether or not the pointer processor performs the *act* of demultiplexing, there is no evidence – from Telcordia's expert or otherwise – that the "demultiplexer" *object* required by the claims corresponds to the pointer processor.[3]  In fact, Telcordia's disclosures of its infringement contentions throughout this case have never identified anything other than the cross-connect as the component corresponding to the claimed demultiplexer.  *See, e.g.*, Exhibit 13 [Telcordia's Seventh Supplemental Responses to Cisco's First Set of Interrogatories] at 120-23; Exhibit 14 [Telcordia's Sixth Supplemental Responses to Lucent's First Set of Interrogatories] at 39-42.

Telcordia's numerous references in its opposition brief to its expert's reports and deposition transcripts are merely references to its expert's opinion that the pointer processor also performs the *act* of demultiplexing.  None of the evidence cited by Telcordia supports its brand new assertion that the "demultiplexer" *object* in the preamble corresponds not only to the cross-connect, but also to the pointer processor.  Rather, it is clear from Telcordia's citations to its expert's reports and testimony that the only component identified as corresponding to the

---

[3]     Telcordia relies heavily on testimony from a Lucent engineer to support its assertion that the pointer processor performs the act of demultiplexing.  *See, e.g.*, D.I. 251 [Telcordia Opposition] at 9.  As Defendants explained, they do not dispute that Telcordia's infringement theory is based on its contention that the pointer processor performs demultiplexing.  Regardless of whether the pointer processor performs any demultiplexing, each of the independent bases discussed herein supports summary judgment of noninfringement.

demultiplexer *object* recited in the preamble is the cross-connect.[4]  *See, e.g.*, Exhibit 2 [Prucnal Transcript] at 421:19-422:15, 425:7-15, 427:7-18, 429:13-430:6, 430:21-431:9, 441:1-6; 454:18-455:2; Exhibit 5 [Prucnal Cisco Report] at 19, 23; Exhibit 6 [Prucnal Lucent Report] at 17, 21. Indeed, Telcordia's expert admitted that the cross-connect is what he contends is the demultiplexer of the preamble.  *See, e.g.*, Exhibit 2 [Prucnal Transcript] at 454:18-455:2 (agreeing that "the multiplexer and demultiplexer of claim one is the cross-connect circuitry").

As a result, there can be no genuine dispute that the cross-connect in Defendants' products is the component corresponding to the claimed demultiplexer *object*.  Because the claimed *act* of demultiplexing must be performed by the claimed demultiplexer *object* (which Telcordia does not dispute), there can be no genuine dispute that the claimed act of demultiplexing must be performed by the cross-connect.  Summary judgment of noninfringement is therefore appropriate because the parties agree that all error signals are inserted before, ***not following***, the cross-connect component.  *See, e.g.*, D.I. 251 [Telcordia Opposition] at 1

---

[4]     Despite Telcordia's expert's admissions during deposition, Telcordia now contends that its expert's report regarding Lucent's alleged infringement identified the pointer processor as the demultiplexer.  D.I. 251 [Telcordia Opposition] at 14.  What Dr. Prucnal actually wrote was that Lucent's products, like Cisco's products, "use cross-connect circuitry to multiplex (add) communications sent from associated STS transmitters and demultiplexers to drop communications to STS receivers."  Exhibit 6 [Prucnal Lucent Report] at 17.  Dr. Prucnal never identified the pointer processor as the claimed demultiplexer with respect to Lucent's or Cisco's products.  Moreover, Dr. Prucnal described the demultiplexer as "drop[ping] communications to STS receivers."  *Id.*  It is undisputed that it is the cross-connect circuitry in Lucent's (and Cisco's) products, rather than the pointer processor, that drops communications to the receivers.  *See also* Exhibit 14 [Telcordia's Sixth Supplemental Responses to Lucent's First Set of Interrogatories] at 42 ("demultiplexers (drop) communications to STS or VT receivers.").  Thus, Dr. Prucnal's report supports Defendants' position, not Telcordia's.  Telcordia also asserts (for the first time in its opposition brief) that the Lucent document it attaches as Exhibit 14 to its brief identifies both the pointer processor and the cross-connect as demultiplexers.  D.I. 251 [Telcordia Opposition] at 14.  As is plain from the document itself, neither the pointer processor nor the cross-connect is identified as a demultiplexer in that document.

4

(Defendants' products "demultiplex after the insertion of error signals (the cross-connect demultiplexing)").

### B. Error Signals Are Inserted *Before* Demultiplexing Is Complete

The second independent basis supporting Defendants' motion for summary judgment is that – regardless of whether the pointer processor performs some type of demultiplexing – it is undisputed that all error signals (including the AIS-P error signals Telcordia relies on) are inserted ***before*** demultiplexing is complete. As Defendants explained in their opening brief, this was conceded by Telcordia's expert, who testified that "the final stage of the demultiplexing and its completion, as you said, is -- is done at the cross-connect." Exhibit 2 [Prucnal Transcript] at 432:19-433:3; *see also id*. at 422:11-22 (agreeing that the functionality that inserts error signals is prior to the cross-connect circuitry).

Despite this unequivocal admission, Telcordia attempts to rely solely on the demultiplexing allegedly performed by the pointer processor, arguing against its expert that the pointer processor does somehow "complete" demultiplexing. *See, e.g.*, D.I. 251 [Telcordia Opposition] at 17-19. It is well-established that attorney argument cannot undue an expert's admission.[5] *See, e.g.*, *Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1193 (Fed. Cir. 2006) ("Conclusory allegations and attorney arguments are insufficient to overcome a motion for summary judgment. . . . In order to raise a genuine issue of fact, a party must submit conflicting evidence in the form of an affidavit or other admissible evidence.").

---

[5]     In fact, even Telcordia's attorneys' arguments have changed. During the September 18, 2006 summary judgment teleconference, Telcordia did not argue that the pointer processor somehow completes the demultiplexing as it now contends, but rather asserted that it could satisfy this claim limitation by merely showing that the pointer processor performs some incomplete portion of demultiplexing. *See* D.I. 237 at 37:4-11.

Telcordia's reliance on any demultiplexing allegedly performed by the pointer processor is also inconsistent with the Court's claim construction, and thus wrong as a matter of law. The Court made clear in its construction of the "inserting an error signal" term that the asserted claims require error signals to be inserted on the channels following the demultiplexing of the high-level signal into its constituent channels, not during the demultiplexing process as Telcordia would have it. The '763 patent describes this process of demultiplexing a high-level signal into its constituent channels as "extracting" each of the channels out of the high-level signal. *See, e.g.*, Exhibit 1 ['763 patent] at 2:42-47.

As explained in Defendants' opening brief, Telcordia's expert identified the cross-connect as the component used to "demultiplex (drop) communications to STS or VT receivers." *See, e.g.*, Exhibit 5 [Prucnal Cisco Report] at 19, 23; Exhibit 6 [Prucnal Lucent Report] at 17, 21. Even if the pointer processor also performs some form of demultiplexing, as Telcordia asserts, it is undisputed that the pointer processor does not extract – or drop – channels as the '763 patent requires. Instead, the function of the pointer processor – whether it performs any demultiplexing or not – is to transfer signals from an external clock domain to an internal clock domain, and has nothing to do with extracting or dropping channels. *See, e.g.*, Exhibit 3 [Grover Cisco Report] at ¶¶ 37, 69. In short, it is undisputed that the pointer processor relied on by Telcordia does not demultiplex the high-level signal into its constituent channels as the Court's claim construction requires.

As a result, the demultiplexing that is claimed in the '763 patent cannot be complete until the high-level signal reaches the cross-connect. This is confirmed by Telcordia's expert's unequivocal testimony at deposition.

**C.    The Accused Products Insert the Claimed Error Signals Before the Pointer Processor**

As Defendants explained in their opening brief, there is yet another independent basis supporting summary judgment of noninfringement.  Regardless of whether the pointer processor performs any demultiplexing (the only factual dispute alleged by Telcordia), Defendants' products do not meet the "following demultiplexing" requirement because it is undisputed that they insert error signals on every channel within a defective high-level signal before the high-level signal reaches the pointer processor (or any alleged demultiplexer).

Telcordia does not deny that Defendants' products insert error signals **before** any alleged demultiplexing.  *See, e.g.*, D.I. 251 [Telcordia Opposition] at 1 (Defendants' products "insert error signals before the demultiplexing (the AIS-L signals)"); *id.* at 6-7 ("all parties agree that the pointer processor, whatever it does – be it demultiplexing or something else – is done after the AIS-L error signals are inserted").  Rather, Telcordia argues that Defendants' products satisfy the "following demultiplexing" requirement because they insert **additional** error signals after the demultiplexing allegedly performed by the pointer processor.

Telcordia's argument is inconsistent with the claims because the claimed error signals are not just any error signals – rather, they must be inserted **in response** to the monitoring means detecting a defective high-level signal.[6]  Telcordia does not deny that the only error signals inserted in response to a defective high-level signal (also called a line-level failure) are line-level error signals (or AIS-L signals), which the parties agree are inserted before

---

[6]    The claims require the error signals to be inserted "in response to said monitoring means detecting a lack of integrity on said multiplexed communications on the first ring or the second ring or both the first ring and the second ring."  Exhibit 1 ['763 patent] at 6:37-57.  The Court construed the term "evaluating the integrity of the multiplexed subrate communications" to mean "determining whether each **high-level signal is defective**." D.I. 179 at 2.

demultiplexing. Exhibit 3 [Grover Cisco Report] at ¶ 17-18, 35-36; Exhibit 4 [Grover Lucent Report] at ¶ 17-18, 35-36; Exhibit 7 [Prucnal Cisco Reply Report] at 4 ("I agree with Dr. Grover that the initial insertion of 'all ones' into the bit steam by the Receive Framer following a line fault would not meet the requirement of insertion of error signals 'following demultiplexing.'"); Exhibit 8 [Prucnal Lucent Reply Report] at 4 (same). In contrast, the path-level error signals (or AIS-P signals) relied on by Telcordia either are a mere continuation of the line-level AIS-L error signals inserted before the pointer processor[7] or are inserted in response to a path-level or channel-level failure – not a defective high-level signal as required by the claims. *Id.*

Telcordia's strained reading of the Court's claim construction is also directly contrary to the logic behind the construction. According to Telcordia, the Court's construction does not require the high-level signal to be demultiplexed into its constituent channels before error signals are inserted. Rather, Telcordia now contends that even if error signals are inserted on the channels before demultiplexing, it can satisfy this claim limitation because those same error signals are continued after demultiplexing.

As Defendants explained in their opening brief, the Court construed the asserted claims to require the channels to be demultiplexed out of the high-level signal before error signals are inserted based on Defendants' showing during the claim construction process that the system disclosed in the '763 patent system is ***not capable*** of manipulating the channels in any way (including by inserting error signals onto them) when the channels are multiplexed together in a high-level signal. *See, e.g.*, Exhibit 1 ['763 patent] at 3:28-31. In his expert report, Defendants' expert explained that this is consistent with the equipment available in the late

---

[7]    Telcordia's reinterpretation of the Court's claim construction to cover the continuation or regeneration of an earlier signal would render the construction meaningless because an error signal, just like any data signal, is inherently regenerated as it is propagated through a network.

1980s when the application that later issued as the '763 patent was filed.  *See, e.g.*, Exhibit 3 [Grover Cisco Report] at ¶ 63.

Given that the '763 patent issued more than 17 years ago, it is not surprising that the products Telcordia is accusing of infringement today operate in a fundamentally different way: unlike the claimed system, they ***are capable*** of inserting error signals onto the constituent channels while they are still interleaved into the high-level signal.  As Defendants demonstrated in their opening brief, that is exactly what Defendants' products do in response to a defective high-level signal.  *See, e.g.*, D.I. 241 [Defendants' Opening Brief] at 4-5.

Finally, Telcordia does not deny that the AIS-L error signal – which the parties agree is inserted before any demultiplexing – subsumes the AIS-P error signal Telcordia asserts is inserted after demultiplexing.[8]  As Defendants explained, this is because the AIS-L error signal consists of an all one condition throughout the high-level signal, which necessarily results in an all one condition on each of the constituent channels that make up that high-level signal.  *See, e.g.*, Exhibit 3 [Grover Cisco Report] at ¶¶ 17-18, 60-61; Exhibit 4 [Grover Lucent Report] at 17-18, 52-55, 62-65.  As Defendants explained in their opening brief, insertion of an AIS-L error signal onto a high-level signal is analogous to spreading icing on an entire cake.  Once the entire cake is covered with icing, each of the constituent slices of the cake is necessarily also covered with icing.

---

[8]     Contrary to Telcordia's assertion, Defendants are not arguing that the AIS-L line-level error signals are "the same thing" as the AIS-P path-level error signals.  D.I. 251 [Telcordia Opposition] at 21-22.  Rather, Defendants explained that both sides' experts agree that an AIS-L signal on a high-level signal necessarily results in an AIS-P signal on each channel within the high-level signal.  D.I. 241 [Defendants' Opening Brief] at 14-15 & n. 18; Exhibit 2 [Prucnal Transcript] at 201:15-17 ("[I]f there are ones in the entire line level, all of the paths are going to have ones as well.").  Defendants do not contend that the reverse is true.

In short, the AIS-P error signals relied on by Telcordia are not inserted in response to a defective high-level signal, as the claims require, but rather necessarily follow from the insertion of an AIS-L error signal on the entire high-level signal prior to any alleged demultiplexing.

## III.  CONCLUSION

For the reasons set forth in Defendants' opening brief and herein, Defendants Lucent and Cisco respectfully request that the Court enter summary judgment of noninfringement of the '763 patent.

| | |
|---|---|
| YOUNG CONAWAY STARGATT & TAYLOR, LLP | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| /s/ *Monte T. Squire* | /s/ *Jack B. Blumenfeld* |
| John W. Shaw (I.D. #3362)<br>Monte T. Squire (I.D. #4764)<br>The Brandywine Building<br>1000 West Street<br>Wilmington, DE 19801<br>(302) 571-6600<br>jshaw@ycst.com<br>msquire@ycst.com | Jack B. Blumenfeld (I.D. #1014)<br>Leslie A. Polizoti (I.D. #4299)<br>1201 North Market Street<br>Wilmington, DE 19899-1347<br>(302) 658-9200<br>jblumenfeld@mnat.com<br>lpolizoti@mnat.com |
| OF COUNSEL:<br>Steven C. Cherny<br>LATHAM & WATKINS LLP<br>885 Third Avenue, Suite 1000<br>New York, NY 10022<br>(212) 906-1200 | OF COUNSEL:<br>Matthew D. Powers<br>Edward R. Reines<br>Jessica L. Davis<br>Sonal N. Mehta<br>Thomas B. King<br>WEIL, GOTSHAL & MANGES LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065<br>(650) 802-3000 |
| David A. Nelson<br>Israel Sasha Mayergoyz<br>David C. McKone<br>LATHAM & WATKINS LLP<br>Sears Tower, Suite 5800<br>Chicago, IL 60606<br>(312) 876-7700 | Ryan Owens<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>(212) 310-8000 |
| *Attorneys for Defendant Lucent Technologies Inc.* | *Attorneys for Defendant Cisco Systems, Inc.* |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 2, 2006 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing to Steven J. Balick and John G. Day.

I further certify that I caused copies of the foregoing document to be served on November 2, 2006 upon the following in the manner indicated:

**<u>BY HAND</u>**                                              **<u>BY FEDERAL EXPRESS on 11/3/06</u>**

John G. Day                                                Don O. Burley
ASHBY & GEDDES                                  FINNEGAN, HENDERSON,
222 Delaware Avenue                               FARABOW, GARRETT & DUNNER
Wilmington, DE  19801                             901 New York Avenue
                                                               Washington, DC  20001

**<u>BY ELECTRONIC MAIL</u>**

John Day (jday@ashby-geddes.com)
John Williamson (john.williamson@finnegan.com)
York Faulkner (york.faulkner@finnegan.com)
Don Burley (don.burley@finnegan.com)


                              */s/ Jack B. Blumenfeld*
                              MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                              1201 North Market Street
                              Wilmington, DE 19801
                              (302) 658-9200
                              jblumenfeld@mnat.com