**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-875-GMS |
| | ) | |
| LUCENT TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | |
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-876-GMS |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |

**REPLY BRIEF OF PLAINTIFF TELCORDIA TECHNOLOGIES, INC.**
**IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT THAT THE**
**'306 PATENT IS NOT INVALID AS ANTICIPATED OR FOR LACK OF**
**ENABLEMENT**

*Of Counsel:*

Donald R. Dunner
Steven M. Anzalone
Richard H. Smith
James T. Wilson
John M. Williamson
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
1300 I Street, N.W.
Washington, D.C.  20005
(202) 408-4000

Dated:  November 6, 2006

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware  19899
(302) 654-1888

*Attorneys for Plaintiff*
*Telcordia Technologies, Inc.*

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS AND OF THE NATURE AND STAGE OF THE
        PROCEEDINGS .............................................................................................. 1

III.    SUMMARY OF THE ARGUMENT ............................................................... 1

IV.     ARGUMENT ..................................................................................................... 2

        A.      The FasNet and Budrikis References Do Not Anticipate The Asserted Claims..... 4

                1.      Defendants Have Not Identified Any Factual Disputes Regarding The
                        Disclosure Of The Limb and Flores Reference On FasNet or the Budrikis
                        Reference ................................................................................................. 4

                2.      Defendants' New Interpretation Of The Court's Claim Construction
                        Regarding "Priority" Should Be Rejected ................................................. 6

        B.      The Boehm-Ching-Say Reference Did Not Incorporate The Beckner Minzer
                Tutorial By Reference, And Cannot Anticipate The Asserted Claims ................... 8

V.      CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Advanced Display Sys., Inc. v. Kent State Univ.*,
  212 F.3d 1272 (Fed. Cir. 2000) ................................................................. 9, 12, 14

*General Elec. Co. v. Brenner*,
  407 F.2d 1258 (C.A.D.C. 1968) ...................................................................... 13

*Hughes, In re*,
  550 F.2d 1273 (C.C.P.A. 1977) .................................................................... 12-13

*Quaker City Gear Works, Inc. v. Skil Corp.*,
  747 F.2d 1446, 223 USPQ 1161 (Fed.Cir.1984) ........................................... 13

*Seversky, In re*,
  474 F.2d 671 (C.C.P.A. 1973) (emphasis in original) ..................................... 9

*Siler v. Dorsett*,
  108 N.C. 300, 12 S.E. 986 (N.C.1891) ........................................................... 14

*Southern Clay Prods., Inc. v. United Catalyst, Inc.*,
  2002 WL 1733333 (Fed. Cir. 2002) ......................................................... 11, 12

*Topro Servs., Inc. v. McCarthy W. Constr., Inc.*,
  827 F.Supp. 666 (D.Colo.1993).................................................................... 14

*Ultradent Prods., Inc. v. Life-Like Cosmetics, Inc.*,
  127 F.3d 1065 (Fed. Cir. 1997) .................................................................... 16

*Voss, In re*,
  557 F.2d 812 (C.C.P.A. 1977) ...................................................................... 12

## FEDERAL RULES AND RULE COMMENTARY

37 C.F.R. § 1.57................................................................................................ 15-16

Changes to Support Implementation of the United States Patent and Trademark
Office 21st Centure Strategic Plan, 59 Fed. Reg. 56,500 (2004) ..................... 17

**OTHER AUTHORITIES**

Bogert, *The Law of Trusts and Trustees*, § 105 (2d ed. rev. 1984)............................................... 13

11 Lord, *Williston on Contracts*, § 30:25 (4th ed. 1999)............................................................ 13

## I.    INTRODUCTION

Notwithstanding the arguments raised in the answering brief of defendants Lucent Technolgies, Inc. and Cisco Systems, Inc., there are no genuine issues of material fact regarding whether any of three remaining prior art references on which defendants are relying, on its own, discloses each and every limitation in the asserted claims of the '306 patent, and Telcordia is therefore entitled to summary judgment that defendants cannot establish, by clear and convincing evidence, that the asserted claims are invalid as anticipated.  Further, defendants concede that the claims are not invalid for lack of enablement under the Court's claim construction, so Telcordia is entitled to summary judgment on that issue as well.

## II.    STATEMENT OF FACTS AND OF THE NATURE AND STAGE OF THE PROCEEDINGS

Telcordia incorporates the statement of facts and description of the proceedings set forth in its opening brief.

## III.    SUMMARY OF THE ARGUMENT

Summary judgment in Telcordia's favor is warranted on the issues of whether the asserted claims of the '306 patent are invalid as anticipated or due to lack of enablement. Defendants have conceded that eight of the original eleven references on which their expert relied do not anticipate under the Court's claim construction, and they concede that they cannot prove lack of enablement under that claim construction.

There are no genuine issues of material fact concerning whether the remaining three references anticipate the asserted claims.  The FasNet and Budrikis references both lack the same limitation:  the requirement that the waiting packets from the source with the highest priority be placed in any available slot.  In those two similar references, the highest priority source has a predetermined number of available slots in each cycle, and once those slots are used the highest

1

priority source must wait for another cycle before it can again transmit waiting packets.

Defendants argue that a factual dispute exists as to the meaning of the two references because, according to defendants, Telcordia incorrectly interprets those references as permitting sources to use only one slot per cycle. Telcordia never made that argument and there is no dispute about the meaning of the references. Further, defendants attempt to redefine the Court's claim construction by changing their own asserted definition of "priority" in a way that contradicts their arguments during the claim construction proceeding but would now encompass the disclosures of the FasNet and Budrikis references. That argument should be rejected.

Defendants' anticipation argument based on the Boehm-Ching-Say reference relies completely on their incorrect assertion that the paper incorporates the Beckner Minzer Tutorial by reference. But the brief mention of the Tutorial in the Boehm-Ching-Say reference does not satisfy the legal requirements for incorporation by reference. Defendants construct support for their position by quoting governing precedent in a misleading way, by improperly citing cases that cannot be used as precedent, by improperly attempting to convert the legal question of incorporation by reference into a factual issue that can survive summary judgment, and by misreading analogous PTO rules.

Because defendants cannot show that they will be able to prove that the three remaining references anticipate the asserted claims by clear and convincing evidence, Telcordia's motion for partial summary judgment should be granted.

## IV.    ARGUMENT

Defendants have effectively limited their anticipation arguments to three references: (1) J.O. Limb and C. Flores, *Description of FasNet—A Unidirectional Local-Area Communications Network*, The Bell Systems Technical Journal, Vol. 61, No. 7 (September 1982) (D.I. 258/245,

Exhibit E), (2) Z.L. Budrikis and A.N. Netravali, *A Packet/Circuit Switch*, AT&T Bell Laboratories Technical Journal, Vol. 63, No. 8 (October 1984) (D.I. 258/245, Exhibit F), and (3) the combination of two different references:  M. Beckner and S. Minzer, *A Tutorial on Asynchronous Time Division Multiplexing:  A Packet Mode Access Capability in Broadband Interfaces to ISDNs,* Bell Communications Research, T1.D1.185-149 (November 1985) (D.I. 258/245, Exhibit I) combined with R. Boehm, Y.C. Ching and S. Say, *Rates and Formats for Fiber Optics Interfaces*, T1.X1.4/86-020 (February 14, 1986) (D.I. 258/245, Exhibit K).

As to the other eight references originally discussed in Dr. Acampora's report, defendants acknowledge in their answering brief that Dr. Acampora does not contend those references anticipate the asserted claims under the Court's claim construction, which both parties agree makes it impossible for Telcordia to prove infringement.  D.I. 270/257 at 17-18.[1]  And as to enablement, defendants acknowledge that they are no longer asserting that the claims are invalid for lack of enablement.  D.I. 270/257 at 18.  Accordingly, in this reply brief Telcordia will focus only on defendants' three remaining anticipation arguments.

---

[1] Defendants claim that Telcordia somehow "attempts to distort" the nature of Dr. Acampora's admissions of no anticipation on those other eight references because Telcordia did not mention that Dr. Acampora reserved the right to rely on those references if Telcordia were to argue that, even under the court's claim construction, the claims nonetheless read on the accused products.  D.I. 270/257 at 17.  The Court is invited to read Dr. Acampora's clear statements in his reply expert report, repeated at D.I. 258/245 12-13, wherein he agreed with Telcordia's expert, Dr. Prucnal, that those eight references failed to disclose all the claim limitations as construed by the Court.

**A.    The FasNet and Budrikis References Do Not Anticipate The Asserted Claims**

**1.    Defendants Have Not Identified Any Factual Disputes Regarding The Disclosure Of The Limb and Flores Reference On FasNet or the Budrikis Reference**

The Limb and Flores FasNet reference and the Budrikis references disclose similar systems, and neither discloses all the limitations of the asserted claims as interpreted by the Court. Defendants argue that there is a factual dispute regarding the disclosure of the references, but that argument relies entirely on the construction and subsequent knocking down of a straw man. Specifically, defendants contend that Telcordia's non-anticipation argument relies on the mistaken interpretation that the FasNet and Budrikis references both disclose systems where each station is only allowed to access the communications line for one slot. D.I. 270/257 at 5 ("Telcordia argues that by limiting each station to transmitting only one packet per cycle, the systems described in the FasNet and Budrikis referencees fail to meet the claim limitations at issue." Instead, defendants point out, those systems can allow access for any "integral number" of slots, thereby demonstrating the dispute as to the disclosures. D.I. 270/257 at 5 and 6 ("Telcordia is wrong with respect to both references. FasNet and Budrikis do not require each station to send only one packet per cycle.")

But Telcordia never made that argument anywhere in its brief. Telcordia's brief made it clear that each reference permitted a station to access the line for some predetermined number of slots, not merely one slot. For example, with respect to the FasNet reference, Telcordia pointed out that "the FasNet protocol limits each station *to a certain number of slots per cycle,*" and that "an upstream station with information available to be placed on the line will insert all its waiting packets, *up to a prespecified number*, into empty slots, and then must permit all subsequent empty slots to pass by unfilled to downstream stations even if that upstream station has more high priority information ready to be placed on the line." D.I. 258/245 at 20 (emphasis added).

4

Likewise, with respect to Budrikis, Telcordia stated that "[e]ach access unit is limited to a certain number, '$M$', of contiguous packets before it has to stop sending data and must instead allow empty packets to pass by until other access units stop requesting access . . . ." D.I. 258/245 at 23.

Telcordia's discussion of both references makes it clear that the systems could assign some number of slots, not necessarily one, to the stations, after which those stations were no longer permitted to access the communications line until the next cycle. The only place the concept of permitting access for only one slot is mentioned in Telcordia's brief is in a direct quote from the FasNet reference. *See* D.I. 258/245 at 19-20. But that quote was used to help explain the basic operation of the system, not to suggest that the reference was limited only to systems permitting access for one slot. Telcordia's subsequent discussion of the system as permitting access for some predetermined number of slots, not just one slot, makes it clear that Telcordia never relied on the limitation of one slot.

As a result, defendants' argument that a factual issue remains regarding the nature of the disclosure is a house built on sand. There is no dispute that the FasNet and Budrikis systems predetermine the number of slots each station will be permitted to use in a given cycle. And there is no dispute that the number can be more than one, or that some stations can be assigned more slots than others. And, importantly, there is no dispute that in both systems a station having a predetermined number of permitted slots must stop accessing the line when it reaches that limit regardless of how much information that station is trying to transmit, and must thereafter allow some other station to access the line *even if the information the first station is attempting to transmit would be of a higher priority.*

Defendants have tried unsuccessfully to manufacture an alleged factual dispute about the teaching of the FasNet and Budrikis references out of whole cloth. There is no factual dispute that would preclude a grant of summary judgment in Telcordia's favor.

### 2. Defendants' New Interpretation Of The Court's Claim Construction Regarding "Priority" Should Be Rejected

Defendants attempt to avoid the clear and undisputed teaching of the FasNet and Budrikis references by changing their position on the meaning of the term "priority" as used in the Court's claim construction. Aside from being a legal issue, not a factual dispute, it is also a significant reversal of position that, if accepted, would repudiate the Court's construction of the "available empty payload field" limitations, which was adopted at defendants' urging.

The "stations" in FasNet or "access units" in Budrikis are analogous to the "sources" in the '306 patent, and for purposes of clarity Telcordia will use the term "source." It is undisputed that in all three systems—FasNet, Budrikis, and the '306 patent—there is a shared communication line that connects multiple sources. By definition, one of those sources will be at the closest point to the incoming empty bit stream, i.e. at the front of the line. In the FasNet and Budrikis systems, that first source on the line gets access to the line for a specific number of slots and then must stop accessing the line even if it has additional data to transmit. In their effort to save their anticipation arguments with respect to FasNet and Budrikis, defendants characterize that blocking of access as shifting priority from the first source on the line to the next source in line. *See, e.g.,* D.I. 270/257 at 8 (the FasNet and Budrikis systems have a priority shifting mechanism in which "the priority standing of each station can vary from time to time"). In other words, once the system tells the first source to stop accessing the line, according to defendants that first source no longer has the highest priority, even if it still had data to transmit and even though it is still the closest source to the origin of the incoming empty bit stream. Instead, now

the second source in line is the highest priority source.  In defendants' view, "[n]othing in the Court's construction requires the priority standing of the claimed sources to be fixed in perpetuity."  D.I. 270/257 at 8.

  ***That is exactly the opposite of defendants' contentions during the claim construction proceedings***.  Then, defendants urged the Court to import the concept of priority into the otherwise unadorned claim phrases "available empty payload field" and "empty payload field of any of said frames available to said inserting means."  D.I. 102 at 22-25.  In the opening claim construction brief, defendants pointed out that "priority among the data sources [is] determined automatically by the proximity of each data source's framer [53] to the origin of the empty bit stream."  D.I. 102 at 7.  In other words, according to defendants the source that is first in line ***always*** has the highest priority.  Defendants illustrated their point with an analogy to a ski lift where the first stop was for VIP skiers, the second stop was for regular skiers, and the third stop was for novice skiers.  According to defendants, "[t]he ski lift will ***always*** have empty chairs for the VIP skiers", i.e. the source with the highest priority.  D.I. 102 at 8 (emphasis added).  Only if there were no VIP skiers at the first location would an empty chair be available to the regular skiers, and only if there were no VIP skiers and regular skiers would the empty chair move on to the novice skiers.  D.I. 102 at 8-9; *see also* 24 ("an empty chair passes through the first location, the location reserved for VIPs with the highest priority.  If there is a VIP in line, ***the empty chair will be filled***." (Emphasis added)).  The Court accepted defendants' proposed construction on those claim limitations and interpreted the claims to require that if the highest priority source has a packet ready to transmit, that packet will be placed into an available empty payload field.  D.I. 189/179 at ¶ 35.

If the defendants' ski lift analogy is applied to the FasNet and Budrikis references, it is clear those references cannot anticipate under the Court's claim construction. In the systems described in those references, there are only a predetermined number of slots available at each source in a given cycle. For example, such a system might permit 3 VIP skiers, 2 regular skiers, and 1 novice skier to board during each cycle. If 4 VIP skiers all get in line at their priority location under the FasNet and Budrikis systems, only 3 could board even though another one is "ready" to board and is at the highest priority position. That fourth VIP must wait for 2 regular skiers and then 1 novice skier to board before a new cycle begins and he is permitted to board the next empty chair.

Clearly, the FasNet and Budrikis systems cannot satisfy the Court's claim construction that a data packet from the source of the highest priority that is ready to transmit, i.e., a VIP skier waiting in line, is always permitted to access the line. Defendants can only avoid that problem by abandoning their original interpretation of "priority" and instead arguing that once the 3 VIP skiers have boarded, the regular skiers are now at the highest priority source even though there is still another VIP skier waiting in line, and that if 2 regular skiers board, now the novice skiers are at the highest priority source even though that VIP skier is still waiting. Defendants should be estopped from raising that interpretation now, given their contrary argument earlier, and such an interpretation is inconsistent with the Court's construction.

**B.      The Boehm-Ching-Say Reference Did Not Incorporate The Beckner Minzer Tutorial By Reference, And Cannot Anticipate The Asserted Claims**

The mere reference to the Beckner Minzer Tutorial (hereinafter "the Tutorial") in one place in the Boehm-Ching-Say reference does not satisfy the legal standard for incorporation by reference, and as a result the two references cannot be combined for purposes of anticipation. Defendants stretch the language of the Boehm-Ching-Say reference, the teachings of the relevant

8

and precedential cases, and the record itself in an attempt to support its untenable argument that the Tutorial was incorporated by reference into the Boehm-Ching-Say reference. Because the defendants and their expert admit that the Boehm-Ching-Say reference cannot anticipate by itself without adding material from other references, Telcordia is entitled to summary judgment of no anticipation.

As a fundamental matter, governing case law makes it clear that there is a difference between a true "incorporation by reference" and the many other ways of mentioning one document in another document. In order to incorporate another document by reference, the primary document must cite the material "in a manner that makes clear that the material is effectively part of the host document as if it were explicitly contained therein." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000). "[M]ere *reference* to another application, or patent, or publication is not an *incorporation* of anything . . . ." *In re Seversky*, 474 F.2d 671, 674 (C.C.P.A. 1973) (emphasis in original). Further, "[t]o incorporate material by reference, the host document must identify with detailed particularity what specific material it incorporates and clearly indicate where that material is found in the various documents." *Advanced Display*, 212 F.3d at 1282.

The Boehm-Ching-Say references fails to live up to those legal standards because (1) it does not actually try to incorporate the Tutorial, but in fact it actually distinguishes the Tutorial, and (2) it does not provide sufficient detail on what portion of the Tutorial should be deemed incorporated. In addition, Defendants are wrong to suggest there are disputed factual issues precluding summary judgment here, because the question of whether there has been an effective incorporation by reference is a matter of law. Finally, although not dispositive here, PTO regulations governing incorporations by reference, which were the origin of the practice with

9

respect to allegedly anticipating prior art, do indeed require the use of "incorporate" and

"reference" in order to eliminate the sort of after the fact argument raised by defendants here

about what has and has not been truly incorporated by reference.

The Boehm-Ching-Say reference does not express an intent to wholly incorporate any

particular part of the Tutorial, or even a specific technique described therein. Rather, the

Boehm-Ching-Say mentions the Tutorial, along with another document, as being relevant to a

situation *different from the situation addressed in the Boehm-Ching-Say reference*:

> For broadband services previous contributions have indicated that packet-mode
> techniques are a way to achieve flexibility at rates lower than the broadband
> channel rate (T1D1.1/85-113, T1D1.1/85-149). The modular approach described
> here is necessary to construct channels at rates higher than the STS-1 rate for
> basic transport of broadband services and to facilitate the introduction of other
> undefined services.

D.I. 258/245, Exhibit K at 4. The reference to T1D1.1/85-149 refers to the Tutorial.

In that brief mention, the Boehm-Ching-Say reference contrasts the techniques described

in those two articles with the "approach described here." The Boehm-Ching-Say reference notes

that the two cited references, including the Tutorial, propose packet-mode techniques to achieve

flexibility "at rates *lower* than the broadband channel rate." *Id.* (emphasis added). But the

Boehm-Ching-Say reference then expresses an intent to describe a different "modular approach"

needed to deal with a different situation, one involving "rates *higher* than the STS-1 rate for

basic transport of broadband services . . . ." *Id.* (emphasis added). The Boehm-Ching-Say

authors clearly indicate that the Tutorial contains information that, although relevant to one

situation, is not useful in the precise circumstances the authors wish to address. That treatment

does not incorporate the Tutorial by reference as if it is fully rewritten. Instead, it is similar to

the situation where a patentee identifies a prior art system and then proceeds to explain its

deficiencies and distinguish it from his invention.

The Boehm-Ching-Say reference also fails to provide the required detailed explanation of the material in the second reference that is supposedly being incorporated. Defendants cite a number of cases in which documents were found to have been incorporated by reference. But their discussion of those cases ignores the level of detail associated with those successful efforts to incorporate other materials. The brief mention of the Tutorial in the Boehm-Ching-Say reference stands in stark contrast to the situations described in those cases

For example, defendants rely on *Southern Clay Prods., Inc. v. United Catalyst, Inc.*, 2002 WL 1733333 (Fed. Cir. 2002). At the outset, defendants' reliance on that case is improper and in violation of Federal Circuit rules because the opinion was not selected for publication, a fact stated clearly on the copy provided by defendants with their answering brief, and therefore should not be cited. D.I. 270/257, Exhibit 14. The Federal Circuit rules state that:

> An opinion or order which is designated as not to be cited as precedent is one determined by the panel issuing it as not adding significantly to the body of law. *Any opinion or order so designated must not be employed or cited as precedent.*

Fed. Cir. R. 47.6(b) (emphasis added).

In any event, having cited it improperly, defendants then downplay the detailed reference provided by the patent involved in that case, citing *Southern Clay* in a parenthetical for the proposition "that a patent's statement that '[e]xemplary of commonly employed . . . techniques for breaking the bonds . . . are those techniques in [specific patents]' was sufficient to incorporate the techniques into the patent." D.I. 270/257 at 11. But the patent involved in *Southern Clay* said more than just "techniques for breaking the bonds." It said:

> Exemplary of commonly employed physical or comminuting techniques for breaking the bonds between the colloidal particles in a clay particle aggregate are those techniques disclosed in United States Pat. Nos. Re. 25,965; 3,253,791; 3,307,790; and 3,348,778. Generally speaking, the techniques disclosed in these patents effect some type of grinding or comminuting either by shear or abrasion so as to break the bonds in the clay aggregate particle and thus form several colloidal particles therefrom.

11

*Southern Clay*, 2002 WL 1733333 at *384. The Federal Circuit found that level of detail

sufficient to satisfy the requirement that "[t]he host document must identify with detailed

particularity what specific material it incorporates and clearly indicate where that material is

found in the various documents." *Id.*, citing *Advanced Display*, 212 F.3d at 1282. Defendants'

use of ellipses in their parenthetical seems calculated to make the incorporation by reference in

*Southern Clay* look less detailed and more like the non-specific reference in the Boehm-Ching-

Say reference to the "packet-mode techniques" in the Tutorial.

    Similarly, defendants truncate the incorporating language in *In re Voss*, 557 F.2d 812

(C.C.P.A. 1977) and *In re Hughes*, 550 F.2d 1273 (C.C.P.A. 1977) to create the same misleading

effect, as shown below:

| Defendants' Truncated Quotes | The Actual Incorporating Language |
|---|---|
| holding that phrase "reference is made to . . . a general discussion" was effective incorporation<br><br>D.I. 270/257 at 15. | A glass-ceramic material is originally formed as a glass which is then phase separated, by a controlled uniform devitrification throughout, to develop a fine crystalline structure within a glassy matrix, the material thus produced having physical properties materially different from the parent glass and more nearly characteristic of a conventional crystalline ceramic material. Reference is made to United States Patent No. 2,920,971, granted to S. D. Stookey, for a general discussion of glass-ceramic materials and their production.<br><br>*In re Voss*, 557 F.2d at 815-16. |
| holding that phrase "[r]eference is made to application Ser. No. 131,108 for complete descriptions of methods of preparing aqueous polymeric dispersions" constituted effective incorporation<br><br>D.I. 270/257 at 15. | Copending application Ser. No. 131,108, filed Aug. 14, 1961 by Jack Hurst and Harry D. Anspon describes the preparation of aqueous dispersions of water-insoluble, self-emulsifiable ethylene polymers containing pendent carboxylate salt groups which can be suitably employed in the process of this invention. As described therein, water-insoluble, but self-emulsifiable ethylene |

|  | polymers containing pendent carboxylate salt groups are prepared by the hydrolysis in an aqueous medium of the acrylate groups of a thermoplastic ethylene-alkyl acrylate inter-polymer employing elevated temperatures, a metallic base, and, optionally, a nitrogenous base to produce a stable aqueous dispersion of the ethylene polymer.  Reference is made to application Ser. No. 131,108 for complete descriptions of methods of preparing aqueous polymeric dispersions applicable in the hereinafter described invention.<br><br>*In re Hughes*, 550 F.2d at 1274-75. |
|---|---|

Those cases demonstrate the clear distinction between a proper incorporation by reference describing with specificity the material in the secondary reference that should be considered part of the primary reference and the meager citation to an earlier paper in the Boehm-Ching-Say reference.

Defendants also attempt to turn what is clearly a question of law into a question of fact, despite being unable to cite any supporting authority for that effort, so that they can then argue there are disputed factual issues.  *See generally* D.I. 270/257 at 12-15 and n.9.  But case law is clear:

> Whether and to what extent material has been incorporated by reference into a host document is a question of law. *See Quaker City Gear Works, Inc. v. Skil Corp.*, 747 F.2d 1446, 1453-54, 223 USPQ 1161, 1166 (Fed.Cir.1984) (reasoning that whether a document is incorporated by reference into a patent presents a question of law when determining enablement).  As the court observed in *General Electric*, the doctrine of incorporation by reference has its roots in the law of wills and contracts.  407 F.2d at 1260, 159 USPQ at 337.  In those areas of jurisprudence, whether material is incorporated by reference presents a question of law.  *See* 11 Richard A. Lord, *Williston on Contracts* § 30:25 (4th ed.1999) (observing that terms of a contract may be expressed in separate documents and the determination of which terms are incorporated into the contract is a question of law); George Taylor Bogert, *The Law of Trusts and Trustees*, § 105 (2d ed. rev.1984) (describing the use of incorporation by reference to supply additional terms to a will and providing cases holding that whether terms are incorporated

13

into a will is a question of law); *see also Topro Servs., Inc. v. McCarthy W. Constr., Inc.*, 827 F.Supp. 666, 667 (D.Colo.1993) ("Whether the Prime Contract, or any part of it, was incorporated by reference into the Subcontract is a question of law."); *Siler v. Dorsett*, 108 N.C. 300, 302, 12 S.E. 986, 987 (N.C.1891) (holding that court decides whether a will incorporated material from other documents). Logic therefore requires that incorporation by reference in the field of patent law is also a question of law. Further, the standard of one reasonably skilled in the art should be used to determine whether the host document describes the material to be incorporated by reference with sufficient particularity.

*Advanced Display*, 212 F.3d at 1283. Accordingly, defendants' attempt to identify a factual dispute about this legal issue by pointing to the differing testimony of the experts should be rejected. This issue must be resolved as a matter of law, just like claim construction and contract interpretation. The mere fact that defendants' technical expert, Dr. Acampora, has expressed his views on the legal question of incorporation by reference does not create an issue for trial.

In any event, the witness testimony defendants quote in their brief does not support their position. Both excerpts involve the subjective beliefs of parties involved in the two publications, not the question of whether "one reasonably skilled in the art" would consider the host document to have "incorporated the material by reference with sufficient particularity." *Advanced Display*, 212 F.3d at 1283. In addition, Dr. Ching did not testify, as defendants claim, that his "intent in writing the BCS article was to incorporate the subject matter of the ATDM tutorial . . . ." D.I. 270/257 at 13. He merely said he "probably thought at that—those are the important document" and that he was "calling out attention to these two standards documents." D.I. 270/257 at 14. That does not indicate that he intended to incorporate those documents as if fully rewritten in his own paper. Mr. Beckner's quoted testimony is quite simply a vast expansion of the meager reference to his Tutorial that actually appears in the Boehm-Ching-Say reference. D.I. 270/257 at 14-15.

Finally, defendants again knock down a straw man by claiming that Telcordia incorrectly "argues that the packet mode techniques from [*sic* the] ATDM tutorial are not incorporated

14

because the BCS article did not invoke the specific mantra of 'incorporate[d] by reference.'"
D.I. 270/257 at 15.  Telcordia never argued that those specific words are *required*, but the fact
that those words are not used must be considered as a factor in determining whether there was an
intent to incorporate the material as if fully rewritten.  And to be clear, current PTO regulations
do require an incorporation by reference to use "the root words 'incorporat(e)' and 'reference'
(e.g. 'incorporate by reference') . . . ."  37 C.F.R. § 1.57(b).  Defendants' statement that Rule
1.57(b) only applies to circumstances in which a patent application seeks to incorporate material
from another application for purposes of priority," D.I. 270/257 at 16 n.10, is just wrong.

Rule 1.57 provides, in part:

37 C.F.R. 1.57  Incorporation by reference

(a)     Subject to the conditions and requirements of this paragraph, if all or a
portion of the specification or drawing(s) is inadvertently omitted from an
application, but the application contains a claim under § 1.55 for priority of a
prior-filed foreign application, or a claim under § 1.78 for the benefit of a prior-
filed provisional, nonprovisional, or international application, that was present on
the filing date of the application, and the inadvertently omitted portion of the
specification or drawing(s) is completely contained in the prior-filed application,
the claim under § 1.55 or § 1.78 shall also be considered an incorporation by
reference of the prior-filed application as to the inadvertently omitted portion of
the specification or drawing(s).

* * *

(b)     Except as provided in paragraph (a) of this section, an incorporation by
reference must be set forth in the specification and must:

        (1)     Express a clear intent to incorporate by reference by using the root
words "incorporat(e)" and "reference" (e.g., "incorporate by reference"); and

        (2)     Clearly identify the referenced patent, application, or publication.

* * *

(g)     An incorporation of material by reference that does not comply with
paragraphs (b), (c), or (d) of this section is not effective to incorporate such
material unless corrected within any time period set by the Office, but in no case

later than the close of prosecution as defined by § 1.114(b), or abandonment of the application, whichever occurs earlier. In addition:

   (1) A correction to comply with paragraph (b)(1) of this section is permitted only if the application as filed clearly conveys an intent to incorporate the material by reference. A mere reference to material does not convey an intent to incorporate the material by reference.

   (2) A correction to comply with paragraph (b)(2) of this section is only permitted for material that was sufficiently described to uniquely identify the document.

The rule as a whole governs the PTO practice of allowing a patent application to incorporate by reference certain material found in other documents. That practice served as the original basis for the Federal Circuit's decisions holding that allegedly anticipatory references can be deemed to include material found in other documents properly incorporated by reference. *See, e.g., Ultradent Prods., Inc. v. Life-Like Cosmetics, Inc.*, 127 F.3d 1065, 1069 (Fed. Cir. 1997) (citing to the Manual of Patent Examining Procedures to support holding that allegedly anticipating patent includes disclosures in another patent incorporated by reference).

Rule 1.57(a) states that where an application claims priority to a prior application but fails to include information about that prior application in the specification, that will nonetheless be deemed an incorporation by reference. On the other hand, 1.57(b) and (g) apply to all other situations and applications and, along with sections (c) through (f) not quoted above, generally define the rules for practice before the PTO with respect to incorporation by reference. Defendants are simply misreading the rule when they claim it applies only to priority claims. Although those rules do not directly apply here, where the Court is considering whether a printed publication incorporates another printed publication by reference, it is still instructive to note that the PTO has determined that the intent to incorporate material by reference must be clearly denoted by actually saying "incorporate by reference" or something similar. Indeed, the PTO's explanation for that requirement is apt here:

Section 1.57(b) clarifies what is acceptable language that perfects an incorporation by reference for essential and non-essential matter, as opposed to incorporation by reference of material as the result of a priority or benefit claim under §§ 1.55 and 1.78 as set forth in § 1.57(a). Applicants sometimes refer to other applications, patents, and publications, including patent application publications, using language which does not clearly indicate whether what is being referred to is incorporated by reference or is just an informational reference. Section 1.57(b)(1) limits a proper incorporation by reference (except as provided in § 1.57(a)) to instances only where the perfecting words ''incorporated by reference'' or the root of the words ''incorporate'' (e.g., incorporating, incorporated) and ''reference'' (e.g., referencing) appear. The Office is attempting to bring greater clarity to the record and provide a bright line test as to where something being referred to is an incorporation by reference. The Office intends to treat references to documents that do not meet this ''bright line'' test as noncompliant incorporations by reference and may require correction pursuant to § 1.57(g). If a reference to a document does not clearly indicate an intended incorporation by reference, examination will proceed as if no incorporation by reference statement has been made and the Office will not expend resources trying to determine if an incorporation by reference was intended.

Changes to Support Implementation of the United States Patent and Trademark Office 21st Centure Strategic Plan, 59 Fed. Reg. 56,500 (2004). The brief mention of the Tutorial in the Boehm-Ching-Say reference is just the sort of "informational reference" the PTO was concerned about, and as a result it should not be deemed an incorporation by reference.

Because the Boehm-Ching-Say reference does not satisfy the legal requirements for incorporating the Tutorial by reference, the disclosures in those two references cannot be combined for purposes of determining whether the Boehm-Ching-Say reference anticipates the asserted claims of the '306 patent.

## V.    CONCLUSION

Defendants have conceded that, under the Court's claim construction, they have no enablement argument and that eight of the original eleven references on which their expert relied do not anticipate the asserted claims. The remaining three references also fail to anticipate. The FasNet and Budrikis references do not disclose each element of the asserted claims because they do not describe systems in which the source having the highest priority is always permitted to

access the shared communication line.  In order to support their anticipation argument based on

those references, defendants have to contradict their own assertions during the Markman

proceedings.  Finally, the Boehm-Ching-Say reference does not effectively incorporate by

reference the additional materials defendants admit are necessary before that reference could

even arguably disclose all limitations in the asserted claims.

     Accordingly, Telcordia respectfully requests that the Court grant summary judgment that

the asserted  '306 patent claims are not invalid as anticipated or from lack of enablement.

ASHBY & GEDDES

*/s/ John G. Day*

_____

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware  19899
(302) 654-1888

*Attorneys for Plaintiff*
*Telcordia Technologies, Inc.*

*Of Counsel:*

Donald R. Dunner
Steven M. Anzalone
Richard H. Smith
James T. Wilson
John M. Williamson
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
1300 I Street, N.W.
Washington, D.C.  20005
(202) 408-4000

Dated:  November 6, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of November, 2006, the attached **REPLY BRIEF OF PLAINTIFF TELCORDIA TECHNOLOGIES, INC. IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT THAT THE '306 PATENT IS NOT INVALID AS ANTICIPATED OR FOR LACK OF ENABLEMENT** was served upon the below-named counsel of record at the address and in the manner indicated:

John W. Shaw, Esquire                                      HAND DELIVERY
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street
Wilmington, DE 19801

Steven C. Cherny, Esquire                                VIA ELECTRONIC MAIL
Latham & Watkins LLP
885 Third Avenue, Suite 1000
New York, NY 10022

David A. Nelson, Esquire                                 VIA ELECTRONIC MAIL
Latham & Watkins LLP
Sears Tower, Suite 5800
Chicago, IL 60606

David M. Farnum, Esquire                                 VIA ELECTRONIC MAIL
Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000
Washington, DC 20004-1304

Sean S. Pak, Esquire                                     VIA ELECTRONIC MAIL
Latham & Watkins
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007

Jack B. Blumenfeld, Esquire                              HAND DELIVERY
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
Wilmington, DE 19899-1347

Matthew D. Powers, Esquire
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065

VIA ELECTRONIC MAIL

*/s/ John G. Day*

_____

John G. Day

172095.1