IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| v. | ) | C.A. No. 04-875-GMS |
| LUCENT TECHNOLOGIES, INC., | ) | |
| Defendant/Counterclaim Plaintiff. | ) | **REDACTED VERSION** |
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| v. | ) | C.A. No. 04-876-GMS |
| CISCO SYSTEMS, INC., | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY OF U. S. PATENT NO. 4,893,306
BASED ON A BEST MODE VIOLATION**

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

John W. Shaw (I.D. #3362)
Monte T. Squire (I.D. #4764)
The Brandywine Building
1000 West Street
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com
msquire@ycst.com

MORRIS, NICHOLS, ARSHT
 & TUNNELL LLP

Jack B. Blumenfeld (I.D. #1014)
Leslie A. Polizoti (I.D. #4299)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
lpolizoti@mnat.com

Original Filing Date: November 6, 2006

Redacted Filing Date: November 14, 2006

OF COUNSEL:

Steven C. Cherny
Latham & Watkins LLP
885 Third Avenue, Suite 1000
New York, NY 10022
(212) 906-1200

David A. Nelson
Israel Sasha Mayergoyz
David C. McKone
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL 60606
(312) 876-7700

Attorneys for Defendant Lucent Technologies Inc.

OF COUNSEL:

Matthew D. Powers
Edward R. Reines
Jessica L. Davis
Sonal N. Mehta
Thomas B. King
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Ryan Owens
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

Attorneys for Defendant Cisco Systems, Inc.

TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. SUMMARY JUDGMENT OF INVALIDITY SHOULD BE GRANTED ....................... 4

    A. The First Prong Is Satisfied: Telcordia Has Failed To Rebut Named Inventor Chao's Admissions That **REDACTED** ................................. 4

        1. Dr. Chao Developed An "Alternative" Framer Chip That Allowed The System To Determine Whether Frames Were Empty And Available "On The Fly" ........................................................................... 4

        2. Telcordia Fails To Rebut Dr. Chao's Testimony That **REDACTED** ............................................................................................... 4

        3. The "On The Fly" Technique Is Not A Mere Production Detail ............... 7

    B. The Second Prong Is Satisfied: Telcordia Has Failed To Rebut Dr. Chao's Admission That **REDACTED** ................... 8

III. CONCLUSION ................................................................................................................. 10

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arthur A. Collins, Inc. v. Northern Telecom Ltd.*
    216 F.3d 1042 (Fed. Cir. 2000) ................................................................................10

*United States Gypsum Co. v. National Gypsum Co.*
    74 F.3d 1209 (Fed. Cir. 1996) ...................................................................................4

# I.
# INTRODUCTION

Defendants' opening brief presented numerous sworn admissions from named inventor Dr. Jonathan Chao that established a best mode violation invalidating the '306 patent. Indeed, for every element of the best mode violation, defendants presented *multiple* admissions from Dr. Chao. Simply put, Dr. Chao candidly admitted that

**REDACTED**

Dr. Chao's only explanation for this best mode violation was that it was the result of a mistake. As Defendants explained in their opening brief, this is legally irrelevant and thus summary judgment should be granted.

With its opposition, Telcordia does not present a declaration from Dr. Chao to attempt to explain away, or retract, any of his many damaging admissions. This failure is particularly significant because Dr. Chao is being paid to support Telcordia in this action[1] and certainly would have been available and willing to submit a declaration if he had anything helpful to say. Indeed, Dr. Chao did submit a declaration in support of Telcordia's opposition to Defendants' motion for summary judgment of non-infringement. Ironically, while that declaration purports to gainsay the unrecanted admissions of the other two named inventors of the '306 patent, Dr. Chao is silent on the issues relating to this motion, where his own admissions are center stage. Dr. Chao's failure to submit a declaration is also significant because such a

---
1.

**REDACTED**

declaration could easily have addressed the Telcordia's proposed bases for disregarding Dr. Chao's admission of a best mode violation: that English is not his first language, that he lacked an understanding of patent law, and that he misconstrued the claims. Telcordia presents attorney argument but no evidence from Dr. Chao to support these "explanations" for his admissions.[2]

Instead of presenting evidence from the proverbial "horse's mouth," Telcordia pieces together, from the existing record, three meritless arguments. First and foremost, Telcordia argues that, despite his unequivocal admission, Dr. Chao did not consider the "on the fly" technique to be his best mode of using the inventions that are actually claimed in the '306 patent. Telcordia bases this argument on a complex, and even turgid, interpretation of the patent specification, without a meaningful analysis of Dr. Chao's testimony. But Dr. Chao was very clear that his

**REDACTED**

Telcordia's attempt to show that the specification somehow limits the "on the fly" technique to unclaimed embodiments makes no sense. *All* embodiments of the claimed inventions require the consideration of whether an incoming frame is "empty and available" because that determination is explicitly required by the claims. Dr. Chao certainly never contended that his best mode "on the fly" technique was irrelevant to the inventions claimed in the patent. Indeed, if he had believed it were so limited,

---

2.  Telcordia's failure to submit a declaration from Dr. Chao on these issues is not surprising. There is no question that Dr. Chao speaks and understands English. Dr. Chao received his Ph.D. in the United States in 1985, and has worked, published and taught here since then. **REDACTED** Nor is there any question that Dr. Chao understood his own patent during his deposition. **REDACTED**

2

Telcordia presumably would have submitted a corrective declaration from Dr. Chao attempting to explain that. Having failed to do so, Dr. Chao's clear admissions that

**REDACTED**

Second, Telcordia argues that the "on the fly" technique is a "production detail." Although the basis for this half-hearted argument is not clear, it appears to be a suggestion that the best mode "on the fly" technique was "interim." However, Dr. Chao's admission that

**REDACTED**

Dr. Chao never even suggested that the "on the fly" technique was interim or a mere production detail. If that were what he believed, presumably Telcordia would have submitted a declaration from him stating so. Telcordia's attempt to rely instead on attorney argument and unwarranted inferences from fragments in the record is, of course, insufficient to create a genuine dispute of material fact as to what Dr. Chao believed was his best mode.

Third, Telcordia argues that Dr. Chao's best mode technique actually is disclosed and enabled by the '306 patent. According to Telcordia, there is no mistake in the patent because the dotted line from the delay unit is not actually intended to show that the parallel data is taken out after the delay unit. This argument conflicts with the *text* of the patent, which makes clear that the dotted line is intended to teach exactly that. In addition,

**REDACTED**       If Telcordia were correct that there was no mistake in the patent, the onus was on Telcordia to submit a corrective declaration from Dr. Chao retracting his testimony. Having failed to do so, Telcordia's argument must be rejected.

## II.

## SUMMARY JUDGMENT OF INVALIDITY SHOULD BE GRANTED

**The First Prong Is Satisfied: Telcordia Has Failed To Rebut Named Inventor Chao's Admissions That The**     **REDACTED**

1. **Dr. Chao Developed An "Alternative" Framer Chip That Allowed The System To Determine Whether Frames Were Empty And Available "On The Fly"**

In their opening brief, Defendants presented extensive testimony from Dr. Chao explaining that     **REDACTED**

Telcordia does not address or contest that testimony through a declaration of Dr. Chao or otherwise. It stands unrebutted.

2. **Telcordia Fails To Rebut Dr. Chao's Testimony That**
   **REDACTED**

Telcordia's primary argument in its opposition is that the "on the fly" best mode technique does not relate to the claimed inventions.

At the outset, the first prong of the best mode test is a subjective inquiry about what the inventor considered his best mode of using the claimed invention. *United States Gypsum Co. v. National Gypsum Co.*, 74 F.3d 1209, 1212-13 (Fed. Cir. 1996) ("This inquiry is wholly subjective."). Here, Dr. Chao clearly explained that     **REDACTED**

*See, e.g.*, Ex. A to D.I. 259,[3] Telcordia's Opposition (Chao Tr.) at 330:5-14.

---

[3] The D.I. numbers cited herein are from C.A. No. 04-876-GMS.

4

Instead of submitting an explanatory declaration from Dr. Chao about what he believed when the application was submitted, Telcordia argues from the specification that Dr. Chao did not consider the "on the fly" technique to be relevant to the claimed inventions. Telcordia's argument is that, because the mistaken and inoperative drawing of Figure 12 is described as applying in "particular situations," Dr. Chao did not consider the "on the fly" technique to apply to the claimed inventions. As a threshold matter, there is no good reason to believe that a description of Figure 12 could somehow undercut Dr. Chao's explicit testimony as to what he considered his best mode. In any event, Telcordia simply ignores the part of the specification that makes clear that the determination of whether a frame is empty is a necessary condition for the patented system to work in *all* embodiments:

> However, a framer unit 53 ***will not read the data from the FIFO 57 unless two conditions are met.*** One is that the "packet-ready" pulse signal from the packetizer 55 is asserted, indicating one packet is completely stored in the FIFO. The ***other condition*** is that the incoming DTDM frame on the serial data input (sdi) of the framer 53 is not already occupied by a valid packet, i.e., the ***incoming DTDM frame is empty.*** Thus, an empty or "emp" signal is transmitted from the framer 53.

Ex. 1 to D.I. 247, Opening Brief ('306 patent) at 9:34-49.

Defendants emphasized this key passage of the specification in their opening brief, and Telcordia's total failure to address the import of this section of the specification is fatal to its position. It is beyond reasonable dispute that the DTDM system claimed in the patent always requires the determination of whether the incoming frame is empty and available; each claim of the patent requires exactly that. This is because the DTDM system by definition has multiple

---

4   Emphases supplied throughout, unless otherwise noted.

tributaries from different sources, each with its own access to the bitstream comprised of DTDM frames. All tributaries after the first one are going to receive some frames that are not empty as a result of the insertions of a packet from the first tributary. Thus, all embodiments require an analysis of whether an incoming frame is empty and available.

In any event, even Telcordia's irrelevant analysis of Figure 12 is flawed. Telcordia places great weight on the fact that the '306 patent describes Figure 12 as applying "e.g." to Figures 5 and 9. However, there mere fact that Figure 12 is described as applying to a couple of exemplary figures does not conflict with Dr. Chao's testimony or the broad statement in the patent that the framer chip *always* has to determine whether an incoming frame is empty and available and his testimony regarding his best mode of making that determination.

At bottom, Telcordia's argument is that the "on the fly" capability is an "option," for use in particular situations and not necessary for the claimed inventions to work. D.I. 259, Telcordia Opposition at 1 ("the delay unit 230 relied on by defendants is 'optional'") and 10 ("the delay unit is merely an optional feature"). To support this position, Telcordia attempts to rely on Dr. Chao's testimony regarding his best mode. Specifically, Telcordia relies on Dr. Chao's testimony that

**REDACTED**

D.I. 259, Telcordia's Opposition at 14. However this testimony *supports* Defendants' position. Dr. Chao views the delay unit circuitry as an option needed for use of the "on the fly" technique to determine whether an incoming frame is empty and available. But this does not conflict with his testimony that the     **REDACTED**

6

**REDACTED**

In sum, each of the claims requires the determination of whether an incoming frame is empty and available. Dr. Chao testified extensively that

**REDACTED**                   That the "on the fly" technique is an option is irrelevant. A best mode is an option. Indeed, a best mode is by definition the best option for how to use the claimed invention. If the best mode were the mode required by the claims, it would be the claimed invention – and by definition disclosed – rather than the best mode for using the invention.

      **3.**      **The "On The Fly" Technique Is Not A Mere Production Detail**

Telcordia argues that Dr. Chao's best mode design for his "on the fly" technique (taking the parallel data out before the delay unit) is a production detail and thus not part of the best mode. Once again, Telcordia ignores the square admissions of Dr. Chao and fails to submit contrary testimony from him.

Telcordia's argument is that the "on the fly" design was an "interim" design, and thus a production detail. *See, e.g.*, D.I. 259, Telcordia Opposition at 23 ("the design defendants now trumpet as the best mode was merely an interim measure and not the final contemplated design."). This argument is flatly inconsistent with Dr. Chao's testimony that

**REDACTED**

7

**REDACTED**

Ex. A to D.I. 259, Telcordia's Opposition (Chao Tr.) at 330:5-14. Telcordia's argument that the "on the fly" technique was "interim" is thus unsupported and conflicts directly with Dr. Chao's testimony. It should be rejected.

Moreover, the record is clear that the "on the fly" design is not a production detail. It was what Dr. Chao considered to be his best mode of practicing the claimed inventions when the patent application was submitted. Indeed, Dr. Chao explained during his deposition that this

**REDACTED**

This is not a "production detail": it is what Dr. Chao himself believes to be his inventive contribution to the claimed inventions of the '306 patent.

**The Second Prong Is Satisfied: Telcordia Has Failed To Rebut Dr. Chao's Admission That** **REDACTED**

In its opening brief, Defendants submitted multiple point-blank admissions from Dr. Chao that

**REDACTED**

In response, Telcordia ignores Dr. Chao's admissions and argues that the dotted line showing the placement of the parallel data out *after* the delay unit should not be understood to

8

show the location of the delay unit. Rather, Telcordia argues that "the person of ordinary skill would understand from the special 'dotted line' depiction that he could not and would not blindly follow the dotted lines and the supposed mistake." D.I. 259, Telcordia Opposition at 30.

Telcordia's argument regarding the dotted line is dubious on its face. The dotted line shows the location of the parallel data out *after* the delay unit, and there is no reason to believe that it would be understood to teach the opposite of what it shows, i.e., placing the paralled data out *before* the delay unit as contemplated by Dr. Chao for his best mode circuit. Moreover, Telcordia's argument ignores the *text* of the patent which describes Figure 12 as showing the parallel data out occurring *after* the delay unit:

> A multiple byte delay unit 230 may be included in the path *between* the serial input 202 and the parallel and serial outputs 208, 206.

Ex. 1 to D.I. 247, Opening Brief ('306 patent) at 17:14-16. As can be seen in Figure 12, as set forth below, this passage specifically directs one skilled in the art to place delay unit 230 (highlighted in red) *between* the serial input 202 (highlighted in blue) and the parallel data out 208 (highlighted in blue):



*Id.* at Fig. 12. In other words, the text of the '306 patent and Figure 12 both teach one of ordinary skill in the art to take the parallel data out *after* the delay unit.

Simply put, Telcordia fails to acknowledge, much less address satisfactorily, the written statement in the patent *confirming* for a person skilled in the art that the dotted line is intended to show the location of the parallel data out.[5] This failure undermines Telcordia's argument and confirms Dr. Chao's admission that

**REDACTED**

## III.

## CONCLUSION

For the reasons set forth in their opening brief and herein, Defendants' motion for summary judgment that the '306 patent is invalid due to a best mode violation should be granted.

---

[5] Telcordia's effort to rely upon its expert witness fails for this same reason. Although Dr. Prucnal obliquely contends that
**REDACTED**
Ex. C to D.I. 259, Telcordia's Opposition (Prucnal Report) at 36, he never confronts the fact that the text and drawing in the patent clearly misdirect persons skilled in the art to believe the parallel data out should be *after* the delay unit. Ex. D to D.I. 259. Telcordia's Opposition (Prucnal Tr.) at 350:14-16
**REDACTED**                                                                    Instead, Dr. Prucnal ignores the problem with the patent which Dr. Chao candidly identified. *Id.* at 348:17-19
**REDACTED**              Such conclusory and unsupported expert testimony cannot block the grant of summary judgment. *See, e.g., Arthur A. Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d 1042, 1046-47 (Fed. Cir. 2000).

| | |
|---|---|
| YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>/s/ John W. Shaw (#3362)<br>John W. Shaw (I.D. #3362)<br>Monte T. Squire (I.D. #4764)<br>The Brandywine Building<br>1000 West Street<br>Wilmington, DE 19801<br>(302) 571-6600<br>jshaw@ycst.com<br>msquire@ycst.com<br><br>OF COUNSEL:<br><br>Steven C. Cherny<br>Latham & Watkins LLP<br>885 Third Avenue, Suite 1000<br>New York, NY 10022<br>(212) 906-1200<br><br>David A. Nelson<br>Israel Sasha Mayergoyz<br>David C. McKone<br>LATHAM & WATKINS LLP<br>Sears Tower, Suite 5800<br>Chicago, IL 60606<br>(312) 876-7700<br><br>Attorneys for Defendant Lucent Technologies Inc. | Morris, Nichols, Arsht & Tunnell LLP<br><br>/s/ Leslie A. Polizoti (#4299)<br>Jack B. Blumenfeld (I.D. #1014)<br>Leslie A. Polizoti (I.D. #4299)<br>1201 North Market Street<br>Wilmington, DE 19899-1347<br>(302) 658-9200<br>jblumenfeld@mnat.com<br>lpolizoti@mnat.com<br><br>OF COUNSEL:<br><br>Matthew D. Powers<br>Edward R. Reines<br>Jessica L. Davis<br>Sonal N. Mehta<br>Thomas B. King<br>Weil, Gotshal & Manges LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065<br>(650) 802-3000<br><br>Ryan Owens<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>(212) 310-8000<br><br>Attorneys for Defendant Cisco Systems, Inc. |

Original Filing Date: November 6, 2006

Redacted Filing Date: November 14, 2006

545394

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2006 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing to Steven J. Balick and John G. Day.

I further certify that I caused copies of the foregoing document to be served on November 14, 2006 upon the following in the manner indicated:

| **BY HAND** | **BY FEDERAL EXPRESS** |
|---|---|
| John G. Day<br>ASHBY & GEDDES<br>222 Delaware Avenue<br>Wilmington, DE 19801 | Don O. Burley<br>FINNEGAN, HENDERSON,<br>  FARABOW, GARRETT & DUNNER<br>901 New York Avenue<br>Washington, DC 20001 |

**BY ELECTRONIC MAIL**

John Day (jday@ashby-geddes.com)
John Williamson (john.williamson@finnegan.com)
York Faulkner (york.faulkner@finnegan.com)
Don Burley (don.burley@finnegan.com)

*/s/ Leslie A. Polizoti*
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com