EXHIBIT A

# United States Court of Appeals for the Federal Circuit

06-1064

02 MICRO INTERNATIONAL LIMITED,

Plaintiff/Counterclaim Defendant-Appellant,

and

02 MICRO, INC.,

Counterclaim Defendant-Appellant,

v.

MONOLITHIC POWER SYSTEMS, INC.,

Defendant/Counterclaimant-Appellee.

Richard L. Stanley Howrey, LLP, of Houston, Texas, argued for plaintiff/counterclaim defendant-appellant and counterclaim defendant-appellant. With him on the brief were Korula T. Cherian and Duane H. Mathiowetz, of San Francisco, California. Of counsel on the brief were Joseph Lin, O2 Micro, Inc., of Santa Clara, California; Charlene M. Morrow, Fenwick & West, LLP, of Mountain View, California; and Michael J. Sacksteder and Heather N. Mewes, Fenwick & West, LLP, of San Francisco, California. Of counsel was C.J. Alice Chen, Fenwick & West, LLP, of Mountain View, California.

Dan L. Bagatell, Perkins Coie Brown & Bain P.A., of Phoenix, Arizona, argued for defendant/counterclaimant-appellee. With him on the brief were James A. DiBoise and Michael Barclay, Wilson Sonsini Goodrich & Rosati, of Palo Alto, California.

Appealed from: United States District Court for the Northern District of California

Judge Claudia Wilken

# United States Court of Appeals for the Federal Circuit

06-1064

02 MICRO INTERNATIONAL LIMITED,

> Plaintiff/Counterclaim Defendant-
> Appellant,

and

02 MICRO, INC.,

> Counterclaim Defendant-
> Appellant,

v.

MONOLITHIC POWER SYSTEMS, INC.,

> Defendant/Counterclaimant-
> Appellee.

_____

DECIDED: November 15, 2006

_____

Before MICHEL, Chief Judge, DYK and PROST, Circuit Judges.

DYK, Circuit Judge.

Appellants 02 Micro International Limited and 02 Micro, Inc. (collectively "02 Micro") appeal the district court's grant of summary judgment of non-infringement in favor of appellee Monolithic Power Systems, Inc. ("MPS"). Specifically, 02 Micro contends that the district court erred in denying it leave to amend its infringement contentions and refusing to allow supplementation of its expert report. Because we find no error in the district court's denial of leave to amend the infringement contentions,

refusal to allow amendment of the expert report, or grant of summary judgment, we affirm.

## BACKGROUND

### I

02 Micro is the holder of U.S. Patent No. 6,259,615 ("'615 patent"), which discloses a circuit for converting direct current ("DC") to alternating current ("AC"). The principal use of the circuit is to convert the direct current supplied by laptop batteries into the alternating current required for the cold cathode fluorescent lamps ("CCFLs") that provide the lighting for computer monitors. By using feedback signals and pulse signals, the circuit controls two pairs of switches so as to regulate the amount of power delivered to the lamp.

Claim 1 of the '615 patent discloses, in relevant part, "a feedback control loop circuit receiving a feedback signal indicative of power being supplied to said [lamp], and adapted to generate a second signal [sic] pulse signal for controlling the conduction state of said second plurality of switches <u>only if said feedback signal is above a predetermined threshold</u>." col.10, l.67-col.11, l.5 (emphasis added).[1] The latter claim

---

[1]     Claim 1 states in full:

1. A DC/AC converter circuit for controllably delivering power to a load, comprising an input voltage source; a first plurality of overlapping switches and a second plurality of overlapping switches being selectively coupled to said voltage source, said first plurality of switches defining a first conduction path, said second plurality of switches defining a second conduction path; a pulse generator generating a first pulse signal; a transformer having a primary side and a secondary side, said primary side selectively coupled to said voltage source in an alternating fashion through said first conduction path and, alternately, through said second conduction

limitation requires that the second set of switches be controlled only if the feedback signal is above a certain threshold.   Claim 18 of the '615 patent discloses a nearly identical limitation;[2] the parties refer to the relevant limitations in claims 1 and 18 collectively as the "only if" limitation.

---

path; a load coupled to said secondary side of said transformer; and a feedback control loop circuit receiving a feedback signal indicative of power being supplied to said load, and adapted to generate a second signal pulse signal for controlling the conduction state of said second plurality of switches only if said feedback signal is above a predetermined threshold; and drive circuitry receiving said pulse signal and controlling a conduction state of said first and second plurality of switches based on said first and second pulse signals, wherein, said drive circuitry alternating the conduction state of said first and second plurality of switches, controlling the overlap time of the switches in the first plurality of switches, and controlling the overlap time of the switches in the second plurality of switches, to couple said voltage source to said primary side.

'615 patent, col.10, l.55-col.11, l.13.

[2]    Claim 18 states in full:

A converter circuit for delivering power to a CCFL load, comprising:

a voltage source;

a transformer having a primary side and a secondary side;

a first pair of switches and a second pair of switches defining a first and second conduction path, respectively, between said voltage source and said primary side;

a CCFL load circuit coupled to said secondary side;

a pulse generator generating a first pulse signal;

a feedback circuit coupled to said load receiving a feedback signal indicative of power being supplied to said load, and adapted to generate a second signal pulse signal for controlling the conduction

II

02 Micro filed suit in the U.S. District Court for the Northern District of California on October 24, 2001, alleging infringement by MPS of claims 1 and 18 of the '615 patent. MPS counterclaimed for a declaratory judgment that the '615 patent was invalid, unenforceable, or not infringed; it also counterclaimed that 02 Micro infringed MPS's U.S. Patent No. 6,316,881 ('881 patent)). (The '881 patent is no longer at issue in the appeal.) Although the complaint did not set forth a specific theory of infringement of the '615 patent, 02 Micro relied on three theories in the course of the proceedings before the district court to explain how the "only if" limitation was satisfied by the accused device. As the district court noted, "[i]n order to determine whether a device infringes the 'only if' limitation, one must compare the feedback signal to the threshold in the allegedly infringing devices." 02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., Nos. C 00-4071 CW, C 01-3995 CW, slip. op. at 8 (N.D. Cal. Feb. 11, 2004).

Under 02 Micro's "Isense" theory, a feedback control loop in the accused device runs between the lamp and Isense pin. The Isense pin measures the current supplied to the lamp in terms of voltage. According to this theory, the "only if" limitation is

state of said second plurality of switches only if said feedback signal is above a predetermined threshold; and drive circuitry receiving said pulse signal and controlling a conduction state of said first and second plurality of switches based on said first and second pulse signals; and

drive circuitry receiving said pulse signal and said feedback signal and coupling said first pair of switches or said second pair of switches to said voltage source and said primary side based on said first and second pulse signals and said feedback signal to deliver power to said load.

'615 patent, col.12, l.45-col.13, l.4 (emphasis added).

satisfied because the second set of switches is not controlled unless the voltage measurement at the Isense pin is greater than a predetermined threshold determined by another pin, called the Bright pin.

In 02 Micro's "open lamp" theory, the feedback control loop runs between the lamp and the open lamp pin, which is designed to recognize a fault at the lamp ("open lamp condition"), such as an unattached or burnt out lamp.  An open lamp condition causes the voltage at the open lamp pin to fall below a certain level, normally 1.2V, which causes all of the switches to stop.  The "only if" limitation is met under this theory because the second set of switches (like all switches) is only controlled when the open lamp pin value is above the threshold of an open lamp condition (i.e., normally 1.2V).

Finally, 02 Micro's "Vsense" theory identifies the same feedback control loop as the Isense theory.  During normal operations, the voltage value at the Isense pin is greater than either 92mV (standard operation), 83mV (minimum operation), or 101mV (maximum operation).  According to this theory, the second set of switches (like all switches) is only controlled during normal operations, which means that the value at the Isense pin must be above the threshold for normal operations, thus satisfying the "only if" limitation.

On May 31, 2002, the court entered a scheduling order setting the case management schedule.[3]  It established a period for discovery with fact discovery ending on November 4, 2002, and expert discovery ending on December 11, 2002.  The

---

[3]    On March 29, 2002, the court had consolidated the case for discovery, and possibly trial, with an earlier case filed by 02 Micro seeking a declaratory judgment of non-infringement and invalidity of MPS's U.S. Patent No. 6,111,814 ("'814 patent"). The '814 patent is not in issue in this appeal.

scheduling order also noted the prior April 19 submission of preliminary infringement contentions and set a June 7 deadline for preliminary invalidity contentions. Finally, the court set a trial date of May 5, 2003. This order was revised on October 7, 2002. In the revised order, the court established deadlines dependent on the service of its claim construction ruling. Final infringement contentions were to be exchanged 20 days after service of the claim construction ruling. Final invalidity contentions were due 20 days later. Under this revised schedule, fact discovery was to be completed by April 21, 2003, and expert discovery by June 3. On April 21, at the joint request of the parties, the court extended fact discovery until May 9 and expert discovery until June 30.

The Northern District of California has adopted local rules that require parties to state early in the litigation and with specificity their contentions with respect to infringement and invalidity.[4]    The ability of parties to amend those contentions is

_____

[4]    Rule 3-1 of the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California governs infringement contentions and states:

> 3-1. Disclosure of Asserted Claims and Preliminary Infringement Contentions.
>
> Not later than 10 days after the Initial Case Management Conference, a party claiming patent infringement must serve on all parties a "Disclosure of Asserted Claims and Preliminary Infringement Contentions." Separately for each opposing party, the "Disclosure of Asserted Claims and Preliminary Infringement Contentions" shall contain the following information:
>
> (a) Each claim of each patent in suit that is allegedly infringed by each opposing party;
>
> (b) Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party

of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus must be identified by name or model number, if known. Each method or process must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;

(c) A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality, including for each element that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function;

(d) Whether each element of each asserted claim is claimed to be literally present or present under the doctrine of equivalents in the Accused Instrumentality;

(e) For any patent that claims priority to an earlier application, the priority date to which each asserted claim allegedly is entitled; and

(f) If a party claiming patent infringement wishes to preserve the right to rely, for any purpose, on the assertion that its own apparatus, product, device, process, method, act, or other instrumentality practices the claimed invention, the party must identify, separately for each asserted claim, each such apparatus, product, device, process, method, act, or other instrumentality that incorporates or reflects that particular claim.

Rule 3-3 governs invalidity contentions and states:

3-3. Preliminary Invalidity Contentions.

Not later than 45 days after service upon it of the "Disclosure of Asserted Claims and Preliminary Infringement Contentions," each party opposing a claim of patent infringement, shall serve on all parties its "Preliminary Invalidity Contentions" which must contain the following information:

(a) The identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious. Each prior art patent shall be identified by its number, country of origin, and date of issue. Each prior art publication must be identified by its title,

restricted.  Apart from amendments designed to take account of the district court's claim construction, amendments are permitted only for "good cause" even though the period allowed for discovery typically will not have expired.

02 Micro filed preliminary infringement contentions as to the '615 patent on April 19, 2002, as required by the local rules, and relied exclusively on the Isense theory. MPS' preliminary invalidity contentions as to the '615 patent were then served on June 7, 2002.  The district court held a claim construction hearing on October 4, 2002, and

---

date of publication, and where feasible, author and publisher. Prior art under 35 U.S.C. § 102(b) shall be identified by specifying the item offered for sale or publicly used or known, the date the offer or use took place or the information became known, and the identity of the person or entity which made the use or which made and received the offer, or the person or entity which made the information known or to whom it was made known. Prior art under 35 U.S.C. § 102(f) shall be identified by providing the name of the person(s) from whom and the circumstances under which the invention or any part of it was derived. Prior art under 35 U.S.C. § 102(g) shall be identified by providing the identities of the person(s) or entities involved in and the circumstances surrounding the making of the invention before the patent applicant(s);

(b) Whether each item of prior art anticipates each asserted claim or renders it obvious.  If a combination of items of prior art makes a claim obvious, each such combination, and the motivation to combine such items, must be identified;

(c) A chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found, including for each element that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in each item of prior art that performs the claimed function; and

(d) Any grounds of invalidity based on indefiniteness under 35 U.S.C. § 112(2) or enablement or written description under 35 U.S.C. § 112(1) of any of the asserted claims.

issued its ruling on December 27, 2002.  Under Patent Local Rule 3-6(a),[5] 02 Micro had

30 days after this claim construction ruling to amend its infringement contentions without

leave of the court.   On January 16, 2003, 02 Micro served its final infringement

contentions, still relying solely on the Isense theory.  Final invalidity contentions were

submitted by MPS twenty days later.  Discovery was on-going during this time period,

and 02 Micro deposed James C. Moyer, MPS's chief integrated circuit engineer, on

February 24-25, 2003.  02 Micro contends that it was only after Dr. Moyer explained the

operation of the open lamp pin that it was able to develop the open lamp theory, though

02 Micro did have documents identifying the open lamp pin as early as March 2002.

On March 17, 2003, 02 Micro requested that MPS stipulate to amendment of 02

Micro's invalidity contentions relating to the two MPS patents that are not in issue in this

appeal.   MPS responded on March 20, 2003, by suggesting reciprocal stipulations

allowing amendments of both infringement and invalidity contentions for all patents in

---

[5]      Patent Local Rule 3-6(a) states:

3-6. Final Contentions.

Each party's "Preliminary Infringement Contentions" and "Preliminary Invalidity Contentions" shall be deemed to be that party's final contentions, except as set forth below.

(a) If a party claiming patent infringement believes in good faith that (1) the Court's Claim Construction Ruling or (2) the documents produced pursuant to Patent L.R. 3-4 so requires, not later than 30 days after service by the Court of its Claim Construction Ruling, that party may serve "Final Infringement Contentions" without leave of court that amend its "Preliminary Infringement Contentions" with respect to the information required by Patent L.R. 3-1(c) and (d).

the case at the close of discovery.  On April 7, 2003, 02 Micro indicated its willingness

to enter such an agreement, provided that the amendments did not involve new

statutory bases for invalidity or new prior art references.[6]  In an April 11 letter MPS

responded that it "[could] not agree" to this proposal because "[t]he changes to the

stipulation proposed by 02 defeats [sic] the purpose of the amendment," though MPS

did indicate its willingness to continue negotiations.  J.A. at 961.  02 Micro responded on

April 15 with substantially the same proposal that it made on April 7, and no further

negotiations took place.  As the May 9, 2003, discovery deadline approached, 02 Micro

counsel telephoned MPS counsel to schedule a date to exchange amended

contentions.  MPS responded by letter on May 14, stating that it had no plans to amend

either its infringement or invalidity contentions and therefore would not stipulate to

amendments; MPS did, however, agree to allow amendment of 02 Micro's invalidity

contentions with respect to MPS' patents.

　　　　Undeterred, 02 Micro sent proposed supplemental infringement contentions

concerning the '615 patent, which included the open lamp theory, to MPS on May 23,

2003.  MPS responded that same day objecting to 02 Micro's "entirely new infringement

theories" and stating that amendment of 02 Micro's contentions "would greatly prejudice

MPS."  J.A. at 1164.  As required by the case management schedule, on May 27, 02

Micro served its opening expert report on infringement, which addressed only the open

lamp theory.  After MPS rejected its renewed request for a stipulation, 02 Micro moved

---

[6]　　　　The second-to-last sentence of 02 Micro's April 7 letter said "[02 Micro] is
willing to agree on an exchange of amended invalidity contentions on the same
schedule."  02 Micro apparently meant "infringement contentions" when it referred to
invalidity contentions.

to amend its infringement contentions on June 6, over three months after the Moyer deposition that had provided the basis for the open lamp theory. Under Patent Local Rule 3-7, amendment of final infringement contentions required leave of the court and a showing of "good cause."[7] 02 Micro claimed "good cause" because the open lamp theory had been developed, based on new evidence disclosed in discovery, after it served its infringement contentions. 02 Micro also asserted "good cause" because MPS originally suggested that it would stipulate to amendments to the contentions but had eventually refused to agree to a stipulation. 02 Micro's motion was supported by three affidavits from its counsel that described the stipulation negotiations and claimed that the open lamp theory could not have been developed without discovery, including the February 24-25 Moyer deposition. One of the affidavits also stated that 02 Micro's attorneys had been busy with other business related to the case between the time MPS rejected the proposed stipulation and the service of 02 Micro's proposed amended infringement contentions.

On July 2 the magistrate judge denied 02 Micro's motion to amend the infringement contentions, finding that 02 Micro's almost three month delay between the Moyer deposition and the service of its proposed amended contentions constituted a lack of diligence. She also held that the existence of negotiations over the proposed

---

[7]    Rule 3-7 states:

3-7. Amendment to Contentions.

Amendment or modification of the Preliminary or Final Infringement Contentions or the Preliminary or Final Invalidity Contentions, other than as expressly permitted in Patent L.R. 3-6, may be made only by order of the Court, which shall be entered only upon a showing of good cause.

stipulation did not justify the delay in amending the contentions because no enforceable agreement was reached, and any such agreement would not be binding on the court in any event. Finally, the magistrate judge found that MPS would be prejudiced by the delay because it would be unable to address the amended contentions in its expert report and would need additional discovery. 02 Micro filed an objection to the magistrate judge's order with the district court judge.

In an attempt to address the prejudice concerns, 02 Micro moved on July 7 to amend the case management schedule to allow MPS to submit a supplemental expert report addressing the open lamp theory. On July 25 02 Micro moved again to amend the case management schedule, seeking new deadlines that would allow for supplementation of expert reports to address the Isense theory and additional expert discovery concerning the supplemental reports.

On the same day, MPS moved for summary judgment of non-infringement. On August 5, 2003, the district court overruled 02 Micro's objection to the magistrate judge's order refusing to allow amendments to the infringement contentions and denied 02 Micro's two pending motions to extend the case management schedule.

02 Micro responded to the summary judgment motion on August 8, relying for the first time on the Vsense theory and including declarations describing this theory from its expert, Robert Erickson, and the inventor of the '615 patent, Yung-Lin Lin. Those declarations also opined that the Vsense and Isense theories were identical. The district court held that these untimely expert reports should not be considered because 02 Micro had only pointed to the alleged stipulation agreement as excusing the untimeliness, and that argument had already been rejected in the context of the

untimely infringement contentions.   It further concluded that, even considering this supplemental expert testimony, 02 Micro had not provided any evidence of infringement.   Although the court acknowledged that Drs. Erickson and Lin had stated that the Vsense and Isense theories were identical, it concluded that the two theories "express different ideas" because "[o]ne makes the 'only if' comparison in units of current, and the other in units of voltage."   02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., Nos. C 00-4071 CW, C 01-3995 CW, slip. op. at 10 (N.D. Cal. Feb. 11, 2004). Having limited the infringement contentions to the Isense theory and finding no evidence in the record supporting this theory, the court granted summary judgment of non-infringement on February 11, 2004.

In denying 02 Micro's motion for reconsideration on September 15, 2004, the magistrate judge clarified that the original ruling rested on the fact that the plaintiff "unreasonably delayed" in moving to amend its infringement contentions.   With the parties' consent, the court then entered an order of final judgment of non-infringement pursuant to Federal Rule of Civil Procedure 54(b).   The district court also dismissed MPS's counterclaim for a declaratory judgment of invalidity of the '615 patent without prejudice.   02 Micro timely appealed.   We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (2000).

## DISCUSSION

This case primarily presents questions concerning the interpretation and application of the Northern District of California's local rules for patent cases.   As noted, a party claiming patent infringement in the Northern District must serve preliminary infringement contentions within ten days of the initial case management conference.

06-1064                                          13

See U.S. Dist. Ct. N.D. Cal. Patent L.R. 3-1.  Among other things, these contentions must specify each claim of each patent that is allegedly infringed, each product that allegedly infringes, and the location in the product where each element of each asserted claim is found.  See id.  The preliminary contentions generally become the final contentions thirty days after the claim construction ruling unless a party serves final infringement contentions.  A party may submit final infringement contentions that differ from the preliminary contentions without leave of the court within the thirty day period after the claim construction ruling only if the amending party believes in good faith that the claim construction ruling or the documents submitted with the other party's invalidity contentions require a change.  See U.S. Dist. Ct. N.D. Cal. Patent L.R. 3-6.  Outside of this thirty day period, amendments or modification to the contentions can only be made "by order of the Court...upon a showing of good cause."  See U.S. Dist. Ct. N.D. Cal. Patent L.R. 3-7.  The district judges in the Northern District of California, including the district judge in this case, have understood the good cause requirement in the local patent rules to require a showing that the party seeking leave to amend acted with diligence in promptly moving to amend when new evidence is revealed in discovery. See J.A at 46 (noting that the plaintiff unreasonably delayed in moving to amend); see also, e.g., ZiLOG, Inc. v. Quicklogic Corp., No. C03-03725 JW, 2006 WL 563057, at *1 (N.D. Cal. March 6, 2006) ("This constitutes sufficient diligence to meet the 'good cause' standard.").

The local patent rules do not specify the actions that the district court may or must take if there is non-compliance with the requirements for disclosure of contentions.

However, the rules are essentially a series of case management orders,[8] and the deadlines for submission of contentions in this case were explicitly included in a supplemental case management order.  The court may impose any "just" sanction for the failure to obey a scheduling order, including "refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence."  Fed. R. Civ. P. 16(f); Fed. R. Civ. P. 37(b)(2)(B).  District judges in the Northern District of California have taken various positions depending on the facts of the particular case as to whether non-compliance with the rules for disclosure of contentions should bar reliance on theories omitted from the preliminary or final contentions.[9]

I

02 Micro appears to contend that, while diligence is the correct standard, the local patent rules are invalid unless they are construed to require a finding of "good cause" whenever a party seeks to amend contentions based on new material revealed in discovery so long as the motion to amend is filed within a "reasonable time" after the close of discovery.  As an initial matter, we must decide whether Federal Circuit or Ninth

---

[8]    See Integrated Circuit Sys. v. Realtek Semiconductor Co., 308 F. Supp. 2d 1106, 1107 (N.D. Cal. 2004) ("The purpose of the Patent Local Rules is to place the parties on an orderly pretrial track which will produce a ruling on claim construction approximately a year after the complaint is filed.").

[9]    Compare, e.g., Informatica Corp. v. Bus. Objects Data Integration, Inc., No. C 02-3378 JSW, 2006 WL 463549, at *2 (N.D. Cal. Feb. 23, 2006) (granting motion to strike new infringement claims because the standard for amendment of contentions was not satisfied); with, e.g., Biogenex Labs. v. Ventana Med. Sys., No. C 05-860 JF (PVT), 2006 WL 2228940, at *4 (N.D. Cal. Aug. 3, 2006) (considering new theory despite non-compliance with patent local rules because "the Court is extremely reluctant to dispose of substantive infringement claims based upon procedural defects").

Circuit law governs the validity and interpretation of the Northern District of California's local patent rules.

"[A] procedural issue that is not itself a substantive patent law issue is nonetheless governed by Federal Circuit law if the issue pertains to patent law, if it bears an essential relationship to matters committed to our exclusive control by statute, or if it clearly implicates the jurisprudential responsibilities of this court in a field within its exclusive jurisdiction." Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1359 (Fed. Cir. 1999) (en banc in relevant part) (internal citations and quotation marks omitted). More recently, we have explained that in matters of procedure we "will apply the law of the regional circuit to which district court appeals normally lie, unless the issue pertains to or is unique to patent law." Sulzer Textil A.G. v. Picanol N.V., 358 F.3d 1356, 1363 (Fed. Cir. 2004) (internal quotation marks omitted). However, "we will apply our own law to both substantive and procedural issues intimately involved in the substance of enforcement of the patent right." Id. (internal quotation marks omitted).

There is an important distinction between local rules of general applicability, which by definition are not unique to patent law and where we apply regional circuit law,[10] and local rules that only apply to patent cases. However, we need not decide in this case whether Federal Circuit law governs the validity and interpretation of all procedural rules unique to patent cases. The issue here is somewhat narrower for the

---

[10]    See, e.g., Slip Track Sys., Inc. v. Metal-Lite, Inc., 304 F.3d 1256, 1270 (Fed. Cir. 2002) (applying Ninth Circuit law to determine whether good cause had been shown for modifying the pre-trial scheduling order under Fed. R. Civ. P. 16(b)); Bose Corp. v. JBL, Inc., 274 F.3d 1354, 1360 (Fed. Cir. 2001) (applying First Circuit law to the exclusion of evidence of a prior art reference under Federal Rule of Evidence 403 because the evidence lacked probative value and the other party would be prejudiced).

local rules in question are not only unique to patent cases but also are likely to directly affect the substantive patent law theories that may be presented at trial, being designed specifically to "require parties to crystallize their theories of the case early in the litigation" so as to "prevent the 'shifting sands' approach to claim construction." <u>Atmel Corp. v. Info. Storage Devices, Inc.</u>, No. C 95-1987 FMS, 1998 WL 775115, at *2 (N.D. Cal. 1998). Under such circumstances we conclude that issues concerning the validity and interpretation of such local rules are "intimately involved in the substance of enforcement of the patent right," <u>Sulzer Textil</u>, 358 F.3d at 1363, and must be governed by the law of this circuit.

This conclusion is supported by our precedent. For example, in <u>Advanced Cardiovascular Systems, v. Medtronic, Inc.</u>, 265 F.3d 1294 (Fed. Cir. 2001), we reviewed the denial of leave to amend a response chart under the then-existing Northern District of California rules to add a new statutory basis for invalidity. We held that Federal Circuit law applied because "[d]etermining the sufficiency of notice regarding defenses asserted under specific statutory provisions of the patent laws clearly implicates the jurisprudential responsibilities of this court within its exclusive jurisdiction." <u>Id.</u> at 1303; <u>see also</u> <u>Genentech, Inc. v. Amgen, Inc.</u>, 289 F.3d 761, 774 (Fed. Cir. 2002) (applying Federal Circuit law in upholding the district court's exclusion of the doctrine of equivalents theory of infringement under local rules requiring the submission of claim charts in patent cases and providing standards for the amendment of the claims). Since the Northern District of California's local patent rules on amendment of infringement contentions are unique to patent cases and have a close

relationship to enforcement of substantive patent law, we proceed to review their validity and interpretation under Federal Circuit law.

Turning to the merits of 02 Micro's claim, we do not doubt our power in the appropriate circumstance to refuse to enforce a local rule that unduly limits discovery in patent cases.[11]  To be valid, local rules must be consistent with both acts of Congress and the Federal Rules of Civil Procedure.  See 28 U.S.C. § 2071(a) (2000); Fed. R. Civ. P. 83(a)(1).  A local rule need not be directly contradictory to a federal rule to be invalid; a local rule that is inconsistent with the purposes of a federal rule is also invalid.  See Whitehouse v. U.S. Dist. Ct. for Dist. of Rhode Island, 53 F.3d 1349, 1363 (1st Cir. 1995).  It is foreseeable that a local patent rule could conflict with the spirit, if not the letter, of the broad discovery regime under the Federal Rules of Civil Procedure, especially given the particular importance of discovery in complex patent cases.  See generally 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure ("Wright & Miller") §§ 1202, 2001 (2d ed. 1994).

In saying that amendments to contentions must be permitted as a matter of course when new information is revealed in discovery, 02 Micro incorrectly seems to assume that the discovery rules are designed solely to enable a claimant to develop information to support its claim.  While a party asserting a claim or counterclaim must have a reasonable basis for filing suit, the Federal Rules require only notice pleading by the claimant.  See Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512-14 (2002); see also Fed. R. Civ. P. 8.  Given the simplified notice pleading system, the discovery allowed by

---

[11]    The local patent rules in this case explicitly yield to the Federal Rules of Civil Procedure in the event of a direct conflict.  See U.S. Dist. Ct. N.D. Cal. Patent L.R. 2-5.

the rules serves two purposes.  First, discovery allows the plaintiff to develop facts to support the theory of the complaint and allows the defendant to develop facts to support its defenses.  See Hickman v. Taylor, 329 U.S. 495, 501 (1947).  Second, discovery is designed to allow the defendant to pin down the plaintiff's theories of liability and to allow the plaintiff to pin down the defendant's theories of defense, thus confining discovery and trial preparation to information that is pertinent to the theories of the case. See id.; Wright & Miller § 2001; see also Fed. R. Civ. P. 33, advisory committee's note to 1970 amendment of subsection (b) ("As to requests [via interrogatories] for opinions or contentions that call for the application of law to fact, they can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery.").

In practice the latter objective—allowing the parties to discover their opponent's theories of liability—has been difficult to achieve through traditional discovery mechanisms such as contention interrogatories.  Answers to such interrogatories are often postponed until the close of discovery, see Fed. R. Civ. P. 33(c), or are amended as a matter of course during the discovery period, see Wright & Miller § 2181 (noting that courts should allow amendments to interrogatories as parties complete their investigations and develop a full understanding of the case).  The local patent rules in the Northern District of California are designed to address this problem by requiring both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery.  The rules

thus seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories.[12]

02 Micro is certainly correct that refusing to allow any amendment to contentions based on new information developed in discovery could be contrary to the spirit of the Federal Rules. The Federal Rules replaced a system in which the issues had to be conclusively defined at the outset of litigation through the pleadings, with a system that relied on discovery and pretrial hearings to gradually identify the precise issues in dispute as more information became available. See Hickman, 329 U.S. at 500; Wright & Miller § 2001; see also Swierkiewicz, 534 U.S. at 512 ("This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."). If a local patent rule required the final identification of infringement and invalidity contentions to occur at the outset of the case, shortly after the pleadings were filed and well before the end of discovery, it might well conflict with the spirit, if not the letter, of the notice pleading and broad discovery regime created by the Federal Rules. But we see nothing in the Federal Rules that is inconsistent with local rules requiring the early disclosure of infringement and invalidity contentions and requiring amendments to contentions to be filed with diligence. If the parties were not required to amend their contentions promptly after discovering new information, the contentions requirement

---

[12]    See Nova Measuring Instruments Ltd. v. Nanometrics, Inc., 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006) ("The [patent local] rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed.").

would be virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation.

Thus, we reject 02 Micro's apparent argument that "good cause" must exist for amending its infringement contentions, without regard to its diligence in doing so, merely because new evidence was revealed during discovery. We agree with the Northern District of California that "good cause" requires a showing of diligence. We note that the Ninth Circuit in a related context has reached the same conclusion. See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) (holding that the good cause standard for modification of a case management order under Fed. R. Civ. P. 16(b) "primarily considers the diligence of the party seeking the amendment"); see also Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment of section (b) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").

II

We turn then to 02 Micro's second contention—that the district court abused its discretion in holding that it failed to amend its contentions with diligence in this case. The burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence. See Genentech, 289 F.3d at 774 (noting that "Genentech does not assert any satisfactory reasons as to why it should be allowed to amend its claim chart"). Decisions enforcing local rules in patent cases will be affirmed unless clearly unreasonable, arbitrary, or fanciful; based on erroneous conclusions of law; clearly erroneous; or unsupported by any evidence. See Genentech, 289 F.3d at 774.

Here, the district court's finding of a lack of diligence by 02 Micro was not unreasonable or arbitrary. 02 Micro had reason to know of the open lamp theory as early as March 2002 when it received a data sheet identifying the open lamp pin as part of MPS's initial disclosures. Even accepting 02 Micro's contention that it could not know how the open lamp pin operated until the Moyer deposition in late February 2003 and focusing on the period after this deposition, as the district court did, 02 Micro waited almost three months, until May 23, to serve its proposed amended contentions and two more weeks to formally move to amend.

02 Micro makes three arguments to establish its diligence. First, it claims that the on-going negotiations for a stipulation to joint amendments of infringement and invalidity contentions justified its delay. If there had been an enforceable agreement between the parties, this likely would have satisfied the diligence requirement. Here the letters between the parties reflect offers and counteroffers, but the district court did not err in concluding that they never constituted the "meeting of the minds" required for an enforceable agreement. See Joseph M. Perillo, 1 Corbin on Contracts § 4.13 (Rev. ed. 1993). It is also possible that reliance on a tentative agreement concerning extensions reached by the parties in negotiations or misleading conduct by the opposing party (leading the moving party to believe that an agreement would be reached) would under some circumstances justify delay. Here, however, there was no tentative agreement, and no misleading conduct. The district court did not err in concluding that the mere existence of good faith negotiations over a possible stipulation was insufficient to excuse 02 Micro's delay.

02 Micro also contends that the delay was justified by the need "to digest and marshal [the] evidence, develop the new theory, and then chronicle the complete theory in contentions and expert reports." Appellants' Br. at 44-45. It is certainly possible that time was required after the Moyer deposition to sufficiently develop the open lamp theory, but 02 Micro failed to establish that it required three months to do so. In support of its motion, 02 Micro merely provided declarations from its counsel stating that the lawyers were busy with discovery during the delay period from February 25 to June 6. Those affidavits do not explain the relationship between this work and the open lamp theory, nor did 02 Micro offer a declaration from their expert explaining what he was doing during this time to develop the theory or supporting the need for additional time to develop the theory.

Finally, 02 Micro argues that MPS's statement, in opposing leave for 02 Micro to amend its contentions, that "MPS, its engineers, [and] its expert...will need months" to analyze and respond to the open lamp theory shows that 02 Micro was diligent in waiting three months between first learning the facts necessary to develop the open lamp theory and moving to amend its contentions. Appellants' Br. at 46. However, this statement provides no evidence of diligence by 02 Micro. It does not explain what 02 Micro was actually doing to develop the open lamp theory during the over three-month delay between the Moyer deposition and the June 6 motion to amend.

Given 02 Micro's delay in moving to amend its infringement contentions and its lack of adequate explanation for this delay, we conclude that the district court did not abuse its discretion in finding a lack of diligence and therefore a lack of "good cause." Having concluded that the district court could properly conclude that 02 Micro did not

act diligently in moving to amend its infringement contentions, we see no need to consider the question of prejudice to MPS.

III

02 Micro also contends that the district court abused its discretion in rejecting its two efforts to supplement its expert report. The parties agree that the denial of leave to supplement the expert report was an evidentiary ruling to which this court should apply the Ninth Circuit's abuse of discretion standard. See Rhodia Chimie v. PPG Indus., Inc., 402 F.3d 1371, 1376 (Fed. Cir. 2005); Columbia Pictures Television, Inc. v. Kyrpton Broad. of Birmingham, Inc., 259 F.3d 1186, 1195 (9th Cir. 2001).

First, in its July 25 motion, 02 Micro sought leave to amend its original expert report to address the Isense theory. We conclude that the district court did not abuse its discretion in denying this motion; 02 Micro has never adequately explained why the Isense theory was not included in the original expert report. In its motion, 02 Micro only argued that it "acted in reliance" on "an agreement to exchange amended infringement contentions at the close of discovery." Just as this alleged (but non-existent) agreement did not excuse the late filing of 02 Micro's amendment to its infringement contentions, that claimed agreement does not support an amendment to the expert report.

In response to the summary judgment motion, 02 Micro again tried to offer supplemental expert evidence, this time in the form of declarations on the Vsense theory from its expert, Dr. Erickson, and the inventor of the '615 patent, Dr. Lin.[13] Drs.

---

[13]    On appeal, 02 Micro contends that Dr. Lin was a general, not expert, witness. However, the district court characterized Dr. Lin's testimony as "supplemental expert testimony," 02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., Nos. C 00-4071 CW,

Erickson and Lin opined that the Vsense theory expressed the same idea as the Isense theory and therefore their declarations supported the Isense infringement contentions. The court refused to consider this evidence, finding that 02 Micro once again argued that there had been an agreement to stipulate to amendments, an argument that had already been rejected in the context of the motion to amend the infringement contentions. Under these circumstances, we see no need to decide whether the district court was correct in concluding that the Vsense and Isense theories were identical.[14] Even if they were identical, as 02 Micro contends, 02 Micro failed to show diligence in submitting the expert reports, and the court plainly had the authority to exclude the untimely reports. Federal Rule of Civil Procedure 37(c)(1) authorizes the exclusion of evidence that was not disclosed as required by Federal Rule of Civil Procedure 26(a). Under Rule 26(a)(2), a party must disclose, as directed by the court, its expert witnesses and a report that "contain[s] a complete statement of all opinions to be expressed and the basis and reasons therefor." In this case, the court directed that initial expert reports be submitted by May 27, 2003, and rebuttal reports by June 11. Since the Vsense theory was not disclosed in these expert reports, as required by Fed. R. Civ. P. 26(a)(2), the court did not abuse its discretion in excluding the evidence. See Fed. R. Civ. P. 37(c)(1).

---

C 01-3995 CW, slip. op. at 9 (N.D. Cal. Feb. 11, 2004), and we see no error in this characterization.

[14] In this respect, the district court appeared to be mistaken when it concluded that the Isense and Vsense theories were different because one made the "only if" comparison in units of current and the other in units of voltage. The appellee admits that both theories do depend on a voltage reading.

IV

02 Micro contends that, even if the district court's rulings taken individually were not erroneous, the combination of the court's denial of its amendment of the infringement contentions to include the open lamp theory and refusal to allow supplementation of the expert reports to include the Isense or Vsense theory was effectively a dismissal. 02 Micro argues that the district court abused its discretion in imposing this sanction, rather than a lesser sanction that would allow resolution of the case on the merits.

Some cases cited by 02 Micro in support of its argument are distinguishable because they involve the exclusion of evidence as a sanction for discovery abuses. See Heartland Bank v. Heartland Home Fin., Inc., 335 F.3d 810 (8th Cir. 2003); United States v. Sumitomo Marine & Fire Ins. Co., 617 F.2d 1365 (9th Cir. 1980). In this case the court excluded the evidence because of the failure to comply with the disclosure deadlines required by the local patent rules and the case management order. While there may be circumstances in which the exclusion of evidence as a sanction for the failure to comply with a case management order would be an abuse of discretion,[15] both the Ninth Circuit and this court have concluded that the exclusion of evidence is often an appropriate sanction for the failure to comply with such deadlines. See SanDisk Corp. v. Memorex Prods., Inc., 415 F.3d 1278, 1292 (Fed. Cir. 2005) (finding no abuse of discretion in exclusion of evidence pertaining to theories of claim construction and

---

[15]    See, e.g., Ty, Inc. v. Softbelly's, Inc., 353 F.3d 528 (7th Cir. 2003) (holding that discriminatory sanctions imposed on one party for a minor violation were an abuse of discretion); Potlatch Corp. v. United States, 679 F.2d 153 (9th Cir. 1982) (holding that it was an abuse of discretion to exclude evidence where the moving party had acted diligently).

infringement not disclosed as required by the local patent rules and the court's scheduling order); <u>Wong v. Regents of Univ. of Cal.</u>, 410 F.3d 1052, 1060 (9th Cir. 2005) ("Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence."). We see no abuse of discretion in this case, given the significance of the omitted material and 02 Micro's lack of diligence.

V

We are left to consider 02 Micro's challenge to the district court's grant of MPS's motion for summary judgment. We review a district court's grant of summary judgment of non-infringement without deference. <u>Flex-Rest, LLC v. Steelcase, Inc.</u>, 455 F.3d 1351, 1357 (Fed. Cir. 2006). Summary judgment is appropriate only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). Since 02 Micro's infringement contentions were limited to the Isense theory and 02 Micro failed to timely provide evidence in support of that theory, the district court did not err in granting summary judgment.

CONCLUSION

For the reasons discussed above, the district court did not abuse its discretion in denying 02 Micro's motion to amend its final infringement contentions and rejecting 02 Micro's efforts to supplement its expert report to include evidence on the Isense and Vsense theories. Based on these rulings, the grant of summary judgment was proper.

<u>AFFIRMED</u>

COSTS

No costs.