IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-875 (GMS) |
| | ) | |
| LUCENT TECHNOLOGIES, INC., | ) | REDACTED – PUBLIC VERSION |
| | ) | |
| Defendant. | ) | |
| | ) | |
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-876 (GMS) |
| | ) | |
| CISCO SYSTEMS, INC., | ) | REDACTED – PUBLIC VERSION |
| | ) | |
| Defendant. | ) | |

## **DEFENDANTS' REPLIES IN SUPPORT OF THEIR MOTIONS *IN LIMINE***

YOUNG, CONAWAY, STARGATT &
TAYLOR, LLP
John W. Shaw (#3362)
Monte T. Squire (#4764)
1000 West Street, 17th Floor, P.O. Box 391
Wilmington, DE  19899
(302) 571-6600

*Attorneys for Lucent Technologies, Inc.*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market Street
Wilmington, DE  19899
(302) 658-9200

*Attorneys for Cisco Systems, Inc.*

Originally Filed:  March 1, 2007
Redacted Version Filed:  March 8, 2007

Defendants Cisco Systems, Inc. and Lucent Technologies, Inc. respectfully submit the following motions:

## **Joint Motions**

Exhibit 1     Reply In Support Of Motion *In Limine* No. 1 Re:  Unsupported Damages Theories

Exhibit 2     Reply In Support Of Motion *In Limine* No. 2 Re:  Uncorroborated Evidence of Conception

Exhibit 3     Reply In Support Of Motion *In Limine* No. 3 Re:  Advice of Counsel

Exhibit 4     Reply In Support Of Motion *In Limine* No. 4 Re:  *Telcordia v. Fore Systems* License and Settlement Agreements

## **Cisco's Motion**

Exhibit 5A    Cisco's Reply In Support Of Motion *In Limine* No. 5 Re:  Hyperbolic and Prejudicial Argument or Evidence

## **Lucent's Motion**

Exhibit 5B    Lucent's Reply In Support Of Motion *In Limine* No. 5 Re:  References to the Alcatel-Lucent Merger

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

*/s/ John W. Shaw*

_____
John W. Shaw (#3362)
Monte T. Squire (#4764)
1000 West Street, 17th Floor, P.O. Box 391
Wilmington, DE  19899
(302) 571-6600
  *Attorneys for Lucent Technologies, Inc.*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti*

_____
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market Street
Wilmington, DE  19899
(302) 658-9200
  *Attorneys for Cisco Systems, Inc.*

# EXHIBIT 1

**REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 1**
**RE: UNSUPPORTED DAMAGES THEORIES**

## I.    TELCORDIA SHOULD BE PRECLUDED FROM SEEKING DAMAGES ON REVENUE FOR PRODUCTS IT ADMITS DO NOT INFRINGE

Telcordia knows that it is not entitled to a royalty for the boxes Defendants sold without SRTS capable cards, and its desire to roll the dice in order to present the jury with a big damages claim is not a sufficient reason for the Court to allow it to do so.

Telcordia should not be allowed to pursue its litigation-inspired desire to seek exactly such admittedly undeserved royalties.

First, Defendants' motion is not "a belated summary judgment motion." D.I. 298 at 1.[2] Defendants seek to exclude evidence and argument that is plainly unsupported and risks extreme prejudice and juror confusion. Accordingly, this is a classic motion *in limine* based upon Fed. R. Evid. 403, not a summary judgment motion. In addition, the relief requested is expressly contemplated by Rule 16(c). Defendants ask the Court to preclude Telcordia from seeking tens of millions of dollars from Defendants for sales that Telcordia's own expert testified cannot infringe. "Weed[ing] out unmeritorious claims" is the precise purpose of Rule 16(c), which was added to "promot[e] efficiency and conserve[e] judicial resources *by identifying the real issues prior to trial.*" *Smith v. Gulf Oil Co.*, 995 F.2d 638, 642 (6th Cir. 1993) (emphasis added).[3]

---
1

---

2   All D.I. numbers are from *Telcordia v. Cisco*, Civil Action No. 04-876-GMS.

3   In *Smith Corp. v. Lewis, Overbeck & Furman*, the court addressed the important distinction between Rule 16 and Rule 56, stating that "if a ruling for the moving party in a Rule 56 summary judgment motion does not dispose of the entire case, or of an entire cause of action within a larger case, then it is not a Rule 56 motion at all." 777 F. Supp. 1405, 1407 n.4 (N.D. Ill. 1991) (reversed on other grounds). Defendants are not asking the Court to dispose of the case or a cause of action, but to narrow the issues to those that legitimately should be tried. "Pretrial resolution of this sort of significant but not necessarily dispositive legal issue *is more comfortably placed under the rubric of Rule 16* [than Rule 56], which grants the trial judge broad discretion to shape the course of litigation." *Id.*

Second, Telcordia completely misapplies *Stryker Corp. v. Intermedics Orthopedics, Inc.*, and fails to confront the major factual differences between this case and *Stryker*. *Stryker* involved a dispute between direct competitors concerning recovery of lost profits for a patented system consisting of a hip prosthesis and a distal sleeve. 96 F.3d 1409, 1412-13 (Fed. Cir. 1996). There was no dispute that defendant infringed *by always supplying the complete patented system* (prosthesis and sleeve) to doctors. The issue was whether plaintiff could recover lost profits for instances when a prosthesis was installed without a sleeve even though the entire infringing system had been supplied to the doctors.

Telcordia suggests that *Stryker* presented a situation where damages were awarded on noninfringing systems which did not include the required sleeve element, the theory it needs to sell to the Court in order to pursue damages for every box sold by Defendants. But that was not the case. In *Stryker*, the defendant always made and supplied *entire* infringing systems *comprised of all of the required elements*. The district court noted that the defendant there "*always* manufactured the [hip prosthesis] with a sleeve option." *Id.* at 1416.[4] On these facts, the court awarded lost profits for all hip prostheses because plaintiff "irretrievably lost a sale each time the surgeon went into the operating room *with the 'full complement' of [ ] components.*" *Id.* at 1417. The Federal Circuit affirmed, reasoning that "[i]t does not matter if the surgeon installed the [accused] system without the distal sleeve because the compensable injury had already occurred—when the [accused system] was *supplied* to the surgeon." *Id.*

This case is just the opposite of *Stryker*. Defendants indisputably *do not* supply an SRTS card to every customer that purchases a box – in fact, very few customers receive an SRTS card. This is not a *Stryker* situation where the customer is supplied the entire infringing apparatus but chooses to use only part of the apparatus. Rather, the overwhelming majority of boxes are supplied without an SRTS card, and in all cases a customer must separately purchase an SRTS

---

[4]     In *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 418 F. Supp. 2d 1021 (S.D. Ind. 2006), the district court distinguished *Stryker* on exactly this same ground. As the court explained, in *Stryker*, each time the surgical kit was supplied an act of direct infringement had occurred.

card in order to use it. Most accused boxes never have an SRTS card, as evidenced by the huge disparity between the numbers of cards and boxes sold.

Third, there is no basis for Telcordia's reliance on sections 271(b) and (c) to artificially inflate its damages base. The "patentee always has the burden to show direct infringement *for each instance* of indirect infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2005). Applying this common sense rule in the damages context, the Federal Circuit has held that there is no cognizable liability "on which to base a damages award under the patent laws without an act of infringement to warrant it." *Golden Blount Inc. v. Patterson Co.*, 438 F.3d 1354, 1373 (Fed. Cir. 2006) (holding that damages for indirect infringement should be reduced for components that were returned before assembly into an infringing product). Put simply, the amount of indirect infringement *cannot* exceed the amount of direct infringement, and the amount of direct infringement cannot exceed the number of SRTS cards supplied to customers by Defendants.

## II.    TELCORDIA SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE REGARDING CISCO'S FOREIGN SALES

Telcordia should be precluded from arguing that it is entitled to damages based on Cisco's foreign sales because it has not connected any foreign sales to any allegedly infringing domestic activities. Cisco's 30(b)(6) witness did not testify that the accused products are manufactured in the U.S., but rather that Cisco *outsources* manufacturing, and Cisco employees in the U.S. only *administratively manage* the logistics relating to this outsourcing. *See, e.g.*, Exh. 1-H [05/31/06 Fujii Depo] at 143:6-14.[5] Moreover, the information Telcordia relies on *grossly* overstates foreign sales because it includes products not accused of infringement, including products the Court removed from this case. Telcordia's expert does not provide any cognizable basis for admittedly "estimating" foreign sales for the accused products. Exh. 1-I at 47.

---

[5]    For the '763 patent, Telcordia does not even identify an infringement *theory* that would cover foreign sales.  Cisco's manufacture of the equipment used at a single node cannot legally constitute infringement because the claims of the '763 patent are directed to "a communications network in which a plurality of nodes are connected to form a loop."

# TAB G

## FULLY REDACTED

# TAB H

## FULLY REDACTED

# TAB I

## FULLY REDACTED

EXHIBIT 2

## REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 2
## RE: UNCORROBORATED EVIDENCE OF CONCEPTION

This Court ordered Telcordia to identify a bright line conception date for the '633 patent to avert a never-ending game of "prior art hopscotch" in which it would continually re-adjust its conception date in response to newly-identified prior art. C.A. No. 04-875, D.I. 54 [Oct. 11, 2005 Tr.] at 41:4-14. Telcordia now attempts to play "prior art hopscotch" anyhow, arguing that, in the event the France Telecom prior art is invalidating, Telcordia actually conceived of the invention prior to August 1991. This is improper and should not be allowed. More importantly, even if it were allowed, Telcordia's uncorroborated inventorship evidence is legally impermissible. Contrary to Telcordia's opposition, the corroboration "challenge" is not just to provide evidence beyond "mere oral testimony," but rather to provide evidence that is truly *independent* of the inventors. Telcordia's evidence lacks this crucial – and legally necessary – quality and should be excluded.

## I.    TELCORDIA IS BOUND TO ITS SWORN CONCEPTION DATE

It is fundamental that to prevent "prior art hopscotch," courts must require patentees to affirmatively declare solid conception dates for their inventions. It is equally fundamental that patentees cannot declare, in response to newly identified prior art, that their conception date was meant to be contingent upon whether that art is later determined to be novelty-destroying. Simply put, a patentee should not be allowed to choose its conception date "after the fact." This principle squarely applies here because Cisco notified Telcordia five months in advance of this Court's Order that it would rely on an August 1991 France Telecom fax as an invalidity reference. Exh. 2-H [5/9/05 Interrogatory Responses]. Thus, Telcordia was undeniably on notice that it needed to identify a conception date responsive to this fax if it wanted to attempt to back-date to avoid that prior art. Telcordia failed to do so, and its evidence should be excluded.

## II.    TELCORDIA'S INVENTORSHIP EVIDENCE IS LEGALLY IMPROPER BECAUSE IT IS *UNCORROBORATED*

Telcordia argues that the corroboration requirement does not apply to its alleged pre-August 1991 acts of inventorship and, even if it did, that Lau and Fleischer's alleged

1

inventorship acts before the August 1991 fax are corroborated. Telcordia's arguments fail.

### A.     Telcordia Is Obligated To Corroborate Its Proof Of Alleged Acts Of Inventorship Including Those Prior To August 26, 1991

Through a fax dated August 26, 1991 from Pierre Adam, France Telecom informed the named inventors about key SRTS concepts. Telcordia confirmed this fact in its September 4, 1991 reply to France Telecom. This creates two invalidity defenses. First, because the named inventors derived key inventorship information from France Telecom's fax, the information is prior art and is invalidating pursuant to § 271(f), even if it discloses only part of the invention. *OddzOn Prods. v. Just Toys*, 122 F.3d 1396, 1399 (Fed. Cir. 1997). Second, because France Telecom contributed core ideas, its engineers are inventors and the patent is invalid for improper inventorship. *Pannu v. Iolab Corp.*, 155 F.3d 1344 (Fed. Cir. 1998). Telcordia argues in its opposition, and elsewhere, that it did not derive information from France Telecom because it conceived of the invention *before* it received France Telecom's fax. It is clear that Telcordia intends to argue that the named inventors are the sole inventors for this same reason. In other words, Telcordia will argue that, insofar as France Telecom's contributions are inventive contributions, the named inventors did it first.

It is thus clear that Telcordia's attempt to prove inventorship prior to France Telecom's contributions must be corroborated. Telcordia concedes in its opposition that the corroboration requirement "may" apply "where the inventors attempt to show they previously understood something later communicated to them" to avoid a derivation defense under § 102(f). C.A. No. 04-875, D.I. 310 at n.4. In *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, No. C 92-20643 RMW, 1995 U.S. Dist. LEXIS 22335, at *5 (N.D. Cal. 1995) (attached as Exh. 2-I), the court explained that the corroboration requirement applies to this very situation: "[T]he policy behind corroboration for establishing priority applies to a claim that those in the field were familiar with the idea of the invention thus making it obvious." Accordingly, Telcordia must corroborate its claim of conception regardless of the type of prior art it claims the France Telecom fax to be.

2

**B.    Only Evidence Independent Of The Inventor Can Corroborate Conception**

It is well-established that the touchstone of proper corroborating evidence is its *independence* from the inventor. *Hahn v. Wong*, 892 F.2d 1028, 1032 (Fed. Cir. 1989). In *Hahn*, the Federal Circuit rejected an attempt by inventors, like the named inventors here, to rely on their own documents that had not been independently corroborated. The Federal Circuit explained that the inventor "must provide independent corroborating evidence *in addition to his own statements and documents*." *Id.* at 1032; *see also Coleman v. Dines*, 754 F.2d 353, 360 (Fed. Cir. 1985) (The "rule of reason . . . does not dispense with the requirement for some evidence of independent corroboration."). District courts have applied this rule to preclude, as a matter of law, the same attempts to prove inventive facts through an inventor's testimony and non-independent documents that Telcordia now makes. *See, e.g., Transocean Offshore Deepwater Drilling v. Globalsantafe Corp.*, 443 F. Supp. 2d 836, 856 (S.D. Tex. 2006) (finding no authority "that the testimony of an inventor together with his own undisclosed and unwitnessed drawings is sufficient to create a genuine issue of material fact as to when conception occurred"); *Applied Materials*, 1995 U.S. Dist. LEXIS 22335, at *4 (precluding an inventor's attempt to rely on a non-independent document for inventorship because of doubts that "an unwitnessed drawing, although bearing a purported date, would be sufficient proof of identity in point of time").

Importantly, Telcordia's opposition, like its motion, fails to point to any *independent* corroborating evidence for the alleged pre-August 1991 inventive facts. Instead, Telcordia urges that self-serving inventor documents and the mere fact that Telcordia was working on SRTS corroborate their purely inventor-derived story of conception. If this were permitted, the corroboration requirement would be gutted entirely. In fact, Telcordia still claims as "missing" lab notebooks for both Lau and Fleischer, even though Bellcore supposedly required them to maintain such notebooks and have each page independently witnessed. Exh. 2-J [May 11, 2006 Fleischer Tr.] at 191:20-195:5. This fact illustrates the high level of doubt surrounding Telcordia's claim of conception prior to France Telecom's August 1991 fax.

3

# TAB H

## FULLY REDACTED

TAB I

LEXSEE 1995 US DIST LEXIS 22335



Positive
As of: Feb 28, 2007

APPLIED MATERIALS, INC., Plaintiff, v. ADVANCED SEMICONDUCTOR
MATERIALS AMERICA, INC., EPSILON TECHNOLOGY INC., doing business
as ASM EPITAXY, and ADVANCED SEMICONDUCTOR MATERIALS
INTERNATIONAL N.V., Defendants.

NO. C 92-20643 RMW

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA

*1995 U.S. Dist. LEXIS 22335*

**April 25, 1995, Decided**
**April 25, 1995, Filed**

**DISPOSITION:** Pretrial motions were ruled upon.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patentee filed an
infringement action against defendant alleged infringers.
The parties filed pretrial motions regarding exclusion of
evidence, exclusion of expert testimony, exclusion of
experts from the courtroom, and to add a reference.

**OVERVIEW:** The patentee sought to exclude evidence
of an alleged prior conception, which the alleged
infringers claimed was relevant to its obviousness
defense. The court found that the conception proof was
not independently corroborated and was not admissible.
The court also found that the probative value was
substantially outweighed by the danger of unfair
prejudice, confusion of the issues, and misleading the
jury. The court found that experts who were not skilled in
the art could not testify concerning technical aspects of
the prior art or patent office procedures. The court held
that the alleged infringers' technical expert could remain
in the courtroom under *Fed. R. Evid. 615(3)*, as he was
essential to the presentation of the alleged infringers' case
and there was minimal danger that he would substantially

alter his testimony based upon prior testimony at trial.
The court found that subpoenas and responses thereto that
might have been appropriate for cross-examination were
not to be excluded. Evidence of infringement was not
excludable, provided the patentee made it clear that
infringement was not being contested, only validity.

**OUTCOME:** The court ruled on all the motions.

**LexisNexis(R) Headnotes**

*Patent Law > Date of Invention & Priority >
Corroboration of Invention Date*
*Patent Law > Date of Invention & Priority > Reduction
to Practice*
[HN1] An inventor, to establish reduction to practice for
establishing priority, must provide independent
corroborating evidence in addition to his own statements
and documents.

*Patent Law > Date of Invention & Priority >
Conception Date*

*Patent Law > Date of Invention & Priority > Corroboration of Invention Date*

[HN2] Conception by an inventor, for the purpose of establishing priority, can not be proved by his mere allegation nor by his unsupported testimony where there has been no disclosure to others or embodiment of the invention in some clearly perceptible form, such as drawings or model, with sufficient proof of identity in point of time.

*Evidence > Documentary Evidence > Best Evidence Rule*
*Evidence > Documentary Evidence > Writings > General Overview*

[HN3] *Fed. R. Evid. 1004(1)* does provide that the loss of the original, unless due to bad faith of the proponent, is a satisfactory explanation of nonproduction of the original.

*Patent Law > Date of Invention & Priority > Antedating Prior Art References*

[HN4] The probative value of one inventor's undisclosed conception of an invention is not persuasive evidence of the level of skill in the art.

*Evidence > Testimony > Experts > General Overview*
*Evidence > Testimony > Experts > Admissibility*
*Evidence > Testimony > Experts > Helpfulness*

[HN5] Expert testimony is only appropriate if helpful to understand or to determine a fact in issue. *Fed. R. Evid. 702.* Generally, an expert may not advise a jury as to applicable principles of law.

*Evidence > Procedural Considerations > Burdens of Proof > General Overview*
*Patent Law > Infringement Actions > Burdens of Proof*
*Patent Law > Infringement Actions > Defenses > Patent Invalidity > Validity Presumption*

[HN6] The presumption of validity is not substantive evidence, it is merely a procedural device assigning the burden of proof. In other words, the presumption of validity merely explains why the attacker's burden is clear and convincing evidence. However, when the patentee relies upon the deference that is due to the Patent Office which is presumed to have properly done its job, the attacker can show that the Patent Office did not consider certain invalidating evidence, thus showing no need to defer.

*Civil Procedure > Pretrial Matters > Conferences > Case Management*

[HN7] U.S.D.C., N.D. Cal. Rule 235-7(i) provides that the pretrial statement contain a list of witnesses together with a brief statement following each name describing the substance of the testimony to be given. Local Rule 235-7(j) requires a list of exhibits with a brief statement following each describing its substance or purpose.

**COUNSEL:  [*1]** For APPLIED MATERIALS, INC., Plaintiff: Matthew D. Powers, Weil Gotshal & Manges LLP, Menlo Park, CA.

For Plaintiff: MATTHEW D. POWERS, WEIL GOTSHAL & MANGES, MENLO PARK, CA.

For ADVANCED SEMICONDUCTOR MATERIALS AMERICA, INC., EPSILON TECHNOLOGY INC., ADVANCED SEMICONDUCTOR MATERIALS INTERNATIONAL N.V., defendants: Lowell Anderson, Joseph F. Jennings, John B. Sganga, Jr., Knobbe Martens Olson & Bear LLP, Newport Beach, CA.

For ADVANCED SEMICONDUCTOR MATERIALS AMERICA, INC., defendant: Richard J. Gray, Mark E. Naite, Bergeson Eliopoulos Grady & Gray, San Jose, CA.

For ADVANCED SEMICONDUCTOR MATERIALS INTERNATIONAL N.V., defendant: Charles B. Cohler, Christopher S. Yates, Lasky Haas & Cohler, San Francisco, CA.

For ADVANCED SEMICONDUCTOR MATERIALS AMERICA, INC., EPSILON TECHNOLOGY INC., ADVANCED SEMICONDUCTOR MATERIALS INTERNATIONAL N.V., Counter-claimants: Lowell Anderson, Joseph F. Jennings, John B. Sganga, Jr., Knobbe Martens Olson & Bear LLP, Newport Beach, CA.

For ADVANCED SEMICONDUCTOR MATERIALS AMERICA, INC., Counter-claimant: Charles B. Cohler, Lasky Haas & Cohler, San Francisco, CA.

For ADVANCED SEMICONDUCTOR MATERIALS AMERICA, INC., ADVANCED **[*2]** SEMICONDUCTOR MATERIALS INTERNATIONAL N.V., Counter-claimants: Christopher S. Yates, Lasky Haas & Cohler, San Francisco, CA.

For ADVANCED SEMICONDUCTOR MATERIALS AMERICA, INC., Counter-claimant: Mark E. Waite, Bergeson Eliopoulos Grady & Gray, San Jose, CA.

For APPLIED MATERIALS, INC., Counter-defendant: Matthew D. Powers, Weil Gotshal & Manges LLP, Menlo Park, CA.

For Defendants and Counterclaimants: DON W. MARTENS, KNOBBE MARTENS OLSON & BEAR, NEWPORT BEACH, CA.

**JUDGES:** RONALD M. WHYTE, United States District Judge.

**OPINION BY:** RONALD M. WHYTE

**OPINION:**

RULINGS ON PRETRIAL MOTIONS

The hearing on the parties' pretrial motions was held on April 21, 1995. After reviewing the papers and hearing the oral arguments of counsel, the court makes the rulings set forth below.

## I. APPLIED MATERIALS MOTIONS

### A. In Limine Re: 1985 Conception Proof

Applied seeks to exclude evidence of Goodwin's alleged 1985 conception of the use of reinforcing ribs on the outside of a quartz reaction chamber. ASM claims such evidence is relevant to its obviousness defense in that prior invention is probative of the level of ordinary skill in the art and suggests that those in the field were familiar **[*3]** with all of the basic concepts disclosed in the patent. Applied submits the evidence is inadmissible because: (1) Goodwin's alleged conception is not independently corroborated and (2) the only document showing the alleged conception is an inadmissible copy of a page from an unwitnessed, missing lab note book.

Neither the parties nor the court has found a case which expressly holds that testimony of a witness plus his own, unwitnessed drawing is admissible on the issue of obviousness. In *Hahn v. Wong, 892 F.2d 1028, 1032 (Fed. Cir. 1989),* the court held that [HN1] an inventor, to establish reduction to practice for establishing priority, "must provide independent corroborating evidence in addition to his own statements and documents." ASM

argues that *Price v. Symsek, 988 F.2d 1187 (Fed. Cir. 1993)* backs off this requirement and provides for a "rule of reason" test, to determine whether the inventor's prior conception testimony has been corroborated. Although Price does articulate a "rule of reason" test, it does not hold that uncorroborated testimony of an inventor plus his or her own unwitnessed drawing is sufficient. The closest it comes is by quoting **[*4]** from *Mergenthaler v. Scudder, 11 App. D.C. 264, 278 (D.C. Cir. 1897):*

> [HN2] Conception by an inventor, for the purpose of establishing priority, can not be proved by his mere allegation nor by his unsupported testimony where there has been no disclosure to others or embodiment of the invention in some clearly perceptible form, such as drawings or model, with sufficient proof of identity in point of time.

*Price, 988 F.2d at 1194.* It seems doubtful that an unwitnessed drawing, although bearing a purported date, would be "sufficient proof of identity in point of time." n1 In Price the inventor presented several exhibits, including an affidavit from someone else, corroborating the date of a drawing.

> n1 ASM argued at the hearing that it had other corroborating evidence. However, despite extensive briefing including extensive citations to evidence, ASM offered no such evidence in response to Applied's motion. The court has only considered the evidence properly before it.

**[*5]**

Although, as noted, no case has been found expressly discussing corroboration of conception in the context of an obviousness defense, the policy behind corroboration for establishing priority applies to a claim that those in the field were familiar with the idea of the invention thus making it obvious. In other words, if corroboration were not required there would be "a great temptation to perjury" and the absence of such a requirement "would have the effect of virtually precluding the adverse party from the possibility of rebutting such evidence." *Price, 988 F.2d at 1194-95.* Therefore, the court finds that the 1985 conception proof is not independently corroborated

and should not be admitted.

The court's conclusion that the evidence should be excluded is reinforced by the fact that the original drawing and the notebook in which it is allegedly contained are not available. [HN3] *F.R.E. 1004(1)* does provide that the loss of the original, unless due to bad faith of the proponent, is a satisfactory explanation of nonproduction of the original. Although ASM's explanation of the loss is not as detailed as it should be, the court finds that it is sufficient to show that the **[*6]** loss was not due to the bad faith of ASM. However, the inability of Applied to review the purported lab book and surrounding pages does result in some unfairness to Applied. There are legitimate questions of authenticity given that the drawing was unwitnessed, that no witness has been identified who can corroborate its existence in 1985, and that ASM apparently took no action for several years on the alleged 1985 conception.

Even if the 1985 conception proof were deemed to meet the corroboration requirement for admissibility, the court finds that the evidence should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. *F.R.E. 403.* [HN4] The probative value of one inventor's undisclosed conception of an invention is not persuasive evidence of the level of skill in the art. Further, the potential for the jury being confused or mislead is real in that the jury may not understand that the issue is not whether Goodwin came up with the idea first, but rather what was the level of skill in the art at the time of Applied's claimed invention. Finally, and most importantly, the risk of prejudice to **[*7]** Applied is significant in light of its limited ability to question the legitimacy and timing of the drawing.

For the above reasons, the court orders that Applied's motion to exclude the Goodwin 1985 conception proof is granted.

**B. In Limine Re: ASM's Legal Expert**

Applied submits that ASM's legal expert Nusbaum, a former supervising patent examiner and former member of the Patent Office Board of Patent Appeals and Interferences, should not be allowed to testify on the topics listed below. Nusbaum is not a technical expert and testified that he is not skilled in the relevant art and never worked in the relevant art units within the Patent Office. ASM argues that Nusbaum's testimony is

designed to assist the jury in understanding the complex evidence that will be presented, particularly with respect to interpreting the materiality of prior art, the effect of prior art and test results not before or examined by the examiner, and the examiner's limited facilities.

1. Testimony About What the Prior Art Teaches.

Both parties agree Nusbaum cannot testify as to what the prior art teaches, because he is not a technical expert. The motion, therefore, as to this area is granted.  **[*8]**

2. Testimony About the Materiality of the Prior Art.

The court grants Applied's motion to preclude testimony by Nusbaum about the "materiality" of prior art. He is not skilled in the art. Seilheimer, not Nusbaum, is the appropriate expert to address whether the prior art before the Patent Office is the most relevant prior art.

3. Testimony About What the Examiner Would Have Done if Nusbaum Had Been the Examiner or if the Examiner Had Different Information.

The court grants Applied's motion precluding Nusbaum from testifying about what the examiner would have done if Nusbaum had been the examiner, or if the examiner had different information. The evidence would be irrelevant speculation and Nusbaum is not skilled in the art. Further, [HN5] expert testimony is only appropriate if helpful to understand or to determine a fact in issue. *F.R.E. 702.* Generally, an expert may not advise a jury as to applicable principles of law. Cotchett, Elkind Federal Courtroom Evidence, 3rd Ed., p. 287.

4. Testimony Regarding How the Examiner Would Have Reacted to the Results of Applied's Internal Development Program.

The court grants Applied's motion requesting that Nusbaum be precluded **[*9]** from testifying about how the examiner would have reacted to the results of Applied's internal development program. Nusbaum is not skilled in the art. Further, how he personally would have reacted is irrelevant.

5. Testimony Concerning Overwork, Quotas, Awards or Promotions at the Patent Office, or the Number of Patents that Issue Annually or Otherwise Insinuating that the Patent Office Does Not Do Its Job Properly.

Applied submits that Nusbaum should not be allowed to make generalized attacks on the Patent Office. It argues that such an attack would show inappropriate disrespect for a quasi-judicial administrative body. See, *United States v. Morgan, 313 U.S. 409, 422, 85 L. Ed. 1429, 61 S. Ct. 999 (1941); Western Electric v. Pinezo Tech., 860 F.2d 428 (Fed. Cir. 1988).* Applied also contends that a generalized attack would be irrelevant, because ASM has no evidence that the examiner who reviewed the application for the patents-in-suit were short of their "quotas," under bureaucratic pressure, or other factors that impacted the quality of their work. ASM counters that such evidence is necessary to rebut the presumption of validity and to provide **[*10]** the jury evidence to balance against Applied's reliance on the deference to be given to the decision of a government agency.

[HN6] The presumption of validity is not substantive evidence - it is merely a procedural device assigning the burden of proof. *Chore-Time Equip. Inc. v. Cumberland Corp., 713 F.2d 774, 780 (Fed. Cir. 1983).* In other words, the presumption of validity merely explains why the attacker's burden is clear and convincing evidence. However, when the patentee relies upon the deference that is due to the Patent Office which is presumed to have properly done its job, the attacker can show that the Patent Office did not consider certain invalidating evidence, thus showing no need to defer. *American Hoist & Derrick Co v. Sowa & Sons, Inc., 725 F.2d 1350, 1359* (Fed. Cir.), cert. denied *469 U.S. 821, 105 S. Ct. 95, 83 L. Ed. 2d 41 (1984).*

The court finds that the type of evidence Applied seeks to exclude is properly excluded and will not prevent ASM from presenting appropriate evidence to try and meet its burden and to point out when deference to the Patent Office's determination is not appropriate (e.g. by showing through a technical **[*11]** expert and the prosecution history that the examiner did not consider pertinent prior art.) Testimony about overwork, quotas, awards or promotions at the Patent Office, or the number of patents that issue annually or insinuating that the Patent Office does not do its job properly is excluded. Such evidence would be irrelevant speculation and would constitute an inappropriate attack on the Patent Office. The court will reconsider this ruling, however, if Applied opens the door by presenting evidence suggesting that some extraordinary deference is due in this case.

6. Testimony About Patent Office Procedures that Do Not Relate to ASM's Only Defense of Obviousness.

The parties do not dispute that Patent Office procedures unrelated to obviousness are not relevant. Therefore, Applied's motion to exclude such evidence is granted recognizing, however, that some general evidence about the Patent Office and its procedures is necessary to understand the Patent Office's function with respect to examining non-obviousness.

7. Evidence About Patent Office Burden Shifting Rules.

The parties do not appear to dispute that the Patent Office's burden shifting rules are irrelevant. In any **[*12]** event, evidence pertaining to such rules is irrelevant and likely to be confusing to the jury who will be instructed on the burden of proof rules it must apply. Therefore, Applied's motion is granted and no evidence of the Patent's Office's burden shifting rules will be allowed absent a showing that some specific, relevant statement in the prosecution history cannot be understood without such an explanation.

**C. In Limine Re: Exclude Experts from Courtroom (ASM's Cross-Motion on Same Subject.)**

Applied submits that pursuant to *F. R. E. 615* the parties' experts must be excluded from the courtroom. ASM counters that Rule 615(3) contains an exception for "a person whose presence is shown by a party to be essential to the presentation of the party's cause." The parties dispute whether ASM's counsel needs the assistance of its experts for the presentation of its cause. The court finds that an exception to the mandatory exclusion rule is supported here for ASM's technical expert, Seilheimer. The minimal danger that Seilheimer will substantially alter his testimony based upon prior testimony at trial, coupled with the compelling need for his expert assistance to counsel, supports **[*13]** the court's conclusion. Therefore, each party's one technical expert will be permitted to be present during trial. This ruling, of course, does not give license to either expert to unfairly bolster his opinions by adding bases upon which he did not rely at his deposition.

**D. In Limine Re: Nomura Evidence**

Applied moves to preclude ASM from presenting Nomura as a trial witness, because ASM engaged in

discovery obstruction. ASM denies that it engaged in unfair tactics and claims Nomura's testimony is important to its assertion of obviousness. Nomura will apparently testify that while at ASM Japan he independently conceived reinforcing a quartz chamber with external ribs.

This motion, unfortunately, requires the court to decide whether a party's conduct during discovery requires the exclusion of certain evidence. The court has reviewed in detail the various declarations, the transcript of the pretrial proceedings on February 2, 1995, and the parties' disclosures, letters and discovery responses. Although the court has some reservations about its conclusion, it finds that the Nomura evidence should not be excluded based upon the allegedly unfair actions of ASM.

Nomura and **[*14]** the documents on which ASM intends to rely were disclosed over two years ago. Applied did not ask for Nomura's deposition until November 15, 1994. ASM advised on November 16, 1994 that:

> Because ASM does not presently intend upon presenting Mr. Nomura as a fact witness at trial, ASM will not bring him to the United States for a deposition. In the event ASM decides to use him as a fact witness, ASM will make him available.

Apparently, ASM believed at that time that Nomura's conception was not independent of Goodwin's alleged conception. The fact that ASM's counsel had that belief causes the court to be a little suspicious of ASM's current claim that Nomura's conception was independent. n2 However, the court is not persuaded that there is sufficient evidence to support a conclusion that ASM is hiding evidence. The court has no reason to believe that counsel would engage in dishonest conduct and further finds that counsel's supervision of searches of files, although not technically in compliance with the court's February 2, 1995 order, was in good faith and reasonably thorough.

> n2 ASM's current claim, however, precludes Nomura as a witness to corroborate Goodwin's alleged conception.

**[*15]**

ASM advised Applied on January 17, 1995, that it intended to use Nomura. At the pretrial conference on February 2, 1995, the court ordered ASM to make Nomura available for deposition and also initially ordered that an ASM American attorney in Japan declare that ASM Japan's files had been reviewed and all documents relevant to Nomura's alleged conception were being provided. After ASM advised that it did not have an attorney from the United States in Japan, the court ordered that a representative of ASM Japan declare that the files had been reviewed and that an Applied attorney had been provided access to the files. After the hearing, ASM decided to send Attorney Treska, one of its of counsel, to Japan and he has provided a detailed declaration of what was searched by him and others. Although this declaration does not technically comply with the modified version of the court's order, it does meet the substance of it. It was what the court had ordered before it learned that ASM did not have an American attorney in Japan - a situation that was remedied by sending Attorney Treska.

The court is aware that Nomura stated at his deposition that he had not searched all of his files to see **[*16]** if there was anything related to development projects for reduced pressure Epsilon reactors. This evidence concerns the court but Nomura was not probed on what files existed that he did not search. The remainder of Nomura's deposition and Attorney Treska's declaration satisfies the court that a reasonable search was conducted and that Nomura should not be excluded as a fact witness. The court, although not pleased with ASM's handling of Nomura, is not convinced that Applied will be unfairly prejudiced by allowing him to testify. Therefore, Applied's motion to exclude Nomura evidence is denied.

## II. ASM'S MOTIONS

### A. In Limine Re: Letter from ASM's Counsel Describing ASM's Invalidity Contentions.

ASM seeks to exclude from evidence Applied Exhibit 54, which is a January 5, 1995 letter from ASM's litigation counsel to Applied's litigation counsel which outlines certain of ASM's contentions. Since ASM is not now contesting infringement, Applied has withdrawn the exhibit. This issue is, therefore, moot.

### B. In Limine Re: Subpoenas of Quartz Manufacturers

ASM seeks to exclude evidence of Applied's subpoenas to various third party quartz manufacturer on the basis that [*17] the subpoenas are not probative of any issue presently in the case. ASM also argues that any relevance of the subpoenas is outweighed by the likelihood that they will constitute a time consuming digression. *F.R.E. 403.* Applied argues that the fact that the subpoenas yielded no evidence of any quartz design close to Applied's patented design makes them relevant to the cross-examination of ASM's technical expert Seilheimer. The court believes that the subpoenas, and the responses thereto, may well be an appropriate subject for cross-examination and, therefore, will not exclude reference to them at this time. ASM's motion is, therefor, denied.

### C. In Limine Re: Skepticism Evidence

ASM moves to exclude evidence of skepticism that Applied seeks to introduce as objective indicia of non-obviousness. ASM claims that despite discovery requests, Applied has never identified any such evidence. Applied denies that it has evaded discovery on this issue and further orally represented that the evidence is contained in depositions that have been taken. [HN7] Local Rule 235-7(i) provides that the pretrial statement contain a list of witnesses "together with a brief statement following each name [*18] describing the substance of the testimony to be given." Local Rule 235-7(j) requires a list of exhibits "with a brief statement following each describing its substance or purpose. . . ." Since Applied represents that the evidence is contained in the discovery, ASM's motion is denied on the condition that Applied supplements the pretrial statement within five (5) days with appropriate lists of witnesses and documents supporting its skepticism proof.

### D. In Limine Re: Evidence of Infringement

ASM moves to exclude evidence at trial of infringement by ASM's accused CVD reactor, since ASM does not dispute infringement if invalidity is not proved. ASM says the evidence would be both a distraction and prejudicial. Applied responds that it does not plan to offer any evidence only relevant to infringement but believes that the fact that ASM infringes, if its invalidity claim fails, is of substantial probative value. Specifically, it shows that ASM's witnesses have a motive to embellish their testimony to help ASM and save their jobs. The court agrees that the point is a proper one for cross-examination. Applied must make clear, however,

that ASM is not contesting infringement except [*19] on the theory that one cannot infringe an invalid claim. Applied also may tell the jury that ASM gets to go first in presenting its opening, its evidence, and its argument because it has the burden of proof. However, there is no need to discuss what would have been the order of presentation had ASM contested infringement. With these understandings, ASM's motion to exclude evidence of infringement is denied. ASM, of course, is free to object to any evidence Applied seeks to offer on the basis that it is solely related to the non-disputed issue of infringement.

### E. In Limine Re: Other Patent Infringement Actions

ASM moves to preclude the admission of evidence of the other prior or pending patent infringement actions between the parties. ASM argues that such evidence is irrelevant and, even if relevant, the relevance is outweighed by the danger of undue prejudice, confusion and delay. Applied agrees that prior liability findings are irrelevant but submits that the facts and circumstances of the prior litigation may prove relevant.

Oral argument revealed little actual disagreement between the parties. Both appear to agree that prior testimony of experts may be relevant. The [*20] only issue on which the parties definitely disagree is on whether Applied's technical expert can support his opinion regarding the ordinary skill in the art by reference to Judge Ingram's finding of the level of ordinary skill in the art in case number C-91-20061. The court agrees with ASM that such reliance would be improper. The case is on appeal. The court seriously questions whether such a finding is the type of evidence on which expert's normally rely. Further, the prejudicial effect of the evidence would seem to outweigh its probative value, as it would be hard to get into Judge Ingram's finding without a discussion of the outcome of the case. Also, the court's finding, which is not yet final, might carry undue weight in the minds of the jurors.

ASM's motion to exclude evidence is granted insofar as the court orders excluded evidence of liability findings in other litigation and reference to Judge Ingram's finding on the level of ordinary skill in the art in case number C-91-20061. It is otherwise denied as premature. Reference to other litigation may be necessary if expert testimony from any of those proceedings is relevant for some purpose. The existence of other litigation [*21] in

and of itself, of course, has no relevance.

**F. In Limine Re: Testimony of Tom Thompson Re: Prior Work at AG Associates**

ASM also seeks to exclude the testimony of Thompson regarding a purported failed attempt to design a thick-walled quartz reactor chamber to withstand reduced-pressure operation. ASM asserts that Thompson is not competent to testify because the purported attempt was made by a company known as AG Associates before he started to work there. Therefore, since he has no personal knowledge, he is barred by *F.R.E. 602* which says a witness cannot testify to a matter absent personal knowledge of it. Further, argues ASM, anything Thompson was told would be inadmissible hearsay under *F.R.E. 801* and *802*.

Applied counters that Thompson's testimony is relevant because the recognition of need and difficulties encountered by those skilled in the field are indicia of unobviousness. Applied says Thompson's testimony is admissible because he has personal knowledge of the thick walled chamber and the tests that were run on it showing that the walls got too hot. He also knows that his company abandoned work on a thick-walled reactor. Assuming Applied can lay a foundation **[*22]** that Thompson has first hand knowledge of these events, he is competent to testify. However, his deposition testimony is not clear as to whether the testing was done before he arrived and how he has knowledge of the test results. It appears he may have observed the test results himself or it may be that he was merely informed by others who did testing before he arrived. If he has no personal knowledge of the testing, he would not be competent to testify as to what those results showed. In other words, he could testify that AG had a thick-walled chamber and that AG abandoned the project on it, but he could not testify as to the reason. The state of mind hearsay exception (*F.R.E. 803(3)*) does not apply. Nor can the statement of the reason the project was abandoned be considered a non-hearsay statement if offered for the truth of the reason. It is not an assessment of a product's quality and marketability of the type executives make inferentially from what they are told by customers and engineers as was the assessment in the case of *Agfa-Gevart, A.G. v. A.B. Dick Co., 879 F.2d 1518, 1523 (7th Cir. 1989)* cited by Applied.

ASM's motion to exclude is denied. However, before **[*23]** the evidence can be received, Applied will have to lay a proper foundation showing personal knowledge for its admissibility.

**G. In Limine Re: Failed Attempts by Others and Long Felt Need**

ASM moves to exclude evidence of failed attempts by others and long felt need as objective indicia of non-obviousness. The same analysis and ruling is appropriate here as in the case of the skepticism evidence discussed in II C above. Therefore, ASM's motion is denied on the condition that Applied supplements the pretrial statement within five (5) days with the appropriate lists of witnesses and documents supporting its failed attempts and long felt need proof.

**H. Motion to Add Russian Reference**

ASM moves to add a recently obtained prior art publication (the "Russian Reference") to its trial exhibit list. It claims it only recently discovered the reference. Applied argues that ASM has failed to adequately explain why the reference was not found earlier and claims it will be prejudiced by the late addition. The court believes that ASM has shown sufficient justification for its late disclosure and that any prejudice to Applied can be minimized, if not eliminated, by: (1) requiring **[*24]** ASM to produce Seilheimer at a reasonable time and location designated by Applied for further deposition; (2) precluding reference to the Russian reference by any ASM witness other than Seilheimer; and (3) requiring ASM to supplement its expert disclosure at least twenty-four hours before Seilheimer's supplemental deposition with an explanation of how the art fits into ASM's obviousness claim.

ASM's motion to add the Russian Reference is granted on the above conditions.

DATED: 4/25, 1995

RONALD M. WHYTE

United States District Judge

# TAB J

## FULLY REDACTED

# EXHIBIT 3

**REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 3 RE: ADVICE OF COUNSEL**

Telcordia's opposition hinges on its assertion that traditional opinion letters constitute the only acceptable evidence of advice of counsel in a willfulness inquiry, and thus Telcordia should be able to argue to the jury that Defendants failed altogether to obtain "proper" legal advice. This assertion lacks merit and misunderstands the case law. Cisco has sought and received legal advice regarding Telcordia's patents and has exercised its right to preserve the privilege with regard to that advice. Consistent with the policy underlying the privilege, Telcordia should thus be precluded from introducing evidence that Cisco declined to produce advice of counsel and should further be precluded from placing Cisco in a position requiring it to invoke the privilege before the jury to prove advice was sought. *See McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*, 434 F. Supp. 2d 810 (E.D. Cal. 2006) (stating that the jury should not be told of defendant's decision to assert the privilege with regard to advice of counsel after defendant sought advice).

## I.   CISCO OBTAINED LEGAL ADVICE AND ITS RIGHT TO PROTECT THAT ADVICE WITH PRIVILEGE SHOULD NOT BE COMPROMISED

The crux of Telcordia's opposition is that formal opinion letters of outside counsel constitute the only relevant advice of counsel with regard to willful infringement. The Federal Circuit, however, has long held that this premise is flatly wrong. *See, e.g., Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1559 (Fed. Cir. 1986) (accused infringer acted in good faith even though advice of counsel was oral and did not include review of prior art or prosecution history); *In re Echostar Commc'ns Corp.*, 448 F.3d 1294, 1299 (Fed. Cir. 2006) (stating that a distinction between advice from outside counsel and advice from in-house counsel involving consultation with engineers was "without merit"); *W. Elec. Co. v. Stewart-Warner Corp.*, 631 F.2d 333, 337 (4th Cir. 1980) ("Just because an attorney is in-house counsel does not mean that his opinions are necessarily suspect."); *Studiengesellschaft Kohle v. Dart Indus., Inc.*, 862 F.2d 1564, 1576 (Fed. Cir. 1988) (sufficient to rely on advice of in-house attorney who had been monitoring the relevant field).

Thus, the Federal Circuit has rightfully embraced a definition for "advice of counsel" that encompasses far more than formal opinion letters.[1]   Telcordia nevertheless insists in its opposition (and its proposed jury instruction) that Cisco was required to obtain costly advice from outside counsel, including formal opinion "letters" and a "thorough review of the prior art and prosecution history," for it to have acted with the diligence relevant to a willfulness inquiry. This extreme view of the law is unsupported, as the cases cited above demonstrate.

## II.    CISCO SOUGHT AND OBTAINED WELL-SUPPORTED AND RELIABLE LEGAL ADVICE

Telcordia's interactions with Cisco span ten years and include sporadic discussions regarding eleven different Telcordia patents.  During this time, Cisco could not guess which patents, if any, Telcordia would assert – particularly given Telcordia's half-hearted approach to the matter.  It is unreasonable to have expected Cisco to have sought full-blown formal opinion letters every time Telcordia sent a letter with a new patent in it.  Nevertheless, the fact remains that Cisco *did* seek significant legal advice, and, consistent with the policy behind the privilege, Cisco should not be punished in any way for declining to reveal it.

These discussions are highly relevant given the circumstances.  Specifically, Telcordia's initial contact with Cisco in 1994 was to point out that the predecessor to the '633 patent was "available for license."  In 2001, when Telcordia asserted nine *completely different* patents against Cisco, the parties considered non-litigation resolutions, including the possibility of licensing.  Cisco's need for a license and the value it might have paid for a license was, of course, greatly dependant on a determination of whether Cisco infringed.

---

[1]    Along these lines, this Court's proposed Uniform Jury Instruction 3.13 (2004 draft) recognizes that the relevant inquiry is whether "Defendant obtained and followed the *advice* of a competent lawyer." Indeed, the Model Patent Jury Instructions for the Northern District of California, adopted since *Knorr,* include no discussion of formal opinion letters in its willfulness instruction.

There is no reason to present any evidence of Cisco's decision to withhold the advice of counsel described above other than to ask the jury to draw a forbidden adverse inference. Telcordia's lopsided jury instruction shows that they understand this. Indeed, Telcordia's instruction includes *six paragraphs* of instruction on advice of counsel, and references "opinions" or "advice of counsel" over 15 times. The instruction even asks a lay jury to consider whether Cisco reviewed the relevant file histories. Exh. 3-E [Proposed Willfulness JIs and Objections]. Thus, it is absolutely clear that Telcordia, through the use of emphasis, is asking for nothing less than the forbidden adverse inference: "no adverse inference . . . flows from an alleged infringer's failure *to obtain or produce* an exculpatory opinion of counsel." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1341 (Fed. Cir. 2004) (emphasis added). Telcordia should therefore be precluded from presenting evidence that requests nothing less.

## III.    TELCORDIA FAILS TO ALLEGE THAT LUCENT HAD "ACTUAL NOTICE"

Amazingly, even on the eve of trial, Telcordia cannot identify any date on which Lucent had notice of the '633 patent. Without "actual notice," a patentee cannot establish a duty of care to avoid infringement. *Rolls-Royce Ltd.* v *GTE Valeron Corp*, 800 F.2d 1101, 1109 (Fed. Cir. 1986). Yet Telcordia seeks to argue that Lucent did not exercise due care because it is not relying on an opinion of counsel. Telcordia's effort to prejudice the jury puts the cart before the horse. If Telcordia cannot even allege that Lucent had actual knowledge, then it should not be allowed to insinuate that Lucent failed to meet an alleged duty of care that can only arise from actual knowledge of that patent.[3]

---

[2]                                                                      Telcordia suggests that an in-camera review of Cisco's privileged documents is appropriate to determine whether the legal advice described above was adequate. Cisco will provide the Court with the relevant privileged documents if the Court believes that is warranted. Obviously, Cisco cannot provide its non-written discussions with counsel for in-camera review.

[3]    Telcordia incorrectly argues that Lucent is moving for summary judgment. Although the Court is empowered to find that Telcordia cannot establish willfulness at trial, *see* F.R.C.P. 16(c), Lucent's motion is directed at Telcordia's stated intention of arguing that the jury must assume that Lucent should have obtained an opinion of counsel and the prejudice that such an argument would cause.

TAB E

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

TELCORDIA TECHNOLOGIES, INC.,    )
                 )
   Plaintiff/Counterclaim Defendant, )
                 )
   v.             )
                 ) Civil Action No. 04-875-GMS
LUCENT TECHNOLOGIES INC.,    )
                 )
   Defendant/Counterclaim Plaintiff. )
                 )
                 )
_____ )

TELCORDIA TECHNOLOGIES, INC.,    )
                 )
   Plaintiff/Counterclaim Defendant, ) Civil Action No. 04-876-GMS
                 )
   v.             )
                 )
CISCO SYSTEMS, INC.,      )
                 )
   Defendant/Counterclaim Plaintiff. )
_____ )

**EXHIBIT I3.B:**

**FINAL JURY INSTRUCTIONS [PATENT]**

   Plaintiff Telcordia Technologies, Inc. ("Telcordia") and Defendants Cisco Systems, Inc. and Lucent Technologies Inc. ("Defendants") submit the following proposed preliminary jury instructions and objections as of March 2, 2007. The parties reserve the right to submit modifications to these instructions and/or additional instructions on any pertinent issue, if the need arises.[1]

---

[1] In submitting these instructions, Defendants note that it may be prudent to alleviate potential jury confusion by providing separate instructions for Cisco and Lucent, where

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899-1150
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com

Donald R. Dunner
Steven M. Anzalone
Griffith B. Price
James T. Wilson
John M. Williamson
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

*Attorneys for Plaintiff*
*Telcordia Technologies Inc*.

MORRIS, NICHOLS, ARSHT & TUNNELL

Jack B. Blumenfeld (I.D. #1014)
Leslie A. Polizoti (I.D. #4299)
1201 North Market Street
Wilmington, DE  19899-1347
 (302) 658-9200
jblumenfeld@mnat.com
lpolizoti@mnat.com

Matthew D. Powers
Edward R. Reines
Jessica Davis
Sonal N. Mehta
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
(650) 802-3000

*Attorneys for Defendant Cisco Systems, Inc. in C.A.*

---

appropriate, rather than having the instructions state "Lucent or Cisco," "Lucent and Cisco," and "Lucent and/or Cisco."  Defendants will address this issue with Telcordia during the parties' meet and confer regarding the jury instructions.

YOUNG CONAWAY STARGATT & TAYLOR LLP
John W. Shaw (I.D. #3362)
The Brandywine Building
1000 West Street
Wilmington, DE  19801
(302) 571-6600
jshaw@ycst.com

Steven C. Cherny
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY  10022
(212) 906-1200

David A. Nelson
Israel Sasha Mayergoyz.
David C. McKone
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL  60606
(312) 876-7700

Sean S. Pak
LATHAM & WATKINS LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
(213) 485-1234

***Attorneys for Defendant Lucent Technologies Inc.***

iii

**FINAL JURY INSTRUCTIONS TABLE OF CONTENTS**

**(PLAINTIFF'S PROPOSED CONTENT AND ORDER)**

1.    GENERAL INSTRUCTIONS
      1.1    INTRODUCTION
      1.2    JURORS' DUTIES
      1.3    BURDENS OF PROOF
      1.4    EVIDENCE DEFINED
      1.5    CONSIDERATION OF EVIDENCE
      1.6    DIRECT AND CIRCUMSTANTIAL EVIDENCE
      1.7    CREDIBILITY OF WITNESSES
      1.8    NUMBER OF WITNESSES
      1.9    EXPERT WITNESSES

2.    THE PARTIES' CONTENTIONS
      2.1    THE PARTIES
      2.2    TELCORDIA'S CONTENTIONS
      2.3    LUCENT AND CISCO'S CONTENTIONS
      2.4    SUMMARY OF PATENT ISSUES

3.    INFRINGEMENT
      3.1    CLAIM INFRINGEMENT
      3.2    CONSTRUCTION OF CLAIMS
      3.3    PATENT INFRINGEMENT -- GENERALLY
      3.4    INFRINGEMENT -- KNOWLEDGE OF PATENT
             OR INTENT TO INFRINGE IS IMMATERIAL
      3.5    INDUCING PATENT INFRINGEMENT
      3.6    CONTRIBUTORY INFRINGEMENT
      3.7    LITERAL INFRINGEMENT
      3.8    DOCTRINE OF EQUIVALENTS
      3.9    MEANS-PLUS-FUNCTION CLAIMS
      3.10   INFRINGEMENT DESPITE DEFENDANT'S
             IMPROVEMENTS OR PATENTS ON
             IMPROVEMENTS
      3.11   WILLFUL INFRINGEMENT

4.    VALIDITY DEFENSES
      4.1    PRESUMPTION OF PATENT VALIDITY
      4.2    DEFINITENESS UNDER 35 U.S.C. §112
      4.3    BEST MODE
      4.4    ANTICIPATION
      4.5    WHAT IS PRIOR ART
             4.5.1   PRINTED PUBLICATIONS AS PRIOR ART
             4.5.2   PRIOR UNITED STATES PATENT APPLICATION AS PRIOR ART
             4.5.3   NON-ENABLING REFERENCES

          4.5.4  REFERENCES DESCRIBING THE INVENTOR'S WORK
4.6      OBVIOUSNESS
          4.6.1  SCOPE AND CONTENT OF THE PRIOR ART
          4.6.2  DIFFERENCES OVER THE PRIOR ART
          4.6.3  LEVEL OF ORDINARY SKILL
          4.6.4  OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS
                 (SECONDARY CONSIDERATIONS)
          4.6.5  OBVIOUSNESS - HINDSIGHT
          4.6.6  EXPRESSIONS OF DISBELIEF
          4.6.7  TEACHING AWAY OF PRIOR ART
          4.6.8  OBVIOUS TO TRY
4.7      ENABLEMENT
4.8      WRITTEN DESCRIPTION

5.     EQUITABLE DEFENSES
5.1      LACHES
5.2      EQUITABLE ESTOPPEL
5.3      IMPLIED LICENSE
5.4      PATENT MISUSE
5.5      PATENT EXHAUSTION
5.6      UNCLEAN HANDS
5.7      INTERVENING RIGHTS
5.8      INEQUITABLE CONDUCT - GENERALLY
5.9      MATERIALITY
5.10    INTENT TO DECEIVE OR MISLEAD
5.11    BALANCING OF MATERIALITY AND INTENT

6.     DAMAGES
6.1      COMPENSATORY DAMAGES IN GENERAL
6.2      BURDEN OF PROOF
6.3      NOTICE AND MARKING
6.4      ENTIRE MARKET VALUE RULE
6.5      REASONABLE ROYALTY AS A MEASURE OF DAMAGES
6.6      FACTORS FOR DETERMINING REASONABLE ROYALTY
6.7      CURATIVE INSTRUCTION

7.     DELIBERATIONS AND VERDICT
7.1      INTRODUCTION
7.2      UNANIMOUS VERDICT
7.3      DUTY TO DELIBERATE
7.4      COURT HAS NO OPINION

**FINAL JURY INSTRUCTIONS TABLE OF CONTENTS**

**(DEFENDANTS' PROPOSED CONTENT AND ORDER)**

1.    GENERAL INSTRUCTIONS
      1.1    INTRODUCTION
      1.2    JURORS' DUTIES
      1.3    BURDENS OF PROOF
      1.4    EVIDENCE DEFINED
      1.5    CONSIDERATION OF EVIDENCE
      1.6    DIRECT AND CIRCUMSTANTIAL EVIDENCE
      1.7    CREDIBILITY OF WITNESSES
      1.8    NUMBER OF WITNESSES
      1.9    EXPERT WITNESSES

2.    THE PARTIES' CONTENTIONS
      2.1    THE PARTIES
      2.2    TELCORDIA'S CONTENTIONS
      2.3    LUCENT AND CISCO'S CONTENTIONS
      2.4    SUMMARY OF PATENT ISSUES

3.    INFRINGEMENT
      3.1    CLAIM INFRINGEMENT
      3.2    CONSTRUCTION OF CLAIMS
      3.3    PATENT INFRINGEMENT -- GENERALLY
      3.4
      3.5    INDUCING PATENT INFRINGEMENT
      3.6    CONTRIBUTORY INFRINGEMENT
      3.7    LITERAL INFRINGEMENT
      3.8    DOCTRINE OF EQUIVALENTS
      3.9    MEANS-PLUS-FUNCTION CLAIMS
      3.10   INFRINGEMENT DESPITE DEFENDANT'S
             IMPROVEMENTS OR PATENTS ON
             IMPROVEMENTS
      3.11   WILLFUL INFRINGEMENT

4.    VALIDITY DEFENSES
      4.1
      4.2    DEFINITENESS UNDER 35 U.S.C. §112
      4.3    BEST MODE
      4.4    ANTICIPATION
      4.5    WHAT IS PRIOR ART
             4.5.1   PRINTED PUBLICATIONS AS PRIOR ART
             4.5.__  PATENT AS PRIOR ART
             4.5.2

      4.5.3
      4.5.4  REFERENCES DESCRIBING THE INVENTOR'S WORK
4.6     OBVIOUSNESS
      4.6.1  SCOPE AND CONTENT OF THE PRIOR ART
      4.6.2  DIFFERENCES OVER THE PRIOR ART
      4.6.3  LEVEL OF ORDINARY SKILL
      4.6.4  OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS
             (SECONDARY CONSIDERATIONS)
      4.6.5
      4.6.6
      4.6.7
      4.6.8
4.7
4.8
4.__     INVENTORSHIP

5.      EQUITABLE DEFENSES
5.1     LACHES
5.2     EQUITABLE ESTOPPEL
5.3
5.4     PATENT MISUSE
5.5
5.6     UNCLEAN HANDS
5.7     INTERVENING RIGHTS
5.8     INEQUITABLE CONDUCT - GENERALLY
5.9     MATERIALITY
5.10   INTENT TO DECEIVE OR MISLEAD
5.11   BALANCING OF MATERIALITY AND INTENT

6.      DAMAGES
6.1     COMPENSATORY DAMAGES IN GENERAL
6.2     BURDEN OF PROOF
6.3     NOTICE AND MARKING
6.4
6.5     REASONABLE ROYALTY AS A MEASURE OF DAMAGES
6.6     FACTORS FOR DETERMINING REASONABLE ROYALTY
6.7     CURATIVE INSTRUCTION

7.      DELIBERATIONS AND VERDICT
7.1     INTRODUCTION
7.2     UNANIMOUS VERDICT
7.3     DUTY TO DELIBERATE
7.4     COURT HAS NO OPINION

# 1. GENERAL INSTRUCTIONS

## 1.1  INTRODUCTION _(AGREED)_ [2]

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions.  You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read.  You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.

And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

**Source:**      Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (March 1993) ("Uniform Instructions") § 1.1;[3] _Johns_

---

[2]      In an effort to narrow the issues and streamline the process, Defendants have, where appropriate, "Agreed" to Telcordia's proposed instructions.  Defendants' agreement to these instructions is not meant to suggest that Defendants agree with Telcordia's case law support or its application thereof.

[3]      Defendants globally object to Telcordia's reliance on the Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (March 1993) insofar as those instructions have been superseded by the 2004 Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware, and do not accurately reflect the law as it has developed in the intervening 14 years.  Where Defendants rely on the Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware, they rely on the current version of those instructions ("2004 Uniform Instructions").  In some cases, Defendants have adopted the model instruction and in others, Defendants have tailored the model instruction to the specific issues in this case.

*Hopkins Univ. v. CellPro*, 894 F. Supp. 819, 829 (D. Del. 1995); Miscellaneous Jury Instructions (GMS) Rev: 1/18/06.

## 1.2  JURORS' DUTIES  *(AGREED)*

Members of the Jury, it is important that you bear in mind the distinction between your duties and my duties.  You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  You are the sole judges of the facts.  It is your judgment, and your judgment alone, to determine what the facts are, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide whether the defendants are liable.  It is my job to instruct you about the law and about what the claims of the patent mean, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

**Source:**      Adapted from Uniform Instructions § 1.2; *CellPro*, 894 F. Supp. at 829; Miscellaneous Jury Instructions (GMS) Rev. 1/18/06.

## 1.3  BURDENS OF PROOF   *(DISPUTED)*

### Plaintiff's Instruction

This is a civil case in which the plaintiff, Telcordia, is charging the defendants, Lucent and Cisco, with patent infringement.  Telcordia alleges that Lucent and Cisco have infringed the asserted claims of Telcordia's patents.  Telcordia has the burden of proving patent infringement by a preponderance of the evidence.  That means that Telcordia has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Telcordia claims is more likely true than not.  To put it differently, if you were to put Telcordia's and the defendants' evidence relating to infringement on the opposite sides of a scale, the evidence supporting Telcordia's claims would have to make the scales tip somewhat on Telcordia's side.

Telcordia further urges that Lucent's and Cisco's infringement has been willful. Telcordia has the burden of proving that Lucent's and Cisco's infringement was willful by clear and convincing evidence.  Clear and convincing evidence is evidence that produces an abiding conviction that a factual contention is true.  Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

In this case, Lucent and Cisco are urging that Telcordia's patents are invalid and unenforceable.  A patent, however, is presumed to be valid and enforceable.  Accordingly, Lucent and Cisco have the burden of proving that Telcordia's patents are invalid or unenforceable by clear and convincing evidence.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt."  That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether or not the plaintiff or defendant has met its burden of proof.

**Source:**      Adapted from Uniform Instructions § 1.3; *CellPro*, 894 F. Supp. at 829; 35 U.S.C. § 282; *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464 (Fed. Cir. 1990).

### Defendants' Objections

Defendants object to Plaintiff's proposed instruction because it includes an instruction on the presumption of validity.  Such an instruction is likely to be confusing and is unsupported by current Federal Circuit case law.  The presumption itself is not entitled to any evidentiary weight and, therefore, an instruction on the presumption is cumulative of the instruction on the burden of proof.   Including both an instruction on the burden of proof and a statement as to the presumption of validity may suggest to the jury that that presumption has some separate evidentiary weight.  *See Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1259 (Fed. Cir. 2004) ("[T]he presumption of validity and heightened burden of proving invalidity 'are static and in reality different expressions of the same thing – a single hurdle to be cleared.'") (upholding district court's decision to not instruct the jury on the presumption of validity); *SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 375 (Fed. Cir. 1983) ("The presumption of validity afforded by 35 U.S.C. § 282 does not have independent evidentiary value.   Rather the presumption places the burden of going forward, as well as the burden of persuasion, upon the party asserting invalidity."); *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988) ("[T]he presumption is a procedural device, which assigns the burden of going forward as well as the burden of proof of facts to the challenger. . . . [T]he presumption is one of law, not fact, and does not constitute 'evidence' to be weighed against a challenger's evidence.").  Consequently, Telcordia's proposed instruction invites the jury to err by assigning evidentiary weight both to the presumption and to the heightened burden of proof and should not be adopted.

Defendants further object to this instruction as misleading insofar as it suggests that Telcordia need only prove infringement with respect to Lucent's or Cisco's products or methods.

Telcordia has the burden of proving infringement by each Defendant separately, and the instruction should, at a minimum, clarify that to avoid potential juror confusion.

*      *      *

### Defendants' Instruction

This is a civil case in which the plaintiff, Telcordia, is charging the defendants, Lucent and Cisco, with patent infringement. Telcordia alleges that Lucent and Cisco have infringed the asserted claims of Telcordia's patents. Telcordia has the burden of proving patent infringement by a preponderance of the evidence. That means that Telcordia has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Telcordia claims is more likely true than not. To put it differently, if you were to put Telcordia's and the defendants' evidence relating to infringement on the opposite sides of a scale, the evidence supporting Telcordia's claims would have to make the scales tip somewhat on Telcordia's side.

Telcordia further urges that Cisco's infringement of the '633 and '763 patents has been willful. Telcordia also urges that Lucent's infringement of the '633 patent has been willful. Telcordia has the burden of proving willful infringement by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that a factual contention is true. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

In this case, Lucent and Cisco are urging that Telcordia's patents are invalid and unenforceable. Lucent and Cisco have the burden of proving that Telcordia's patents are invalid or unenforceable by clear and convincing evidence.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether or not the plaintiff or defendant has met its burden of proof.

**Source:**        2004 Uniform Instructions § 1.3.


## <u>Plaintiff's Objections</u>

## 1.4  EVIDENCE DEFINED  *(AGREED)*

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, deposition transcript testimony that was read to you, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed.  Certain charts, summaries, and graphics have been used to illustrate testimony from witnesses.  These charts, summaries, and graphics are not themselves evidence, and are only as good as the underlying evidence supporting them.  You should, therefore, give them only as much weight as you think the underlying evidence deserves.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.  My legal rulings are not evidence.  Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record.  You must completely ignore all of these things.  Do not even think about them.  Do not speculate about what a witness might have said if he or she had been allowed to answer, or what an exhibit might have shown had I admitted it.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

**Source:**          Uniform Instructions § 1.4; *CellPro*, 894 F. Supp. at 830.

## 1.5  CONSIDERATION OF EVIDENCE  *(AGREED)*

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**Source:**        Miscellaneous Jury Instructions (GMS) Rev:  1/18/06;
              Uniform Instructions § 1.5; *CellPro*, 894 F. Supp. at 830.

## 1.6  DIRECT AND CIRCUMSTANTIAL EVIDENCE  *(AGREED)*

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence.  The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**Source:**       Miscellaneous Jury Instructions (GMS)  Rev:  1/18/06;
                  Uniform Instructions § 1.6; *CellPro*, 894 F. Supp. at 830.

## 1.7  CREDIBILITY OF WITNESSES  *(AGREED)*

You are the sole judges of each witness's credibility.  You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all.  But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at trial.  You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

**Source:**       Miscellaneous Jury Instructions (GMS)  Rev:  1/18/06.

## 1.8  NUMBER OF WITNESSES   *(AGREED)*

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

**Source:**      Miscellaneous Jury Instructions (GMS) Rev:  1/18/06;
Uniform Instructions § 1.8; *CellPro*, 894 F. Supp. at 830-31.

## 1.9  EXPERT WITNESSES  *(AGREED)*

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

**Source:**       Miscellaneous Jury Instructions (GMS)  Rev:  1/18/06.

## 2. THE PARTIES' CONTENTIONS

### 2.1 THE PARTIES    *(DISPUTED)*

#### Plaintiff's Instruction

The plaintiff is Telcordia Technologies, Inc. Telcordia owns United States Patent Nos. 4,893,306, 4,835,763 and Re. 36,633.  The defendants in this case are Lucent Technologies Inc. and Cisco Systems, Inc.  For convenience, I will refer to the plaintiff as Telcordia and the defendants as Lucent and Cisco.

**Source:**       Adapted from Uniform Instructions § 2.1, *CellPro*, 894 F. Supp. at 831.

#### Defendants' Objections

Defendants object to Telcordia's instruction because it does not accurately reflect the parties' contentions and instead contains improper argument.

\*       \*       \*

#### Defendants' Instruction

The plaintiff is Telcordia Technologies, Inc. Telcordia asserts that it owns United States Patent Nos. 4,893,306, 4,835,763 and Re. 36,633.  The defendants in this case are Lucent Technologies Inc. and Cisco Systems, Inc.  For convenience, I will refer to the plaintiff as Telcordia and the defendants as Lucent and Cisco, or collectively as Defendants.  As I noted at the start of the trial, I will refer to the asserted patents by their last three numbers: the '306 patent, the '763 patent, and the '633 patent.

14

## 2.2 TELCORDIA'S CONTENTIONS     *(DISPUTED)*

### Plaintiff's Instruction

Telcordia contends that Lucent and Cisco have infringed claims 1, 2, 7, and 8 of Telcordia's '763 patent, and claims 11 and 33 of Telcordia's '633 patent by making, using, selling and offering for sale telecommunications devices that fall within or perform methods falling within the scope of one or more of those claims, and by inducing and contributing to infringement by others.

Telcordia contends that Cisco's infringement of the '763 and '633 patents is willful because Cisco was notified of the '763 patent on or about September 7, 2001, and Cisco was notified of the original patent (U.S. Patent No. 5,260,978) from which the '633 patent reissued on or about March 14, 1994, and yet Cisco did not exercise its affirmative duty to avoid infringement when it continued to make, use, sell, and offer for sale its products that fall within or perform methods falling within the scope of the '763 and '633 patents.

Telcordia contends that Lucent's infringement of the '633 patent is willful because Lucent was notified of the original patent (U.S. Patent No. 5,260,978) from which the '633 patent reissued on or about January 8, 1997, and yet Lucent did not exercise its affirmative duty to avoid infringement when it continued to make, use, sell, and offer for sale its products that fall within or perform methods falling within the scope of the '633 patent.

Telcordia contends that it has been damaged by Lucent's and Cisco's infringement of the '763 and '633 patents, and that Telcordia is thus entitled to, among other things, an award of a reasonable royalty, as provided by statute.

Telcordia contends that none of claims 1, 2, 7, or 8 of the '763 patent is invalid or unenforceable for any of the reasons alleged by Lucent and Cisco, and that none of claims 11 or 33 of the '633 patent is invalid or unenforceable for any of the reasons alleged by Lucent and Cisco.

Telcordia contends that Cisco's defenses of implied license, patent misuse, equitable

estoppel, laches, intervening rights, and unclean hands are not supported by the facts and should be rejected. Telcordia contends that Lucent's defenses of laches, equitable estoppel, intervening rights, and patent misuse are not supported by the facts and should be rejected.[4]

There is also another patent at issue in this suit, Telcordia's U.S. Patent No. 4,893,306. Although infringement of that patent is not an issue for your consideration, the validity and enforceability of that patent are issues for your consideration. Telcordia contends that none of claims 1, 3, or 4 of the '306 patent are invalid or unenforceable for any of the reasons alleged by Lucent and Cisco.[5]

**Source:**       Adapted from Uniform Instructions § 2.2.


## Defendants' Objections

Defendants object to Telcordia's proposed instruction to the extent it states Telcordia contentions or theories that have not been adequately disclosed to Defendants or are not supported by the evidence and/or expert testimony, including for example Telcordia's theories of inducement and contributory infringement and willful infringement. Fed. R. Civ. P. 37(c)(2). Defendants further object to Telcordia's instruction because it suggests that that Lucent and Cisco both had notice of the '633 patent by virtue of alleged notice of the predecessor '978

---

[4]      Telcordia contends that the defendants failed to properly disclose and/or support certain of their equitable defenses during discovery. Telcordia addresses these issues in its Motion *in Limine* No. __ and will be prepared to address the issues during the pretrial conference.

[5]      Telcordia contends that the Court should not proceed with a trial of '306 patent issues, including issues of validity and enforceability, at this time for at least the reasons set forth in Telcordia's Motion *in Limine* No. __. Telcordia nevertheless addresses issues of validity and enforceability in its pretrial submissions simply to protect its rights in the event that the Court denies Telcordia's Motion *in Limine* No. __ and determines to proceed with the trial of '306 validity and enforceability. Given their consistent positions on summary judgment of non-infringement of the '306 patent under the Court's claim construction, the parties have agreed not to incorporate '306 infringement issues into the draft pretrial order, but stand ready to incorporate these issues promptly should the Court so desire.

patent from which it reissued.   Notice of the predecessor patent is legally insufficient to constitute notice of the reissue patent for willfulness.[6]   An alleged infringer must have actual notice of the patent it is alleged to infringe.  *Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374 (Fed. Cir. 2005).  Notice of a different patent, even if related, is not sufficient and Telcordia has cited no authority that it is.  Indeed, in the case of a reissue, the statute requires that the predecessor patent must be surrendered upon filing of an application for reissue.  35. U.S.C. § 251.  Telcordia's own Statement of Contested Issues of Fact and Law establishes that notice of the '978 patent is irrelevant in asking the pertinent question, e.g., "When did Lucent acquire knowledge of the *'633 patent*?"

Defendants further object to Telcordia's proposed instruction because it instructs the jury that Defendants had "an affirmative duty of care" to avoid infringement.  Setting aside the notice issue, Telcordia's invocation of an affirmative duty of due care invites the jury to (erroneously) ignore the totality of the circumstances test reaffirmed by the *en banc* Federal Circuit in *Knorr-Bremse*, and instead focus on the presence or absence of opinions of counsel.  Such an instruction is legally improper.  *Knorr-Bremse v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) (the "determination of willfulness is made on consideration of the totality of the circumstances").

Defendants further object to Telcordia's instruction as argumentative.  Rather than state the parties' contentions in a neutral and straightforward way, Telcordia devotes paragraphs to argument on its willfulness allegations (e.g., "Cisco did not exercise its affirmative duty to avoid infringement when it continued to make, use, sell, and offer for sale its products that fall within or perform methods falling within the scope of the '763 and '633 patents").  Any

---

[6]     This issue is the subject of a motion *in limine* filed by Defendants.

statement of Telcordia's contentions should be edited to remove Telcordia's rhetoric and argument.

Finally, Defendant Cisco also notes that it is no longer pursuing an implied license defense and that the reference to implied license should be removed from Telcordia's proposed instruction to avoid potential juror confusion.[7]  Defendant Lucent notes that it is not pursuing equitable estoppel, intervening rights, or patent misuse as affirmative defenses and  the instruction should be clarified to reflect which Defendant is pursuing which defense.

---

[7]    Whether Cisco and/or Lucent have "have made" rights under the patents is a separate issue.  Defendants and Telcordia agree that sales of products that are licensed under such "have made" rights are excluded from this action.

## 2.3  LUCENT AND CISCO'S CONTENTIONS

### <u>Defendants' Proposed Instruction</u>

Defendants Lucent and Cisco contend that they do not infringe any of the asserted claims of the '633 or '763 patents because has not proven that it is more likely than not that accused Lucent or Cisco cards used in conjunction with accused Lucent or Cisco boxes meet every limitation of the claims of the '633 patent.   Lucent and Cisco further contend that Telcordia has not proven that it is more likely than not that accused Lucent or Cisco products meet every limitation of the claims of the '763 patent.  Cisco further contend that it has not willfully infringed any claim of the '633 and '763 patents, and that Telcordia cannot prove by clear and convincing evidence that it has.   Lucent further contend that it has not willfully infringed any claim of the '633 patent, and that Telcordia cannot prove by clear and convincing evidence that it has.

Defendants Lucent and Cisco further contend that the three Telcordia patents are invalid and unenforceable.  Specifically, Defendants contend that the '306 patent is invalid for failure to satisfy the best mode requirement for patents, is not new and/or is obvious in view of the prior art.  Defendants further contend that the '306 patent is unenforceable because of inequitable conduct.  Defendants also contend that the '633 patent is invalid because it names improper inventors, is not new and/or is obvious in view of the prior art.  Defendants further contend that the '633 patent is unenforceable because of inequitable conduct.  With respect to the '763 patent, Defendants contend that the '763 patent claims are not new or are obvious in view of other prior art references, and further that the '763 patent is unenforceable because of inequitable conduct.

Beyond these contentions, Cisco contends that the '633 patent is unenforceable

due to equitable estoppel, patent misuse and/or unclean hands, and that Cisco's conduct with respect to the accused products is protected by the doctrine of intervening rights. Lucent and Cisco further contend that Telcordia's claims for damages are barred under the doctrine of laches.

**Source:**        2004 Uniform Instructions § 2.

## 2.4  SUMMARY OF PATENT ISSUES     *(DISPUTED)*

### Plaintiff's Instruction

The following is a brief summary of the patent issues that you will be asked to decide:

1.      Whether Telcordia has proven by a preponderance of the evidence that Lucent's or Cisco's manufacture, use, sale and/or offer for sale of the accused products, or the methods practiced by the products, infringe any of the asserted claims of Telcordia's '763 or '633 patents.

2.      If you find that any of the asserted claims of Telcordia's '763 or '633 patents are infringed, whether Telcordia has established by clear and convincing evidence that Lucent's or Cisco's infringement was willful.

3.      If you find that any of the asserted claims of Telcordia's '763 or '633 patents are infringed, what amount of damages Telcordia has proven by a preponderance of the evidence is due to the infringement.

4.      Whether Lucent or Cisco has proven by clear and convincing evidence that any of the asserted claims of Telcordia's '306**,** '763 or '633 patents are invalid.

5.      Whether Lucent or Cisco has proven by a preponderance of the evidence that Telcordia cannot enforce the '306, '763 or '633 patents against Cisco because of equitable estoppel or implied license.

6.      Whether Lucent or Cisco has proven by clear and convincing evidence that Telcordia cannot enforce the '306, '763 or '633 patents against Cisco because of patent misuse.

7.      Whether Cisco has proven by clear and convincing evidence that Telcordia cannot enforce the '306, '763 or '633 patents against Cisco because of unclean hands.

8.      Whether Lucent or Cisco has proven by a preponderance of the evidence that laches applies against Telcordia.

21

9.      Whether Lucent or Cisco has proven by a preponderance of the evidence that intervening rights applies against Telcordia.

10.     Whether Lucent or Cisco has proven by a clear and convincing evidence that Telcordia cannot enforce the '633 patent because of inequitable conduct.

11.     Whether Cisco has proven by clear and convincing evidence that Telcordia cannot enforce the '763 patent because of inequitable conduct.

**Source:**      Adapted from Uniform Instructions § 2.4; *CellPro*, 894 F. Supp. at 831.

<u>**Defendants' Objections**</u>

At the outset, Defendants object to Telcordia's proposed instruction because it improperly conflates the issues of invalidity, equitable estoppel, patent misuse, unclean hands and implied license for the three patents at issue. Defendants intend to present tailored (and different) defenses for each patent, and presentation of these issues as singular for the three patents will lead to juror confusion. In addition, Telcordia's proposed instruction may improperly suggest to the jury that they must find invalidity, equitable estoppel, patent misuse, unclean hands and implied license for all three patents or for none.

Defendants further object to Telcordia's proposed instruction because it does not present the issue of inequitable conduct for the '306 patent, a theory which Defendants will try to the jury.

Defendant Cisco also notes that it is no longer pursuing an implied license defense and that the reference to implied license should be removed from Telcordia's proposed instruction to avoid potential juror confusion. Defendant Lucent also notes that it is not pursuing equitable estoppel, patent misuse, unclean hands or intervening rights as affirmative defenses and the instruction should be clarified to reflect which Defendant is pursuing which defense.

\*     \*     \*

### Defendants' Proposed Instruction

The following is a brief summary of the patent issues that you will be asked to decide:

1.      Whether Defendants have proven by clear and convincing evidence that the '306 patent claims are invalid due to anticipation, obviousness, and/or failure to satisfy the best mode requirement.

2.      Whether Defendants have proven by clear and convincing evidence that the '633 patent claims are invalid due to improper inventorship, anticipation, and/or obviousness.

3.      Whether Defendants have proven by clear and convincing evidence that the '763 patent claims are invalid due to anticipation, obviousness and/or indefiniteness.

4.      Whether Defendants have proven by clear and convincing evidence that the '306 patent claims are unenforceable due to inequitable conduct.

5.      Whether Defendants have proven by clear and convincing evidence that the '633 patent claims are unenforceable due to inequitable conduct.

6.      Whether Defendants have proven by clear and convincing evidence that the '763 patent claims are unenforceable due to inequitable conduct.

7.      Whether Cisco has proven by clear and convincing evidence that the '633 patent claims are unenforceable due to equitable estoppel, patent misuse and/or unclean hands.

8.      Whether Telcordia has proven that it is more likely than not that Cisco or Lucent cards used in conjunction with compatible Cisco or Lucent boxes are covered by claims 11 and/or 33 of the '633 patent.

9.      Whether Telcordia has proven that it is more likely than not that accused Cisco or Lucent products are covered by claims 1, 2, 7 and/or 8 of the '763 patent.

23

10.     Whether Cisco has proven that its activities with respect to the products accused of infringing the '633 patent are protected by the doctrine of intervening rights.

11.     If Defendants are found to have infringed any valid claim of the '633 or '763 patents, whether Telcordia's request for damages is barred by the doctrine of laches.

12.     If Defendants are found to have infringed any valid claim of the '633 or '763 patents, whether Telcordia's request for damages is limited to damages occurring after Telcordia provided Defendants notice of the patents.

13.     If Defendants are found to have infringed any valid claim of the '633 or '763 patents, what Telcordia has proven by a preponderance of the evidence to be the amount of damages it has incurred.

14.     If Cisco is found to have infringed any valid claim of the '633 or '763 patents, whether Telcordia has proven by clear and convincing evidence that Cisco's infringement was willful.

15.     If Lucent is found to have infringed any valid claim of the '633 patent, whether Telcordia has proven by clear and convincing evidence that Lucent's infringement was willful.

## 3. INFRINGEMENT

### 3.1 CLAIM INFRINGEMENT    *(AGREED)*

Before you can decide whether Lucent or Cisco has infringed Telcordia's '763 and '633 patents, you will have to understand the patent "claims."  Patent claims define, in words, the boundaries of what Telcordia claims as its invention.  The patent claims are the numbered paragraphs at the end of the patent.  The patent claims at issue here are claims 1, 2, 7, and 8 of the '763 patent, beginning at column 4, line 53 of the patent, and claims 11 and 33 of the '633 patent, beginning at column 11, line 43 of the patent.  Only the claims of a patent can be infringed.  Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed.  The specification and drawings merely describe certain embodiments of the invention.  Limitations of those embodiments may not be incorporated into the claims.  Each of the claims must be considered individually, and to show infringement of a patent, Telcordia need only establish that one claim of the patent has been infringed.

**Source:**     Adapted from Uniform Instructions § 3.1; *CellPro*, 894 F. Supp. at 831-32; *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999).

## 3.2  CONSTRUCTION OF CLAIMS     *(AGREED IN PART)*

The claims of the '306 patent at issue in this case are as follows:

Claim 1 states:

1. A method for simultaneously transmitting data from sources having different bit rates in a telecommunication network comprising the steps of:

generating a bit stream comprising a sequence of frames, each of said frames including a transmission overhead field containing frame timing information and an empty payload field, and

filling the empty payload fields in said frames with data in packetized format from a plurality of sources which have access to the bit stream including circuit or packet sources, such that data in packetized format from any of said sources is written into any available empty payload field of any of said frames for transmitting data from each of said sources at its own desired bit rate via said bit stream and for transmitting data from said plurality of sources simultaneously via said bit stream.


Claim 3 states:

3. A method for generating a bit stream capable of transporting data originating from both circuit transmission and packet sources comprising

generating a bit stream comprising a sequence of frames, each of said frames including a transmission overhead field containing frame timing information and an empty payload field,

packetizing data from a plurality of sources having different bit rates and which have access to said bit stream including circuit transmission sources or customer premises equipment to produce data packets, and

inserting said packets from said sources into the empty payload fields of said frames such that a packet from any of said sources is inserted into any available empty payload field of any of said frames for transmitting data from each of said sources at its own desired bit rate via said bit

stream and for transmitting data from said plurality of sources simultaneously using said bit stream.

Claim 4 states:

4. An apparatus for assembling a dynamic time division multiplexing bit stream comprising,

generating means for generating a train of frames wherein each frame includes a transmission overhead field containing timing information and an empty payload field,

processing means for processing data from a plurality of sources into packet format, and

inserting means for receiving said train of frames and for inserting each of said packets comprised of data from one of said plurality of sources into any empty payload field of any of said frames available to said inserting means to form said bit stream so that data from each of said sources can be transmitted at its own desired bit rate via said bit stream and so that data from said plurality of sources can be transmitted simultaneously via said bit stream.

The claims of the '763 patent at issue in this case are as follows:

Claim 1 states:

1. In a communications network having a plurality of nodes interconnected in a ring configuration by a first ring which conveys multiplexed subrate communications around the first ring from node to node in one direction and a second ring which conveys multiplexed subrate communications around the second ring from node to node in the other direction, each node including subrate transmitters with associated multiplexers and demultiplexers with associated subrate receivers, an improved node comprising

monitoring means, associated with the first ring and the second ring, for evaluating the integrity of the multiplexed subrate communications on the first ring and the second ring, respectively, and

insertion means, associated with the demultiplexers and said monitoring means, for

27

inserting an error signal on designated ones of the subrate communications in response to said monitoring means detecting a lack of integrity on the multiplexed subrate communications on the first ring or the second ring or both the first ring and the second ring.

Claim 2 states:

2.  In the communications network of claim 1, the improved node further comprising selector means associated with the demultiplexers for selecting, in response to the detection of said error signal on one of the subrate communications, another of the subrate communications that does not contain said error signal.

Claim 7 states:

7.  In a communications network having a plurality of nodes interconnected in a ring configuration by a first ring which conveys multiplexed subrate communications around the first ring from node to node in one direction and a second ring which conveys multiplexed subrate communications around the second ring from node to node in the other direction, each node including subrate transmitters with associated multiplexers and demultiplexers with associated receivers, an improved method associated with each node comprising the steps of

evaluating the integrity of the multiplexed subrate communications on the first ring and the second ring with monitoring means associated with both the first ring and the second ring, and

inserting an error signal on designated ones of said subrate communications in response to said monitoring means detecting a lack of integrity on said multiplexed communications on the first ring or the second ring or both the first ring and the second ring.

Claim 8 states:

8.  The method as recited in claim 7 further comprising the step of selecting, in response to the detection of said error signal on said at least one of the subrate communications, another of

the subrate communications that does not contain an error.

The claims of the '633 patent at issue in this case are as follows:

Claim 11 states:

11.    Apparatus for generating a representation of the relationship between the timing clock of a service input, at a source node of a packet-based telecommunications network, and a network clock, the apparatus comprising:

(a) means, at the source node, for defining a residual time stamp (RTS) period as an integral number N of source-node service clock cycles;

(b) means, at the source node, for defining a derived network clock frequency $f.sub.nx$ from a network frequency $f.sub.n$ where $f.sub.nx = f.sub.n /x$, x is a rational number, and $f.sub.nx$ is less than or equal to twice the service clock frequency;

(c) means, at the source node, for counting the derived network clock cycles modulo 16 in an RTS period and;

(d) means for transmitting from the source node an RTS that is equal to the modulo 16 count of derived network clock cycles in the RTS period.

Claim 33 states:

33.    A method for generating a representation of the relationship between the timing clock of a service input, at a source node of a packet-based telecommunications network, and a network clock, the method comprising the steps of:

(a) defining, at the source node, a residual time stamp (RTS) period as an integral number N of source-node service clock cycles;

(b) defining, at the source node, a derived network clock frequency $f.sub.nx$ from a network frequency $f.sub.n$ where $f.sub.nx = f.sub.n /x$, x is a rational number, and $f.sub.nx$ is less than or equal to twice the service clock frequency;

(c) counting, at the source node, the derived network clock cycles modulo 16 in an RTS

period; and

(d) transmitting from the source node an RTS that is equal to the modulo 16 count of derived network clock cycles in the RTS period.

As used in these claims, the following definitions for certain terms must be applied:

The preambles to all of the claims use the phrase "comprising." "Comprising" is interpreted the same as "including" or "containing." In patent claims, comprising means that the claims are open-ended. As such, the claim is not limited to only what is in the claim. Based on this explanation, if you find that a product or method includes all of the limitations in any of the asserted claims, the fact that the product or method may also include additional components or elements or method steps is irrelevant. The presence of additional components or elements or method steps does not mean that the product or method does not infringe the patent claim.

**Source:**        Adapted from Uniform Instructions § 3.2, 3.11; *CellPro*, 894 F. Supp. at 832.

| '306 CLAIM TERMS | INTERPRETATION |
|---|---|
| "frame timing information" (claims 1 and 3)<br><br>"timing information"  (claim 4) | frame alignment information<br><br>June 22, 2006, Order |
| "empty payload field" (claims 1, 3, and 4) | a payload field that is empty of source data, but including bit signals of some kind, i.e. garbage bits<br><br>June 22, 2006, Order |
| "filling the empty payload fields in said frame with data in packetized format from a plurality of sources which have access to the bit stream including circuit or packet sources," (claim 1)<br><br>"inserting said packets from said sources into the empty payload fields of said frames," (claim 3)<br><br>"inserting each of said packets comprised of data from one of said plurality of sources into any empty payload field"  (claim 4) | replacing the empty payload field with data from a single source<br><br>June 22, 2006, Order |
| "data in packetized format" (claim 1) | a discrete block of data having an address header at the front thereof<br><br>June 22, 2006, Order |
| data packet[s] (claim 3) | a discrete block or discrete blocks of data, each having an address header at the front thereof<br><br>June 22, 2006, Order |
| "data. . . into packet format" (claim 4) | processing data from a plurality of sources into discrete blocks of data each having an address header at the front thereof<br><br>June 22, 2006, Order |
| "plurality of sources which have access to the bit stream" (claim 1)<br><br>"plurality of sources having different bit rates and which have access to said bit stream" (claim 3) | two or more sources that each insert data into the generated bit stream via its own tributary<br><br>June 22, 2006, Order |

| '306 CLAIM TERMS | INTERPRETATION |
|---|---|
| | |
| "such that data in packetized format from any of said sources is written into any available empty payload field of any of said frames" (claim 1)<br><br> "such that a packet from any of said sources is inserted into any available empty payload field of any of said frames" (claim 3) | packets are only put into frames which are empty<br><br>June 22, 2006, Order |
| "inserting each of said packets comprised of data from one of said plurality of sources into an empty payload field of any of said frames available to said inserting means" (claim 4) | packets are only put into frames which are empty<br><br>June 22, 2006, Order |
| "available empty payload field"  (claims 1 and 3)<br><br> "empty payload field of any of said frames available to said inserting means" (claim 4) | an empty payload field that can be filled with a data packet from the source, among the plurality of sources, of the highest priority with a data packet ready to transmit<br><br>June 22, 2006, Order |
| "generating means" (claim 4) | this term is a "means plus function" term<br><br>the function is generating a train of frames wherein each frame includes a transmission overhead field containing timing information and an empty payload field<br><br>the corresponding structures are control 210, tristate device 222, ROM 224, timing generator 209, bus 219, parallel to serial converter 216, signal output 206, and all equivalents thereof<br><br>June 22, 2006, Order |
| "processing means" (claim 4) | this term is a "means plus function" term<br><br>the function is processing data from a plurality of sources into packet format<br><br>the corresponding structure is a plurality of packetizers 55 and all equivalents thereof<br><br>June 22, 2006, Order |

| '306 CLAIM TERMS | INTERPRETATION |
|---|---|
| | |
| "inserting means" (claim 4) | this term is a "means plus function" term<br><br>the function is receiving said train of frames and inserting each of said packets comprised of data from one of said plurality of sources into any empty payload field of any of said frames available to said inserting means to form said bit stream so that data from each of said sources can be transmitted at its own desired bit rate via said bit stream and so that data from said plurality of sources can be transmitted simultaneously via said bit stream<br><br>the corresponding structures are control 210, tristate device 218, tristate device 220, frame detect 214, timing generator 209, and all equivalents thereof<br><br>June 22, 2006, Order |
| "generating a bit stream" (claims 1 and 3) | creating either serial or parallel bit streams<br><br>June 22, 2006, Order |
| "transmitting data from each of said sources at its own desired bit rate via said bit stream" (claims 1 and 3) | the original bit rate of the sources is maintained for transmission of the source data, i.e., the number of packets per second generated by a given source will equal the number of packets per second inserted into the output stream for that source<br><br>Agreed by the parties. |

| '763 CLAIM TERMS | INTERPRETATION |
|---|---|
| "a communications network having a plurality of nodes interconnected in a ring configuration" (claims 1 and 7) | a communications network in which a plurality of nodes are connected to form a loop<br><br>June 22, 2006, Order |
| "multiplexed subrate communication[s]" | a high level signal that can be separated into |

| '763 CLAIM TERMS | INTERPRETATION |
|---|---|
| (claims 1 and 7) | its constituent channels<br><br>June 22, 2006, Order |
| "evaluating the integrity of the multiplexed subrate communications" (claims 1 and 7) | determining whether each high level signal is defective<br><br>June 22, 2006, Order |
| "associated with the first ring and the second ring" (claim 1) and<br><br>"associated with both the first ring and the second ring" (claim 7) | related to the first ring and the second ring<br><br>June 22, 2006, Order |
| "inserting an error signal on designated ones of said [the] subrate communications" (claims 1 and 7) | inserting an error signal on the channels following the demultiplexing<br><br>June 22, 2006, Order |
| "the detection of said error signal on said at least one of the subrate communications" (claim 8) and<br><br>"the detection of said error signal on one of the subrate communications" (claim 2) | detecting an error signal on one or more of the channels following the demultiplexing<br><br>June 22, 2006, Order |
| "monitoring means, associated with the first ring and the second ring, for evaluating the integrity of the multiplexed subrate communications on the first ring and the second ring" (claim 1) and<br><br>"monitoring means" (claim 7) | these are "means plus function" terms<br><br>the function is evaluating the integrity of the multiplexed subrate communications on the first ring and the second ring<br><br>the corresponding structure is the circuitry at the controller that determines if a defect exists with the multiplexed subrate communications, and all equivalents thereof<br><br>June 22, 2006, Order |
| "insertion means" (claim 1) | this term is a "means plus function" term |

| '763 CLAIM TERMS | INTERPRETATION |
|---|---|
| | the function of the term is inserting an error signal on designated ones of the subrate communications in response to said monitoring means detecting a lack of integrity on the multiplexed subrate communications on the first ring or the second ring, or both the first ring and the second ring<br><br>the corresponding structure is the controller 118, 147, 148, and all equivalents thereof<br><br>June 22, 2006, Order |
| "selector means" (claim 2) | this term is a "means plus function" term<br><br>the function of the term is selecting, in response to the detection of said error signal on one of the subrate communications, another of the subrate communications that does not contain said error signal<br><br>the corresponding structure is the selector 119, 149, 150, 151, and all equivalents thereof<br><br>June 22, 2006, Order |

| '633 CLAIM TERMS | INTERPRETATION |
|---|---|
| "residual time stamp (RTS)"  (claims 11 and 33) | the value in a P-bit counter sampled at the end of each RTS period<br><br>June 22, 2006, Order |
| "network clock" (claims 11 and 33) | the timing reference that synchronizes the source and destination nodes<br><br>June 22, 2006, Order |
| "transmitting . . . an RTS" (claims 11 and 33) | the RTS is transmitted in a portion of the overhead other than the convergence |

| '633 CLAIM TERMS | INTERPRETATION |
|---|---|
| | sublayer overhead<br><br>June 22, 2006, Order |
| "derived network clock frequency $f_{nx}$" and "derived network clock" (claims 11 and 33) | "a clock derived by dividing the network clock by a rational number"<br><br>June 22, 2006, Order |
| "means, at the source node, for defining a derived network clock frequency $f_{nx}$ from a network frequency $f_n$ where $f_{nx} = f_n/x$, x is a rational number, and $f_{nx}$ is less than or equal to twice the service clock frequency" (claim 11) | this is a "means plus function" term<br><br>the function is "defining a derived network clock, frequency $f_{nx}$, from a network frequency $f_n$, where $f_{nx} = f_n/x$, x is a rational number, and $f_{nx}$ is less than or equal to twice the service clock frequency<br><br>the corresponding structure is divide by X circuit 11, and all equivalents thereof<br><br>June 22, 2006, Order |
| "means, at the source node, for counting the derived network clock cycles modulo 16 in an RTS period" (claim 11) | this is a "means plus function" term<br><br>the function is "counting the derived network clock cycles modulo 16 in an RTS period"<br><br>the corresponding structure P-Bit Counter 12 (where P=4)<br><br>June 22, 2006, Order |
| "means for transmitting from the source node an RTS that is equal to the modulo 16 count of derived network clock cycles in the RTS period" (claim 11) | this is a "means plus function" term<br><br>the function is "transmitting over the telecommunications network an RTS at the end of each RTS period that is equal to the modulo 2P count of network clock cycles at that time"<br><br>the corresponding structure is ATM assembler 17, and all equivalents thereof<br><br>June 22, 2006, Order |

| '633 CLAIM TERMS | INTERPRETATION |
|---|---|
| "the timing clock of a service input" (claims 11 and 33) | the clock at a source node derived from the incoming data signal to be transmitted over the network<br><br>Agreed by the parties. |
| "means, at the source node, for defining a residual time stamp (RTS) period as an integral number N of source-node service clock cycles" (claim 11) | this is a "means plus function" term<br><br>the function is "defining a residual time stamp (RTS) period as an integral number N of source-node service clock cycles"<br><br>the corresponding structure is Divide-by-N circuit 14.<br><br>Agreed by the parties. |

**Defendants' Objections**

Supplementing their prior submissions and statements, Defendants identify the following objections to the jury instructions insofar as they incorporate the June 22, 2006 Claim Construction Order.

1.    '306 patent: "inserting means" and "processing means"

2.    '763 patent: "a communication network having a plurality of nodes interconnected in a ring configuration;" "monitoring means;" "insertion means;" and "selector means."

3.    '633 patent: "residual time stamp (RTS)" and "means for transmitting from the source node an RTS that is equal to the modulo 16 count of derived network clock cycles in the RTS period."

The bases for Defendants' objections are of record.  Defendants reserve the right to challenge these constructions on appeal.

### 3.3  PATENT INFRINGEMENT—GENERALLY     _(DISPUTED)_

#### Plaintiff's Instruction

A patent confers on its owner the right to exclude others from importing, making, using, selling or offering to sell the patented invention in the United States during the term of its patent. The patent owner may do so by filing a lawsuit for patent infringement.  Here, Telcordia, the patent owner, has sued Lucent and Cisco, and has alleged that certain of Lucent's and Cisco's products infringe claims 1, 2, 7, and 8 of Telcordia's '763 patent, and claims 11 and 33 of Telcordia's '633 patent.

Any person or business entity which imports, makes, uses, sells or offers to sell, without the patent owner's permission, any product, apparatus or method legally protected by at least one claim of a patent within the United States before the patent expires, infringes the patent.  You must decide whether Telcordia has proven by a preponderance of the evidence that Lucent's or Cisco's products or methods infringe any of the asserted claims of the '763 or '633 patents.

**Source:**        Adapted from Uniform Instructions § 3.4, _CellPro_, 894 F. Supp. at 834.

#### Defendants' Objections

Defendants object to this instruction as misleading insofar as it suggests that Telcordia need only prove infringement with respect to Lucent's or Cisco's products or methods. Telcordia has the burden of proving infringement by each Defendant separately, and the instruction should, at a minimum, clarify that to avoid potential juror confusion.

Defendants further object to this instruction insofar as it suggests that Telcordia has a "right to exclude."  Telcordia gave away its right to exclude at least the '633 patent when it committed to the industry to license that patent on reasonable and nondiscriminatory terms. Defendants further object to this instruction insofar as it suggests that Telcordia has a "right to exclude" based on the Supreme Court's recent decision in _eBay Inc. v. MercExchange L.L.C._,

126 S.Ct. 1837 (2006).

*        *        *

### Defendants' Instruction

At the beginning of the trial I gave you some general information about patents and the patent system and a brief overview of the patent laws that relate to this case. If you would like to review my earlier instructions at any time during your deliberations, they will be available to you in the jury room.

As I stated before, Telcordia alleges that Lucent and Cisco infringe certain claims of the '763 and '633 patents.  If any person makes, uses, sells or offers to sell what is covered by a patent claim without the patent owner's permission, that person is said to infringe the patent. I will now instruct you on the specific rules you must follow in deciding whether Plaintiff has proven that Lucent has infringed one or more of the claims of the '763 and '633 patents, and separately, whether Telcordia has proven that Cisco has infringed one or more of the claims of the '763 and '633 patents.

**Source:**        2004 Uniform Instructions § 3.

### Plaintiff's Objections

## 3.4  INFRINGEMENT--KNOWLEDGE OF PATENT OR INTENT

## TO INFRINGE IS IMMATERIAL      *(DISPUTED)*

### Plaintiff's Instruction

Lucent or Cisco would be liable for infringing Telcordia's '763 or '633 patents if you find that Telcordia has proven by a preponderance of the evidence that Lucent or Cisco has imported, made, used, sold, or offered to sell the invention defined in any one or more of claims 1, 2, 7, and 8 of Telcordia's '763 patent or claims 11 and 33 of Telcordia's '633 patent.

A person may infringe a patent without knowledge that what he is doing is an infringement of the patent.  He may also infringe even though in good faith he believes that what he is doing is not an infringement of any patent.  Good faith relates to whether the infringement was willful, which I will instruct you on shortly.

**Source:**        Adapted from Uniform Instructions § 3.5.

### Defendants' Objections

Defendants object to Telcordia's proposed instruction as unnecessary, duplicative and potentially misleading to the jury.  Although Telcordia cites to Uniform Instructions § 3.5, Telcordia's instruction is in fact an attempt to take two sentences from Uniform Instructions § 3.3 and create a full-blown and self-serving instruction that invites the jury to place much greater weight on this subject than necessary or appropriate.  Moreover, to the extent Telcordia wishes to instruct the jury as to intent, that instruction should be made part of the substantive instructions setting forth the requirements for infringement under different legal theories.  This is particularly so because different infringement theories have different intent requirements.  *See* Defendants' Objections at p. 42 *infra* (describing intent standard for inducement infringement).  At a minimum, the instruction as written must be corrected so that it is limited to direct infringement.

Defendants further object to Telcordia's proposed instruction insofar as it instructs the

jury that "Lucent or Cisco would be liable" for infringement if the accused products are found to meet the elements of the claims. Such an instruction ignores entirely Defendants' affirmative defenses and Telcordia's burden to prove damages by a preponderance of the evidence.

Defendants further object to this instruction as misleading insofar as it suggests that Telcordia need only prove infringement with respect to "Lucent or Cisco." Telcordia has the burden of proving infringement by each Defendant separately, and the instruction should, at a minimum, clarify that to avoid potential juror confusion.

## 3.5    INDUCING PATENT INFRINGEMENT   *(DISPUTED)*

### Plaintiff's Instruction

Lucent or Cisco may also be an infringer if it makes, uses or sells some, but not all, of the components of the product or apparatus that are covered by, or perform methods covered by, the claims of the '763 or '633 patents.

In these cases, Lucent or Cisco would be an infringer if they actively and knowingly aided and abetted someone else to make, use or sell the product, apparatus, or method covered by the claims of the '763 or '633 patents.  This is called inducing infringement.

You must decide whether Lucent or Cisco induced another to infringe Telcordia's patents by providing, for example, promotions, advertising, instructions, or directions to perform an infringing act.  You may find that Lucent or Cisco induced infringement even if there is an express warning against the infringement, if the material containing the warning nonetheless invites the infringing activities under the circumstances.

Lucent or Cisco can be liable for inducing infringement if a patent claim is directly infringed by one of Lucent or Cisco's customers.  Proof of inducing infringement and the underlying direct infringement by persons allegedly induced to infringe may be based on circumstantial evidence you have heard in this case, rather than direct evidence of infringement.

**Source:**        Adapted from Uniform Instructions § 3.6.

### Defendants' Objections

Defendants object to Telcordia's proposed instruction because it entirely ignores the intent requirement for inducement of infringement.  The Federal Circuit, sitting *en banc*, recently decided that "inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Medical Corp. and Medisystems Corp. v. JMS Co. Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006).  The Court in *DSU* made clear that "beyond that threshold

knowledge [of the patent], the inducer must have an affirmative intent to cause direct infringement." *Id.* Telcordia's proposed instruction does not take into account any standard for intent, let alone that set by the *en banc* Federal Circuit in December.

*    *    *

### Defendants' Instruction

Inducement to infringe requires someone purposefully urging or encouraging another to infringe a patent -- inducement to infringe cannot occur unintentionally. To be liable for inducement to infringe, the accused inducer must have known of the patent and actively encouraged or instructed another person how to use a product or perform a method in a manner that you find infringes the asserted patent claims. For example, an accused inducer may be liable for inducing infringement if it provided instructions or directions to perform the infringing act through labels, advertising or other materials.

Thus, to prove that Lucent or Cisco induced infringement of the '633 or '763 patents, Telcordia must prove by a preponderance of the evidence each of the following three things:

1.    Lucent or Cisco had knowledge of the patent and actively encouraged or instructed another person how to use a product [or perform a process] in a way you, the jury, finds infringes the patent claims;

2.    Lucent or Cisco had an affirmative intent to cause direct infringement;

3.    Lucent or Cisco had intent to cause the encouraged acts; and

4.    The induced person directly infringed a claim of the patent.

All four of these things must be proven by either direct or circumstantial evidence before you may find that Lucent or Cisco induced patent infringement.

**Source:**    2004 Uniform Instructions § 3.8; *DSU Medical Corp. and Medisystems Corp. v. JMS Co. Ltd.,* 471 F.3d 1293, 1306 (Fed. Cir. 2006).

43

### 3.6     CONTRIBUTORY INFRINGEMENT  *(DISPUTED)*

#### Plaintiff's Instruction

Lucent or Cisco may also be infringing if they contribute to the infringement of others. Elements of contributory infringement are:

>   (1)     sale or supply by Lucent or Cisco;

>   (2)     of a material component of the patented invention, or a material component for use in practicing a patented process, that is not a staple article of commerce capable of substantial noninfringing use;

>   (3)     with knowledge that the component was especially made or adapted for use in infringement of such invention.

A "staple" article is a commodity or product with substantial uses apart from a patented invention.  In determining whether the component supplied by Lucent or Cisco is a "staple article of commerce," you should take into account the quality, quantity, and efficiency of Lucent's or Cisco's suggested uses for its products.

Lucent or Cisco can be liable for contributory infringement if a patent claim is directly infringed by one of its customers.  Proof of contributory infringement and the underlying direct infringement may be based on circumstantial evidence you have heard in this case, rather than direct evidence of infringement.

**Source:**     Adapted from Uniform Instructions § 3.7; *Robintech, Inc. v. Chemidus Wavin Ltd.*, 628 F.2d 142, 148 (D.C. Cir. 1980).

#### Defendants' Objections

Defendants object to Telcordia's proposed instruction because it fails to advise the jury that Defendants must have had knowledge of the '633 and/or '763 patents to contribute to infringement.

*         *         *

#### Defendants' Instruction

Telcordia may also prove Lucent or Cisco to be infringing the '763 or '633 patents if they contribute to the infringement of others. The necessary proof to show contributory infringement is focused on the intent of the person supplying the part and the nature of that part. Specifically, to prove contributory infringement by either Lucent or Cisco of the '763 or '633 patents, Telcordia must prove by a preponderance of the evidence the following three things:

1.     The part supplied by Lucent or Cisco is not a common part used for significant non-infringing uses, but rather, the part is especially made or adapted for a use that infringes the claimed invention.

2.     Lucent or Cisco knew of the '763 or '633 patent and sold the accused part knowing that the part was especially made for a use that infringes the invention.

3.     Someone then bought the part and actually used it in a way that infringes each limitation of an asserted claim of the patent.

All three of these things must be proven by direct or circumstantial evidence separately for each Defendant and for each patent before you may find that Defendant contributed to the patent infringement.

**Source:**      2004 Uniform Instructions § 3.8.

### 3.7    LITERAL INFRINGEMENT   *(AGREED)*

A patent claim is literally infringed if the defendant's product or method includes each and every component, or limitation, of that claim.  If Lucent's or Cisco's products or methods include each and every limitation of any claim of the '763 or '633 patents, then you must find that Lucent or Cisco infringes that claim.  You must conduct this comparison for each [asserted] claim of each patent-in-suit.  Infringement may not be avoided simply by adding features or components or method steps not required by the claims.  If Lucent or Cisco's products or methods do not meet each of the limitations of any [asserted] claim of the '763 or '633 patents, then there is no literal infringement.  You must determine literal infringement with respect to each patent claim, and each product and method, individually.

**Source:**        Adapted from Uniform Instructions § 3.8.

## 3.8    DOCTRINE OF EQUIVALENTS    *(DISPUTED)*

### Plaintiff's Instruction

If you do not find literal infringement you may consider infringement under the "doctrine of equivalents." You may find that Lucent's or Cisco's products and methods infringe a claim, even if not all of the components or method steps of the claim are literally present in Lucent's or Cisco's products. You may find infringement in such circumstances if the components or method steps of Lucent or Cisco's products are equivalent to that claimed in at least one of Telcordia's patent claims. This is called the doctrine of equivalents.

Application of the doctrine of equivalents is the exception, however, not the rule. Patent claims must be clear enough so that the public has fair notice of what was patented. Notice permits other parties to avoid actions which infringe the patent and to design around the patent. On the other hand, the patent owner should not be deprived of the benefits of his patent by competitors who appropriate the essence of an invention while avoiding the literal language of the patent claims.

The test to determine equivalence under the doctrine of equivalents is whether Lucent or Cisco's products and components and methods involve no substantial differences from the inventions claimed in Telcordia's patents. One way to determine if the differences are substantial is to determine whether Lucent's or Cisco's components and methods perform substantially the same function in substantially the same way to produce substantially the same result as the invention claimed in Telcordia's patents.

It is not a requirement under doctrine of equivalents infringement that those of ordinary skill in the art knew of the equivalent when the patent application was filed or when the patent issued. The question of whether Lucent's or Cisco's products and components are equivalent to that defined in Telcordia's claims is to be determined as of the time of the alleged infringement.

**Source:**    Adapted from Uniform Instructions § 3.9; *Dawn Equip. Co. v. Kentucky Farms, Inc.*, 140 F.3d 1009, 1015-16 (Fed. Cir. 1998).

### Defendants' Objections

Defendants object to the inclusion of this instruction. As noted above, Telcordia has not adequately disclosed an infringement theory under the doctrine of equivalents in discovery and has not proffered expert testimony to support such a theory. It is black letter law that Telcordia must present "*evidence and argument* concerning the doctrine and each of its elements." *nCUBE Corp. v. SeaChange Int'l, Inc.*, 436 F.3d 1317, 1325 (Fed. Cir. 2006) (emphasis in original). In particular, Telcordia must provide "particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents." *Texas Instr. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996).

Defendants further object to Telcordia's proposed instruction as legally incorrect because it ignores the basic principle that doctrine of equivalents analysis focuses on whether the particular element is insubstantially different from the element claimed in Telcordia's patents, including for example, if that element "performs substantially the same function in substantially the same way to obtain substantially the same result" as the claim element. *See, e.g.*, *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950). Telcordia's instruction is misleading because its suggests that the jury should compare the entire claim to the overall accused product.

### 3.9  MEANS-PLUS-FUNCTION CLAIMS  *(DISPUTED)*

#### Plaintiff's Instruction

Claim 1, 2, and 7 of Telcordia's '763 patent and claim 11 of Telcordia's '633 patent define a component of the invention as a means for performing a certain function.

For there to be infringement, the accused device must perform the identical function as specified in the claims.  Also, the accused device must employ means identical to or equivalent of the structures, material, or acts described in the patent specification for performing that function.

**Source:**      Adapted from Uniform Instructions § 3.14.

#### Defendants' Objections

Defendants object to Telcordia's proposed instruction because it does not provide the jury with sufficient guidance as to the nature of means-plus-function limitations and how means-plus-function limitations should be applied.   Defendants propose a more complete and helpful explanation of means-plus-function limitations along the lines of Uniform Instructions § 3.3.6.

\*      \*      \*

#### Defendants' Instruction

Claims 1, 2, and 7 of the '763 patent and claim 11 of the '633 patent define a component of the invention as a means for performing a certain function.

A means-plus-function element is a claim element that claims a means for performing a specified function.  For example, a table could be claimed in a patent as being a tabletop, legs, and means for attaching the legs to the tabletop.  The means-plus-function element would cover structures described in the specification that perform the required function of "attaching the legs to the tabletop."

I will now explain the three special rules that apply to this type of claim language. First, the accused device must perform the specified function. Specifically, for claims 1, 2, and 7 of the '763 patent and claim 11 of the '633 patent, you must first determine whether Lucent and Cisco's accused products perform the functions of those claims. If not, the claim containing that means-plus-function element is not infringed.

Second, if Lucent's or Cisco's accused product does perform the required function, you must identify the structure in that Lucent's or Cisco's accused product that actually performs this function.

Finally, you must determine whether that accused structure is the same as or equivalent to the following structure identified in the patent for performing the required function. If the structure of the accused device is the same as, or equivalent to, the structure in the patent that I have described, then the means-plus-function element of the claim is present.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial. One way to determine this is to look at whether or not the accused structure performs the identical function in substantially the same way to achieve substantially the same result. Another way is to consider whether or not people of ordinary skill in the art would have believed that the structure of the accused product and the structure in the patent were interchangeable as of the date the patent issued.

**Source:**    2004 Uniform Instructions § 3.3.6.

## 3.10  INFRINGEMENT DESPITE DEFENDANT'S IMPROVEMENTS OR PATENTS

## ON IMPROVEMENTS   *(DISPUTED)*

### Plaintiff's Instruction

You may find that Lucent's or Cisco's accused products represent an improvement over the invention defined in Telcordia's patent claims.  You may have even seen and heard evidence that Lucent or Cisco obtained patents on its products or methods.  However, you are not to presume that this means that Lucent or Cisco cannot infringe Telcordia's patent claims.  As long as Lucent's or Cisco's accused products or methods include all of the elements of at least one of Telcordia's patent claims, or if Lucent's or Cisco's accused products or methods are found to be equivalent under the doctrine of equivalents, then Telcordia's patent claims are infringed by Lucent's or Cisco's products despite any improvements made or patents obtained by Lucent or Cisco.

**Source:**     Adapted from Uniform Instructions § 3.16.

### Defendants' Objections

Defendants object to Telcordia's proposed instruction as unnecessary and likely to cause juror confusion.  The proper criteria for the infringement analysis are set forth in the entirety of the jury instructions, and there is no suggestion that this instruction is necessary to correct any suggestion in those other instructions that improvements by the accused infringer militate in favor of a non-infringement finding.

## 3.11  WILLFUL INFRINGEMENT   *(DISPUTED)*

### Plaintiff's Instruction

Telcordia asserts that Cisco has willfully infringed Telcordia's '763 and '633 patents, and that Lucent has willfully infringed Telcordia's '633 patent.  If you find that Cisco's products infringe at least one of Telcordia's '763 or '633 patent claims, or Lucent's products infringe at least one of Telcordia's '633 patent claims, you must further decide whether or not Telcordia has proven by clear and convincing evidence that Lucent's and Cisco's infringement was willful.

Willful infringement is established where Telcordia has proven 1) that the defendant was aware of the '763 and/or '633 patent, and 2) that the defendant had no reasonable good faith basis for concluding that, at the time the defendant began its infringement, it did not infringe Telcordia's patent and/or that the patent was not valid or enforceable.  In determining whether Lucent and Cisco willfully infringed Telcordia's patents, you must consider the totality of the circumstances.

The law requires that a potential infringer having actual notice of another's patent has an affirmative duty to use due care.  The affirmative duty of due care normally requires a potential infringer to obtain timely, competent legal advice before infringing or continuing infringing activity.  Thus, if you determine that Cisco had knowledge of Telcordia's '763 or '633 patents, or Lucent had knowledge of Telcordia's '633 patent, one factor you must consider in determining willfulness is whether or not Lucent and Cisco obtained competent legal advice before infringing or continuing to infringe upon learning of those patents.  This is, however, only one factor, and that an opinion of counsel may have been obtained does not require a finding that the infringement was not willful.

In determining whether or not Lucent's or Cisco's reliance on an opinion of counsel was reasonable, you should consider the following factors:

1)  Did Lucent or Cisco seek counsel's advice in a timely manner after learning of Telcordia's '763 or '633 patent.  The law imposes the duty to exercise due care to determine whether or not the defendant infringed at the time that the defendant learned of, or had notice of

Telcordia's '763 or '633 patent.  If the defendant did not request and receive an opinion of counsel during the relevant time period, then you should accord any subsequent opinion no weight.

2)  Lucent's or Cisco's knowledge of the attorney's independence, skill, and competence, including whether the advice was rendered by an inside or outside attorney.

3)  Whether the opinion was competent.  It is not enough to get legal advice; it must be competent legal advice.  Superficial or conclusory opinions are not competent.  An opinion may be deficient because it contains only conclusory findings with no justification or analysis.  For example, a statement that the patent is invalid, without detailed legal and factual analysis, including a review of the patent file histories, does not meet the standard of due care appropriate to serve as a competent opinion of counsel.  In evaluating the competence of the opinion itself, the question is, did counsel analyze all of the relevant facts, and explain its conclusions in light of the applicable law so as to warrant a reasonable degree of certainty that the infringer has the legal right to conduct the infringing activity.

4)  Whether the opinion is objective.  Opinions produced as protective devices in preparation for litigation, rather than as a genuine effort to determine, during the relevant time period, whether the patent is invalid or not infringed, are not objective.

Other factors that you may consider in determining the question of willful infringement include whether Lucent and Cisco continued to import, make, use, sell, or offer to sell infringing products after learning of Telcordia's patents, and whether Lucent or Cisco engaged in delaying tactics in its dealings with Telcordia.

Thus, if you find that Telcordia proved that Lucent or Cisco knew about the Telcordia patents and did not exercise due care to determine whether or not it was infringing and/or to determine whether the patent was invalid or unenforceable, you may find that Lucent's or Cisco's infringement was willful.

**Source:**     Adapted from Uniform Instructions §3.18; augmented by *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1362-64 (Fed. Cir. 1998); *SRI Int'l, Inc. v. Advanced Technology Labs., Inc.*, 127 F.3d 1462, 1464-68 (Fed. Cir. 1997); *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1571 (Fed. Cir. 1996); *Minnesota Mining and Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.,* 986 F.2d 1559, 1580-81 (Fed. Cir. 1992); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1259-60 (Fed. Cir. 1997); *American Med. Sys., Inc. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1531 (Fed. Cir. 1993); *Hoechst Celanese Corp. v. BP Chem. Ltd.*, 78 F.3d 1575, 1583 (Fed. Cir. 1996); *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1390 (Fed. Cir. 1983); *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 183 (Fed. Cir. 1994); *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992); *Accoustical Design, Inc. v. Control Elecs. Co.*, 932 F.2d 939, 942 (Fed. Cir. 1991).

## <u>Defendants' Objections</u>

Defendants object to Telcordia's proposed instruction because it does not reflect an accurate and up-to-date view of the law on willful infringement. Importantly, Telcordia does not cite the Federal Circuit's *en banc* opinion in *Knorr-Bremse v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004), the seminal case on willful infringement. The reason for this is clear. *Knorr-Bremse* does not support the skewed version of the law Telcordia seeks to provide to the jury.

In *Knorr-Bremse*, the *en banc* Federal Circuit recognized that the "determination of willfulness is made on consideration of the totality of the circumstances, *see Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990), and may include contributions of **several factors**, as compiled, *e.g., in Rolls-Royce Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1110 (Fed. Cir. 1986) and *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992)." *Knorr-Bremse*, 383 F.3d at 1342. These factors include:

    (1)    Whether the infringer deliberately copied the ideas or design of another;

    (2)    Whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed;

    (3)    The infringer's behavior as a party to the litigation;

    (4)    Defendant's size and financial condition;

    (5)    Closeness of the case;

(6)    Duration of defendant's misconduct;

(7)    Remedial action by the defendant;

(8)    Defendant's motivation for harm; and

(9)    Whether defendant attempted to conceal its misconduct (by failing to preserve records or cooperate at trial).

*Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-28 (Fed. Cir. 1992); *see also Liquid Dynamics Corp. v. Vaughn Co., Inc.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006) (factors include "(1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed, and (3) the infringer's behavior as a party to the litigation."). Moreover, the *en banc* Court in *Knorr-Bremse* made clear that a substantial defense is a factor that should be considered by the trier of fact in assessing whether infringement was willful. *Knorr-Bremse*, 383 F.3d at 1347.

Notwithstanding, the above, Telcordia's proposed instruction relies upon outdated and incomplete precedent to instruct the jury on advice of counsel for *six paragraphs*, while the entirety of the instruction on the remainder of the totality of the circumstances factors is a mere *4 lines*. Indeed, Telcordia's two-page instruction references "opinions" or "advice of counsel" over 15 times, leaving any reader, and certainly a lay jury, with the impression that advice of counsel is the end-all be-all of a willfulness inquiry. This is inconsistent with the law and is highly prejudicial to Defendants.[8]

Defendants further object to Telcordia's proposed instruction because it instructs the jury that Lucent and Cisco were under an "affirmative duty to use due care." As above, Telcordia's invocation of an affirmative duty of due care invites the jury to (erroneously) ignore the totality of the circumstances test established in *Knorr-Bremse* and instead focus on the presence or absence of opinions of counsel. Such an instruction is legally improper.

---

[8]    Telcordia's unconventional and legally unviable willfulness theories are also the subject of Defendants' Motion in Limine No. 3.

Defendants further object to Telcordia's instruction because it does not provide the jury with clear or correct guidance as to the notice requirement for willfulness. Although vague, Telcordia's proposed instruction suggests that it may argue that Lucent and Cisco both had notice of the '633 patent by virtue of alleged notice of the predecessor '978 patent from which it reissued. As discussed above, notice of the predecessor patent is legally insufficient to constitute notice of the reissue patent for willfulness. *Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374 (Fed. Cir. 2005); *see also* Defendants' Objections at p. 16 *supra.*

Defendant Lucent further objects to Telcordia's proposed instruction because it suggests that Lucent may be liable for willful infringement of the '763 patent and should have obtained advice of counsel on that patent, when Telcordia does not even allege willful infringement by Lucent of the '763 patent.

*     *     *

### Defendants' Instruction

In this case, Telcordia contends both that Cisco infringed the '633 and '763 patents and that its infringement was willful. Telcordia further contends that Lucent infringed infringed the '633 patent and that its infringement was willful.

Willfulness is a determination of the Defendants' state of mind. Although Telcordia must prove infringement by a preponderance of the evidence, Telcordia must prove that defendant willfully infringed by the higher burden of clear and convincing evidence. That is, Telcordia must prove that it is highly probable that Cisco and/or Lucent infringe willfully.

To establish willful infringement, Telcordia must prove two things are highly probable:

1. Cisco and/or Lucent was aware of the '633 patent; or that Cisco was aware of the '763 patent.

2. Cisco and/or Lucent acted without having a reasonable good faith belief

that the patent was invalid or that the patent was not infringed.

To determine whether Cisco and/or Lucent acted with a reasonable good faith belief or whether Cisco and/or Lucent willfully infringed the patent, you must consider all of the facts, which include but are not limited to:

1.    The strength of the defenses raised by Cisco and/or Lucent in this trial;

2.    When Cisco and/or Lucent became aware of the patent, whether Cisco and/or Lucent formed a good faith belief that the patent was invalid or that the patent was not infringed, including whether Cisco and/or Lucent obtained and followed the advice of a competent lawyer. However, the absence of an opinion of counsel does not require you to find willfulness;

3.    Whether Cisco and/or Lucent intentionally copied a Telcordia product covered by the '633 and/or '763 patents; and

4.    Whether Cisco and/or Lucent tried to cover up their infringement.

Keep in mind that a determination by you that Lucent and/or Cisco have infringed the patent does not automatically mean that the infringement was willful. As I have explained, the infringement is not willful if Lucent and/or Cisco had a good faith belief that it did not infringe or that the patent was invalid, and if its belief was reasonable under all the circumstances.

**Source:**    2004 Uniform Instructions § 3.16; *Knorr-Bremse v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004); *Read Corp. v. Portec, Inc*., 970 F.2d 816, 826-27 (Fed. Cir. 1992); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990); *see also* Model Patent Jury Instructions for the Northern District of California (September 20, 2004).

## <u>Plaintiff's Objections</u>

# 4. **VALIDITY DEFENSES**

## 4.1 **PRESUMPTION OF PATENT VALIDITY** *(DISPUTED)*

### **Plaintiff's Instruction**

The granting of a patent by the Patent and Trademark Office carries with it the presumption that the patent is valid. From issuance of the patent, it is presumed that its subject matter is new, useful, and constitutes an advance which was not, at the time the invention was made, obvious to one of ordinary skill in the art. The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent and Trademark Office acted correctly in issuing the patent. As a result, Telcordia does not have to prove anything. Telcordia does not have to prove that the claims of its patent are valid. You are to start with the presumption, without having to hear any evidence on the matter, that the patent is valid.

This presumption of validity puts the burden of proving invalidity on Lucent and Cisco. While this presumption can be rebutted, the burden is on Lucent and Cisco to do so. This burden requires that Lucent or Cisco prove by clear and convincing evidence that in this case the Telcordia patents are invalid. I have already explained to you the burden of proof of clear and convincing evidence.

Each of the asserted claims of the Telcordia patents is presumed valid independently of the validity of each other claim. Lucent or Cisco must therefore prove the invalidity of each claim by clear and convincing evidence.

**Source:**     35 U.S.C. § 282; *Ortho*, 959 F.2d at 942.

### **Defendants' Objections**

Defendants object to Plaintiff's proposed instruction on the presumption of validity. *See* Defendants' Objections at p. 5 *supra*. Defendants instead propose an instruction on the burden of proof. This instruction provides the jury with guidance as to the appropriate standard for its invalidity determination, but does so without the risk of misleading the jury in a manner that is a

prejudicial to Defendants and inconsistent with the law.

\*       \*       \*

## Defendants' Instruction

Defendants contend that the asserted claims of the '306, '633 and '763 patents are invalid for failure to satisfy the legal requirements of patentability.  Lucent and/or Cisco must prove that the '306, '633 and/or '763 patents are invalid by clear and convincing evidence.  I have already explained to you the burden of proof of clear and convincing evidence.  I will now instruct you on the invalidity issues you will have to decide in this case.

**Source:**        2004 Uniform Instructions § 4.

## Plaintiff's Instruction

## 4.2  DEFINITENESS UNDER 35 U.S.C. § 112   *(DISPUTED)*

### Plaintiff's Instruction

The Patent Laws require the claims of a patent to be sufficiently definite that one skilled in the art can determine the limits of the claimed invention.  You must presume that the claims of Telcordia's patents meet this "definiteness" requirement.  Then you must decide whether Lucent or Cisco has proven by clear and convincing evidence that any of these claims is invalid for failure to meet this definiteness requirement.

The amount of detail required to be included in claims depends on the particular invention and the prior art, and is not to be evaluated in the abstract but in conjunction with the disclosure.  If the claims, read in light of the patent's specification and prosecution history, reasonably apprise those skilled in the art of the proper scope of the invention, and if the language is as precise as the subject matter permits, then the claims are not indefinite.

Simply because some claim language may not be precise does not automatically render a claim invalid.  You must determine whether one of ordinary skill in the art would understand what is covered when the claim is read in light of the specification and prosecution history.  Even if one needed to experiment so as to determine the limits of the claims of the patent, that would not necessarily be a basis for holding the claims invalid.

**Source:**     Adapted from Uniform Instructions § 4.1, augmented by *Texas Instr. v. United States Int'l Trade Comm'n*, 871 F. 2d 1054 (Fed. Cir. 1989); *Andrew Corp. v. Gabriel Elecs., Inc.*, 847 F.2d 819 (Fed. Cir. 1988).

### Defendants' Objections

Defendants object to Plaintiff's proposed instruction because it fails to provide the jury with any guidance as to the definiteness requirement as it relates to means-plus-function limitations.  The only indefiniteness dispute in this case is centered on the '763 patent's failure to identify structure for the "monitoring means" required by the asserted claims.  In order to understand the legal standard to be applied and the issue they must decide, jurors need an

instruction that sets for the specific requirements for definiteness of mean-plus-function limitations. Moreover, an instruction that is completely divorced from Defendants' contentions is highly prejudicial to Defendants.

Defendants further object to Plaintiff's proposed instruction because it again builds the presumption of validity into a substantive instruction on indefiniteness: "You must presume that the claims of Telcordia's patents meet this 'definiteness' requirement." Such an instruction is redundant of the instruction that the burden of proof for indefiniteness is clear and convincing evidence (and of Telcordia's proposed, and improper, instruction on the presumption of validity). *See* Defendants' Objections at p. 5 *supra*.

*    *    *

### Defendants' Instruction

The Patent Laws require the claims of a patent to be sufficiently definite that one skilled in the art can determine the limits of the claimed invention. Put differently, the claims of patent must be "definite" enough for a person of skill in the art to know what the patent covers.

As I mentioned previously, when the patentee employs means-plus-function language in a claim, the patentee must describe in the specification of the patent the structures that correspond to the claimed function. If a patentee does not adequately disclose those structures, the applicant has in effect failed to provide a definite statement of his claims that would allow a person of skill in the art to know what those claims cover.

Here, Defendants contend that asserted claims 1, 2, 7 and 8 of the '763 patent are indefinite because the patent does not provide sufficient information for a person of ordinary skill to know what the patent covers. Specifically, Defendants contend that the patent does not disclose structure that corresponds to the "monitoring means" identified in the claims. In deciding this issue, you must determine whether the specification as a whole describes structure capable of performing the function of the "monitoring means." A structure disclosed in the

specification only qualifies as "corresponding" structure if the specification or prosecution history clearly links or associates that structure to the function recited in the claim.  It is not proper to look to the knowledge of one skilled in the art apart from and unconnected to the disclosure of the patent.

Thus, you must decide whether the '763 patent describes a structure for the "monitoring means" and whether it links that structure to the function of the "monitoring means."  If it does not meet either of this requirements, the claims of the '763 patent are indefinite.

**Source:**    *Default Proof Credit Card System, Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291 (Fed. Cir. 2005); *Atmel Corp. v. Information Storage Devices*, 198 F.3d 1374, 1379 (Fed. Cir. 1999); *Medical Instrum. & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1212 (Fed. Cir. 2003).

**<u>Plaintiff's Objection</u>**

## 4.3  BEST MODE    *(DISPUTED)*

### Plaintiff's Instruction

Under the Patent Laws, the description portion of a patent must describe the best way (referred to as the "best mode") contemplated by the inventor of carrying out his invention.  If, however, at the time he filed his patent application the inventor did not know whether a particular way of carrying out the invention was the "best" way, he had no best mode and was not required to disclose a "best mode."  If the inventor conceived of no better way to carry out the invention than that disclosed in the patent application, there is no best mode violation.

Each claim of Telcordia's patents is presumed valid.  You must start with the presumption that the claims comply with the best mode requirement.  Lucent or Cisco must overcome this presumption by proving, by clear and convincing evidence, that as of the filing dates of Telcordia's patents, the inventors 1) knew of; and 2) concealed a better mode of carrying out his invention.

The first part of this inquiry focuses on the inventor's knowledge.  You must determine whether the inventor knew of a mode of practicing the claimed invention that he knew was better than any other at the time he filed his patent application.  This knowledge must be the inventor's.  You may not impute knowledge by others at Telcordia to the inventor.  In other words, whether others may have known of a better way to practice the claimed invention is irrelevant to this first question.

If you find that Lucent or Cisco has proved by clear and convincing evidence that the inventor knew of a better way to practice the claimed invention as of the filing date, you must then consider whether the inventor concealed this "best mode."  To do so, you must compare what the inventor knew with what is disclosed in Telcordia's patents to determine whether that disclosure is adequate to permit one skilled in the art to practice the best mode.  This depends in turn on the scope of the claimed invention and the level of skill in the art.  The best mode requirement does not require an inventor to disclose production details.  Supplier and/or trade information need only be disclosed when a person skilled in the art could not practice the best

mode absent the information. If the patent disclosure, combined with the knowledge of those skilled in the art, is adequate to permit those skilled in the art to practice the best mode, then there is no best mode violation.

Finally, the best mode inquiry is directed to what the inventor regards as his invention, which is measured by the claims. Unclaimed subject matter is not subject to the best mode requirement. Each claim must be considered individually.

**Source:**    Adapted from Uniform Instructions; augmented by 35 U.S.C. § 282; *Texas Instr., Inc. v. United States Int'l Trade Comm'n*, 871 F.2d 1054, 1061 (Fed. Cir. 1989); *Shearing v. Iolab Corp.*, 975 F.2d 1541, 1546 (Fed. Cir. 1992); *Minco, Inc. v. Combustion Engineering, Inc.*, 95 F.3d 1109, 1115-16 (Fed. Cir. 1996); *Transco Prods., Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 560 (Fed. Cir. 1994); *Glaxo Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1050 (Fed. Cir. 1995); *Engel Indus., Inc. v. Lockformer Co.*, 946 F.2d 1528, 1531 (Fed. Cir. 1991).

## Defendants' Objections

Defendants object to Plaintiff's proposed instruction because, although it purports to be "adapted" from the Uniform Instructions, Plaintiff's instruction is in fact largely divorced from that instruction. Defendants further object to Plaintiff's proposed instruction because it does not provide the jury with sufficient guidance as to the best mode requirement of Section 112, and instead places undue emphasis on situations in which a best mode violation would not occur by repeating such factors multiple times.

Plaintiff's instruction is also legally incorrect because its conflates the enablement and best mode through its statement that "If the patent disclosure, combined with the knowledge of those skilled in the art, is adequate to permit those skilled in the art to practice the best mode, then there is no best mode violation." The Federal Circuit has made clear that "[b]ecause of the subjective nature of the best mode inquiry, the best mode disclosure requirement-unlike enablement-cannot be met by mere reference to the knowledge of one of skill in the art. . . . Rather, because the existence of a best mode of carrying out the invention is by definition known

only to the inventor, section 112 demands actual disclosure regardless of whether, as an abstract matter, practicing that mode would be within the knowledge of one of ordinary skill in the art." *Bayer AG v. Schein Pharms., Inc.*, 301 F.3d 1306, 1314 (Fed. Cir. 2002).

Defendants further object to Plaintiff's proposed instruction because it again builds the presumption of validity into a substantive instruction on the best mode requirement: "Each claim of Telcordia's patents is presumed valid. You must start with the presumption that the claims comply with the best mode requirement." Such an instruction is redundant of the instruction that the burden of proof for invalidity is clear and convincing evidence (and of Telcordia's proposed, and improper, instruction on the presumption of validity). *See* Defendants' Objections at p. 5 *supra*.

*    *    *

### Defendants' Instruction

Lucent and Cisco contend the '306 and '763 patents are invalid because the patent specifications do not disclose the best way, or best mode of, carrying out the invention.

The patent laws require that a patent must describe the best mode of carrying out the invention contemplated by the inventor(s) at the time that the patent application was filed. The purpose of this requirement is to ensure that the public obtains a full disclosure of what the inventors believe is the best way of carrying out their invention. If the inventors believe that there is a best mode for a claim and fail to sufficiently describe that best mode in the patent, then that claim is invalid.

To determine whether the inventors complied with the best mode requirement, you must answer two questions.

First, at the time the patent application was filed, did the inventors know of a mode of practicing the claimed invention that they considered to be better than any other? This is a

subjective inquiry. It is insufficient to show that a better way of practicing the invention existed or that another person may have perceived another mode to be better; the focus is on the inventor's understanding of the best mode of carrying out the invention.   In this case, you must determine what the inventors knew and their state of mind as of November 10, 1987 and February 4, 1988, the dates the applications for the '306 and '763 patents were filed, respectively.   You must consider whether, on those dates, the inventors knew of a way to practice the claimed invention that was better than any other way.  If the inventors realized after those dates that a better way existed to practice the invention, there is no requirement that they update the best mode.

Second, if the inventors did have a best mode for practicing their invention on those dates, did the inventors adequately disclose their best mode(s) in the patent specification? This is an objective inquiry.  The accidental failure to disclose the best mode does not cure a best mode violation.  The inventors' intent is not relevant to your decision on best mode.  The specification must contain a description of the inventors' best mode that is sufficient to enable a person skilled in the art to practice the best mode.  To answer this question, you must consider the scope of the invention and the level of skill in the art.

Finally, failure to disclose details relating to portions of the invention that are not in the claims is not generally a violation of the best mode requirement.  However, you may consider whether the applicant has failed to disclose an unclaimed preference that materially affected making or using the invention.

**Source:**     2004 Uniform Instructions § 4.4; *United States Gypsum Co. v. National Gypsum Co.*, 74 F.3d 1209 (Fed. Cir. 1996); *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 789 (Fed. Cir. 1995); *VLT Corp. v. Unitrode Corp.*, 130 F.Supp. 2d 178, 197 (D. Mass. 2001).

**Plaintiff's Objection**

## 4.4  ANTICIPATION    *(DISPUTED)*

**Plaintiff's Instruction**

Lucent and Cisco contend that the invention defined in the claims of Telcordia's patents is not new or novel.  Something that shows that a patent claim is not novel is said to anticipate that claim.  Several different types of events may anticipate and invalidate a patent claim.  Here, Lucent and Cisco contend that the claims are anticipated by different articles or patents which, if they meet certain requirements, may be "prior art."  I will explain the requirements as to each shortly.

In order to prove invalidity of the invention claimed in Telcordia's patents for anticipation, Lucent or Cisco must prove by clear and convincing evidence for each claim that each and every limitation of the claimed invention is found in a single piece of prior art.  Absence from the single piece of prior art of even a single claim limitation negates anticipation.  Stated another way, Lucent and Cisco may not rely on any evidence beyond the piece of prior art itself, such as testimony by the prior art reference's author, to supplement or fill gaps in the teachings of the prior art.  To prove anticipation, Lucent of Cisco must overcome by clear and convincing evidence the presumption of validity attached to issued patent claims.  This burden is especially difficult to meet where the defendants rely on prior art already considered by the Patent and Trademark Office.

To meet its burden, Lucent or Cisco must prove by clear and convincing evidence that:

1)      the material upon which it relies is "prior art" under the law;

2)      if the material is prior art, that the prior art contains each and every limitation of the claimed invention; and

3)      the prior art contains enough information to enable one skilled in the art to make and use the claimed invention.

If you find that Lucent and Cisco have failed to meet its burden with respect to any of

these elements, then you must find that the claims are not invalid for anticipation.

A piece of prior art anticipates a patent claim if it discloses, either expressly or inherently, all of the limitations of the claim. There is no anticipation unless every one of the limitations of the claimed invention is found in a single piece of prior art. If the piece of prior art is silent about a limitation of a claim, it may still anticipate that claim if that limitation is inherently present in that piece of prior art. To prove that a limitation is inherent in a piece of prior art, Lucent or Cisco must show by clear and convincing evidence that the missing matter is necessarily present in the piece of prior art and that it would be recognized by persons skilled in the art. Inherency may not be established by probabilities or possibilities. Thus, the allegedly inherent property must always be present. The mere fact that a certain thing may result from a given set of circumstances is not enough.

You must keep these requirements in mind and apply them to each kind of alleged anticipatory prior art offered by Lucent and Cisco. There are additional requirements that apply to each kind of anticipation that Lucent and Cisco contend apply here, and I will discuss those further.

**Source:**    Adapted from Uniform Instructions § 4.2; augmented by *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997); *Kegel Co. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1429-30 (Fed. Cir. 1997); *BOC Health Care, Inc. v. Nellcor Inc.*, 892 F. Supp. 598, 602 (D. Del. 1995); *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1365 (Fed. Cir. 1999); *Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1576-77 (Fed. Cir. 1991).

## **Defendants' Objections**

Defendants object to Plaintiff's proposed instruction because, although it purports to be "adapted" from the Uniform Instructions, Plaintiff's instruction is in fact largely divorced from that instruction. Defendants further object to Plaintiff's proposed instruction because it does not recognize Defendants' reliance on "non-public" prior art pursuant to 35 U.S.C. § 102(f). *See, e.g.*, *Oddzon Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396 (1997).

Defendants further object to Plaintiff's proposed instruction because it again builds the presumption of validity into a substantive instruction on anticipation: "Each claim of Telcordia's patents is presumed valid. You must start with the presumption that the claims comply with the best mode requirement." Such an instruction is redundant of the instruction that the burden of proof for invalidity is clear and convincing evidence (and of Telcordia's proposed, and improper, instruction on the presumption of validity). *See* Defendants' Objections at p. 5 *supra*. Defendants further object to Telcordia's proposed instruction because it instructs that the burden on invalidity is "especially difficult to meet where the defendants rely on prior art already considered by the Patent and Trademark Office." This instruction is cumulative of the instruction on the burden of proof (and of Telcordia's proposed, and improper, instruction on the presumption of validity), and invites the jury to apply an impermissibly high standard for anticipation.

*    *    *

### Defendants' Instruction

Defendants contend that the inventions covered by the asserted claims of the '306, '633 and '763 patents are invalid because they are not new. A person cannot obtain a patent on an invention if someone else has already made the same invention. In other words, the invention must be new. If it is not new, we say that it was "anticipated" by the prior art. Prior art is the legal term used to describe what others had done in the field before the invention was made, and may include information that was publicly known before the invention was made by the named inventors or information that is communicated from someone other than the named inventors to the named inventors. Prior art that is publicly known is information in the general body of knowledge in the public domain, such as articles or other patents before the invention was made. It is not necessary that the prior art have been available to every member of the public. It must

69

have been available, without restriction, to that segment of the public most likely to make use of the prior art's contents. Information that is communicated from someone other than the named inventors to the named inventors from which the named inventors derived the claimed invention qualifies as prior art, whether or not it is public. Such information could include private communications (oral or written). This is because that information obtained by the named inventors from someone else is inherently "prior," whether the information is public or not.

An invention that is "anticipated" by the prior art is not entitled to patent protection. To prove that an invention is "anticipated," Defendant must prove by clear and convincing evidence that a single piece of prior art describes or discloses all of the elements of the claimed invention. If the piece of prior art is silent about a limitation of a claim, it may still anticipate that claim if that limitation is inherently present in that piece of prior art. For the limitation to be inherently present, it would be recognized by persons skilled in the art to be present in the reference.

**Source:**     2004 Uniform Instructions § 4.5; 35 U.S.C. §§ 102(a), 102(f); *Oddzon Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396 (1997); *Ecolochem, Inc. v. S. Cal. Edison, Co.*, 227 F.3d 1361, 1369 (Fed. Cir. 2000).

**<u>Plaintiff's Objection</u>**

## 4.5  WHAT IS PRIOR ART  *(DISPUTED)*

### Plaintiff's Instruction

As previously discussed, for Lucent or Cisco to prevail on an anticipation defense as to any asserted claim, they must prove by clear and convincing evidence not only that the material relied upon contains each and every limitation of the claims of Telcordia's patents, but also that the material relied upon is legally available as prior art.  Because Lucent and Cisco rely on different types of alleged prior art, I will discuss what is required for various categories of material to be legally available as prior art.  If you determine that any of the material or events on which Lucent or Cisco relies is not prior art, then you must disregard that material or event, because it can have no effect on the validity of the patent.

### Defendants' Objections

Defendants object to this instruction as redundant and unnecessary.  Inclusion of this instruction places unnecessary and undue emphasis on the character of the prior art references upon which Defendants intend to rely and detracts from the anticipation analysis the jury is tasked with.

71

## 4.5.1  PRINTED PUBLICATIONS AS PRIOR ART    *(DISPUTED)*

### Plaintiff's Instruction

Lucent and Cisco contend that claims 1, 3, and 4 of Telcordia's '306 patent, 1, 2, 7, and 8 of Telcordia's '763 patent and claims 11 and 33 of Telcordia's '633 patent were anticipated because the inventions defined by those claims were described in a printed publication. Lucent or Cisco must prove this by clear and convincing evidence.

A printed publication may be prior art if it was sufficiently accessible to interested members of the public either more than one year before the filing date of the patent in suit (or the filing date of the parent application in the case of a reissued patent), or before the inventor made the invention. Books, periodicals, or newspapers of general circulation are common examples of printed publications. On the other extreme, information that can only be located in a person's private files or a company's private files is not a printed publication. Documents disseminated to a degree between these extremes may constitute printed publications under certain circumstances. Documents maintained in a library, for example, may constitute printed publications if the public could, by reference to a subject matter index, locate and access the document without restriction.

The existence of lack of confidentiality restrictions on the document is one factor to consider in determining whether the document was sufficiently accessible. The mere lack of a confidentiality label, however, does not compel the conclusion that the document constitutes a printed publication. Rather, there still must be clear and convincing evidence of actual dissemination.

**Source:**     Adapted from Uniform Instructions § 4.8.1, *CellPro*, 894 F. Supp. at 840; augmented by 35 U.S.C. § 102*; In re Coker*, 463 F.2d 1344 (C.C.P.A. 1972); *In re Donohue*, 632 F.2d 123 (C.C.P.A. 1980); *In re Samour*, 571 F.2d 559 (C.C.P.A. 1978); *Garrett Corp. v. United States*, 422 F.2d 874 (Ct. Cl. 1970); *Studiengesellschaft Kohle mbH v. Dart Indus., Inc.*, 726 F.2d 724 (Fed. Cir. 1984); *In re Wyer*, 655 F.2d 221 (C.C.P.A. 1981); *Scripps Clinic & Res. Found. v. Genentech, Inc.*, 927 F.2d 1565 (Fed. Cir. 1991); *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560 (Fed. Cir. 1991); *Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897 (Fed. Cir.

1986); *In re Donohue*, 766 F.2d 531 (Fed. Cir. 1985); *Glaverbel Societe Anonyme v. Northlake Mktg & Supply, Inc.*, 45 F.3d 1550 (Fed. Cir. 1995); *Ex parte Suozzi*, 125 U.S.P.Q. 445, 446-47 (Pat. Off. Bd. App. 1959); *Tyler Refrigeration Corp. v. Kysor Industrial Corp.*, 553 F. Supp. 279 (D. Del. 1982).

### Defendants' Objections

Defendants object to this instruction because it improperly distinguishes between printed publications that constitute prior art under Section 102(a) and printed publications that constitute prior art under Section 102(b). Because Telcordia was ordered to provide a firm conception date and subsequently committed that it would not rely on conception prior to the filing date of the patents-in-suit, the distinction between Section 102(a) and Section 102(b) printed publications is not material and invites confusion.

*     *     *

### Defendants' Instruction

Defendants contend that claims of the '306, '763 and '633 patents were anticipated because the invention defined in those claims was described in a prior publication, such as an article or report. A patent claim may be anticipated and invalid if the entire invention defined by that claim was described in a printed publication either: (i) before the named inventors made their invention; or (ii) more than one year before the effective filing date of the patent application. For purposes of your decision, Telcordia agrees that the named inventors made their invention no sooner than the filing date of the patent application. Accordingly, the claims of the '306 patent are anticipated if their subject matter was described in a printed publication before November 10, 1987; the claims of the '763 patent are anticipated if their subject matter was described in a printed publication before February

4, 1988; and the claims of the '633 patent are anticipated if their subject matter was described in a printed publication before October 30, 1992.

For a printed publication to anticipate the claims of the patent, Lucent and Cisco must show that the printed publication, when read by a person of ordinary skill in the art, expressly or inherently embodies or discloses each element of the patent claim. The disclosure must be complete enough to enable one of ordinary skill in the art to practice the invention, without undue experimentation. In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art at the time, and you may consider expert testimony and other publications that shed light on the knowledge such a person would have had at that time.

To qualify as prior art, a printed publication must be sufficiently accessible to interested members of the public either more than one year before the filing date of the patent in suit (or the filing date of the parent application in the case of a reissued patent), or before the inventor made the invention. Books, periodicals, or newspapers of general circulation are common examples of printed publications. On the other extreme, information that can only be located in a person's private files or a company's private files is not a printed publication. Documents disseminated to a degree between these extremes may constitute printed publications under certain circumstances.

**Source:**     2004 Uniform Instructions § 4.5.4; 35 U.S.C. §§ 102(a), 102(b).

### 4.5.__  PATENTS AS PRIOR ART

**Plaintiff's Instruction**

**Defendant's Instruction**

Defendants contend that claims of the '763 patent were anticipated because the invention defined in those claims was described in a prior patent. A patent claim may be anticipated and invalid if the entire invention defined by that claim was described in a patent either: (i) before the named inventors made their invention; or (ii) more than one year before the effective filing date of the patent application.  For purposes of your decision, Telcordia agrees that the named inventors made their invention no sooner than the filing date of the patent application. Accordingly, the claims of the claims of the '763 patent are anticipated if their subject matter was described in a patent before February 4, 1988.

The same principles apply with respect to prior art patents as to printed publications.

**Source:**    2004 Uniform Instructions § 4.5.4; 35 U.S.C. §§ 102(a), 102(b).

75

### 4.5.2  PRIOR U.S. PATENT APPLICATION AS PRIOR ART  *(DISPUTED)*

#### Plaintiff's Instruction

Another type of prior art is an issued United States patent for which the patent application was filed, by another person, before the invention was made by the inventor of the patent in suit. Thus, for a prior U.S. patent application to anticipate a claim of a Telcordia patent, Lucent or Cisco must prove by clear and convincing evidence:

1)   that each and every limitation of the invention defined by that claim is described in an issued United States patent;

2)  that the patent application was filed by someone other than the inventor of Telcordia's patent; and

3)  that the patent application for that patent was filed before the inventor of Telcordia's patent made his invention.

**Source:**      35 U.S.C. § 102(e).

#### Defendants' Objections

Defendants object to this instruction as unnecessary.  Defendants do not intend to rely on Section 102(e) prior art.

### 4.5.3  NON-ENABLING REFERENCES    *(DISPUTED)*

### Plaintiff's Instruction

Even if a reference meets the conditions I just discussed, it still will not qualify as invalidating prior art unless it meets the so-called "enablement" requirement. Enablement requires that the disclosure of the reference be sufficiently detailed to enable one skilled in the art to practice the reference's teachings without undue experimentation. This requirement ensures that the subject matter of the reference was truly put into the possession of the public, thereby operating as a surrender of patent rights to that same subject matter. If a reference does not enable one skilled in the art to practice the reference's teachings without undue experimentation, then it cannot be used to invalidate a patent claim. Shortly, I will list various factors to consider when evaluating the issue of undue experimentation.

**Source:**      *In re Paulsen*, 30 F.3d 1475, 1479 (Fed. Cir. 1994); *Chester v. Miller,* 906 F.2d 1574, 1576 n.2 (Fed. Cir. 1990); *Atlas Powder Co. v. E.I. Du Pont de Nemours & Co.*, 750 F.2d 1569, 1576 (Fed. Cir. 1984).

### Defendants' Objections

Defendants object to this instruction as redundant and unnecessary. Inclusion of a separate instruction on this issue places unnecessary and undue emphasis on the enablement requirement for prior art references. As contemplated in the Uniform Instructions, the enablement of prior art references should form part of the instructions on what constitutes prior art. *See* Defendants' Proposed Instruction on Prior Publication at pp. 73 and 75 *supra*. Moreover, Plaintiff's proposed instruction is contrary to the Federal Circuit's rule that a "presumption arises that both the claimed and unclaimed disclosures in a prior art patent are enabled." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1355 (Fed. Cir. 2003).

### 4.5.4  REFERENCES DESCRIBING THE INVENTOR'S WORK    *(DISPUTED)*

#### Plaintiff's Instruction

References describing the inventor's own work published less than one year before the application filing date are not prior art that will render the invention anticipated or obvious.  It does not matter whether the article was authored by the inventor or someone else.  So long as the article describes the inventor's own work, it cannot be used as prior art to invalidate the claimed invention.

**Source:**     *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 990 n. 9 (Fed. Cir. 1988); *In re Katz*, 687 F.2d 450, 454 (CCPA 1982).

#### Defendants' Objections

Defendants object to this instruction as redundant and unnecessary.  This requirement is part of the analysis for whether a prior art reference constitutes a printed publication and, as contemplated in the Uniform Instructions, should form part of the instruction on prior publication.  The instruction is also inconsistent with well-settled law.  *See, e.g.*, *In re Katz*, 687 F.2d 450 (C.C.P.A. 1982).

\*       \*       \*

#### Defendants' Instruction

References describing the inventor's own work published less than one year before the application filing date are not prior art that will render the invention anticipated or obvious.  It does not matter whether the article was authored by the inventor or someone else.  So long as the article describes the inventor's own work, it cannot be used as prior art to invalidate the claimed invention.  However, if prior art references authored by individuals other than the named inventors are not shown to reflect the work of the inventors, these references may be prior art so long as they were published before the filing of the application that led to the patent.  A reference

is authored by individuals other than the inventors even if the authorship differs only by one person. In determining whether references authored by individuals other than the inventors reflect the work of the authors, you should consider the content and nature of the reference, as well as the circumstances surrounding its publication. Moreover, the previous work of one or more inventors separately constitutes prior art if there is no indication that the reference reflects the joint work of the inventors on the invention.

**Source:**      *In re Land*, 368 F.2d 866 (C.C.P.A. 1966); *In re Katz*, 687 F.2d 450 (C.C.P.A. 1982).

## Plaintiff's Objections

## 4.6  OBVIOUSNESS          (DISPUTED)

### Plaintiff's Instruction

Even though an invention claimed in Telcordia's patents is not anticipated by the prior art, the claimed invention may nevertheless be invalid if it would have been obvious to one of skill in the art at the time the invention was made.

In order to prove that the invention claimed in the claims of Telcordia's patents is invalid for obviousness, Lucent or Cisco must prove by clear and convincing evidence for each claim that the differences between the subject matter of the claimed inventions and the prior art are such that the subject matter of the claim taken as a whole would have been obvious at the time the invention was made to a person of ordinary skill in the relevant art.  In so doing, Lucent or Cisco must overcome by clear and convincing evidence the presumption of validity attached to issued patent claims.  This burden is especially difficult to meet where the defendant relies on prior art already considered by the Patent and Trademark Office.

In order to be patentable, an invention must not be obvious to a person of ordinary skill in the art at the time the invention was made.  The issue is not whether the claimed invention would be obvious to you as a layman, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

In determining whether or not Lucent or Cisco has established obviousness by clear and convincing evidence, you must consider the following factors:

1.      The scope and content of the prior art relied upon by Lucent and Cisco;

2.      The differences between each claim of Telcordia's patents and the prior art;

3.      The level of ordinary skill in the pertinent art at the time the invention of Telcordia's patents was made; and

4.      Any objective indicia of non-obviousness.

I will now explain each of these factors.

**Source:**     Adapted from Uniform Instructions § 4.8; *CellPro*, 894 F. Supp. at 837; augmented by *Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1364 (Fed. Cir. 1998); *BOC Health Care, Inc. v. Nellcore Inc.*, 892 F. Supp. 598, 602 (D. Del. 1995); *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 546 (Fed. Cir. 1998).

## Defendants' Objections

Defendants object to Plaintiff's proposed instruction because it again builds the presumption of validity into a substantive instruction on the obviousness requirement: "In so doing, Lucent or Cisco must overcome by clear and convincing evidence the presumption of validity attached to issued patent claims. This burden is especially difficult to meet where the defendant relies on prior art already considered by the Patent and Trademark Office." Such an instruction is redundant of the instruction that the burden of proof for invalidity is clear and convincing evidence (and of Telcordia's proposed, and improper, instruction on the presumption of validity). *See* Defendants' Objections at p. 5 *supra*.

\*        \*        \*

## Defendants' Instruction

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would be obvious to you as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

To determine obviousness or non-obviousness of the claimed subject matter of each of the patents in suit, you should take the following steps:

1. Determine the scope and content of the prior art relied upon by Defendant.

2. Identify the difference, if any, between each claim of the patents and the prior art.

3. Determine the level of ordinary skill in the pertinent art at the time the invention of the patent was made.

81

4. Consider secondary considerations of non-obviousness, which I will describe to you in
detail later.

Against this background, you must then decide whether the claimed subject matter would
have been either obvious or non-obvious to a person of ordinary skill in the pertinent art.

**Source:**    2004 Uniform Instructions § 4.8; *Graham v. John Deere Co.*, 383 U.S. 1 (1966).

**<u>Plaintiff's Objections</u>**

### 4.6.1  SCOPE AND CONTENT OF THE PRIOR ART    *(DISPUTED)*

#### **Plaintiff's Instruction**

As I just instructed you, in arriving at your decision on the issue of whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art.  This means that you must determine what prior art is reasonably pertinent to the particular problem with which the inventor was faced.  Prior art is reasonably pertinent if, although in a different field from that of the inventor's endeavor, it is one which, because of the matter with which it deals, logically would have presented itself as worthy of an inventor's attention in considering his problem.  Scope and content of the prior art includes references from those areas a person with ordinary skill in the art would look at in solving a particular problem.  Non-analogous, or non-pertinent art cannot render a patent claim obvious. The prior art includes the following:

1.     Prior patents that issued before the dates of invention or more than one year before the filing dates of the patents in suit (or more than one year prior to the filing date of the parent application in the case of a reissued patent);

2.     Prior publications having a publication date before the dates of invention or more than one year before the filing dates of the patents in suit (or more than one year prior to the filing date of the parent application in the case of a reissued patent);

3.     U.S. Patents that have a filing date prior to the date of invention of the patents in suit;

4.     Anything in public use or on sale in the United States more than one year before the filing dates of the patents in suit (or more than one year prior to the filing date of the parent application in the case of a reissued patent);

5.     Anything that was publicly known or publicly used by others in this country before the date of invention of the patent in suit; and

6.     Anything that was made or built or any process that was used in this country by another person before the date of invention of the patent in suit, where the thing

made or built or the process used was not abandoned, suppressed or concealed.

As you did in considering Lucent's and Cisco's anticipation contentions, you must first determine whether the material or events relied on by Lucent and Cisco are "prior art." If these materials or events are the same as those relied on by Lucent and Cisco in alleging anticipation, your determination should be the same here. Thus, if you previously found that something did not qualify as "prior art" for anticipation purposes, it is likewise not prior art for the obviousness determination.

You must then consider what the qualifying prior art would have taught to one skilled in the art at the time of the invention.

**Source:**    Adapted from Uniform Instructions § 4.8.1, *CellPro*, 984 F. Supp. at 837; augmented by *Rockwell*, 147 F.3d at 1365; *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 863-64 (Fed. Cir. 1993).

## Defendants' Objections

Defendants object to this instruction because it fails to recognize that non-public communications may constitute prior art for purposes of the Section 103 obviousness inquiry. *Oddzon Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396 (1997). In *Oddzon*, the Federal Circuit conclusively held that "subject matter derived from another not only is itself unpatentable to the party who derived it under § 102(f), but, when combined with other prior art, may make a resulting obvious invention unpatentable to that party under a combination of §§ 102(f) and 103." *Id.* at 1403.

Defendants further object to this instruction because it does not provide the jury with clear guidance on the prior art that is specifically at issue in this case. Defendants believe their proposed construction will provide the jury with more focused and relevant guidance as to what they must decide and what standards they should apply. Defendants base their proposed instruction on Uniform Instructions § 4.8.1, and have removed those categories of prior art which are not relevant to the jury's decision in this case.

\*     \*     \*

**Defendants' Instruction**

In arriving at your decision on the issue of whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem the inventor faced. Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the named inventor was trying to solve. As I explained before, prior art includes the following:

1.      Information that is communicated, before the filing dates of the three patents, from someone other than the named inventors to the named inventors from which the named inventors derived the claimed inventions. Such information could include private communications (oral or written). For the '633 patent, information communicated to the inventors before October 30, 1992 qualifies as prior art.

2.      Patents that issued before the filing dates of the three patents. For the '306 patent, patents issued before November 10, 1987 qualify as prior art. For the '763 patent, patents issued before February 4, 1988 qualify as prior art. For the '633 patent, patents issued before October 30, 1992 qualify as prior art.

3.      Information published before the filing dates of the three patents. For the '306 patent, publications dated before November 10, 1987 qualify as prior art. For the '763 patent, publications dated before February 4, 1988 qualify as prior art.

For the '633 patent, publications dated before October 30, 1992 qualify as prior art.

**Source:**     2004 Uniform Instructions § 4.8.1; *Oddzon Prods., Inc. v. Just Toys, Inc.,* 122 F.3d 1396 (1997).

## Plaintiff's Objections

### 4.6.2  DIFFERENCES OVER THE PRIOR ART    *(AGREED)*

The next factor that you must consider is the differences, if any, between the prior art and the claimed invention.  Although it is proper for you to note any differences between the claimed invention and the prior art, it is improper to consider the invention as only the differences because the test is whether the claimed invention as a whole would have been obvious over all of the prior art.  Each claim must be considered in its entirety.

**Source:**        Adapted from Uniform Instructions § 4.8.2.

### 4.6.3  LEVEL OF ORDINARY SKILL     *(AGREED)*

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made.  The issue of obviousness is determined entirely with reference to a hypothetical person having ordinary skill in the art.  It is only that hypothetical person who is presumed to be aware of all the pertinent prior art.  The actual inventor's skill is irrelevant to the inquiry.  A person of ordinary skill in the art is also presumed to be one who thinks along the line of conventional wisdom in the art and is not one who undertakes to innovate.  Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventor, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventor, the sophistication of the technology and the education of others working in the field.

**Source:**        Adapted from Uniform Instructions § 4.8.3.

## 4.6.4  OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS

## (SECONDARY CONSIDERATIONS)  *(DISPUTED)*

### Plaintiff's Instruction

In deciding whether a claimed invention is obvious, you must consider the following objective evidence which may show that the claims at issue are not obvious:

1.    Commercial success of products covered by Telcordia's '306, '763, or '633 patents.  Evidence concerning commercial success may take the form of sales figures coupled with market share data, or sales figures alone. The commercial success may be shown through the sales of anyone practicing the claimed inventions, including Lucent and Cisco.

2.    A long felt need in the art which was satisfied by the inventions of the patents in suit;

3.    The failure of others to make the invention;

4.    Unexpected results achieved by the invention;

5.    Praise of the invention by those in the field;

6.    The taking of licenses under the patent by others;

7.    Initial skepticism of the invention by those in the field.

There must be a connection between the evidence showing any of these factors and the claimed invention.

It is inappropriate to disregard any proper evidence relating to the issue of obviousness. Although some parts of the evidence may weigh more heavily than others, your decision of whether Lucent or Cisco has proven obviousness by clear and convincing evidence should be held in abeyance until all the evidence is taken into consideration.

**Source:**    Adapted from Uniform Instructions § 4.8.4, augmented by *Tec Air, Inc. v. Denso Mfg. Michigan Inc.*, 192 F.3d 1353, 1361; *Litton Sys., Inc. v. Honeywell Inc.*, 87 F.3d 1559, 1569 (Fed. Cir. 1996), *vacated and remanded,* 117 S.Ct. 1240 (1997), *reinstated in part,* 140 F.3d 1449 (Fed. Cir. 1998).

## Defendants' Objections

Defendants object to Telcordia's proposed instruction because it does not provide the jury with sufficient guidance as to the application of the various secondary considerations. In addition, in instructions 4.6.6 and 4.6.7, Telcordia has singled out particular secondary considerations for inclusion as separate instructions. Telcordia's unsupported attempt to place more weight on particular facts is improper, prejudicial and invites the jury to err by treating those secondary considerations as somehow greater than the others. Defendants' proposed instruction includes all appropriate secondary considerations and provide guidance to the jury as to their application.

*     *     *

## Defendants' Instruction

In determining whether the claimed inventions were obvious at the time they were made is what evidence there is, if any, of additional considerations relating to the obviousness or nonobviousness of the inventions. Any evidence you find of the following things constitute additional considerations that you must factor into your analysis of whether Lucent or Cisco has proved that the claimed inventions would have been obvious at the time they were made:

(1)     Making the invention by proceeding in a direction contrary to accepted wisdom in the field;

(2)     Long felt but unresolved need in the art that was satisfied by the invention;

(3)     Failed attempts by others to make the invention;

(4)     Copying of the invention by others;

(5)     Unexpected results achieved by the invention;

(6)     Praise of the invention by others;

(7)     Taking of licenses by other others to use the invention;

(8)     Expressions of surprise or disbelief by experts or those skilled in the art at the making of the invention;

(9)     Commercial success of products incorporating the invention; and

(10)    Independent making of an invention that is identical to, or very similar to the patented invention, by others having ordinary skill in the field at about the same time the inventor made the patented invention.

Any evidence you find of items 1 through 8 tends to show that the inventions were not obvious at the time they were made.

Any evidence you find of item 9, commercial success, also tends to show that the inventions were not obvious at the time they were made if you also find that the success is directly attributable to the unique characteristics of the inventions or to the inclusion of the inventions in the commercially successful products. If you do not find that the commercial success of the products is directly attributable to the unique characteristics of the inventions or to the inclusion of the inventions in the products, then any commercial success of products incorporating the inventions has no bearing on whether the inventions were obvious. For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those claimed in the patent, then any commercial success may have no relation to the issue of obviousness.

Any evidence you find of item 10, independent making of the invention by others at about the same time as the inventors, may or may not tend to show that the patented invention were obvious at the time. The weight and relevancy of any independent making of the inventions at about the same time as the inventor(s) that you may find depends on all of the circumstances at the time.

**Source:**        2004 Uniform Instructions § 4.8.6; *Graham v. John Deere Co.*, 383 U.S. 1 (1966).

### 4.6.5  OBVIOUSNESS – HINDSIGHT    *(DISPUTED)*

#### Plaintiff's Instruction

In evaluating whether an invention is obvious in light of prior art, you may not use hindsight to combine references to piece together the invention where there was no suggestion for a person of ordinary skill in the art to do so.  If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the claims in suit.  The difficulty that attaches to all honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation.  It is wrong to use the patents in suit as guides through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit.  Instead, there must be a teaching, suggestion, or motivation to combine the right references in the right way to achieve the result of the claims in suit.  A retrospective view of inherency is not a substitute for some teaching or suggestion that supports the selection of the various elements in the particular claim combination.  There must be some supporting teaching in the prior art, and that which is inherent is not necessarily known.  Obviousness cannot be based on what is unknown.

Lucent or Cisco must prove by clear and convincing evidence that there is some objective teaching in the prior art, or that knowledge generally available to one of ordinary skill in the art would lead that person to combine the relevant portions of different pieces of prior art to arrive at the claimed invention.  There is no suggestion to combine, however, if a reference teaches away from its combination with another source.  Similarly, in assessing whether an invention would have been obvious, you must consider whether there are prior art disclosures that teach away from the claimed invention.  Even if a change between the prior art and the patented invention could be characterized as simple, there still must be a teaching or suggestion to one of ordinary skill in the art to make the change that would produce the patentee's invention.  When a patentee's invention goes in a different direction than that of others in the art, there is no

motivation to combine.

**Source:**         Adapted from Uniform Instructions § 4.8.5, augmented by *Orthopedic Equipment Co. v. United States*, 702 F.2d 1005 (Fed. Cir. 1983); *ATD Corp.*, 159 F.3d at 546; *Tec Air*, 192 F.3d at 1359-60; *In re Chu*, 66 F.3d 292, 298 (Fed. Cir. 1995); *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 991 (Fed. Cir. 1988); *In re Newell,* 891 F.2d 899, 901 (Fed. Cir. 1989).

## Defendants' Objections

Defendants object to Telcordia's proposed instruction because it does not comport with governing law on the obviousness defense of 35 U.S.C. § 103.

The Supreme Court first interpreted Section 103 in *Graham v. John Deere Co.*, 383 U.S. 1 (1966), in which it established the specific factual inquiries that underlie a Section 103 determination:

> Under § 103, the [1] *scope and content of the prior art* are to be determined; [2] *differences between the prior art and the claims* at issue are to be ascertained; and the [3] *level of ordinary skill* in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such [4] *secondary considerations* as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

*Id.* at 17.  The Supreme Court admonished that "strict observance of the requirements laid down here will result in that uniformity and definiteness which Congress called for in the 1952 Act." *Id.* at 18.  And, the Supreme Court reiterated its four-factor test in subsequent decisions:

> Obviousness, as an issue, is resolved as follows:
>
> 'Under s 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved.' Ibid.
>
> We admonished that 'strict observance' of those requirements is necessary.

*Anderson's-Black Rock, Inc. v. Pavement Salvage Co.*, 396 U.S. 57 (1969); *see also Sakraida v. Ag Pro, Inc.*, 425 U.S. 273 (1976).

The "hindsight" inquiry and corresponding "teaching, suggestion, or motivation to combine" test articulated in Telcordia's proposed instruction are not recognized factors in a Section 103 analysis. Insofar as Federal Circuit cases have suggested that a "teaching, suggestion, or motivation to combine" is required for a finding of obviousness, those cases are inconsistent with binding Supreme Court precedent and should not be applied.[9]

---

[9]    The Supreme Court is currently considering a case in which it will specifically address the extent to which, if at all, the Federal Circuit's "teaching, suggestion, or motivation to combine" test can be harmonized with binding Supreme Court precedent in *Graham* and its progeny. *KSR Int'l Co. v. Teleflex Inc.*, Case No. 04-1350. What is certain is that the four-factor *Graham* analysis is binding law.

## 4.6.6 EXPRESSIONS OF DISBELIEF     *(DISPUTED)*

### Plaintiff's Instruction

Expressions of disbelief upon learning of the invention by those skilled in the art constitute strong evidence of non-obviousness.

**Source:**     *United States v. Adams*, 383 U.S. 39, 52 (1966); *Environmental Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693 (Fed. Cir. 1983), *cert. denied*, 464 U.S. 1043 (1984).

### Defendants' Objections

Defendants object to Telcordia's proposed instruction because it singles out one secondary consideration for inclusion as a separate instruction.  Telcordia's unsupported attempt to place more weight on particular facts is improper, prejudicial and invites the jury to err by treating this secondary consideration as somehow more significant than the others.  Defendant's proposed instruction on secondary considerations, *see* p. 90 *supra*, includes all appropriate secondary considerations and provides guidance to the jury as to their application.  Moreover, Telcordia has not presented in discovery or through its experts any evidence or opinions as to "expressions of disbelief" as secondary indicia of obviousness.  The jury should not be instructed on an unsupported and undisclosed theory.

### 4.6.7  TEACHING AWAY OF PRIOR ART    *(DISPUTED)*

#### Plaintiff's Instruction

If the patentee proceeds contrary to accepted wisdom of prior art, this is strong evidence of non-obviousness.

**Source:**    Uniform Instructions § 4.8.7.


#### Defendants' Objections

Defendants object to Telcordia's proposed instruction because it singles out one secondary consideration for inclusion as a separate instruction.  Telcordia's unsupported attempt to place more weight on particular facts is improper, prejudicial and invites the jury to err by treating this secondary consideration as somehow more significant than the others.  Defendant's proposed instruction on secondary considerations, *see* p. 90 *supra*, includes all appropriate secondary considerations and provides guidance to the jury as to their application.

## 4.6.8  OBVIOUS TO TRY      *(DISPUTED)*

The evidence might indicate to you that what the inventors did was obvious to try.  If so, this does not indicate the patent is invalid for obviousness.  "Obvious to try" is not the standard; rather it is whether the invention as a whole would have been obvious to those of ordinary skill in the inventor's field at the time he or she made his invention.

**Source:**        Uniform Instructions § 4.8.8.

## Defendants' Objections

Defendants object to Telcordia's proposed instruction because it does not comport with governing law on the obviousness defense of 35 U.S.C. § 103.  As noted above, *Graham* established the specific factual inquiries that underlie a Section 103 determination.  *See* Defendants' Objections at p. 94 *supra*.  Whether the claimed invention was "obvious to try" or not is not a recognized factor in a Section 103 analysis.  An instruction that "obvious to try" is not the standard is thus inconsistent with binding Supreme Court precedent and should not be applied.

## 4.7  ENABLEMENT     *(DISPUTED)*

### Plaintiff's Instruction

The Patent Laws also require that the disclosure or written description portion of a patent be sufficiently detailed to enable those skilled in the art to practice the invention without undue experimentation.  The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a full disclosure of how to carry out the invention.

If the inventors failed to provide an enabling disclosure, the patent is invalid.  However, because descriptions in patents are addressed to those skilled in the art to which the invention pertains, an applicant for a patent need not expressly set forth in his specification subject matter which is commonly understood by persons skilled in the art.

The enablement defense does not require an intent to withhold; all that is required is a failure to teach how to practice the invention.  In other words, if a person of ordinary skill in the art could not carry out the invention without undue experimentation, the patent is invalid.

A specification need not contain a working example if the invention is otherwise disclosed in such a manner that one skilled in the art to which the invention pertains will be able to practice it without an undue amount of experimentation.  Whether undue experimentation is required is judged by evaluating the following factors:

1.     the quantity of experimentation in terms of time and effort necessary to make and practice the claimed invention;

2.     the amount of direction or guidance presented in the specification;

3.     the presence or absence of working examples;

4.     the nature of the invention;

5.     the state of the prior art as of the filing date;

6.     the relative skill of those in the art;

7.     the predictability or unpredictability of the factors which the invention involves; and

8.      the breadth of the claims at issue.

**Source:**      Uniform Instructions § 4.2; augmented by *CellPro*, 894 F. Supp. at 836-37.

## <u>Defendants' Objections</u>

Defendants object to Telcordia's proposed instruction as unnecessary because Defendants are not pursuing an enablement defense.  To the extent the question of whether particular prior art references are sufficiently enabled is an issue, Defendants propose that that issue be dealt with in the instruction defining prior art.  *See* Defendants' Proposed Instruction on Prior Publication at p. 90 *supra*.

## 4.8  WRITTEN DESCRIPTION        *(DISPUTED)*

### Plaintiff's Instruction

Under the United States patent law, an application for a patent must include a complete description of the invention called the "specification."  The specification must, among other things, provide a written description of the claimed invention.  In order for Telcordia to comply with the written description requirement, it need not have described exactly the subject matter claimed, but rather merely provided sufficient description to allow persons skilled in the art to recognize that the inventor invented what is claimed.

**Source:**      Adapted from Duane Burton, *Jury Instructions in Intellectual Property Cases*, § 20:33:40 (1997); *In re Gosteli*, 872 F.2d 1008, 1012 (Fed. Cir. 1989).

### Defendants' Objections

Defendants object to Telcordia's proposed instruction as unnecessary because Defendants are not pursuing a written description defense.

101

### 4.__ INVENTORSHIP

**Plaintiff's Instruction**

**Defendants' Instruction**

In this case, Lucent and Cisco contend that the '633 patent is invalid because of improper inventorship. A patent is invalid if it fails to meet the requirement to name all actual inventors and only the actual inventors. This is known as the "inventorship" requirement. To be an inventor, one must make a significant contribution to the conception (the mental part of an inventive act) of one or more claims of the patent. Whether the contribution is significant is measured against the dimension of the full invention. Explaining to the actual inventors well-known concepts or the current state of the art does not make someone an inventor. Persons may be inventors even if they do not make the same type or amount of contribution, or do not contribute to the subject matter of each claim of the patent. However, merely helping with experimentation by carrying out the inventor's instructions does not make someone an inventor. Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication during or at approximately the time of their inventive effort.

**Source:**     35 U.S.C. § 102(f); *Pannu v. Iolab Corp.*, 155 F.3d 1344 (Fed. Cir. 1998); *see also* Model Patent Jury Instructions for the Northern District of California (September 20, 2004).

## 5.  EQUITABLE DEFENSES

## 5.1  LACHES     *(DISPUTED)*

### Plaintiff's Instruction

Lucent and Cisco allege that Telcordia's patent infringement claims are barred by laches. To prove that Telcordia's patent infringement claims are barred by laches, Lucent and Cisco must prove by a preponderance of the evidence that Telcordia 1) unreasonably and inexcusably delayed in asserting its patent infringement claim; 2) that the defendant was prejudiced or injured as a result of the belated claim.

The period of delay for laches is measured from the time the patent owner knew or reasonably should have known of the activities of the accused infringer to the date of the filing of the lawsuit.

The length of time during which it may be reasonable to file suit has no fixed boundaries, but rather depends on the circumstances.  You should consider whether the plaintiff has offered any justification for the delay.  Such circumstances include other litigation, which includes both judicial proceedings raising the issue of patent validity and Patent and Trademark Office proceedings involving patent validity.  To operate as an excusable delay, Lucent or Cisco must have had adequate notice of the proceeding.  Other circumstances that may excuse delay include negotiations between the parties.  In considering the circumstances, you should also consider whether the infringer has engaged in egregious conduct, such as deliberate copying or willful infringement.

Material prejudice to a party is typically either economic or evidentiary.  Lucent and Cisco must offer specific evidence of prejudice; mere conclusory statements or allegations are not enough.  Evidentiary prejudice may arise from loss of records, death or disappearance of witnesses, or the unreliability of memories of long past events.  Economic prejudice may result where the accused infringer will suffer the loss of monetary investments or incur damages that likely would have been prevented by an earlier suit.  However, it is not prejudice simply that the alleged infringer will have to pay damages if it loses the lawsuit.  The proper question is whether

there has been a change in the economic position of the alleged infringer during the period of delay. That change must have been caused by and be a result of the delay, not merely a business decision to capitalize on a market opportunity.

**Source:**     *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032-33, 1041, 1045-46 (Fed. Cir. 1992); *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1552 (Fed. Cir. 1996); *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1161 (Fed. Cir. 1993); *Coleman v. Corning Glass Works*, 619 F. Supp. 950, 953 (W.D.N.Y. 1985), *aff'd* 818 F.2d 874 (Fed. Cir. 1987); *Wafer Shave, Inc. v. Gillette Co.,* 857 F. Supp. 112, 128 (D. Mass. 1993), *aff'd* 26 F.3d 140 (Fed. Cir. 1994), *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 876-77 (Fed. Cir. 1991); *Meyers v. Asics Corp.*, 974 F.2d 1304, 1307 (Fed. Cir. 1992); *Adelberg Lab., Inc. v. Miles, Inc.*, 921 F.2d 1267, 1272 (Fed. Cir. 1990); *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1294 (Fed. Cir. 1992).

## Defendants' Objections

Defendants object to Telcordia's proposed instruction as legally insufficient because it entirely ignores the presumption that laches applies if the patentee delayed more than six years in bringing suit. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (en banc). This omission is extremely prejudicial because, here, Telcordia delayed well over six years in bringing suit and the presumption will apply to its conduct.

Defendants further object to Telcordia's proposed instruction as argumentative and misleading. For example, Telcordia's proposed instruction suggests to the jury a number of "circumstances" that it argues would excuse a delay. Most of these factors are entirely inapplicable here and their inclusion is likely to (improperly) suggest to the jury that lengthy delay is typical and may be excused on numerous grounds. Indeed, the law is clear that laches is not so limited. *Id.* at 1032-33, 1041, 1045-46 (Fed. Cir. 1992); *Hall v. Aqua Queen Mfg.*, 93 F.3d 1548, 1552-1555 (Fed. Cir. 1996).

\*     \*     \*

## Defendants' Instruction

Lucent and Cisco allege that Telcordia's patent infringement claims are barred by laches. To prove that Telcordia's patent infringement claims are barred by laches, Lucent and Cisco must prove by a preponderance of the evidence that Telcordia 1) unreasonably and inexcusably delayed in asserting its patent infringement claim; 2) that the defendant was prejudiced or injured as a result of the belated claim.

The period of delay for laches is measured from the time the patent owner knew or reasonably should have known of the activities of the accused infringer to the date of the filing of the lawsuit, here July 16, 2004.

If you find that Telcordia delayed filing this lawsuit for more than six years, then you must presume that all the elements of laches have been proved in this case unless you also find that the evidence introduced in this case proves that the delay in filing suit was reasonable or justified, or that Lucent and/or Cisco suffered no prejudice as a result of Telcordia's delay.

In deciding whether the delay was reasonable, you should consider whether Telcordia has offered any justification for the delay.  In deciding whether Lucent and/or Cisco suffered material prejudice, you can consider either economic or evidentiary prejudice.  Evidentiary prejudice may arise from loss of records, death or disappearance of witnesses, or the unreliability of memories of long past events.  Economic prejudice may result where the accused infringer will suffer the loss of monetary investments or incur damages that likely would have been prevented by an earlier suit.  However, it is not prejudice simply that the alleged infringer will have to pay damages if it loses the lawsuit.  The proper question is whether there has been a change in the economic position of the alleged infringer during the period of delay.  That change must have been caused by and be a result of the delay, not merely a business decision to capitalize on a market opportunity.

**Source:**     *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032-33, 1041, 1045-46 (Fed. Cir. 1992) (en banc); *Wanless v. G.E.*, 148 F.3d 1334 (Fed. Cir. 1998); *Hall v. Aqua Queen Mfg.*, 93 F.3d 1548, 1552-1555 (Fed. Cir. 1996).

## 5.2  EQUITABLE ESTOPPEL     *(DISPUTED)*

### Plaintiff's Instruction

Lucent and Cisco allege that Telcordia's patent infringement claims are barred by equitable estoppel.  To establish estoppel, Lucent and Cisco must prove by a preponderance of the evidence three things.  First, each defendant must prove that Telcordia, through misleading conduct, led the defendant to reasonably infer that Telcordia did not intend to enforce its patent against the defendant.  In the most common situation, the patent owner specifically objects to an accused infringer's activities, and then does not follow up for years.  Silence alone will not give rise to an estoppel, but must instead be preceded by a threat of immediate or vigorous enforcement of a right.

Second, each defendant must prove that it reasonably relied on that conduct.  The defendant must prove this reliance by specific evidence.  Conclusory assertions that it would have behaved differently absent some conduct by Telcordia are not enough.  Moreover, the defendant must have relied on misleading conduct by Telcordia, rather than on business reasons unrelated to Telcordia's conduct.

Third, the defendant must prove that, as a result of its reliance, the defendant will be materially prejudiced if Telcordia is allowed to proceed with its claim.  As with laches, prejudice may be economic or evidentiary.  The same principles apply.  Damages attributable to a finding of liability do not constitute economic prejudice supporting an estoppel theory.  Conclusory statements are not sufficient to show prejudice.

**Source:**     *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 776-77 (Fed. Cir. 1995);     *Meyers v. Asics Corp.*, 974 F.2d 1304, 1308-09 (Fed. Cir. 1992);.*Hemstreet v. Computer Entry Sys. Corp.,* 972 F.2d 1290, 1292, 1294-95 (Fed. Cir. 1992); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1042-44 (Fed. Cir. 1992).

### Defendants' Objections

Defendant Cisco objects to Telcordia's proposed instruction as argumentative and misleading.  For example, Telcordia's proposed instruction identifies what it contends to be

examples of the "most common situation" under which equitable estoppel may arise and various exaggerated statements as to what conduct "will not" give rise to an estoppel. Most of these factors are entirely inapplicable here and their inclusion is likely to (improperly) suggest to the jury that equitable estoppel is limited to particular "circumstances" and that Telcordia's conduct here cannot give rise to an estoppel. Indeed, the law is clear that equitable estoppel is not so limited. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032-33, 1041, 1045-46 (Fed. Cir. 1992) (en banc).

Defendant Lucent objects to this instruction because Lucent is not pursuing an equitable estoppel affirmative defense.

*     *     *

### Defendants' Instruction

Cisco alleges that Telcordia's patent infringement claims are barred by equitable estoppel. To establish estoppel, Cisco must prove by a preponderance of the evidence three things:

1.      Telcordia led Cisco to reasonably infer that it would not enforce its patent;

2.      Cisco relied on that conduct; and

3.      Cisco suffered material injury as a consequence of that reliance.

As with laches, material prejudice may be either economic or evidentiary. Evidentiary prejudice may arise from loss of records, death or disappearance of witnesses, or the unreliability of memories of long past events. Economic prejudice may result where the accused infringer will suffer the loss of monetary investments or incur damages that likely would have been prevented by an earlier suit. However, it is not prejudice simply that the alleged infringer will have to pay damages if it loses the lawsuit. The proper question is whether there has been a change in the economic position of the alleged infringer during the period of delay. That change

must have been caused by and be a result of the delay, not merely a business decision to capitalize on a market opportunity.

**Source:**     *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032-33, 1041, 1045-46 (Fed. Cir. 1992) (en banc).

## 5.3  IMPLIED LICENSE     *(DISPUTED)*

### Plaintiff's Instruction

Cisco alleges that Telcordia's patent infringement claims are barred by implied license. Cisco asserts that any infringement in this case should be excused because Telcordia granted an implied license to Cisco under the patents.  An implied license may only be found, however, where Telcordia exhibited language or conduct from which Cisco may properly have inferred that Telcordia consented to Cisco's use of the patents.  And, Cisco must have acted as a direct consequence of Telcordia's conduct or language.  Thus, an implied license cannot arise out of Cisco's unilateral expectations or even reasonable hopes.  Cisco must have been led to take action by Telcordia's actions.  Accordingly, if Cisco was unaware of the conduct which supposedly created the license, or Cisco did not act in response to such conduct, there can be no finding of implied license.

**Source:**     *De Forest Radio Telephone Co. v. United States,* 273 U.S. 236, 241 (1927); *Stickle v. Heublein, Inc.,* 716 F.2d 1559; *Wang Labs., Inc. v. Mitsubishi Electronics America, Inc.,* 103 F.3d 1571, 1580-81 (Fed. Cir. 1997); *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.,* 750 F.2d 903, 925 (Fed. Cir. 1984).

### Defendants' Objections

Cisco objects to Telcordia's proposed instruction as unnecessary because Cisco is not pursuing an implied license defense.

## 5.4  PATENT MISUSE    *(DISPUTED)*

### Plaintiff's Instruction

Lucent and Cisco allege that Telcordia's patent infringement claims are barred due to patent misuse.  To show that Telcordia misused its patent, Lucent and Cisco must show by clear and convincing evidence that Telcordia impermissibly broadened the scope of its patent with anti-competitive effect.  In other words, Lucent and Cisco must show by clear and convincing evidence that Telcordia engaged in conduct with respect to its patents that effectively broadened the scope of coverage of its patents in a manner that adversely affected competition in the market.

Typically a patentee misuses its patent where the patentee, having market power in the relevant market relating to its patented product, forces a purchaser of its patented product to also buy from it an unpatented product.  In this case, the patentee has misused its patent by tying the purchase of the unpatented product to the patented product.  Neither Lucent nor Cisco has made allegations that Telcordia has tied any unpatented products to its patents, therefore this form of misuse is not at issue in this case.

In another typical form of patent misuse, a patentee misuses its patent by conditioning a license agreement on the licensee's agreement to pay royalties on a patent for a period of time after the patent has expired.  Neither Lucent nor Cisco has made allegations that Telcordia has conditioned its licenses on the licensee's agreement to pay royalties for a period of time after the patent has expired, therefore this form of misuse is not at issue in this case.

Patent misuse is not limited to these two situations but can include other conduct by the patentee that has the effect of extending the physical or temporal scope of a patent in a manner that creates an unreasonable restraint on trade.

While patent misuse can reach various forms of conduct, a patentee does not misuse its

patent by asserting that someone has infringed its patent or by suing a competitor it believes is

infringing its patent.  Even if the patentee is mistaken in its belief of infringement, the patentee

does not misuse is patents by seeking to assert its patent rights in court.

**Source:**    U.S.C. §§ 271(d)(3)-(4); *C.R. Bard*, *Inc. v. M3 Systems*, *Inc.*, 157 F.3d 1340,
1372, 48 USPQ2d 1225, 1249 (Fed. Cir. 1998) ("The key inquiry is whether, by
imposing conditions that derive their force from the patent, the patentee has
impermissibly broadened the scope of the patent grant with anti-competitive
effect."); *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 868-69,
45 USPQ2d 1225, 1232 (Fed. Cir. 1997); *B. Braun Medical*, *Inc. v. Abbott Labs.*,
124 F.3d 1419, 1426, 43 USPQ2d 1896 (Fed Cir. 1997); *Windsurfing
International*, *Inc. v. AMF*, *Inc.*, 782 F.2d 995, 1001, 228 USPQ 562, 566 (Fed.
Cir. 1986).


## Defendants' Objections

Cisco objects to Telcordia's proposed instruction as argumentative and misleading.  For

example, Telcordia's proposed instruction identifies what it contends to be examples of the

"typical" forms of patent misuse and then asserts that Cisco does not allege these "typical"

theories.  Telcordia's attempt to narrow Cisco's patent misuse defense to "typical" theories is

legally improper and prejudicial.

Defendant Lucent objects to this instruction because Lucent is not pursuing a patent

misuse affirmative defense.


*        *        *

## Defendants' Instruction

Cisco alleges that Telcordia's patent infringement claims are barred due to patent misuse.

To show that Telcordia misused its patent, Cisco must show by clear and convincing evidence

that Telcordia impermissibly broadened the scope of its patent monopoly.  For example, a patent

is unenforceable for misuse if the patentee attempts to exclude products from the marketplace

that do not infringe the claims of the patent.  This rule stems from the principle that a patent is a privilege which is conditioned by a public purpose.  The grant of a patent results from invention and is limited to the invention which it defines.  An attempt to extend that monopoly is a misuse of that privilege.  The method by which Telcordia attempts to extend its monopoly is immaterial.

**Source:**     *Blonder-Tongue Labs., Inc. v. University of Illinois Foundation*, 402 U.S. 313 (1971); *Mercoid v. Mid-Continent Investment Co.*, 320 U.S. 661, 666 (1944); *see also* 2004 Uniform Instructions § 4.8.8.

## 5.5 PATENT EXHAUSTION  (DISPUTED)

### Plaintiff's Instruction

Cisco alleges that Telcordia's patent infringement claims are barred by the doctrine of patent exhaustion.   To establish patent exhaustion, Cisco must show that Telcordia unconditionally licensed its patent to a third party, and that Cisco is entitled to the benefit of that license because it bought licensed components of its product from the licensed third party supplier.  For example, Cisco contends that it bought licensed "off-the-shelf" chips from a licensed supplier, and therefore it should not be subject to further license obligations to Telcordia.

**Source:**        *LG Electronics, Inc. v. Bizcom Electronics, Inc.*, 453 F.3d 1364, 1369-70 (Fed. Cir. 2006).

### Defendants' Objections

Cisco objects to Telcordia's proposed instruction as unnecessary because Cisco is not pursuing a patent exhaustion defense.

## 5.6  UNCLEAN HANDS     *(DISPUTED)*

### Plaintiff's Instruction

Cisco alleges that Telcordia's patent infringement claims are barred by the doctrine of unclean hands.  To show that Telcordia has unclean hands, Cisco must show by clear and convincing evidence that Telcordia engaged in fraud, perjury, or other unconscionable conduct when obtaining its '306, '763, or '633 patents or enforcing the '306, '763, or '633 patents against Cisco.  Unclean hands requires an "unconscionable act" that has an "immediate and necessary relationship" to the claims of patent infringement asserted against Cisco.

Typically an "unconscionable act" is found where a patentee commits a misdeed before the U.S. Patent and Trademark Office to obtain its patent and then tries to hide that misdeed by submitting false evidence to a court during an infringement suit.  But Cisco does not contend that Telcordia committed such an act.

While unclean hands can reach other egregious forms of conduct, a patentee does not have unclean hands merely by asserting that someone has infringed its patent or by suing a competitor it believes is infringing its patent.  Even if the patentee is mistaken in its belief of infringement, the patentee does not have unclean hands by seeking to enforce what it thinks are its patent rights in court.

Finally, Cisco cannot rely on unclean hands as a defense if Cisco itself has unclean hands.  One example of such unclean hands by Cisco would be willful infringement by Cisco.

**Source:**     *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245-46, 54 S. Ct. 146, 147-48, 78 L. Ed. 293, 19 USPQ 228 (1933); *Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369, 1374, 60 USPQ2d 1705 (Fed. Cir. 2001); 35 U.S.C. §§ 271(d)(3)-(4).

### Defendants' Objections

Cisco objects to Telcordia's proposed instruction because it unduly limits the scope of an unclean hands defense and suggests to the jury that it does not have unclean hands because Cisco does not allege that Telcordia committed "a misdeed before the U.S. Patent and Trademark Office to obtain its patent and then tries to hide that misdeed by submitting false evidence to a court during an infringement suit." In fact the law is clear that the equitable doctrine of unclean hands can cover a broad range of misconduct whereby the patent holder commits an unconscionable act that has a relationship to the claims of patent infringement asserted against the alleged infringer.

*       *       *

**Defendants' Instruction**

The owner of a patent may be barred from enforcing the patent against an infringer where the owner of the patent acts or acted inequitably, unfairly, or deceitfully towards the infringer or the Court in a way that has immediate and necessary relation to the relief that the patent holder seeks in a lawsuit. This is referred to as "unclean hands," and it is a defense that Cisco contends precludes any recovery by Telcordia in this lawsuit.

There is no set formula for determining whether unclean hands applies in this lawsuit. Rather, you must consider and weigh all the facts and circumstances in view of the principles noted above to determine whether you believe that, on balance, Cisco acted in such an unconscionable way towards Cisco or the Court in the matters relating to the controversy between Telcordia and Cisco that, in fairness, Telcordia should be denied the relief it seeks in this lawsuit.

**Source:**   *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240 (1933); *Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369 (Fed. Cir. 2001).

**Plaintiff's Objection**

## 5.7 INTERVENING RIGHTS   *(DISPUTED)*

### Plaintiff's Instruction

For the '633 patent only, Lucent and Cisco allege that Telcordia's patent infringement claims are barred by the doctrine of intervening rights. Because the '633 patent is a reissue patent that includes claims that are broader in scope than its parent '978 patent (including the asserted claims in this case), Telcordia cannot recover patent infringement damages for specific physical products that were actually in existence prior to the issuance of the '633 patent. Telcordia does not seek damages for '633 patent infringement prior to the issue date of the '633 patent, so this form of intervening rights is not at issue.

Intervening rights may also apply to specific physical products that were made or sold by Lucent or Cisco after the '633 patent issued, but only if Lucent or Cisco establishes by a preponderance of the evidence that (1) before the issuance of the '633 patent, Lucent or Cisco made substantial preparations to make, purchase, offer for sale, or use the products, including, for example, substantial investment in the development of the products, and (2) Lucent or Cisco has not recouped its investment.

### Defendants' Objections

Defendant Cisco objects to Telcordia's proposed instruction as argumentative and misleading. For example, Telcordia uses narrow language – which it does not use elsewhere in its proposed instructions – in an attempt to suggest to the jury that the intervening rights defense is narrow. For example, Telcordia's proposed instruction repeatedly refers to the accused products as "specific physical samples." This concept is not articulated anywhere else in Telcordia's proposed instructions and is an argumentative attempt to limit Cisco's intervening rights theory.

116

Defendant Lucent objects to this instruction because Lucent is not pursuing an intervening rights affirmative defense.

*    *    *

### Defendants' Instruction

For the '633 patent, Cisco alleges that Telcordia's patent infringement claims are barred by the doctrine of intervening rights. Because the '633 patent is a reissue patent that includes claims that are broader in scope than its parent '978 patent (including the asserted claims in this case), Telcordia cannot recover patent infringement damages for products that were actually in existence prior to the issuance of the '633 patent. Telcordia does not seek damages for '633 patent infringement prior to the issue date of the '633 patent, so this form of intervening rights is not at issue.

Intervening rights may also apply to products that were made or sold by Cisco after the '633 patent issued, if Cisco establishes by a preponderance of the evidence that (1) before the issuance of the '633 patent, Cisco made substantial preparations to make, purchase, offer for sale, or use the products, including, for example, substantial investment in the development of the products, and (2) Cisco has not recouped its investment.

**Source:**     35 U.S.C. § 252; *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1360-61 (Fed. Cir. 2001); *Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 830 (Fed. Cir. 1984) .

**5.8 INEQUITABLE CONDUCT – GENERALLY**          *(AGREED)*

Lucent and Cisco allege that Telcordia's patents are unenforceable due to inequitable conduct.  Lucent and Cisco contend that Telcordia may not enforce the '306, '763 and '633 patents against them because Telcordia engaged in inequitable conduct before the Patent and Trademark Office during prosecution of the '306**,** '763 and '633 patents.  "Inequitable conduct" refers to the intentional failure to meet this duty of candor and good faith.  To prove inequitable conduct occurred, Lucent and Cisco must prove that it is highly probable that the patent applicant or the applicant's attorney or representative, intentionally withheld or misrepresented information with an intent to mislead or deceive the Patent & Trademark Office.  Applicants are required to prosecute patent applications with candor, good faith, and honesty.  This duty of candor and good faith extends to all inventors named on a patent application, all attorneys and agents involved in preparing and prosecuting the application, and every other person involved in a substantial way with the prosecution of the patent application.  Each individual with such a duty must disclose all information known to that individual to be material.  Lucent and Cisco assert that Telcordia obtained the '306, '763 and '633 patents through inequitable conduct.

Lucent and Cisco bear the burden of establishing inequitable conduct by clear and convincing evidence. To determine whether the '306, '763 and '633 patents were obtained through inequitable conduct, you must determine that Telcordia, its representative, or someone involved in a substantial way with the prosecution of the application withheld or misrepresented information that was material to the examination of the patent application, and that this individual or individuals acted with an intent to deceive or mislead the PTO.

**Source:**     Adapted from AIPLA Model Jury Instructions.  *Bristol-Myers Squibb Co. v. Phone-Poulenc Rorer, Inc.*, 326 F.3d 1226 (Fed. Cir. 2003); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268 (Fed. Cir. 2001); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997).

## 5.9  MATERIALITY            *(DISPUTED)*

### Plaintiff's Instruction

Lucent and Cisco contend that material information known to the applicant, the applicant's representative, or someone else involved in a substantial way in the prosecution of the application was withheld or misrepresented to the Patent and Trademark Office during the prosecution of the '306, '763 and '633 patents.  If you find that the applicant, the applicant's representative, or other individuals involved in some substantial way with the prosecution of the application withheld or misrepresented information when applying for the '306, '763 or '633 patents, you must determine whether that information was material.

Information is material if it establishes, either alone or in combination with other information, that a claim of the patent application would more likely than not meet one of the requirements for a patent, such as the requirements that the invention be new, useful, and non-obvious.  Information is also material if it refutes or is inconsistent with the information provided or arguments made by the applicant to persuade the Patent and Trademark Office that the invention is entitled to patent protection.  Information that is "cumulative" of or adds little to other information the examiner already had is not material.

**Source:**      Adapted from AIPLA Model Jury Instructions.  37 C.F.R. § 1.56 (2003); *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358 (Fed. Cir. 2003); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226 (Fed. Cir. 2003); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315 (Fed. Cir. 2000); *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321 (Fed. Cir. 1998); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997).

### Defendants' Objections

Defendants object to Telcordia's proposed instruction because it fails to recognize the "reasonable examiner" standard for materiality.  The Federal Circuit has recently noted that the "reasonable examiner" standard remains a viable materiality standard for application in the

inequitable conduct inquiry. *Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309, 1314 (Fed. Cir. 2006); *see also Dayco Prods., Inc., v. Total Containment, Inc.*, 329 F.3d 1358, 1363-64 (Fed. Cir. 2003). Indeed, the Federal Circuit recognized that the "reasonable examiner" standard "provided an additional test of materiality, albeit a broader and all-encompassing test." *Id.* at 1316. "[T]o the extent that one standard requires a higher showing of materiality than another standard, the requisite finding of intent may be lower." *Id.* The failure of Telcordia's proposed instruction to recognize this standard is both legally improper and prejudicial to Defendants.

*    *    *

<u>**Defendants' Instruction**</u>

Lucent and Cisco contend that material information known to the applicant, the applicant's representative, or someone else involved in a substantial way in the prosecution of the application and was withheld or misrepresented to the Patent and Trademark Office during the prosecution of the '306, '763 and '633 patents. If you find that the applicant, the applicant's representative, or other individuals involved in some substantial way with the prosecution of the application withheld or misrepresented information when applying for the '306, '763 or '633 patents, you must determine whether that information was material.

Information is material where there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent. For example, information is material if it establishes, either alone or in combination with other information, that a claim of the patent application would more likely than not meet one of the requirements for a patent, such as the requirements that the invention be new, useful, and non-obvious. Information is also material if it refutes or is inconsistent with the information provided or arguments made by the applicant to persuade the Patent and Trademark Office that the

120

invention is entitled to patent protection.  Information that is "cumulative" of or adds little to

other information the examiner already had is not material.

**Source:**  *Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309, 1314 (Fed. Cir. 2006); *Dayco Prods., Inc., v. Total Containment, Inc.*, 329 F.3d 1358, 1363-64 (Fed. Cir. 2003).

<u>**Plaintiff's Objections**</u>

## 5.10 INTENT TO DECEIVE OR MISLEAD     *(AGREED)*

Lucent and Cisco contend material information was withheld or misrepresented to the PTO during the prosecution of the '306, '763 and '633 patents with the intent to deceive or mislead the PTO. If you determine that material information was withheld or misrepresented to the PTO, you must next determine whether such information was withheld or misrepresented with the intent to deceive or mislead the PTO. Intent to deceive the PTO may be found from direct evidence. Such direct evidence is rare, however, and as a result, the law allows deceptive intent to be inferred from the facts and surrounding circumstances. In determining whether or not there was intent to deceive or mislead the PTO, you should consider the totality of the circumstances, including the nature of the conduct and evidence of the absence or presence of good faith.

**Source:**    Adapted from AIPLA Model Jury Instructions. *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226 (Fed. Cir. 2003); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268 (Fed. Cir. 2001); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315 (Fed. Cir. 2000); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997); *LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n*, 958 F.2d 1066 (Fed. Cir. 1992).

## 5.11 BALANCING OF MATERIALITY AND INTENT       *(AGREED)*

If you determine that Lucent or Cisco have proven by clear and convincing evidence that material information was withheld or misrepresented and that there was an intent to deceive or mislead the PTO, you must then balance the degree of materiality and the degree of intent to determine whether or not the evidence is sufficient to establish clearly and convincingly that there was inequitable conduct committed in the prosecution of the '306, '763 or '633 patents. Where the materiality of the withheld or misrepresented information is high, the showing of intent needed to establish inequitable conduct is proportionally less.

**Source:**      Adapted from AIPLA Model Jury Instructions.  *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226 (Fed. Cir. 2003); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268 (Fed. Cir. 2001); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315 (Fed. Cir. 2000); *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321 (Fed. Cir. 1998); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997).

# 6. **DAMAGES**

## 6.1  COMPENSATORY DAMAGES IN GENERAL    *(DISPUTED)*

### Plaintiff's Instruction

If you find that one or more of Lucent's or Cisco's products infringes at least one valid claim of Telcordia's patents, you must determine the amount of damages to be awarded to Telcordia for the infringement.  By statute, the amount of those damages must be adequate to compensate Telcordia for the infringement, but in no event may it be less than a "reasonable royalty."  Damages "adequate to compensate" means "full compensation for 'any damages' [Telcordia] suffered as a result of the infringement."  Full compensation includes any reasonably foreseeable damages the patent owner can prove.

**Source:**    Uniform Instructions § 6.1, augmented by 35 U.S.C. § 284; *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654 (1983)*; Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545-47 Fed. Cir. 1995) (*en banc*).

### Defendants' Objections

Defendants object to Telcordia's proposed instruction as argumentative, unbalanced and misleading.  Besides its one-sidedness, Telcordia's proposed instruction expressly invites the jury to disregard the black-letter hypothetical negotiation standard and award damages to Telcordia in excess of a reasonable royalty.  Specifically, Telcordia's proposed instruction states: "Full compensation includes any reasonably foreseeable damages the patent owner can prove." Telcordia's alleged basis for invitation to the jury to depart from the hypothetical negotiation framework is the suggestion that excess damages should be awarded "to compensate for infringement."  However, the law is clear that the hypothetical negotiation framework itself assumes that the alleged infringer would have known that the patent was valid, enforceable, and *infringed*, and thus inherently "compensates for the infringement."

\*    \*    \*

### Defendants' Instruction

If you find that one or more of Lucent's or Cisco's products infringes at least one valid claim of Telcordia's patents, you must determine the amount of damages to be awarded to Telcordia for the infringement by those products.  By statute, the amount of those damages must be adequate to compensate Telcordia for the infringement, but in no event may it be less than a "reasonable royalty" on those products you find to infringe.  I will now instruct you on how to calculate damages.

**Source:**      2004 Uniform Instructions § 5.1.

## 6.2  BURDEN OF PROOF          *(DISPUTED)*

### Plaintiff's Instruction

Telcordia bears the burden of proving patent infringement damages by a preponderance of the evidence.  Telcordia, however, does not need to prove its damages with absolute certainty.  Rather, Telcordia needs only to show a reasonable probability that it has been damaged in the amount it seeks.  All uncertainties in the computation of damages are to be resolved against Lucent and Cisco.  All doubts resulting from Lucent's and Cisco's failure to keep or produce accurate records of its sales of infringing products must also be construed against Lucent and Cisco.

**Source:**      Uniform Instructions § 6.3, augmented by *W.R. Grace & Co.–Conn. v. Intercat, Inc.*, 60 F. Supp. 2d 316, 321 (D. Del. 1999); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030 (Fed. Cir. 1996).

### Defendants' Objections

Defendants object to Telcordia's instruction because it does not instruct the jury that damages cannot be remote or speculative, and to the contrary, invites the jury to err by awarding damages that are not grounded in the evidence.

Defendants further object to Telcordia's instruction insofar as it advises that jury that "All doubts resulting from Lucent's and Cisco's failure to keep or produce accurate records of its sales of infringing products must also be construed against Lucent and Cisco." This instruction is improper for two reasons.  First, among the alleged "failure[s] to keep or produce accurate records" is Telcordia's allegation that Cisco's "failure" to produce records of foreign sales information.  However, as noted in Cisco's Motion in Limine 5C, Telcordia failed to pursue this discovery until after the close of the fact discovery period, and when Cisco declined to reopen discovery after the discovery close, Telcordia abandoned its belated discovery effort.  Thus, it was Telcordia that failed to pursue sales records, not Cisco that failed to produce them.  Under these circumstances, an instruction inviting the jury to draw inferences against Cisco is

prejudicial and improper. This is particularly so because it invites the jury to adopt Telcordia's wildly speculative and unsupported damages theory on foreign sales. *See* Cisco's Motion in Limine 5C. Second, this instruction is inconsistent with the laches and equitable estoppel defenses in this case. As Telcordia itself has recognized, evidentiary prejudice is legally cognizable in the context of these equitable defenses. To the extent Telcordia's intends to urge the jury to draw inferences against Defendants for their alleged "failure[s] to keep or produce accurate records," that "failure" may well be the result of Telcordia's own delay.

*       *       *

### Defendants' Instruction

Plaintiff has the burden of proving damages by a preponderance of the evidence and is entitled to all damages that can be proven with reasonable certainty. On the one hand, reasonable certainty does not require proof of damages with mathematical precision. Mere difficulty in ascertaining damages is not fatal to Plaintiffs right to recover. On the other hand, Plaintiff is not entitled to speculative damages; that is, you should not award any amount of loss that, although possible, is wholly remote or the result of mere conjecture. You may base your evaluation of reasonable certainty on opinion evidence. Any doubts regarding the computation of the amount of damages should be resolved against Defendant and in favor of Plaintiff.

**Source:**    2004 Uniform Instructions § 5.3; *Oiness v. Walgreen Co.*, 88 F.3d 1025 (Fed. Cir. 1996).

## 6.3 NOTICE AND MARKING          *(DISPUTED)*

### Plaintiff's Instruction

Damages accrue to the owner of a valid patent upon the condition that the infringer continued its acts of infringement after notification of his infringement, in which event damages may be recovered for the period of infringement occurring after notice was given.

Notice may be constructive or actual. Constructive notice may be accomplished by Telcordia complying with the marking requirement of section 287 (a) of Title 35, United States Code. Actual notice may be accomplished by Telcordia directly notifying Lucent or Cisco of the infringement. Telcordia has the burden of establishing, by a preponderance of the evidence, both its compliance with the marking statute and the date on which Lucent and Cisco received actual notice of infringement.

**Source:**       Devitt and Blackmar, (4th Ed.) Section 97.25 (modified); *see American Med. Sys., Inc. v. Med. Eng'g Corp.*, 1993 WL 385700 (Fed. Cir. Oct. 4, 1993).

### Defendants' Objections

Defendants object to Telcordia's proposed instruction because it provides the jury with insufficient and unclear guidance as to the notice requirement for accrual of damages. For example, Telcordia's proposed instruction does not explain to the jury what the "marking" requirement is, to which entities it applies, and what proof is required for Telcordia to establish constructive notice. Telcordia's instruction also fails to provide any guidance as to the elements for establishing actual notice.

*           *           *

### Defendants' Instruction

The amount of damages Telcordia can recover is limited to those acts of infringement by Lucent or Cisco that occurred after Telcordia gave Lucent or Cisco notice of infringement.

Thus, Telcordia may only recover damages for acts of infringement after it gave Lucent or Cisco notice that they infringed the '763 and/or '633 patents. Notice of infringement must be actual or constructive.

Actual notice requires that Telcordia affirmatively communicated to Lucent or Cisco a specific charge of infringement of the '763 and/or '633 patents by a specific accused product or device. Telcordia has the burden of establishing, by a preponderance of the evidence, the date on which Lucent or Cisco received notice of infringement of the '763 and/or '633 patents.

Constructive notice requires that Telcordia complied with the marking requirement of section 287(a) of Title 35, United States Code, which states that "Patentees, and persons making or selling any patented article for or under them, may give notice to the public that the same is patented. . . .by fixing thereon the word 'patent.'" Telcordia as well as its licensees and companies that make or sell products licensed under the '763 and/or '633 patents must mark such products with the word "patent" or abbreviation "Pat." and the patent numbers for the '763 and/or '633 patents. If products licensed under the '763 and/or '633 patents are not marked with those patent numbers, there is no constructive notice. Telcordia has the burden of establishing, by a preponderance of the evidence, compliance with the marking statute. To do so, Telcordia must show either that its licensees or companies making products licensed under the '763 and/or '633 patents actually marked products licensed under the '763 and/or '633 patents, or that Telcordia made efforts to ensure that its licensees complied with the marking statute.

Telcordia is not entitled to damages from Lucent for any period before Lucent had actual or constructive notice of the '763 and/or '633 patents, and is not entitled to damages from Cisco for any period before Cisco had actual or constructive notice of the '763 and/or '633 patents.

**Source:**     2004 Uniform Instructions § 5.4; *Gart v. Logitech*, 254 F.3d 1334 (Fed. Cir. 2001); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1984); *Maxwell v. J. Baker*, 86 F.3d 1098, 1111 (Fed. Cir. 1996); *Motorola,*

*Inc. v. United States*, 729 F.2d 765 (Fed. Cir. 1984); *Southwire Co. v. USITC*, 632 F.2d 1332 (C.C.P.A. 1980).

## 6.4  ENTIRE MARKET VALUE RULE          *(DISPUTED)*

### Plaintiff's Instruction

Under the "entire market value" rule, a patent owner may recover damages based on the value of an entire apparatus or product containing several features, even though only one feature is patented, where the unpatented components function together with the patented components in some manner to produce a desired end product or result.  A patent owner may also recover damages under the entire market value rule where the infringing component was the basis of customer demand for the product.

**Source:**     Adapted from Uniform Instructions § 6.4; augmented by *Rite-Hite*, 56 F.3d at 1550; *Tec Air, Inc. v, Denso Mfg. Michigan Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999).

### Defendants' Objections

Defendants object to Telcordia's proposed instruction on the entire market value rule as unnecessary because Telcordia cannot pursue a damages theory based on that rule.  Telcordia's damages expert did not provide any expert opinions on the entire market value rule or otherwise rely on that rule in formulating his opinions, and is therefore precluded from presenting such testimony at trial.  Specifically, during deposition, Telcordia's expert testified:  "I don't recall doing an entire market value analysis per se, or, that's a factor to consider.  But, I don't recall doing a separate analysis of that."  Moreover, insofar as an instruction on the entire market value rule were even appropriate, Uniform Instructions § 5.6 should be adopted and not Telcordia's "adaptation" and "augmentation" thereof.

## 6.5  REASONABLE ROYALTY AS A MEASURE OF DAMAGES      *(DISPUTED)*

### Plaintiff's Instruction

By statute, Telcordia is entitled to damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for any infringing sales.  A reasonable royalty is the amount of money that would be agreed to in a hypothetical arms length negotiations between Telcordia and Cisco, and Telcordia and Lucent, assuming that all parties were willing to enter into a license and with all operating under the assumption that the patent is valid and is being infringed.  While the date of the hypothetical negotiation is the date on which infringement began, all relevant business facts (even those after the date of the hypothetical negotiation) are deemed known to both parties.

In the hypothetical arms-length negotiation, you must assume that the person negotiating on behalf of Lucent and Cisco, and who was willing to take a license, would have known that Telcordia's patent was valid, enforceable, and infringed by Lucent and Cisco.  You may also award Telcordia a royalty at a rate higher than the royalty the parties would have agreed upon in a hypothetical negotiation, in order to account for Lucent's and Cisco's alleged infringement.

In determining the damages award, you should consider that the infringer would have nothing to lose, and everything to gain, if he could infringe the patent and count on paying only the normal, routine royalty that noninfringers might have paid.  This would put the infringer in a "heads-I-win, tails-you-lose" position, which is improper.  Therefore, you may award an amount of damages greater than what would otherwise be considered a reasonable royalty (which may be considered to be a reasonable royalty for an infringer), so that the award is adequate to compensate for infringement.

**Source:**      35 U.S.C. § 284; adapted from Uniform Instructions § 6.10, augmented by *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984); *Paper Converting Machine v. Magna-Graphics*, 745 F.2d 11, 21 (Fed. Cir. 1984); *Fromson v. Western Litho Plate and Supply Co.*, 853 F.2d 1568, 1574-75 (Fed. Cir. 1988); *Stickle v. Heublein, Inc.,* 716 F.2d 1550, 1563 (Fed. Cir. 1983); *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1109-10 (Fed. Cir. 1996).

## Defendants' Objections

Defendants object to Telcordia's proposed instruction because it fails to provide the jury with clear and correct guidance as to the calculation of a reasonable royalty.  Beyond its facial ambiguity, Telcordia's proposed instruction expressly and repeatedly invites the jury to disregard the black-letter hypothetical negotiation standard and award damages to Telcordia in excess of a reasonable royalty.  Specifically, Telcordia's proposed instruction states that the jury "may also award Telcordia a royalty at a rate higher than the royalty the parties would have agreed upon in a hypothetical negotiation, in order to account for Lucent's and Cisco's alleged infringement" and "Therefore, you may award an amount of damages greater than what would otherwise be considered a reasonable royalty (which may be considered to be a reasonable royalty for an infringer), so that the award is adequate to compensate for infringement."  Telcordia's alleged basis for invitation to the jury to depart from the hypothetical negotiation framework is the suggestion that excess damages should be awarded "to compensate for infringement."  However, the law is clear that the hypothetical negotiation framework itself assumes that the alleged infringer would have known that the patent was valid, enforceable, and *infringed*, and thus inherently "compensates for the infringement."  *See, e.g.*, *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1580-81 (Fed. Cir. 1996) (holding that reasonable royalty may not be increased by a "kicker" to account for litigation).

\*      \*      \*

## Defendants' Instruction

In this case, Telcordia seeks damages in the amount of a reasonable royalty.  A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention. A reasonable royalty is the minimum permissible measure of damages set by patent law and is

not necessarily the actual measure of damages, but is merely the floor below which damages may not fall.

A reasonable royalty is the amount of money that would be agreed to in a hypothetical arm's-length negotiation between Telcordia and Lucent and/or Cisco, with both operating under the assumption that the negotiated patent is valid and would be infringed by the accused products.

The reasonable royalty must be calculated as of the point in time just prior to when infringement would begin, which for Cisco would be on or around August 26, 1999 for the '763 patent and on or around March 28, 2000 for the '633 patent. For Lucent, the reasonable royalty must be calculated on or around April 2000.

In the hypothetical arm's-length negotiation, you must assume that both parties are willing participants. You must assume that the person negotiating on behalf of Lucent or Cisco was willing to take a license and would have known that the asserted claims were valid, enforceable and infringed by Lucent or Cisco. You must also assume that Telcordia would have been willing to grant a license. Finally, you must assume that both Telcordia and Lucent or Cisco knew all pertinent information at the time of the hypothetical negotiations.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for Lucent or Cisco's use of the patented invention, including the opinion testimony of experts.

**Source:**     2004 Uniform Instructions § 5.14; *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1580-81 (Fed. Cir. 1996).

## 6.6  FACTORS FOR DETERMINING REASONABLE ROYALTY     *(AGREED)*

In determining a reasonable royalty, some of the factors that may be considered are:

1.  the royalties received by the patentee for licensing others under the patent in suit;

2.  the rates paid by the licensee for the use of other patents comparable to the patent in suit;

3.  the nature and scope of the license, as exclusive or non-exclusive, or as restricted or unrestricted in terms of territory or with respect to whom the manufactured product may be sold;

4.  the licensor's established policy and marketing program to maintain his patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.  the commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business, or whether they are inventors or promoters;

6.  the effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales;

7.  the duration of the patent and the term of the licenses;

8.  the established profitability of the product made under the patent, its commercial success, and its current popularity;

9.  the utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results;

10.  the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

11.  the extent to which the infringer has made use of the invention, and any evidence probative of the value of that use;

12.  the portion of the profit or of the selling price that may be customary in the particular

business or in comparable businesses to allow for the use of the invention or analogous inventions;

13.   the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

14.   the opinion testimony of qualified experts; and

15.   any other economic factor that a normally prudent businessman would, under similar circumstances, take into consideration in negotiating the hypothetical license.

**Source:**       Uniform Instructions § 6.11, *Trans-World Manufacturing Corp. v. All Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984); *Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

## 6.7  CURATIVE INSTRUCTION     *(AGREED)*

The fact that I have instructed you regarding damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case.  Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of Telcordia.

**Source:**        Uniform Instructions § 6.13.

# 7. DELIBERATION AND VERDICT

## 7.1 INTRODUCTION     *(AGREED)*

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. After you hear the closing arguments of counsel, you will return to the jury room to begin your deliberations. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

**Source:**     Uniform Instructions § 7.1.

138

## 7.2  UNANIMOUS VERDICT    *(AGREED)*

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges -- judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

**Source:**    Uniform Instructions § 7.2.

## 7.3  DUTY TO DELIBERATE      *(AGREED)*

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach a unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that -- your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

**Source:**        Uniform Instructions § 7.3.

## 7.4  COURT HAS NO OPINION    *(AGREED)*

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.

**Source:**        Uniform Instructions § 7.4.

EXHIBIT 4

**REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 4**
**RE: *TELCORDIA v. FORE SYSTEMS* LICENSE AND SETTLEMENT AGREEMENTS**

Telcordia does not dispute that the *Fore* agreements Defendants seek to exclude resulted from a litigation settlement. The agreements are therefore inadmissible under Rule 408. Nor does Telcordia dispute that it failed to produce the *Fore* agreements during discovery and precluded Defendants from questioning Telcordia's witnesses about them. Nor is there any excuse for Telcordia's failure to subpoena the agreements and produce them in a timely manner or for Telcordia to instruct witnesses not to answer questions based on publicly-available copies.[1]

Telcordia does not dispute that the *Fore* agreements have nothing to do with the only patents left in this case for which Telcordia seeks damages.

Telcordia has not offered any good explanation as to how a settlement arising from the assertion of a patent it concedes Defendants do not infringe is probative of any issue relating to the patents it asserts Defendants do infringe. Rather, the *Fore* settlement would only unfairly prejudice and confuse the jury. These agreements should therefore be excluded under Rule 403 because their probative value, if any, is substantially outweighed by the danger of unfair prejudice and confusion of the issues, and their admission will require a collateral debate about what the *Fore* settlement was really about.

**I.    THE *FORE* AGREEMENTS ARE INADMISSIBLE UNDER RULE 408**

Telcordia mischaracterizes *Am. Soc'y of Composers v. Showtime, Inc.* as standing for the proposition that Rule 408 is inapplicable when a party to a settlement seeks to offer a settlement agreement into evidence. *American Society*, however, only states that in such circumstances settlement agreements "are not automatically inadmissible." 912 F.2d 563, 581 (2d Cir. 1990). That is a far cry from Telcordia's position that Rule 408 may be used as a sword and shield by a party to the settlement.

---

[1]    Telcordia's reliance on its belated production of the *Fore* agreements in the parallel ITC action is amazing given Telcordia's aggressive assertion that anything it produced in the ITC pursuant to the ITC Protective Order may not be filed with this Court – even if filed under seal. Telcordia has insisted that Defendants' "cannot use the [ITC] information in any way while it has been designated confidential business information, and if [Defendants] do so [Telcordia] will have no choice but to seek severe sanctions." Exh. 4-H [2/19/07 Brittingham Email].

In *Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, this Court addressed the very situation at issue here – a party to a settlement agreement offered the agreement as evidence of a reasonable royalty. No. 02-148, 2003 WL 22387038, at *1-2 (D. Del. Oct. 7, 2003) (attached as Exh. 4-I). This Court held that the agreement was inadmissible, explaining that it "is not required to allow otherwise inadmissible settlement agreements into evidence simply because one party's expert relies on them in reaching a reasonable royalty." *Id.* at *3. This Court further reasoned that "[g]iven its discretion to determine the methodology for calculating a reasonable royalty, the court finds that it is the better practice to exclude the [settlement] licenses in view of the policy considerations behind Rule 408." *Id. Pharmastem* is on point and controls.[2]

## II.     THE *FORE* AGREEMENTS ARE INADMISSIBLE BECAUSE TELCORDIA FAILED TO PRODUCE THEM DURING DISCOVERY

The reasons for excluding the agreements in this case are even more compelling than in *Pharmastem*, because Telcordia admits that it did not produce the agreements. D.I. 302 at 2.[3] Telcordia argues that its failure to produce should be ignored because it produced the agreements mere months ago in the parallel ITC action. That production, long after fact and expert discovery had closed *in this case*, is irrelevant. Reasonable royalty is not an issue in the ITC and Defendants never had an opportunity to take *any* discovery about the *Fore* agreements in this action where Telcordia seeks to use them in support of its extravagant damages demands.

Telcordia's story that it could not produce its own license and settlement agreement due to confidentiality issues is similarly unfounded. If Telcordia wanted to rely on the *Fore* settlement, it should have timely subpoenaed Fore's successors for such production under the protective order.[4] Regardless, once Defendants obtained a copy of the settlement agreement

---

[2]     Telcordia's attempt to distinguish *Pharmastem* as involving an "all or nothing" situation is no distinction at all. The Court's exclusion of settlement agreements was independent of its exclusion of settlement negotiations. *Id.* at *4. The fact that in *Pharmastem* the Court *also* excluded the underlying negotiations hardly helps Telcordia.

[3]     All D.I. numbers are from *Telcordia v. Cisco*, Civil Action No. 04-876-GMS.

[4]     Telcordia's failure to produce the *Fore* agreements is particularly egregious given that as early as April 2006, Fore's successor granted Telcordia permission to produce the documents with an Attorneys' Eyes Only designation. *See* Exh. 4-J [4/23/06 Mehta Emails].

# TAB H

## FULLY REDACTED

TAB I

Not Reported in F.Supp.2d                                                      Page 1
Not Reported in F.Supp.2d, 2003 WL 22387038 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

H

Briefs and Other Related Documents

PharmaStem Therapeutics, Inc. v. Viacell
Inc.D.Del.,2003.Only the Westlaw citation is cur-
rently available.

United States District Court,D. Delaware.
PHARMASTEM THERAPEUTICS, INC., Plaintiff,
v.
VIACELL INC., Cryo-Cell International, Inc., Cor-
cell, Inc., Stemcyte, Inc., Cbr Systems, Inc. f/k/a
Cord Blood Registry, Inc., Birthcells Technology,
Inc., Nustem Technologies, Inc., and Bio-Cell, Inc.,
Defendants.
**No. C.A. 02-148 GMS.**

Oct. 7, 2003.

Philip A. Rovner, Potter Anderson & Corroon, LLP,
Wilmington, DE, for Plaintiff.
Jeffrey L. Moyer, David Allan Felice, Richards,
Layton & Finger, Robert F. Stewart, Jr., Dilworth,
Paxson LLP, Richard D. Kirk, Morris, James,
Hitchens & Williams, Wilmington, DE, for Defend-
ants.

*MEMORANDUM AND ORDER*

SLEET, J.

### I. INTRODUCTION

*1 On August 5, 2003, PharmaStem Therapeutics,
Inc. ("PharmaStem") filed a motion *in limine* to ex-
clude from evidence all discovery relating to settle-
ment negotiations regarding patent licensing agree-
ments. On August 12, 2003, Viacell Inc., Cryo-Cell
International, Inc., Corcell, Inc., Stemcyte, Inc., CBR
Systems, Inc. f/k/a Cord Blood Registry, Inc., Birth-
cells Technology, Inc., Nustem Technologies, Inc.,
and Bio-Cell, Inc. (collectively "Viacell") filed an an-
swer requesting that PharmaStem's motion be denied.
Alternatively, Viacell moved to exclude from evid-
ence the license agreements between PharmaStem
and third parties, Anthrogenesis Corporation
("Anthrogenesis") and Stembanc, Inc. ("Stembanc"),
and to preclude PharmaStem's expert, Russell Parr,
from relying on those licenses as a factor in determin-

ing a reasonable royalty rate. On August 15, 2003,
PharmaStem filed a reply. The court conducted a pre-
trial conference on September 8, 2003 in which it
heard oral argument from the parties on PharmaS-
tem's motion. Upon consideration of the arguments
raised at the pretrial conference and in the parties'
briefs, the court will grant PharmaStem's motion *in
limine* to exclude from evidence all discovery relating
to settlement negotiations regarding the Anthrogenes-
is and Stembanc licenses and with any of the defend-
ants in this case. The court will also grant Viacell's
cross-motion *in limine* to exclude from evidence the
Anthrogenesis and Stembanc license agreements
themselves and to preclude Mr. Parr from relying on
those licenses as a factor in determining a reasonable
royalty rate. The court bases its ruling on the follow-
ing reasons.

### II. DISCUSSION

After the commencement of the present litigation,
PharmaStem licensed the patents-in-suit to two, non-
defendant companies, Anthrogenesis and Stembanc.
PharmaStem entered into licensing agreements with
Anthrogenesis and Stembanc in the context of set-
tling a claim of infringement against each of those
companies. PharmaStem also has held settlement ne-
gotiations with several of the defendants. In all in-
stances, PharmaStem and the various parties entered
into a negotiation agreement containing the following
clause:
All offers, promises, conduct and statements, whether
oral or written made in the course of negotiations re-
lating to the Patents by either of the parties, their at-
torneys, agents or representatives are "Confidential
Statements." Confidential Statements may not be dis-
closed by the receiving party without the consent of
the disclosing party. Confidential Statements are sub-
ject to Rule 408 of the Federal Rules of Evidence
may not be used by the receiving party in litigation
for any purpose including, without limitation, im-
peachment. However, evidence that is otherwise ad-
missible or discoverable shall not be rendered inad-
missible or non-discoverable as a result of its present-
ation or use in connection with this Agreement.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 22387038 (D.Del.)

**(Cite as: Not Reported in F.Supp.2d)**

PharmaStem claims that evidence related to the negotiations underlying the Anthrogenesis and Stembanc license agreements is inadmissible under Rule 408 of the Federal Rules of Evidence. PharmaStem maintains, however, that the Anthrogenesis and Stembanc license agreements themselves are admissible to establish the appropriate reasonable royalty calculation. Accordingly, PharmaStem's damages expert, Russell Parr, relied on the license agreements in reaching his opinion that PharmaStem is entitled to a high royalty rate for the patents-in-suit.

**\*2** Conversely, Viacell takes an "all-or-nothing" position, arguing that if the underlying negotiations are inadmissible because of Rule 408, then the license agreements themselves are also inadmissible for the same reason. If Mr. Parr is nonetheless permitted to rely on the Anthrogenesis and Stembanc licenses, Viacell argues that it then should be permitted to introduce the underlying negotiations to show that the final agreements were not the product of a freely negotiated, bargained-for exchange. Indeed, Viacell's damages expert, David E. Yurkerwich, relied on evidence of the underlying negotiations to reach his conclusion that the reasonable royalty rate should be much lower than the one Mr. Parr calculated. The court agrees that PharmaStem is not permitted to have it both ways.

"[T]he methodology for determining a 'reasonable royalty' is consigned to the district court's discretion and is reviewed only for abuse of that discretion." *Century Wrecker Corp. v. E.R. Buske Mfg. Co., Inc., 898 F.Supp. 1334, 1336 (N.D.Iowa 1995)* (citing *Wang Labs., Inc. v. Toshiba Corp., 993 F.2d 858, 869 (Fed.Cir.1993); SmithKline Diagnostics, Inc. v. Helena Labs. Corp., 926 F.2d 1161, 1164 (Fed.Cir.1991); Fromson v. Western Litho Plate & Supply Co., 853 F.2d 1568, 1576 (Fed.Cir.1988)).* It is well established that a patent holder's license agreements with third parties are permissible considerations in a reasonable royalty calculation. *See, e.g., Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F.Supp. 1116, 1120 (S.D.N.Y.1970).* However, notwithstanding their relevance to a reasonable royalty calculation, the court may exclude license agreements between a patent holder and third parties under Rule 408 of the Federal Rules of Evidence.

Rule 408 states in pertinent part:
Evidence of (1) furnishing or offering or promising to furnish, (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromising negotiations is likewise not admissible.

Fed.R.Evid. 408. Specifically, a license agreement may be excluded from evidence under Rule 408 where it (1) was reached under a threat of litigation, (2) arose in a situation where litigation was threatened or probable, or (3) was negotiated against a backdrop of continuing litigation infringement. *See Century Wrecker, 898 F.Supp. at 1340* (citing *Studiengesellschaft Kohle, M.b.H. v. Dart Indus., Inc., 862 F.2d 1564, 1572 (Fed.Cir.1988)* (synthesizing the teachings of *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1164 n. 11 (6th Cir.1978), Rude v. Westcott, 130 U.S. 152, 164, 9 S.Ct. 463, 32 L.Ed. 888 (1889), Hanson v. Alpine Valley Ski Area, Inc., 718 F.2d 1075, 1078-79 (Fed.Cir.1983),* and *Deere & Co. v. Int'l Harvester Co., 710 F.2d 1551, 1557 (Fed.Cir.1983),* respectively)). The court must look carefully at the context in which the license agreement was reached to determine whether it meets any of these requirements. *See Dart Indus., 862 F.2d at 1572; Century Wrecker, 898 F.Supp. at 1340.*

**\*3** The license agreements between PharmaStem and third parties Anthrogenesis and Stembanc arose in a context where litigation was threatened or at least probable. PharmaStem in fact states, "With respect to Anthrogenesis and Stembanc, discovery obtained unambiguously refers to the amounts contemplated to settle PharmaStem's claim of infringement against them." (PharmaStem Therapeutics, Inc's Motion *In Limine* to Exclude All Discovery Relating to Settlement Agreement Negotiations Regarding Patent License Agreements, at 3). Additionally, PharmaStem's negotiation agreements with Anthrogenesis and Stembanc specifically reference Rule 408, indicating that the parties involved must consider the licenses to have arisen out of settlement negotiations over the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 22387038 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

validity or amount of an infringement claim. A "dispute" under Rule 408 includes "both litigation and less formal states of a dispute." In view of the term's broad construction, it is clear that the Anthrogenesis and Stembanc license agreements arose from a dispute within the meaning of Rule 408.

Both PharmaStem and Viacell cite *Century Wrecker* in support of their respective positions. In *Century Wrecker,* the court admitted evidence of license agreements between the plaintiff and third parties, which arose out of the threat of litigation. Although the court noted that the agreements were inadmissible under Rule 408, it nonetheless allowed the defendants to introduce the agreements into evidence because the plaintiff's expert had relied on them in his reasonable royalty calculations. The court reasoned that the defendants were entitled to use the settlement agreements to challenge the basis of the plaintiff's expert's conclusions.

*Century Wrecker,* however, is not binding precedent on this court. Moreover, *Century Wrecker* held only that the actual settlement agreements were admissible to challenge the basis of the expert's opinion. The case, therefore, does not dictate Viacell's position that evidence of negotiations *underlying* the license agreements must be admitted to challenge Mr. Parr's report. Nor does *Century Wrecker* mandate PharmaStem's conclusion that the Anthrogenesis and Stembanc licenses are automatically admissible because Mr. Parr used them to calculate a reasonable royalty.

The court is not required to allow otherwise inadmissible settlement agreements into evidence simply because one party's expert relies on them in reaching a reasonable royalty. This is particularly true where other options, such as excluding the licenses altogether, are available to the court. The purpose of Rule 408 is "to encourage full and frank disclosure between parties in order to promote settlements, rather than protracted litigation." *See* Fed.R.Evid. 408 (citing *Olin Corp. v. Ins. Co. of N. Am.,* 603 F.Supp. 445, 449 (S.D.N.Y.1985)). Given its discretion to determine the methodology for calculating a reasonable royalty, the court finds that it is the better practice to exclude the Anthrogenesis and Stembanc licenses in view of the policy considerations behind

Rule 408. *See Bradbury v. Phillips Petroleum Co.,* 815 F.2d 1356, 1364 (10th Cir.1987) ("[W]hen the issue is doubtful, the better practice is to exclude evidence of compromises or compromise offers.").

**\*4** Finally, although Viacell does not appear to seek the introduction of such evidence, to the extent PharmaStem requests the exclusion of settlement negotiations between itself and any of the defendants in this case, that evidence is plainly inadmissible under Rule 408. *See* Fed.R.Evid. 408 ("Evidence of conduct or statements made in compromising negotiations is likewise not admissible.").

### III. CONCLUSION

Because the agreements arose in a context where litigation was threatened or at least probable, the court will exclude all evidence relating to negotiations of the Anthrogenesis and Stembanc licenses, including the license agreements themselves.

Therefore, IT IS HEREBY ORDERED that:
1. PharmaStem Therapeutics, Inc.'s motion *in limine* to exclude from evidence all discovery relating to settlement negotiations regarding the Anthrogenesis and Stembanc licenses and with any of the defendants in this case is GRANTED.
2. Viacell's cross-motion *in limine* to exclude from evidence the Anthrogenesis and Stembanc license agreements and to preclude Russell Parr from relying on those licenses as a factor in determining a reasonable royalty rate is GRANTED.
3. The parties' experts may not rely on the Anthrogenesis and Stembanc licenses or any documents or other evidence pertaining to negotiations of the those licenses to calculate a reasonable royalty rate or to challenge the opposing party's calculation of a reasonable royalty rate.

D.Del.,2003.
PharmaStem Therapeutics, Inc. v. Viacell Inc.
Not Reported in F.Supp.2d, 2003 WL 22387038 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2004 WL 3333202 (Trial Motion, Memorandum and Affidavit) Pharmastem Therapeutics, Inc.'s Mo-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 4
Not Reported in F.Supp.2d, 2003 WL 22387038 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

tion to Dismiss Defendant CBR's First, Second, Third, Fourth, Fifth and Sixth Counterclaims (Sep. 14, 2004) Original Image of this Document (PDF)

• 2003 WL 23310808 (Verdict and Settlement Summary) (Oct. 29, 2003)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB J

## FULLY REDACTED

# EXHIBIT 5-A

**REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 5A [FOR CISCO ONLY]
RE: HYPERBOLIC AND PREJUDICIAL ARGUMENT OR EVIDENCE**

Nowhere in its response does Telcordia address how Cisco's overall financial performance is relevant to this litigation. Telcordia argues that Cisco put its "financial health" at issue by relying on economic prejudice stemming from Telcordia's protracted delay in asserting the patents-in-suit. D.I. 300 at 1.[1] But Telcordia does not, and indeed, cannot, explain how Cisco's *overall* "financial health" – including Cisco's total revenue and profitability – is probative of the extent to which Cisco has been prejudiced by Telcordia's delay. Telcordia does not even address Cisco's concern that evidence relating to its overall revenues –

– will unfairly prejudice the jury to find that Cisco can and should pay more than the amount adequate to compensate Telcordia for Cisco's alleged infringement, even under Telcordia's most extravagant damages theory. Telcordia is only asserting that a small fraction of Cisco's annual sales are supposedly infringing products.

Nor does Telcordia offer any reason why this Court should allow Telcordia to characterize Cisco's activities at the ATM Forum as a "self-styled illegal boycott" or any other unfounded and unfairly prejudicial assertion of criminal conduct. Cisco is not seeking to preclude Telcordia from introducing evidence about what happened at the ATM Forum, but rather from unfairly characterizing Cisco's behavior as criminal.[2]

**I.     TELCORDIA SHOULD BE PRECLUDED FROM PRESENTING HYPERBOLIC ARGUMENT OR EVIDENCE CONCERNING CISCO'S TOTAL WORTH, REVENUE, PROFITABILITY, OR MARKET CAPITALIZATION**

Cisco brought this *in limine* to preclude Telcordia from discussing Cisco's total worth, revenue, profitability, or market capitalization. Telcordia does not offer *any* good reason why this information would be probative of any of its claims or defenses. Telcordia asserts only that it should be entitled to introduce the following evidence to rebut Cisco's equitable defenses: (1) Cisco's history of acquisitions and their value, and (2) the extent to which Cisco has recouped its

---

[1]     All D.I. numbers are from *Telcordia v. Cisco*, Civil Action No. 04-876-GMS.

[2]     In fact, Cisco is confident that the evidence will show that it was Telcordia – not Cisco – who had "unclean hands" at the ATM Forum and whose behavior misled the industry at large.

investments for the products to which Cisco's intervening rights defense applies. Telcordia does not explain how Cisco's overall financial performance is probative on either of these issues.

Cisco is not seeking to preclude Telcordia from introducing evidence relating to Cisco's history of acquisitions. In fact, Cisco intends to offer evidence that it could have made different business decisions and negotiated, valued, and structured certain acquisitions differently had Telcordia not unreasonably and inexcusably delayed its assertion of the patents-in-suit.[3] *See, e.g.,* Exh. 5A-D [Barr Depo.] at 183:10-184:11. Telcordia offers no explanation as to how Cisco's overall revenues or profits are in any way probative of Cisco's acquisition history.

Nor is Cisco seeking to preclude Telcordia from introducing evidence relating to the extent to which Cisco did or did not recoup investments for products to which Cisco's intervening rights defense applies. To support this defense, Cisco seeks to offer evidence that it invested substantially in developing certain products between the time the pre-reissue '978 patent issued in 1993 and the asserted '633 patent issued in 2000. Cisco is not seeking to preclude evidence relating to any profits (or losses) resulting from Cisco's sale of these products – or any other products accused of infringement by Telcordia. Rather, Cisco is seeking only to preclude Telcordia from offering evidence relating to Cisco's overall financial performance, most of which relates to products *not* accused of infringement here. Telcordia has not offered any explanation as to how Cisco's overall revenues and profits are in any way probative of whether or not Cisco recouped investments in products for which its intervening rights defense applies.

In addition to not offering any reason why Cisco's overall financial performance is relevant, Telcordia fails to address Cisco's concerns about juror confusion and unfair prejudice. To allow Telcordia to offer evidence about Cisco's total worth, revenue, profitability, or market capitalization *would* prejudice and mislead the jury to find that Cisco can and should pay a larger judgment than the amount adequate to compensate Telcordia for Cisco's alleged infringement.

---

[3]    Cisco also intends to offer evidence that any hypothetical negotiation between the parties would have resulted in a lump-sum royalty payment based on Cisco's custom and practice of securing new technologies through internal development or acquisitions.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

## II. TELCORDIA SHOULD BE PRECLUDED FROM PRESENTING HYPERBOLIC ARGUMENT OR EVIDENCE CONCERNING CISCO'S ALLEGED "SELF-STYLED ILLEGAL BOYCOTT"

Most of Telcordia's response regarding its allegation of an "illegal boycott" can be disregarded because Cisco is not seeking to preclude Telcordia from offering evidence about what occurred at the ATM Forum. In fact, Cisco intends to offer evidence about what occurred at the ATM Forum and other standards bodies to show how Telcordia misled Cisco into believing that Telcordia would not assert any patents relating to the SRTS functionality or at least would license any such patents for free or on reasonable and nondiscriminatory terms. Cisco does not object to Telcordia trying to offer its own version of events based on the factual record. However, Telcordia should not be allowed to characterize Cisco's behavior as an "illegal boycott," because Telcordia does not identify any support in the record for such an inflammatory and unfairly prejudicial accusation of criminal conduct.

Telcordia asserts that there is "ample evidence in the record" for its characterization, but fails to identify any. The only evidence identified is an email written by Cisco's delegate to the ATM Forum,[4] which never mentions an "illegal boycott." Rather, Mr. Fedorkow explains that it was MCI who "introduced the idea" of voting against the adoption of a proposed standard relating to SRTS until Telcordia disclosed the terms under which it would agree to license any patents it alleged covered SRTS. D.I. 300 at Exh. F. Mr. Fedokow merely noted that, after MCI introduced the idea, *other* companies agreed that "a carefully constructed boycott" could be effective in convincing Telcordia to disclose the terms under which it would agree to license its patents as required by ATM Forum rules. *Id.* Nowhere in Mr. Fedorkow's email – or anywhere in the record – is this alleged boycott referred to as "illegal" or is its origin attributed to Cisco.

In short, there is no support for Telcordia's allegation that Cisco arranged an "illegal boycott," and to allow Telcordia to characterize Cisco's conduct in such an inflammatory and derogatory way would be unfairly prejudicial to Cisco.

---

[4]  To avoid the need for this *in limine*, Cisco attempted to met and confer with Telcordia, but Telcordia refused to identify this email to Cisco as improperly requesting Telcordia's "trial strategy." Exh. 5A-C [Email from E. Reines dated January, 30, 2007].

3

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

# TAB D

## FULLY REDACTED

# TAB E

## FULLY REDACTED

EXHIBIT 5-B

**REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 5B [FOR LUCENT ONLY]
RE: ALCATEL-LUCENT MERGER**

Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence . . . more probable or less probable." Here, the Alcatel-Lucent merger will not make a single disputed fact more or less probable. In a transparent attempt to inflame the jury's emotion by portraying Lucent as a French-based company, Telcordia attempts to confect various reasons why the Alcatel-Lucent merger should be referenced at trial. However, as Telcordia's response brief makes clear, even Telcordia does not believe the reasons that it advances.

Telcordia first asserts, without any explanation, that the Alcatel-Lucent merger may somehow relate to the economic prejudice prong of Lucent's laches defense. This argument is frivolous on its face. The Alcatel-Lucent merger did not occur until December 1, 2006. Telcordia, however, filed this action in July 2004 – more than two years before the merger. The economic prejudice suffered by Lucent as a result of Telcordia's delay occurred long before the Alcatel-Lucent merger. Regardless, Lucent Technologies, the party in this case, still exists and is merely owned by a parent company Alcatel-Lucent – a non-party to this action. The economic prejudice to Lucent from Telcordia's delay in asserting its patent did not change as a result of the subsequent merger and change in corporate structure.

Telcordia also asserts that the Alcatel-Lucent merger relates to an alleged bias of the France Telecom employees that were deposed by Telcordia and the Defendants. The entirety of Telcordia's argument hinges on rank conjecture that the witnesses could have provided testimony favorable to Defendants because France Telecom and Alcatel S.A are both French companies. Telcordia, however, had ample opportunity to establish any purported bias of Messrs. Adam, Houdin and Cochennec during each individual's depositions. Telcordia was present at the depositions, examined those witnesses, and failed to establish any bias for the simple reason that none exists. Specifically, Telcordia had an opportunity to question Mr. Cochennec about the very document that it now cites as the source of the alleged bias. D.I. 312

at 1. Indeed, the witnesses testified that, not only did they lack any interest in helping Alcatel or Lucent in this litigation, but the witnesses had no interest in helping France Telecom. For example, Mr. Cochennec testified that he is retired, he has "nothing to do with [France Telecom]," Exh. 5B-E [04/06/06 Cochennec Depo] at 87:24-25, and has "absolutely no interest" in this case. *Id* at 105:7-22. Likewise, Mr. Adam testified that he is no longer actively working for France Telecom in anticipation of his imminent retirement. *See* Exh. 5B-F [04/07/06 Adam Depo] at 8:12-22.

Moreover, even assuming that any bias towards Alcatel could have existed, the Alcatel-Lucent merger occurred long after the depositions took place. The recent merger cannot retroactively create any alleged bias at the time of the deposition. Simply put, the Alcatel-Lucent merger has no impact on the issue of bias. Had Lucent and Alcatel not merged, would the France Telecom witnesses' prior testimony be any less or more biased?

Finally, Telcordia alleges the Alcatel-Lucent merger is relevant because Defendants' pre-trial brief refers to Telcordia's corporate history. Defendants, however, made reference to Telcordia's history to explain why Telcordia brought and continues to pursue its marginal claims. By contrast, the Alcatel-Lucent merger does not relate to any factual dispute between the parties. Indeed, Lucent Technologies Inc. is a separate company from Alcatel USA, with both having the same parent company of Alcatel-Lucent.

The truth is that Telcordia is frustrated because after it brought its ill-conceived parallel ITC action, Alcatel USA exercised its statutory right to stay and Lucent and Cisco did not. This leaves Telcordia without a French company as a target, and that interferes with Telcordia's plan to bias the jury. Telcordia has all but admitted that this is the case. It wants to bootstrap the subsequent merger of Alcatel and Lucent into an argument that the France Telecom witnesses must have been biased to support a French defendant, but Telcordia no longer has a French defendant to offer, so it must create one.

Put simply, the Alcatel-Lucent merger is not relevant to a single fact in this case and is only offered as a means to prejudice the jury.

2

# TAB E

## FULLY REDACTED

# TAB F

## FULLY REDACTED

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2007 I electronically filed the foregoing with the

Clerk of the Court using CM/ECF, which will send notification of such filing to Steven J. Balick,

John G. Day, Tiffany Geyer Lydon, Israel S. Mayergoyz, David A. Nelson, Neilesh R. Patel,

John W. Shaw, John M. Williamson, Jack B. Blumenfeld, Jessica L. Davis, Sonal N. Mehta,

Leslie A. Polizoti, and Edward R. Reines.

I further certify that I caused copies of the foregoing document to be served on March 1,

2007 upon the following in the manner indicated:

**BY HAND**                                    **BY FEDERAL EXPRESS on 3/2/07**

John G. Day                                    Don O. Burley
ASHBY & GEDDES                                 FINNEGAN, HENDERSON,
500 Delaware Avenue, 8th Floor                  FARABOW, GARRETT & DUNNER
Wilmington, DE  19801                          901 New York Avenue
                                               Washington, DC  20001

John W. Shaw                                    David A. Nelson
YOUNG CONAWAY STARGATT                         LATHAM & WATKINS
 & TAYLOR LLP                                  Sears Tower, Suite 5800
1000 West Street, 17th Floor                   233 South Wacker Drive
Wilmington, DE  19801                          Chicago, IL  60606

**BY ELECTRONIC MAIL**

Steve Balick (sbalick@ashby-geddes.com)
Tiffany Geyer Lydon (tlydon@ashby-geddes.com)
John Day (jday@ashby-geddes.com)
John Williamson (john.williamson@finnegan.com)
York Faulkner (york.faulkner@finnegan.com)
Don Burley (don.burley@finnegan.com)
Israel Mayergoyz (sasha.mayergoyz@lw.com)
David Nelson (david.nelson@lw.com)
Neilesh Patel (neilesh.patel@lw.com)
John Shaw (jshaw@ycst.com)

                          */s/ Leslie A. Polizoti* (#4299)
                          lpolizoti@mnat.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing to Steven J. Balick, John G. Day, Tiffany Geyer Lydon, Israel S. Mayergoyz, David A. Nelson, Neilesh R. Patel, John W. Shaw, John M. Williamson, Jack B. Blumenfeld, Jessica L. Davis, Sonal N. Mehta, Leslie A. Polizoti, and Edward R. Reines.

I further certify that I caused copies of the foregoing document to be served on March 8, 2007 upon the following in the manner indicated:

**BY HAND and E-MAIL**

John G. Day
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE  19801

John W. Shaw
YOUNG CONAWAY STARGATT
  & TAYLOR LLP
1000 West Street, 17th Floor
Wilmington, DE  19801

**BY E-MAIL**

Don O. Burley
FINNEGAN, HENDERSON,
  FARABOW, GARRETT & DUNNER
901 New York Avenue
Washington, DC  20001

David A. Nelson
LATHAM & WATKINS
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL  60606

**BY ELECTRONIC MAIL**

Steve Balick (sbalick@ashby-geddes.com)
Tiffany Geyer Lydon (tlydon@ashby-geddes.com)
John Day (jday@ashby-geddes.com)
John Williamson (john.williamson@finnegan.com)
York Faulkner (york.faulkner@finnegan.com)
Don Burley (don.burley@finnegan.com)
Israel Mayergoyz (sasha.mayergoyz@lw.com)
David Nelson (david.nelson@lw.com)
Neilesh Patel (neilesh.patel@lw.com)
John Shaw (jshaw@ycst.com)

*/s/ Leslie A. Polizoti* (#4299)
lpolizoti@mnat.com