IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-875 GMS |
| | ) | |
| LUCENT TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-876 GMS |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

## I.    INTRODUCTION

On March 30, 2007, the court conducted a pretrial conference in the above-captioned actions.

During the pretrial conference, the court heard brief oral argument on the parties' motions in limine

and reserved ruling on the following motions: (1) The defendants' motion to preclude Telcordia

Technologies, Inc. ("Telcordia") from presenting certain damages theories; (2) the defendants'

motion to preclude Telcordia from arguing that the invention of U.S. Patent No. Re. 36,633 (the

"'633 patent") was conceived before November 4, 1991, and from introducing uncorroborated

evidence of prior conception; (3) the defendants' motion to preclude Telcordia from introducing

evidence of Cisco Systems, Inc.'s ("Cisco") decision not to disclose advice of counsel and Lucent

Technology, Inc.'s ("Lucent") failure to seek legal advice; (4) the defendants' motion to preclude

Telcordia from introducing into evidence and/or relying upon at trial, the license and settlement agreements from *Bell Communications Research Inc. v. Fore Systems, Inc.*, 113 F. Supp. 2d 635 (D. Del. 2000) (the "*Fore* Case"); (5) Lucent's motion to preclude Telcordia from referring to the recent merger between Lucent and Alcatel S.A.; and (6) Telcordia's motion to preclude testimony of alleged inequitable conduct during prosecution of the '633 patent based upon the Gonzales article or private communications with France Telecom. Having considered the arguments raised in the parties' submissions (D.I. 302, 304,309-315, 326,327) and during the pretrial conference, the court will: (1) grant in part and deny in part the defendants' motion to preclude certain damages theories; (2) deny the defendants' motion regarding the introduction of uncorroborated evidence of prior conception; (3) grant in part and deny in part the defendants' motion regarding the advice of counsel; (4) grant the defendants' motion to exclude any reference to or reliance on the settlement and licensing agreements in the *Fore* Case; (5) grant Lucent's motion regarding the merger between Lucent and Alcatel S.A.; and (6) deny Telcordia's motion to preclude testimony regarding inequitable conduct during prosecution of the '633 patent. The court bases its rulings on the following reasons, among others.

## II.     DISCUSSION

### A.     The Defendants' Motion to Preclude Certain Damages Theories

The defendants contend that Telcordia should be precluded from seeking damages on revenue from products that do not infringe the '633 patent, which is directed to a synchronous residual time stamping ("SRTS") function. According to the defendants, their products, which they refer to as "boxes," can be outfitted with hundreds or thousands of different circuit cards, and the accused SRTS functionality resides on optional cards, which are priced, invoiced and sold separately from

the boxes into which they are inserted.  Specifically, Cisco contends that it has sold only 3,109 SRTS cards and, as a result, a maximum of 3,109 of its boxes could potentially infringe.  Cisco further contends that Telcordia seeks damages for over 200,000 of Cisco's boxes, including those that are not outfitted with SRTS-capable cards.

Likewise, Lucent contends that, although Telcordia seeks to offer a damages number based on all of Lucent's sales revenue for CBX boxes since April 2000, it never sold an SRTS-capable card to any customer for use with CBX and did not offer such a card until 2004.  Lucent further contends that Telcordia seeks to offer a damages number based on all sales of its GX boxes since April 2000, even though only three customers bought an SRTS-capable card for those boxes, Lucent has not sold such a card since 2002, and the card was discontinued in 2004.

In sum, the defendants argue that Telcordia seeks damages for sales of their boxes to customers that never purchased any SRTS-capable cards, and who cannot possibly infringe the asserted claims.  The defendants cite to *Golden Blount, Inc. v. Robert H. Peterson, Co.*, 438 F.3d 1354 (Fed. Cir. 2006) in arguing that Telcordia cannot recover for their sales of boxes, since there is no direct infringement associated with the those sales.

In response, Telcordia asserts that the defendants' motion in limine is a disguised and belated summary judgment motion on the issue of inducement and contributory infringement under 35 U.S.C. §§ 271(b), (c), and (f), which the court should not consider at this late date.  As to the merits, Telcordia asserts that all of the accused products should be included in the damages base, because the defendants make and sell boxes that include components that are especially made or adapted for practicing the accused SRTS invention of the '633 patent.  In other words, Telcordia argues that the defendants' manufacture and sale of the SRTS-capable boxes alone constitutes contributory

infringement.  To support its position Telcordia relies on *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409 (Fed. Cir. 1996).

In *Stryker*, a lost profits case, the Federal Circuit held that the district court did not err when it awarded damages for the sales of implants that were sold with an infringing distal sleeve.  96 F.3d at 1416.  The Federal Circuit specifically pointed out that over 16,000 sales of the implant did not result in the implant with a distal sleeve being implanted in a patient.  *Id.*  However, the court affirmed the district court's award based on how the implant systems were marketed and sold.  *Id.* The court found that the implant and distal sleeve were marketed as a "total system."  *Id.*  That is, the sales agent would attempt to sell the entire system, implant and sleeve, to a surgeon.  *Id.*  The surgeons purchasing the systems would make the decision whether or not to use the distal sleeve in surgery.  Therefore, the surgeon needed the entire system available during surgery and, because of this, "a responsible agent would make sure that the sleeves were available in the operating room for the surgeon."  *Id.* at 1417.  Based on these facts, the court held that the plaintiff was entitled to damages for every system sold, "because the compensable injury had already occurred – when the [system] was supplied to the surgeon instead of the [plaintiff's implant]."  *Id.*

In *Golden Blount*, the Federal Circuit held that the district court should have excluded dealer returns of the infringing devices, because they did not represent instances of direct infringement.  438 F.3d at 1372-73.  There, the devices sold by the defendant did not infringe until they were assembled in a certain configuration.  *Id.* at 1360.  Of the devices that the defendant sold, customers allegedly returned 802 before they were assembled into an infringing configuration.  *Id.* at 1372.  In concluding that the plaintiff could not recover for the 802 returned devices, the court noted, "it is hornbook law that '[l]iability for either active inducement of infringement or contributory

4

infringement is dependent upon the existence of direct infringement.'" *Id.* (citations omitted). The court then determined "there would be 802 fewer acts of direct infringement and [the defendant] would be liable for 802 fewer acts of contributory or inducing infringement," if the 802 devices were returned before they were assembled into an infringing configuration. *Id.* at 1373.

After having considered the submissions and arguments of the parties, the court concludes that *Golden Blount*, not *Stryker*, is more on point with the facts of the present case. Here, like *Golden Blount*, the defendants have sold devices, i.e. boxes, that are incapable themselves of performing the function that allegedly infringes the '633 patent. As such, direct infringement can exist only for the boxes sold with the SRTS-capable cards, or the SRTS-capable cards that the defendants sold to customers. Put another way, the devices or boxes sold without the SRTS-capable cards cannot directly infringe, even though they have been adapted for practicing the accused SRTS invention, because they cannot practice the invention without the SRTS-capable card. Accordingly, the court concludes that Telcordia can recover damages only for SRTS-capable cards sold by the defendants, and not for the total number of boxes the defendants sold.

The defendants also contend that Telcordia should be precluded from introducing evidence regarding Cisco's foreign sales of allegedly infringing products. Cisco argues that its foreign sales are irrelevant because Telcordia cannot connect them to an allegedly infringing domestic activity. Specifically, Cisco argues that Telcordia did not ask for foreign sales information during discovery, and that Telcordia's expert has merely doubled his damages figure to account for allegedly-infringing foreign sales.

Conversely, Telcordia argues, with citations to the record, that Cisco manufactures and tests the accused products in the United States, a statutory act of infringement. Telcordia further argues

that Cisco's representations regarding its failure to seek discovery on foreign sales are disingenuous, noting that Cisco produced its world-wide revenue figures for the products-in-suit, and that its Rule 30(b)(6) witness authenticated and explained those figures.

After having considered the parties' submissions and arguments, the court agrees with Telcordia that it has shown evidence of damages for foreign sales of allegedly infringing products. The court further concludes that Cisco has not shown (or even argued) any prejudice, much less undue prejudice, or jury confusion, that would result from allowing Telcordia to present evidence of foreign sales. As such, the court will permit Telcordia to introduce into evidence Cisco's foreign sales.[1]

## B.    The Defendants' Motion to Exclude Evidence of Prior Invention

In this motion, the defendants first contend that Telcordia should be precluded from arguing that the invention claims in the '633 patent was conceived before November 4, 1991. In its answering brief, and at the pretrial conference, Telcordia represented to the court that it "is not arguing that the invention claimed in the '633 patent . . . was conceived before November 4, 1991, and it is not attempting to introduce any evidence, let alone uncorroborated evidence that the claimed invention was conceived before that date." (D.I. 310, at 1; see D.I. 337, at 70:10-16.) Instead, Telcordia intends to present evidence of the work of Drs. Lau and Fleischer (the inventors of the '633 patent) that was completed prior to August 26, 1991, to demonstrate that the invention of the

---

[1] In making its ruling, the court notes that Cisco can effectively cross-examine Telcordia's expert in order to determine whether he has merely "doubled" Cicso's United States sales to arrive at a foreign sales damages number, and whether he has excluded Cisco's United States sales and/or foreign sales of non-infringing products from his analysis. If Telcordia's expert has in fact "doubled" the damages number or failed to remove non-infringing products from his analysis, Cisco can use these facts to its advantage in arguing to the jury.

'633 patent was not taken from someone else. Given Telcordia's representations, the court will deny this part of the defendants' motion as moot.

The defendants further argue, however, that Telcordia should be precluded from presenting any "uncorroborated inventor evidence" regarding an earlier conception date for the '633 patent, because it is legally improper. (D.I. 304 Ex. 2, at 1, 3.) Telcordia counters that the evidence it will present is corroborated and, as a result, the court should deny the defendants' motion. The primary dispute between the parties is whether a June 6, 1991 memorandum from Dr. Lau may properly be considered to demonstrate the inventors' possession of key ideas regarding the SRTS invention.

The Federal Circuit developed a rule requiring corroboration "where a party seeks to show conception through the oral testimony of an inventor," because the court was concerned that "inventors testifying in patent infringement cases would be tempted to remember facts favorable to their case by the lure of protecting their patent or defeating another's patent." *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996) (citations omitted). In order to determine sufficient corroboration, courts apply a "rule of reason" analysis and "examine[] all pertinent evidence to determine the credibility of the inventor's story." *Brown v. Barbacid*, 276 F.3d 1327, 1335 (Fed. Cir. 2002). However, the Federal Circuit "does not require corroboration where a party seeks to prove conception through the use of physical exhibits." *Mahurkar*, 79 F.3d at 1577. When conception is being proven through physical exhibits, the concern that led to the development of the corroboration requirement no longer exists, because "[t]he trier of fact can conclude for itself what documents show, aided by testimony as to what the exhibit would mean to one skilled in the art." *Id.* at 1577-78.

Here, Telcordia has argued that it will use the June 6, 1991 memorandum from Dr. Lau to demonstrate that he possessed the key ideas of the invention of the '633 patent at the time of its writing. Thus, Telcordia is attempting to demonstrate an earlier conception date to rebut the defendants' invalidity claim through a physical exhibit, namely, the June 6, 1991 memorandum. Because the jury, aided by testimony as to what the memorandum would mean to one skilled in the art at the time, can determine for itself what the memorandum demonstrates, the court concludes that Telcordia is not precluded from presenting it as evidence. The court further concludes that any likelihood of jury confusion regarding the conception date of the '633 patent can be remedied by a proper limiting instruction. In other words, the court will permit Telcordia to present evidence on the June 6, 1991 memorandum, but will tell the jurors (through the use of a limiting instruction crafted by the parties) that they can consider the memorandum and accompanying testimony only as evidence to rebut the defendants' derivation of invention claim.

**C.      The Defendants' Motion to Exclude Evidence Regarding the Advice of Counsel**

The defendants argue that Telcordia should be precluded from introducing evidence of their decision not to disclose advice of counsel pertaining to the patents-in-suit, or to argue that they did not properly seek legal counsel. Cisco specifically argues that Telcordia should not be permitted to introduce any evidence regarding its receipt and reliance on advice of counsel. Lucent specifically argues that Telcordia should not be permitted to introduce evidence regarding its failure to obtain advice of counsel. The court has distilled the parties' arguments into the following two considerations: (1) whether the jury may consider the fact that Cisco has obtained but not produced

8

any legal opinions or advice;[2] and (2) whether the jury may consider the fact that Lucent has not

obtained any legal opinions or advice.  Both parties rely on the Federal Circuit's decision in *Knorr-*

*Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corporation*, 383 F.3d 1337 (Fed. Cir. 2004)

(en banc), as well as subsequent decisions from the Federal Circuit and district courts.

In *Knorr-Bremse*, the Federal Circuit "resolve[d] . . . the question of whether adverse

inferences of unfavorable opinions can be drawn [in a willful infringement analysis when a

defendant has failed to obtain or produce a exculpatory opinion of counsel.]" *Knorr-Bremse*, 383

F.3d at 1347.  As to that question, the court held that it is not appropriate for the trier of fact to draw

an adverse inference and overruled precedent authorizing such an inference.  *See id.* at 1344.  The

Federal Circuit, however, expressly declined to resolve the question of whether "the trier of fact,

particularly a jury, can or should be told whether or not counsel was consulted (albeit without any

inference as to the nature of the advice received) as part of the totality of the circumstances relevant

to the question of willful infringement."  *Id.* at 1347.  Therefore, *Knorr-Bremse* left untouched the

totality of the circumstances standard that the jury may consider in its willful infringement analysis.

Since that decision, the Federal Circuit and several district courts have addressed the issue

left untouched by *Knorr-Bremse*.  Generally, the cases seem to fall into two situations: (1) cases in

which the defendant obtained an opinion of counsel, but has asserted the attorney-client privilege

to withhold the opinion; and (2) cases in which the defendant has failed to seek or obtain an opinion

---

[2] During the pretrial conference, and in its briefing, Telcordia argued that Cisco had not obtained any opinions of counsel.  (D.I. 337, at 87:1-88:3.)  As expected, Cisco maintained that it had obtained legal advice regarding the patents-in-suit.  To resolve the issue, the court ordered Cisco to produce for in camera review a sampling of documents that it would rely on as opinions of counsel.  Cisco filed those documents on April 16, 2007.  After having reviewed the documents, the court concludes that they constitute opinions of counsel received by Cisco in this litigation.

of counsel. In the latter situation, subsequent cases applying *Knorr-Bremse* have held that "[t]he fact that no opinion of counsel on the issue of infringement was acquired by [the] defendant may be considered by the trier of fact in its willful infringement analysis, but no inference may be drawn to suggest that such an opinion, had it been acquired, would have been unfavorable to [the] defendant." *IMX, Inc. v. LendingTree, LLC*, No. Civ. 03-1067-SLR, 2006 WL 38918, at *1 (D. Del. Jan. 6, 2006); *see Engineered Products Co. v. Donaldson, Co., Inc.*, 147 F3ed. Appx. 979, 991 (Fed. Cir. Aug. 31, 2005) (unpublished). This outcome makes sense, because one of the factors that the jury must consider in its willfulness analysis is "whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992). Thus, permitting the plaintiff to tell the jury that the defendant did not obtain an opinion of counsel may indicate to the jury that the defendant did not act properly. *See Third Wave Technol. v. Stratagene Corp.*, 405 F. Supp. 2d 991, 1016-17 (W.D. Wis. 2005) (*Knorr-Bremse* "did not say that it was improper for a jury to infer from [the] infringer's failure to consult counsel that the infringer had no prior knowledge of its opponent's patents or that it had not acted properly in other respects.")

On the other hand, in the former situation, the Federal Circuit has stated that the threshold showing a patentee must make in establishing willful infringement "cannot be satisfied merely by proof that the accused is asserting the attorney-client privilege to withhold an opinion of counsel." *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1368 (Fed. Cir. 2006). This also makes sense to the court, because it can envision only one inference that the jury will draw from learning that the defendant has consulted counsel and obtained advice, but has chosen to assert the attorney-client privilege: that the opinion received by the defendant was unfavorable. This is

10

precisely the inference that would run afoul of the Federal Circuit's reasoned opinion in *Knorr-Bremse*, and an inference that this court will not permit the jury to draw. Given the foregoing discussion, the court will permit Telcordia to tell the jury that Lucent did not seek legal counsel with respect to the '633 patent,[3] but prohibit Telcordia from introducing evidence of Cisco's decision not to disclose advice of counsel pertaining to the patents-in-suit. *See McKesson Information Solutions, Inc. v. Bridge Medical, Inc.*, 434 F. Supp. 2d 810 (E.D. Cal. 2006) (distinguishing cases in which the defendant consulted counsel and received an opinion but chose to assert the attorney-client privilege from cases in which the defendant did not seek legal counsel). Therefore, the court will grant in part and deny in part the defendants' motion.

### D. The Defendants' Motion to Exclude Evidence Regarding the License and Settlement Agreements Resulting from its Litigation of *Bell Communications Research Inc. v. Fore Systems, Inc.*

In this motion, the defendants ask the court to exclude evidence and argument from Telcordia regarding the license and settlement agreements in the *Fore* Case. The defendants rely on Rule 408 of the Federal Rules of Evidence. Rule 408 provides that a license agreement may be excluded from evidence "where it (1) was reached under a threat of litigation, (2) arose in a situation where litigation was threatened or probable, or (3) was negotiated against a backdrop of continuing litigation infringement." *Pharmastem Therapeutics, Inc. v. Viacell Inc.*, No. C.A. 02-148 GMS, 2003 WL 22387038, at *2 (citations omitted). In determining whether the license agreement meets

---

[3] Lucent argues that Telcordia should be precluded from telling the jury that it did not seek legal counsel regarding the '633 patent because it had no notice of the '633 patent until Telcordia filed its amended complaint, nearly one year into the litigation. The court is not persuaded by this argument and finds that Lucent's notice of the '633 patent, or lack thereof, is not proper for a determination on a motion in limine, because it is a factual issue for the jury to decide after hearing the evidence presented.

any of the above-stated requirements, the court must look at the context in which the agreement was reached. *Id.* (citing *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1572 (Fed. Cir. 1988)).

In the present case, the license and settlement agreements between BellCore and Fore Systems arose as a direct result of the settlement of the *Fore* Case. Thus, they fall squarely within the prohibition of Rule 408. More important, however, is the fact that the license and settlement agreements provide a license for 78 patents, only 3 of which are involved in the present lawsuit. Permitting Telcordia to put the agreements into evidence and rely on them has the potential to confuse or mislead the jurors, because they do not paint an accurate picture of the value of the patents at issue in the present litigation. In addition, the jurors may be tempted to speculate as to the reasons the agreements contain licenses for patents that are not at issue here – business reasons known to only the parties who are signatories to those agreements. Because the license and settlement agreements arose as a result of the settlement in the *Fore* Case, and because permitting the jurors to hear evidence and testimony regarding agreements that pertain to 75 patents not at issue in this lawsuit has the potential to mislead or confuse them, the court will not permit Telcordia to introduce or rely upon the license and settlement agreements.[4]

---

[4] Telcordia argues that, at a minimum, the license and settlement agreements are relevant and probative of the non-obviousness of the patents-in-suit. The court cannot agree with Telcordia, and questions its reliance on *WMS Gaming Inc. v. International Game Technology*, 184 F.3d 1339, 1360 (Fed. Cir. 1999). Here, Telcordia's agreements arose as a result of litigation. In *WMS Gaming*, the Federal Circuit did not state that the patentee's license agreements with competitors were entered into as a result of litigation, in concluding that they were "strong indicia" of non-obviousness. Because *WMS Gaming* does not stand for the proposition that all license agreements, no matter in what context they arise, are "strong indicia" of non-obviousness, the court places no weight on Telcordia's citation to and reliance on that case.

**E.      Lucent's Motion to Exclude any Reference to Its Merger with Alcatel S.A.**

Lucent contends that the court should not permit any reference to its merger with Alcatel S.A. ("Alcatel"), because it is not relevant to the disputed issues, and because it is highly prejudicial to Lucent.  Specifically, Lucent contends that no Alcatel USA product has ever been in dispute here, because Alcatel USA has received a stay of Telcordia's case against it, pursuant to its statutory right. Lucent further contends that any reference to the merger would be misleading and confusing to the jury.

After having considered the parties positions, the court agrees with Lucent and further finds that Telcordia has not presented any reason for the court to allow the jury to hear that Lucent and Alcatel have merged.  Put another way, Telcordia has not demonstrated to the court that the Lucent and Alcatel merger has any tendency of making any disputed fact more or less probable.  First, although a merger has occurred, Telcordia does not dispute that Lucent and Alcatel USA are separate subsidiaries within the Alcatel-Lucent company.

In addition, while Telcordia maintains that the merger is relevant to Lucent's defense of laches, the court is not persuaded, especially considering that the Alcatel-Lucent merger did not occur until December 1, 2006 – more than two years after Telcordia filed this lawsuit.  Laches is defined as "the neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028-29 (Fed. Cir. 1992) (en banc).  For a defense of laches, the defendant has the burden of proving that: (1) the plaintiff delayed in filing suit for an unreasonable and inexcusable length of time after the plaintiff knew or reasonably should have known of its claim against the defendant; and (2) the defendant

13

suffered material prejudice or injury as a result of the plaintiff's delay. *Id.* at 1028. Neither of the above-stated factors that Lucent must prove to establish laches has any relevance to a merger with Alcatel that occurred after the initiation of this action. *See id.* at 1038 (explaining that courts must look for a change in the economic position of the alleged infringer *during* the period of delay) (emphasis added). Accordingly, the merger has no bearing on Lucent's laches defense.

Finally, Telcordia contends that the merger is relevant to the biases of witnesses from France Telecom that Lucent intends to call to support its case. Indeed, Telcordia contends that, at the outset of this litigation, France Telecom witnesses had biases in favor of Alcatel which, because of the merger, "directly translate[]" to Lucent. (D.I. 312, at 2.) Putting aside the fact that the allegedly biased witnesses are employees and former employees of France Telecom, a company that is not a party to this case, nor legally affiliated with any of the parties in this case, the court cannot fathom how any bias toward Alcatel during depositions that occurred *before* the merger between Alcatel and Lucent now "directly translates" to Lucent. Nor has Telcordia provided any explanation for this theory of translating bias, which the court finds untenable.

In sum, after having considered all arguments and submissions, the court concludes that any marginal probative value of the merger "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." Fed. R. Evid. 403. The court, therefore, will grant Lucent's motion.

**F.     Telcordia's Motion to Preclude Testimony of Alleged Inequitable Conduct During Prosecution of the '633 Patent**

Telcordia's motion in limine asks the court to preclude testimony relating to alleged inequitable conduct by the inventors of the '633 patent. The court, however, need not address the merits of this motion, because it has determined that the motion is not a motion in limine. Rather, it is a stealth motion for summary judgment, which this court does not permit to be raised during the pretrial conference of civil patent cases.[5] This is evidenced by the fact that Telcordia does not discuss anywhere in its motion how it will be prejudiced if the court permits the defendants to introduce testimony regarding the Gonzales article and communications with France Telecom. Instead, reading like a motion for summary judgment, the motion states that it is legally incorrect for the defendants to introduce testimony regarding this evidence. (D.I. 302, at 1.) Moreover, Telcordia made the following summary judgment argument with respect to the motion during the pretrial conference: "they [the defendants] are relying on two types of conduct where there is controlling Federal Circuit authority which says that type of conduct does not constitute inequitable conduct *as a matter of law*." (D.I. 337, at 96:22-25.) Further, the motion does not discuss the exclusion of evidence or argue that certain testimony should be excluded under the Rules of Evidence, but asserts that an entire claim should be precluded. In other words, the structure of the motion and language used by Telcordia demonstrate to the court that Telcordia is seeking summary judgment under the

---

[5] The court's summary judgment process is one that is detailed and well-known to the parties – indeed it is part of their scheduling order. In accordance with the Scheduling Order (D.I. 22 ¶ 8; D.I. 83 ¶ 6) in the present case, the parties filed letter requests to submit motions for summary judgment, which the court then addressed during a teleconference. While Telcordia requested permission to move for summary judgment on seven different issues, it did not request to move for summary judgment on the inequitable conduct issue. Accordingly, it is too late in the day for Telcordia to request summary judgment on the inequitable conduct issue for the first time in a motion in limine.

guise of a motion in limine. Given the foregoing and Telcordia's failure to comply with the court's process, the court will deny Telcordia's motion.

## III.    CONCLUSION

For the reasons stated in the court's discussion, IT IS HEREBY ORDERED that:

1.    The defendants' Motion in Limine Number 1 Re: Unsupported Damages Theories (D.I. 304 Ex. 1) is GRANTED in part and DENIED in part. The motion is granted with respect to the defendants' total boxes sold and denied with respect to Cisco's foreign sales.

2.    The defendants' Motion in Limine Number 2 Re: Uncorroborated Evidence of Conception (D.I. 304 Ex. 2) is DENIED.

3.    The defendants' Motion in Limine Number 3 Re: Advice of Counsel (D.I. 304 Ex. 3) is GRANTED in part and DENIED in part. The motion is GRANTED with respect to Cisco and DENIED with respect to Lucent.

4.    The defendants' Motion in Limine Number 4 Re: *Telcordia v. Fore Systems* License and Settlement Agreements (D.I. 304 Ex. 4) is GRANTED.

5.    Lucent's Motion in Limine Number 5 Re: References to the Alcatel-Lucent Merger (D.I. 304 Ex. 5B) is GRANTED.

6.    Telcordia's Motion in Limine Number 4 to Preclude Testimony on Alleged Inequitable Conduct During Prosecution of the '633 Patent Based upon the Gonzales Article or Private Communications with France Telecom (D.I. 302) is DENIED.

Dated: April 24, 2007                              /s/ Gregory M. Sleet
_____ UNITED STATES DISTRICT JUDGE